**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| FLEETBOSTON FINANCIAL CORPORATION, KMR MANAGEMENT, INC., ROBERT RIESNER, and WARING S. JUSTIS, JR., | ) ) ) ) ) |  |
| Appellants, | ) ) ) |  |
| v. | ) ) | Civil Action No. 05-004 (SLR) |
| NHI, INC., | ) ) |  |
| Appellee. | ) ) ) |  |

**OPENING BRIEF OF APPELLANTS FLEETBOSTON**
**FINANCIAL CORPORATION, KMR MANAGEMENT, INC.,**
**ROBERT RIESNER AND WARING S. JUSTIS, JR.**

Stuart M. Brown, Esq. (No. 4050)
Denise Seastone Kraft, Esq. (No. 2778)
William R. Firth, III, Esq. (No. 4356)
EDWARDS & ANGELL, LLP
919 N. Market Street, 15th Floor
Wilmington, DE  19801
Telephone (302) 777-7770
Facsimile (302) 777-7263

*Attorneys for FleetBoston Financial*
*Corporation, KMR Management, Inc.,*
*Robert Riesner and Waring S. Justis, Jr.*

Dated: October 11, 2005

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 2

        A.      NHI Released all Claims against Mercantile and its Agents,
                on February 26, 2002 ................................................................................. 3

        B.      In Order to Obtain Mercantile's Consent to NHI's Use of
                Cash Collateral, NHI Reaffirmed to the Bankruptcy Court
                that it had Released all Claims against Mercantile and its
                Agents, KMR, Riesner and Justis .............................................................. 4

        C.      NHI Reaffirms its Release of all Claims against Mercantile
                and its Agents, KMR, Riesner and Justis on October 30, 2003 ................. 5

        D.      NHI Files a  Complaint, Amended Complaint and Second
                Amended Complaint Against Appellees Alleging Agency ........................ 6

III.    STATEMENT OF THE CASE............................................................................ 7

        A.      Bankruptcy Court Procedural History........................................................ 7

        B.      Appellant's First Appeal (Civil Action No. 05-004) ................................. 8

        C.      Appellant's Second Appeal (Civil Action No. 05-659)............................ 11

IV.     STATEMENT OF THE BASIS OF APPELLATE JURISDICTION .................. 12

V.      ISSUES PRESENTED ON APPEAL.................................................................. 14

VI.     STANDARD OF APPELLATE REVIEW........................................................... 15

VII.    SUMMARY OF ARGUMENT .......................................................................... 15

VIII.   ARGUMENT..................................................................................................... 17

        A.      The Bankruptcy Court Erred by Converting Appellants'
                Motion to Dismiss the Amended Complaint to a Motion for
                Summary Judgment.................................................................................... 17

        B.      The Bankruptcy Court Erred in Failing to Dispose of the
                Proceeding, Because the Bankruptcy Court Failed to Correctly
                Apply Both the Standard of Review on a Motion to Dismiss
                and the Standard of Review on a  Motion for Summary Judgment
                Where the Material Fact of Agency is not at Issue Due to
                Prior Admissions and a Previous Court Finding of Agency by the
                Bankruptcy Court...................................................................................... 20

1.      Motion to Dismiss Standard.........................................................20

2.      Motion for Summary Judgment Standard ...................................22

C.     The Bankruptcy Court Erred in Denying Appellants' Motion
to Dismiss the Amended Complaint and Second Amended
Complaint, Because the Bankruptcy Court Ignored Appellee's
Judicial Admissions that an Agency Relationship Existed
Between Mercantile, as Principal, and Appellants, as Agents.................25

D.     The Bankruptcy Court Erred in Denying Appellants' Motion
to Dismiss the Second Amended Complaint Because the
the Mere Omission of Paragraph 33 of the Amended Complaint
did not Eliminate Appellee's Allegations of Agency ...............................31

E.     The Bankruptcy Court Erred by Permitting Appellee's
Preference Claim to Proceed Against Riesner and Justis
Despite Deficiencies in the *Prima Facie* Allegations...............................35

CONCLUSION ...................................................................................................37

_502808_5/

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 248, 106 S. Ct. 2505 (1986)..............................................................22

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.,*
    321 B.R. 147, 155 (D.N.J. 2005) ...........................................................................13

*Billops v. Magness Constr. Co.,*
    391 A.2d 196 (Del. 1978) ...............................................................................32, 33

*Bowman v. Home Life Ins. Co. of America,*
    260 F.2d 521 (3d Cir. 1958)..................................................................................33

*BP Amoco Chem. Co. v. Sun Oil Co.,*
    166 F.Supp.2d 984 (D. Del. 2001) .........................................................................20

*Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV,*
    229 F.3d 245, 250 (3d Cir. 2000)......................................................................12, 13

*Caleb v. CRST, Inc.,*
    2002 WL 1986499 *1 n.6 (3d Cir. Aug. 28, 2002)...................................................19

*Century Glove, Inc. v. First Am. Bank of N.Y.,*
    860 F.2d 94, 98 (3d Cir. 1988)..............................................................................13

*Court, Gould v. American Hawaiian Steamship Company,*
    55 F.R.D. 475 (D. Del. 1972)................................................................................29

*Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,*
    902 F.2d 174, 177 (2d Cir. 1990)..........................................................................22

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574, 587, 106 S.Ct. 1348 (1986)..............................................................22

*Finnegan Constr. Co. v. Robino-Ladd Co.,*
    354 A.2d 142 (Del. Super. Ct. 1976) ................................................................32, 33

*Gizzi v. Texaco, Inc., 437 F.2d 308 (3d Cir.),*
    cert. denied, 404 U.S. 829 (1971) ..........................................................................32

*Glick v. White Motor Co.,*
    458 F.2d 1287, 1291 (3rd Cir.1972) .......................................................................25

*Goenaga v. March of Dimes Birth Defects Found.,*
    51 F.3d 14, 18 (2d Cir. 1995)................................................................................22

_502808_5/

*Guyer v. Haveg Corp.,*
    205 A.2d 176, 180 (Del. Super. Ct. 1964),
    affd. 211 A.2d 910 (Del. 1965) .................................................................................32

*In re Ameriserve Food Distribution, Inc.,*
    315 B.R. 24, 32-33 (Bankr. D. Del. 2004) .............................................................19

*In re APF Co.,*
    308 B.R. 183, 188 (Bankr. D. Del. 2004) ...............................................................35

*In re Blatstein,*
    192 F.3d 88, 94 (3d Cir. 1999) ...............................................................................13

*In re Cendant Corp. Securities Litig.,*
    109 F. Supp.2d 225, 230 (D.N.J. 2000) .................................................................26

*In re General DataComm Industries, Inc.,*
    407 F.3d 616, 619 (3d Cir. 2005).............................................................................12

*In re Krystal Cadillac Oldsmobile GMC Truck, Inc.,*
    142 F. 3d 631, 635 (3d Cir. 1998)...........................................................................15

*In re Marvel Entm't Group, Inc.,*
    140 F.3d 463, 470 (3d Cir. 1998).............................................................................12

*In re Meyertech Corp.,*
    831 F.2d 410, 414 (3d  Cir. 1987)...........................................................................13

*In re Neshaminy Office Bldg. Assocs.,*
    81 B.R. 301, 302 (Bankr. E.D.Pa. 1987).................................................................13

*In re Valley Media,*
    288 B.R. 189, 192 (Bankr. D. Del. 2003) ...............................................................35

*Klein v. General Nutrition Companies, Inc.,*
    186 F.3d 338, 342 (3d Cir. 1999).............................................................................15

*Krauss v. State Farm Mutual Automobile Insr. Co.,*
    2004 WL 2830889 at *4 (Del. Super. Ct. 2004) .........................................26, 27, 28

*Lum v. Bank of America,*
    361 F.3d 217, 222 n.3 (3d Cir. 2004).......................................................................19

*Missouri Housing Dev. Comm'n v. Brice,*
    919 F.2d 1306, 1315 (8th Cir. 1990).................................................................26, 27

*Nemours and Co, v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.,*
    269 F.3d 187, 203 (3d Cir. 2003).............................................................................15

_502808_5/

*Official Committee v. Westmoreland County MH/MR.*,
    183 F.3d 273, 277 (3d Cir. 1999)..................................................13

*Pension Benefit Guaranty Corp. v. White Consolidated Industries*,
    998 F.2d 1192 (3d Cir. 1993)....................................................19

*Pesta v. Warren*,
    2004 WL 1172996 (Del. Super. Ct. May 13, 2004)................................25

*Pryor v. National Collegiate Athletic Assoc.*,
    288 F.3d 548, 560 (3d Cir. 2002)................................................18

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*,
    181 F.3d 410, 426 (3d Cir. 1999)...............................................19

*Schrob v. Catterson*,
    948 F.2d 1402, 1405 (3rd Cir. 1991) ...........................................21

*State Farm Mutual Automobile Insurance Co. v. Worthington*,
    405 F.2d 683, 686 (8th Cir.1968)...............................................25

*Theos & Sons, Inc. v. Mack Trucks, Inc.*,
    729 N.E.2d 1113 (Mass. 2000) .................................................34

*TWA Inc. Post Confirmation Estate v. Marsh USA, Inc.*
    *(In re TWA Inc. Post Confirmation Estate)*,
    305 B.R. 228, 232 (Bankr. D. Del. 2004) ......................................36

*United States Trustee v. Gryphon at the Stone Mansion, Inc.*,
    166 F.3d 552, 556 (3d Cir. 1999)...............................................12

*United States v. Wolfson*,
    294 F. Supp. 267, 273 (D. Del. 1968)..........................................19

*Universal Minerals, Inc. v. C.A. Hughes & Co.*,
    669 F.2d 98, 102 (3d Cir. 1981)................................................15

*Yellow Book USA, LP v. Dearworth*,
    2002 WL 31499361 (Del. Co. Pl. 2002) .....................................33, 34

## STATUTES

11 U.S.C. § 547......................................................................35

28 U.S.C. § 1291.....................................................................12

28 U.S.C. § 1292(b) .................................................................13

28 U.S.C. § 158(a)(1)................................................................12

_502808_5/

28 U.S.C. § 158(a)(3) ........................................................................................13

## RULES

Barry Russell, Bankruptcy Evidence Manual § 801.22 .......................................25

Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
   Federal Practice & Procedure § 3926.2...................................................12

Charles Alan Wright and Arthur R. Miller, et al.,
   Federal Practice and Procedure §§ 2722................................................26

Fed.R.Civ.P. 8 .................................................................................................20

John W. Strong, McCormick on Evidence §§ 254, 257 (5th ed.1999) ................25

Restatement 2d Agency § 267...........................................................................33

Restatement 2d Agency §§ 8, 8B, 27 (1957) ....................................................32

_502808_5/

## I.    **INTRODUCTION**

This consolidated appeal is from a December 3, 2004 bench ruling (the "Ruling") and a February 10, 2005 order (the "Order") of the United States Bankruptcy Court for the District of Delaware, the Honorable Peter J. Walsh presiding (the "Bankruptcy Court"). The Ruling and Order were entered in Adversary Proceeding number 04-52879 ("Proceeding"), in the bankruptcy case of NHI, Inc., pending at number 02-10651(PJW) ("Case"). By the Ruling and the Order, the Bankruptcy Court denied two motions to dismiss filed by FleetBoston Financial Corporation ("Fleet"), KMR Management Inc. ("KMR"), Robert Riesner ("Riesner"), and Waring S. Justis ("Justis" and collectively with Fleet, KMR and Riesner, the "Appellants").

Appellants' first motion to dismiss was filed in response to NHI, Inc.'s ("Appellee" or "NHI") First Amended Complaint deemed filed on July 8, 2004 (App. at A00078-A00118) ("Amended Complaint") and the Bankruptcy Court's denial of Appellants' motion to dismiss the First Amended Complaint (App. at A00208-A00211) forms the basis of Appellants' first Appeal ("First Appeal") filed on December 13, 2004 (App. at A00532-A00534). Appellants' second motion to dismiss was filed in response to NHI's Second Amended Complaint filed on December 10, 2004 (App. at A00470-A00518) ("Second Amended Complaint"). The Bankruptcy Court's denial of Appellants' motion to dismiss the Second Amended Complaint (App. at A00967-A00970), forms the basis of Appellant's the second appeal ("Second Appeal") filed on February 22, 2005 (App. at A00908-A00939).

1

## II.    **STATEMENT OF FACTS**

NHI manufactured homes. (Second Amended Complaint ¶8[1], App. at A00472.) In the early 1990s, NHI decided to expand its business into the manufacturing of lower-cost homes. (Second Amended Complaint ¶10 – 13, App. at A00472-A00473.) In expanding, NHI greatly increased its indebtedness to Mercantile Safe Deposit and Trust Company ("Mercantile"). (Second Amended Complaint ¶14, App. at A00473-A00474.) All obligations owed to Mercantile by NHI and its insiders and affiliates was cross collateralized. (Second Amended Complaint ¶14, App. at A00473-A00474.)

In August 2000, NHI learned that Mercantile was considering exercising its rights upon NHI's default and placing NHI into liquidation. (Second Amended Complaint ¶22, App. at A00475.) On or about October 6, 2000, on the threat of calling all of Mercantile's loans, Mercantile insisted that NHI retain a management consultant and strongly urged that NHI engage Appellants KMR, Riesner and Justis. (Second Amended Complaint ¶25, App. at A00476.) On or about October 19, 2000, NHI entered into a Consulting Agreement with Appellants KMR, Riesner and Justis (the "Consulting Agreement"). (Second Amended Complaint ¶27, App. at A00476.) KMR, Riesner and Justis acted as management consultants for NHI from October 19, 2000 through January, 2002. (Second Amended Complaint ¶58, App. at 00483.)

After assuming control of NHI, and unbeknownst to any of NHI's principals, KMR, Riesner and Justis allegedly embarked on a short-sighted and results-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their fiduciary duties and obligations of loyalty. (Second Amended Complaint

---

[1] The facts set forth in the Amended Complaint and Second Amended Complaint are summarized below and are accepted as true for the purposes of these appeals of the Bankruptcy Court's denial of Appellants' motions to dismiss. The facts, as set forth herein, do not constitute admissions by Appellants.

_502808_5/

¶32, App. at A00477-A00478.)   KMR, Riesner and Justis did not operate independently and for the benefit of NHI.  (Amended Complaint ¶33, App. at A00086.)  Instead, KMR, Riesner and Justis acted as Mercantile's agents.  (*e.g.* Amended Complaint ¶33, App. at A00086; Second Amended Complaint ¶¶33, 46, and 59, App. at A00477-A00495.) Specifically, NHI in its Amended Complaint alleged that:

> **KMR, Riesner and Justis did not operate independently and for the benefit of NHI.  Upon information and belief, KMR, Riesner and Justis served at the direction and pleasure of Mercantile.**   (Amended Complaint ¶33, App. at A00086) (emphasis added)

## A.   NHI Released all Claims against Mercantile and its Agents on February 26, 2002

NHI and the principals of NHI entered into an agreement with Mercantile on February 26, 2002 ("February 26, 2002 Agreement") in order to provide a mechanism to settle NHI's and its affiliates' and insiders' obligations to Mercantile and satisfy Mercantile's liens on the assets of NHI and its principals.  As a result of the execution of the February 26, 2002 Agreement, NHI released Mercantile and its agents from all liability. (Second Amended Complaint ¶63, App. at A00484.)

In the February 26, 2002 Agreement, NHI and its principals agreed that all action taken prior to the execution of the February 26, 2002 Agreement (following the termination of KMR's engagement by NHI) in relation to the loans, loan obligations, loan documents, collateral or administration thereof (as more particularly described in NHI's Second Amended Complaint) gave rise to no claims or defenses. *Id.*  They acknowledged and confirmed their obligations to Mercantile (February 26, 2002 Agreement at pp. 1 - 5 and Section 1, App. at A00233-A00238), agreed to liquidate Mercantile's collateral (February 26, 2002 Agreement Section 2, App. at A00238) and gave a broad general

3

release to Mercantile **and its agents** (February 26, 2002 Agreement Section 20, App. at

A00243-A00244) (emphasis added).   Section 20 of the February 26, 2002 Agreement

provides:

> IN ORDER TO INDUCE [MERCANTILE] TO ENTER INTO THIS AGREEMENT,
> [NHI] FOREVER RELEASES AND DISCHARGES **[MERCANTILE] AND
> [MERCANTILE'S] ... AGENTS** (COLLECTIVELY, THE "RELEASED PARTIES")
> FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, SUITS AND DAMAGES
> (INCLUDING CLAIMS FOR ATTORNEYS' FEES AND COSTS) WHICH [NHI] ...
> EVER HAD OR MAY NOW HAVE OF ANY KIND OR NATURE AGAINST ANY OF
> THE RELEAED PARTIES ARSING OUT OF OR RELATED IN ANY WAY TO ANY
> OF THE LOANS, THE LOAN DOCUMENTS, THE OBLIGATIONS OR THE
> COLLATERAL OR THE ADMINISTRATION THEREOF OR THIS AGREEMENT,
> WHETHER KNOW OR UNKNOWN, INCLUDING BUT NOT LIMITED TO ANY
> AND ALL CLAIMS BASED UPON OR RELYING ON ANY ALLEGATIONS OR
> ASSERTIONS OF DURESS, ILLEGALITY, UNCONSCIONABILITY, BAD FAITH,
> BREACH OF CONTRACT, REGULATORY VIOLATIONS, IMPROPER CONTROL
> OF THE COMPANIES OR THEIR AFFAIRS, NEGLIGENCE, MISCONDUCT, OR
> ANY OTHER TORT, CONTRACT OR REGULATORY CLAIM OF ANY KIND OR
> NATURE.   THIS RELEASE IS INTENDED TO BE FINAL, IRREVOCABLE AND
> IMMEDIATE AND IS NOT SUBJECT TO THE SATISFACTION OF ANY
> CONDITIONS OF ANY KIND.

(February 26, 2002 Agreement Section 20, App. at A00243-A00244) (emphasis added).

The February 26, 2002 Agreement and indeed the foregoing quoted release,

unambiguously represents NHI's intent to release Mercantile and its agents from all

claims, even those arising out of "assertions of duress, illegality, unconscionability, bad

faith, breach of contract, regulatory violations, improper control of the companies or their

affairs, negligence, misconduct, or any other tort, contract or regulatory claim of any kind

or nature." *Id.*

> **B.    In Order to Obtain Mercantile's Consent to NHI's Use of Cash
> Collateral, NHI Reaffirmed to the Bankruptcy Court that it had
> Released all Claims against Mercantile and its Agents, KMR, Riesner
> and Justis**

In seeking liquidity in the Case only days after they executed the February 26, 2002

Agreement, NHI and Mercantile entered into the Interim Agreement for Use of Cash

Collateral and Adequate Protection ("Cash Collateral Agreement").   (Consent Order dated

_502808_5/

April 2, 2002 ("Consent Order") and the attached Cash Collateral Agreement, App. at A00252-00270.)  The Cash Collateral Agreement, signed by NHI, presented to the Bankruptcy Court for approval through counsel for NHI, *and approved by the Bankruptcy Court*, contains several acknowledgements, representations and affirmations parallel to those set forth in the February 26, 2002 Agreement, including the following:

- NHI's pre-petition indebtedness to Mercantile "is secured by validly perfected first priority security interests, liens and mortgage liens." (Cash Collateral Agreement at p. 2, App. at A00255.)

- NHI's pre-petition indebtedness is "fully secured and constitutes the legal, valid and binding obligations of NHI, enforceable in accordance with the terms of all applicable documents."  (Cash Collateral Agreement at p. 3, App. at A00256.)

- **"no offsets, defenses or counterclaims to the [pre-petition indebtedness to Mercantile] exist, and no portion of the [pre-petition indebtedness] is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law."**  (Cash Collateral Agreement at p. 4, App. at A00257) (emphasis added).)

In addition, the February 26, 2002 Agreement was attached as Exhibit "B" to the Objection of the Official Committee of Unsecured Creditors to Debtor's Motion for, among other things, Order Approving Asset Sale and Bidding Procedures. (Objection to Asset Sale Motion, Exhibit B, App. at A00233.)

C.    <u>NHI Reaffirms its Release of all Claims against Mercantile and its Agents on October 30, 2003</u>

On October 30, 2003, NHI and the principals of NHI reaffirmed the February 26, 2002 Agreement post-petition and reiterated their release of Mercantile and its agents from all liability ("October 30, 2003 Agreement").    The October 30, 2003 Agreement specifically references the February 26, 2002 Agreement and provides that:

_502808_5/

each of the OBLIGORS hereby forever releases and discharges [Mercantile] and **[Mercantile's] ...agents** (collectively the "RELEASED PARTIES") from any and all claims, causes of action, suits and damages (including claims for attorneys' fees and costs), which any of the OBLIGORS, jointly or severally, ever had or may now have of any kind or nature against any of the RELEASED PARTIES arising out of or related in any way to any of the LOANS, the LOAN DOCUMENTS, the AGREEMENT, the OBLIGATIONS or the COLLATERAL or the administration thereof or this RELEASE AGREEMENT, whether known or unknown, including but not limited to any and all claims based upon or relying on any allegations or assertions of duress, illegality, unconscionability, bad faith, breach of contract, regulatory violations, improper control of the COMPANIES or their affairs, negligence, misconduct, or any other tort, contract or regulatory claim of any kind or nature.

(October 30, 2003 Agreement (emphasis added), App. at A00971-00978]).

### D.    NHI Files a Complaint, Amended Complaint and Second Amended Complaint Against Appellees Alleging Agency

After the Appellee released and reaffirmed its release of Mercantile and is agents three separate times, it filed the Proceeding alleging and admitting that Appellants were the agents of Mercantile in each of its Complaint (App. at A00001-A00038), Amended Complaint (App. at A00078-A00118) and Second Amended Complaint (App. at A00470-A00518).

Contrary to the terms and conditions of the February 26, 2002 Agreement, and the October 30, 2003 Agreement, confirming, representing and acknowledging that NHI holds no claims against Mercantile and no defenses to Mercantile's claims and liens, and NHI's representations to the Bankruptcy Court, NHI alleges in the Amended Complaint and Second Amended Complaint that at all times NHI held claims against Mercantile and bases its claims against Appellants on the premise that Appellants, acting as Mercantile's agent and in concert with and at the direction of Mercantile, improperly caused NHI to pay down its pre-petition indebtedness to Mercantile. "At all times relevant to the instant case, NHI had contractual rights under all loans with Mercantile, and was ready, willing and able to

institute, an actionable and meritorious lender liability claim against Mercantile." (Amended Complaint ¶ 117, App. at A00104; Second Amended Complaint ¶116, App. at A00496.)

## III.     STATEMENT OF THE CASE

### A.     Bankruptcy Court Procedural History

On March 1, 2002, NHI filed its Voluntary Petition for relief with the Bankruptcy Court under Chapter 11 of the United States Bankruptcy Code (App. at A00979-A00988).

On February 27, 2004, NHI filed a Complaint against Appellants commencing the Proceeding. (Complaint, App. at A00001-A00038.) The Complaint contained counts for breach of contract, breach of covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, fraud, waste of corporate assets, tortuous interference with contract and prospective business advantage, fraudulent transfers pursuant to federal and state law (Delaware and Maryland), fraudulent conveyances pursuant to federal and state law (Delaware and Maryland), and avoidance of preferences pursuant to section 547 of the Bankruptcy Code. All acts in the Complaint were alleged to have occurred from October 2000, when KMR entered into the Consulting Agreement with NHI, through January, 2002.

Appellant Fleet filed a motion to dismiss the original Complaint on June 1, 2004. (Fleet's Motion to Dismiss Complaint,[2] App. at A00039.) NHI responded to the Motion to Dismiss and attached a proposed Amended Complaint to the response. (Answer to Fleet's Motion to Dismiss, App. at A00119-A00207.) At the pretrial hearing on July 8, 2004, the

---

[2] The Complaint commencing the Proceeding was served upon Fleet before it was served upon the other defendants. Fleet was required to respond to the Complaint prior to the time any other party was required to respond. Fleet responded to the Complaint through its motion to dismiss. The issues raised in the motions to dismiss the Amended Complaint and Second Amended Complaint were not ripe for response by Fleet at that stage in the Proceeding.

parties stipulated that the Amended Complaint attached as an exhibit to NHI's answer to

Fleet's motion to dismiss would be deemed filed as of July 8, 2004.

### B.     Appellant's First Appeal (Civil Action No. 05-004)

NHI alleged throughout its Complaint and again through its Amended Complaint[3]

that Appellants acted as the agents of Mercantile.  However, NHI and others released

Mercantile and its agents through the February 26, 2002 Agreement, in the Cash Collateral

Agreement and Consent Order (Cash Collateral Agreement and Consent Order, App. at

A00252-A00270) and again through the October 30, 2003 Agreement.

Accordingly, on August 5, 2004, Appellants filed a motion to dismiss (A00208-

A00211) the Amended Complaint.  In their motion to dismiss, Appellants argued that NHI

admitted that Appellants were the agents of Mercantile.    NHI and others granted

Mercantile and its agents a release.  Accordingly, the February 26, 2002 Agreement and

release of Mercantile and its agents acted to release Appellants of all claims asserted in the

Amended Complaint.[4]

---

[3] *See* Addendum attached hereto, setting forth at length the numerous allegations, individually and
collectively, alleging or inferring an agency relationship between Mercantile, as agent, and KMR, Riesner
and Justis, as agents.  (App. at A00989-A01005.)

[4] In their memorandum of law in support of their motion to dismiss the Amended Complaint, Appellants
asserted the parallel argument that NHI is judicially estopped from now asserting any claims against
Mercantile's agents "arising out of or related in any way to any of the LOANS, the LOAN DOCUMENTS,
the AGREEMENT, the OBLIGATIONS or the COLLATERAL or the administration thereof or this
RELEASE AGREEMENT, whether known or unknown, including but not limited to any and all claims
based upon or relying on any allegations or assertions of duress, illegality, unconscionability, bad faith,
breach of contract, regulatory violations, improper control of the COMPANIES or their affairs, negligence,
misconduct, or any other tort, contract or regulatory claim of any kind or nature", having represented to the
Bankruptcy Court that it held no defenses to the claims of Mercantile and no claims against Mercantile.
(Memorandum of Law in Support of Appellants' Motion to Dismiss Amended Complaint (emphasis added)
App. at A00221-222.)  Contrary to the terms and conditions of the February 26, 2002 Agreement, and the
October 30, 2003 Agreement, confirming, representing and acknowledging that NHI holds no claims against
Mercantile and no defenses to Mercantile's claims and liens, and NHI's representations to the Bankruptcy
Court, NHI alleges in the Amended Complaint and Second Amended Complaint that at all times NHI held
claims against Mercantile and bases its claims against Appellants on the premise that Appellants, acting as
Mercantile's agent and in concert with and at the direction of Mercantile, improperly caused NHI to pay
down its pre-petition indebtedness to Mercantile.  "At all times relevant to the instant case, NHI had
contractual rights under all loans with Mercantile, and was ready, willing and able to institute, an actionable

_502808_5/

NHI filed an answering brief to the motion to dismiss wherein it repeated its allegations of the existence of an agency relationship between Appellants as agents and Mercantile as principal.  (NHI Answering Brief to the Motion to Dismiss at pp. 4-5, App. at A00293-A00313.)

On October 8, 2004, the Bankruptcy Court entered a letter on the docket, converting Appellants' motion to dismiss into a motion for summary judgment and directing that NHI file a supplemental brief to its answering brief.  The Bankruptcy Court's letter stated in part:

> I believe it is incumbent upon [NHI] to present facts which
> negate an agency relationship or otherwise show why the
> release provision does not apply to [Appellants].

(Bankruptcy Court Letter of October 8, 2004 at 3, App. at A00347.)

On October 29, 2004, NHI filed a Certification of Counsel ("Certification") with the Bankruptcy Court, requesting extensive discovery on the issue of agency, incredibly so that NHI could seek to disprove its very own allegations and admissions that Appellants acted as the agents of Mercantile, despite NHI's own numerous allegations in its Complaint, Amended Complaint and answering brief to the motion to dismiss that

---

and meritorious lender liability claim against Mercantile." (Amended Complaint ¶ 117, App. at A00104; Second Amended Complaint ¶116, App. at A00496.)  NHI did not assert that it holds claims against Mercantile that are the subject of the release; rather, NHI stated unequivocally that it holds no such claims. The Amended Complaint and Second Amended Complaint lead one to the inescapable conclusion that Appellants acted as agents for and in concert with Mercantile.  Consequently, it cannot be the case that NHI holds no claims against, or defenses to the claims asserted by, Mercantile, while at the same time holding claims against Appellants arising out of the same events.

_502808_5/

Appellants indeed acted as Mercantile's agents. (NHI Certification of Counsel, App. at A00348-A00354.)[5]

On December 3, 2004, the Bankruptcy Court conducted a status conference, during which it addressed the agency allegations and application of the release. The Bankruptcy Court found that, despite NHI's contention to the contrary, in fact it had filed pleadings with numerous allegations of agency and alleged agency very specifically in paragraph 33 of its Amended Complaint. (Transcript of December 3, 2004 Hearing at p. 4, App. at A00960.) After the Bankruptcy Court found that NHI had alleged agency in its pleadings, NHI stated upon further questioning by the Court that it would not be pursuing the issue of agency. (*Id.* at 5, App. at A00961.) The Bankruptcy Court ignored the issue raised by Appellants that such allegations constituted judicial admissions and could not simply be amended away.

Notwithstanding Appellants' protestations, the Bankruptcy Court entered the Ruling (i) denying Appellants' motion to dismiss and (ii) directing NHI to amend its Amended Complaint to remove all allegations of agency between Appellants and Mercantile. (*Id.* at 7, App. at A00963.) On December 13, 2004, Appellants filed their Notice of Appeal of the Ruling (App. at A00532-A00534) and Motion for Leave to Appeal (A00519-A00531.)

---

[5] On November 12, 2004, Appellants filed a motion to strike the Certification (App. A00355-A00366) and a memorandum of law in support thereof (App. at A00377-A00408) on the basis that the Certification was improper. On November 22, 2004, NHI filed an answer to Appellants' motion to strike certification of counsel (App. at A00409-A00414) and a memorandum of law in opposition to the motion to strike (App. at A00437-A00469). On November 30, 2004, Appellants filed a reply brief in response to NHI's answer to Appellants' motion to strike (App at A00415-A00436).

**C.**    **Appellant's Second Appeal (Civil Action No. 05-659)**

On December 10, 2004, NHI filed the Second Amended Complaint in which it only removed paragraph 33 of its Amended Complaint (App. at A00470-A00518). All other allegations remained the same. Appellants filed a motion to dismiss the Second Amended Complaint, because all the allegations of agency remained except for the most blatant and explicit allegation formerly contained in paragraph 33 of the Amended Complaint, and because the record in the Proceeding and Case includes Appellee's numerous admissions of the existence of the agency relationship between Mercantile with Appellants, as well as the numerous releases of Mercantile and its agents, including, without limitation, Appellants.

On February 10, 2005, the Bankruptcy Court denied Appellants' motion to dismiss the Second Amended Complaint (Order, App. at A00830) and Memorandum Opinion (App. at A00807-A00829). It is from the February 10, 2005 Order and Memorandum Opinion that Appellants filed their second Notice of Appeal (App. at A00908-A00939) and Motion for Leave to Appeal (App. at A00831-A00871). The two appeals were consolidated by order of this Court into Civil Action No. 05-004 on September 27, 2005.

For the reasons set forth below, the Bankruptcy Court erred in denying the Appellants' motions to dismiss the Amended Complaint and Second Amended Complaint, converting the Appellants' motion to dismiss the Amended Complaint into a motion for summary judgment, misapplying the dispositive motion standards, improperly directing NHI to remove its own allegations of agency from its pleading so as to allow it to proceed past the dispositive motion stage and misapplying the law with respect to the preference claims NHI asserted against Appellants.

11

IV.    **STATEMENT OF THE BASIS OF APPELLATE JURISDICTION**

The December 3, 2004 Ruling on which the First Appeal is based and the February

10, 2005 Order on which the Second Appeal is based are final orders of the Bankruptcy

Court. Therefore, this Court has jurisdiction over both appeals pursuant to 28 U.S.C. §

158(a)(1).

Section 158(a)(1) is silent as to the standard courts should apply in determining

when an order, judgment or decree is final. A number of courts have recognized that 28

U.S.C. § 1291, which provides the standard for appeals from district court orders, applies

to appeals from bankruptcy court orders as well. *In re General DataComm Industries,*

*Inc.*, 407 F.3d 616, 619 (3d Cir. 2005). However, Bankruptcy appeals under section 1291

warrant a broader concept of finality than other civil orders under the same section because

of the unique issues presented in a bankruptcy case. *Credit Suisse First Boston Corp. v.*

*Owens Corning*, No. 04-4080, slip op. at 17 (3d Cir. Aug. 15, 2005); *United States Trustee*

*v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999); *In re Marvel*

*Entm't Group, Inc.*, 140 F.3d 463, 470 (3d Cir. 1998); *see also Buncher Co. v. Official*

*Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir.

2000) (noting that a "relaxed standard" of finality applied, because of unique

considerations in bankruptcy cases); 16 Charles A. Wright, Arthur R. Miller & Edward H.

Cooper, *Federal Practice & Procedure* § 3926.2 at 274 (2d ed. 1996) (describing the

"Third Circuit's especially flexible approach to bankruptcy finality").

The Third Circuit has held that four factors are pertinent in establishing when to

apply a relaxed standard of finality in a bankruptcy case: (1) the impact on the assets of the

bankruptcy estate; (2) necessity for further fact-finding on remand; (3) the preclusive effect

of the decision on the merits of further litigation; and (4) the interest of judicial economy. *Buncher Co.*, 229 F.3d at 250; *see also Official Committee v. Westmoreland County MH/MR.*, 183 F.3d 273, 277 (3d Cir. 1999). The most important of these factors is the impact on the bankruptcy estate. *In re Blatstein*, 192 F.3d 88, 94 (3d Cir. 1999); *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir. 1987).

Here, delaying resolution of the errors made by the Bankruptcy Court will delay the conclusion of the Proceeding, thereby wasting the bankruptcy estate's resources and the Bankruptcy Court's time. Moreover, each of the Ruling and Order are final orders, because should the Court find that the Bankruptcy Court erred and direct the Bankruptcy Court to grant Appellants' motions to dismiss, or either of them, the Proceeding will terminate. There is no need for further fact-finding of the issues on remand, and the termination of the proceeding will move the Appellee's bankruptcy case toward a more expedited conclusion, which is in the interest of judicial economy. [6]

---

[6] Nevertheless, should the Court determine that the Ruling and Order are interlocutory orders within the meaning of 28 U.S.C. § 158(a)(3), this Court has jurisdiction, at the Court's discretion, to hear these appeals. 28 U.S.C. § 158(a)(3); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 98 (3d Cir. 1988); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 155 (D.N.J. 2005). Section 158(a)(3) is also silent as to the standard courts should apply in determining when an interlocutory appeal should be granted. Faced with this issue, a number of courts have recognized that 28 U.S.C. § 1292(b), providing the standard for such appeals from district court interlocutory orders, applies to appeals from bankruptcy courts as well. *See, e.g., In re Neshaminy Office Bldg. Assocs.*, 81 B.R. 301, 302 (Bankr. E.D.Pa. 1987) (citing *In re Bertoli*, 58 B.R. 992, 995 (Bankr. D.N.J. 1986); *In re Johns-Manville Corporation*, 39 B.R. 234, 236 (Bankr. S.D.N.Y. 1984)). The general rule that applies here, as with § 1292(b), is that interlocutory appeals are allowed when three requirements are satisfied: (1) a controlling question of law is involved; (2) the question is one where there is substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the ultimate termination of the litigation. *See* 10 Collier on Bankruptcy P 8003.03 (15th rev. ed. 2004).

    In this case, all three standards are met. First, the Ruling and Order involve important and controlling questions of law regarding application of the standard of review of dispositive motions and judicial admissions. Moreover, the issue of proper notice pleading for a preference claim is also a controlling question of law. Second, there are inconsistencies in how the courts in this District, and the Bankruptcy Court in particular, handle preference actions. Third, an immediate appeal will advance the termination of the Proceeding and foster judicial efficiency. These issues, therefore, are suitable for interlocutory appeal and this Court should exercise its discretion in granting leave to appeal. Finally, Appellants believe that

13

## V.    ISSUES PRESENTED ON APPEAL

1.      Whether the Bankruptcy Court erred by converting Appellants' motion to dismiss the Amended Complaint to a motion for summary judgment?

2.      Whether the Bankruptcy Court erred in failing to dispose of Appellee's case, because the Bankruptcy Court failed to correctly apply both the standard of review on a motion to dismiss and the standard of review on a motion for summary judgment where the material fact of agency is not at issue due to prior admissions and a Bankruptcy Court finding of agency that Appellee admitted the existence of an agency relationship between Mercantile and Appellants?

3.      Whether the Bankruptcy Court erred in denying Appellants' motion to dismiss the Amended Complaint and Second Amended Complaint, because the Bankruptcy Court ignored Appellee's judicial admissions that an agency relationship between Mercantile, as principal, and Appellants, as agents, existed?

4.      Whether the Bankruptcy Court erred by denying Appellants' motion to dismiss the Second Amended Complaint, because the mere omission of paragraph 33 of the Amended Complaint did not eliminate Appellee's allegations and admissions of agency?

5.      Whether the Bankruptcy Court erred by permitting Appellee's preference claim to proceed against Riesner and Justis despite deficiencies in the prima facie allegations?

---

leave has been granted, even if only implicitly, by virtue of the entry of the briefing scheduling order and order consolidating these appeals, thereby rendering moot any argument to the contrary.

_502808_5/

## VI.    **STANDARD OF APPELLATE REVIEW**

When reviewing the decision of a Bankruptcy Court in order to determine whether the Bankruptcy Court abused its discretion, the standard of review for findings of fact is clearly erroneous, while the standard of review for conclusions of law is *de novo*. *E.I. DuPont de Nemours and Co, v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 203 (3d Cir. 2003); *Klein v. General Nutrition Companies, Inc.*, 186 F.3d 338, 342 (3d Cir. 1999). Where, as here, this Court sits as an appellate tribunal reviewing an order or ruling entered by a Bankruptcy Court, the standards of review applied are identical to those applied by a circuit court in an appeal from a trial court's order. *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F. 3d 631, 635 (3d Cir. 1998) (district court and circuit court "stand in the [same] shoes " when undertaking appellate review of a bankruptcy court order); *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981).

## VII.    **SUMMARY OF ARGUMENT**

For the following reasons, the Court should reverse the Ruling thereby rendering moot the appeal of the Order entered by the Bankruptcy Court, or in the alternative, the Court should reverse the Order on the following grounds:

1.     The Bankruptcy Court's ruling converting Appellants' motion to dismiss Appellee's Amended Complaint to a motion for summary judgment was erroneous, because the February 26, 2002 release referenced in and attached to the motion to dismiss was part of the judicial record in the Case and was not outside the record before the Bankruptcy Court. Accordingly, it was improper to convert Appellants' motion to dismiss to a motion for summary judgment.

_502808_5/

2.    The Bankruptcy Court's failure to dispose of the Proceeding was erroneous, because the Bankruptcy Court failed to apply the correct legal standard of review on both a motion to dismiss and a motion for summary judgment and grant either dismissal or summary judgment where the material fact of agency is not at issue due to prior admissions and a previous Bankruptcy Court finding that Appellee admitted the existence of an agency relationship between Mercantile and Appellants.

3.    The Bankruptcy Court's denial of Appellants' motions to dismiss Appellee's Amended Complaint and Second Amended Complaint was erroneous, because the Bankruptcy Court ignored the judicial admissions of agency in NHI's Complaint, Amended Complaint and prior moving papers[7] in order to preserve NHI's claims and despite NHI having admitted that Appellants acted as Mercantile's agents.    The Bankruptcy Court's acknowledgment of the admission of agency and the unambiguous terms of NHI's release of Mercantile and its agents should have compelled dismissal of the Proceeding.    The Bankruptcy Court's decision permits NHI to escape its own repeated judicial admissions of agency.

4.    The Bankruptcy Court's finding that the allegations in Appellee's Second Amended Complaint did not constitute agency allegations under the well established law of agency and/or apparent agency was erroneous, because throughout the Second Amended Complaint and record before the Court, NHI alleges that it was under the belief that Appellants acted at Mercantile's direction.    Despite numerous and repeated factual allegations of agency and/or apparent agency by NHI in its Second Amended Complaint,

---

[7]    Although the Bankruptcy Court gave NHI an apparent opportunity to correct its pleading by removing all allegations of agency, NHI did not take advantage of the opportunity.    Instead, NHI continued to allege agency in its Second Amended Complaint.

16                                    _502808_5/

the Bankruptcy Court nonetheless did not find that the Second Amended Complaint alleged agency.

5.    The Bankruptcy Court erroneously applied the law as to the preference claims, because the Bankruptcy Court did not require NHI to plead with requisite specificity as to the identity of the transferees of the alleged preferences. Rather, the Bankruptcy Court stated that it could infer that Riesner and Justis were transferees. Accordingly, it was improper to deny Appellants' motion to dismiss as to the preference claims.

## VIII.  **ARGUMENT**

### A.    **The Bankruptcy Court Erred by Converting Appellants' Motion to Dismiss the Amended Complaint to a Motion for Summary Judgment.**

The Bankruptcy Court erred when it converted Appellants' motion to dismiss the Amended Complaint to a motion for summary judgment, because Appellants' motion to dismiss did not supplement the record before the Bankruptcy Court. The February 26, 2002 Agreement and release incorporated into the Cash Collateral Agreement and Consent Order entered in the Case and attached as an exhibit to the Objection to Asset Sale Motion was attached as Exhibit A to Appellants' Memorandum of Law in Support of Appellants' Motion to Dismiss Appellee's First Amended Complaint. (Memorandum of Law in Support of Appellants' Motion to Dismiss Appellee's First Amended Complaint, Exhibit A, App. at A00233-A00250, Consent Order, App. at A00252-A00253.)[8]

The Cash Collateral Agreement and Consent Order were presented to the Bankruptcy Court for approval at the commencement of the Case. Consideration and

---

[8] Although the February 26, 2002 Agreement is referenced in the Consent Order (App. at A00252-A00253) and was attached as Exhibit A to the Consent Order entered by the Bankruptcy Court, it was not scanned and attached to the Consent Order on the docket.

approval of the Cash Collateral Agreement and Consent Order were necessary to the administration of the Case. Furthermore, the February 26, 2002 Agreement incorporated into the Cash Collateral Agreement and Consent Order, was or should have been specifically highlighted for the Bankruptcy Court's consideration as required by Del. Bankr. L.R. 4001-2(a)(i)(B). The February 26, 2002 Agreement and release is, therefore, part of the record in Appellee's Case.

A court may take judicial notice of, and consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ." *See Pryor v. National Collegiate Athletic Assoc.*, 288 F.3d 548, 560 (3d Cir. 2002) (citations omitted). Documents referred to in the plaintiff's complaint that are "central to the claim" are considered part of the pleadings and their consideration by the Court will not convert a motion to dismiss into a motion for summary judgment. *Id.*

Appellee alleges in paragraph 64 of the Amended Complaint and in paragraph 63 of the Second Amended Complaint that it granted Mercantile a release. (Amended Complaint ¶ 64, App. at A00092; Second Amended Complaint ¶ 63, App. at A00484.) Consequently, the Bankruptcy Court should have taken judicial notice of the February 26, 2002 Agreement and the release contained therein in its consideration of Appellants' motion to dismiss.

In *In re Ameriserve Food Distribution, Inc.*, the Bankruptcy Court for the District of Delaware stated that it is appropriate to take judicial notice of debtor's bankruptcy case as a whole when reviewing the elements of a preferential transfer in an adversary proceeding. The Court stated:

_502808_5/

> [a] bankruptcy case is unique because it is composed of
> many individual parts. Within the debtor's case itself, the
> bankruptcy judge considers many matters which affect the
> amount of the dividend to unsecured creditors.... It would be
> impossible for bankruptcy judges to ignore all the other
> decisions they have made in a bankruptcy case and related
> proceedings when deciding the matter before them....
> Bankruptcy judges may be the only individuals involved in a
> bankruptcy case with an overall view of the case."

*In re Ameriserve Food Distribution, Inc.,* 315 B.R. 24, 32-33 (Bankr. D. Del. 2004); *see*

*also* Collier on Bankruptcy, ¶301.03. *United States v. Wolfson,* 294 F. Supp. 267, 273 (D.

Del. 1968) (where documents and testimony are filed with the Court, they become a matter

of public record); *Lum v. Bank of America,* 361 F.3d 217, 222 n.3 (3d Cir. 2004) (for the

purposes of a motion to dismiss, a court can generally consider matters of public record,

allegations in the complaint, exhibits to the complaint, and documents that form the basis

of the claim); *Pension Benefit Guaranty Corp. v. White Consolidated Industries,* 998 F.2d

1192 (3d Cir. 1993) (where the public has access to documents filed with the court, they

are generally considered to be public records); *see also Caleb v. CRST, Inc.,* 2002 WL

1986499 *1 n.6 (3d Cir. Aug. 28, 2002), *citing S. Cross Overseas Agencies, Inc. v. Wah

Kwong Shipping Group Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999) (on a motion to dismiss the

court may look to matters of public record, including the judgments and orders entered in

an underlying action).

Therefore, Appellants' reference to the February 26, 2002 Agreement and releases,

and attachment of the February 26, 2002 Agreement and release to the motion to dismiss

the Amended Complaint, should not have had the effect of converting the motion to

dismiss the Amended Complaint into a motion for summary judgment. The Bankruptcy

Court erred by converting the motion to dismiss to one for summary judgment.

_502808_5/

**B.    The Bankruptcy Court Erred in Failing to Dispose of the Proceeding, Because the Bankruptcy Court Failed to Correctly Apply Both the Standard of Review on a Motion to Dismiss and the Standard of Review on a Motion for Summary Judgment Where the Material Fact of Agency is not at Issue Due to Prior Admissions and a Previous Court Finding of Agency by the Bankruptcy Court.**

The Bankruptcy Court erred in its application of the standard of review for both a motion to dismiss and motion for summary judgment. Both standards begin with the general proposition that all well-pled facts in the pleadings must be accepted as true. A motion to dismiss limits the inquiry to the pleadings and prior record before the Court, while a motion for summary judgment allows the Court to expand the inquiry beyond the initial pleadings and record to include matters discovered by the parties. The material fact of agency was pled and admitted by the Appellee throughout its initial pleadings. The Bankruptcy Court specifically found agency to be a well-pled fact. (Transcript of December 3, 2004 Hearing at p. 4., App. at 00960.) The Court should have taken judicial notice of the February 26, 2002 Agreement and release.

### 1.    Motion to Dismiss Standard

The standard of review for a motion to dismiss – take all well-pled allegations and all reasonable inferences therefrom in the light most favorable to the non-moving party – permits a court to expand upon the facts alleged in compliance with notice pleading standards under Fed.R.Civ.P. 8, made applicable hereto through Fed.R.Bankr.P. 7008. *See BP Amoco Chem. Co. v. Sun Oil Co.*, 166 F.Supp.2d 984 (D. Del. 2001) ("in considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to F.R.C. P. 12(b)(6), the Court must accept as true all of the allegations pled in the complaint.") However, the standard of review does not permit the Court to reshape the

pleading by eliminating facts admitted by the non-moving party. Such application of the standard is antithetical to notice pleading.

The Bankruptcy Court initially found that Appellee asserted numerous allegations of agency in its pleading. (Bankruptcy Court letter of October 8, 2004 at 2, App. at A00346.) As the Bankruptcy Court concluded,

> While most of those allegations do not necessarily prove an agency relationship, the complaint is more pointed in paragraph 33 which alleges that [Appellants] "served at the direction and pleasure of Mercantile." (Doc. # 17, ¶ 33). This allegation must be accepted as true. See Schrob v. Catterson, 948 F.2d 1402, 1405 (3rd Cir. 1991). In its answering brief [Appellee] likewise states that [Appellants] "served and [sic] the direction and pleasure of Mercantile." (Doc. #29, p.5). This sure sounds like an agency relationship to me.

(*Id.* at 2-3, App. at A00346-A00347.)

The allegations in NHI's Amended Complaint are to be accepted as true, including especially the allegations in paragraph 33 of the Amended Complaint, where Appellee alleged that Appellants "served at the direction and pleasure of Mercantile." The Bankruptcy Court should have taken judicial notice of the release and concluded the claims asserted were released. That should have been the end of the inquiry and the Amended Complaint dismissed. Notwithstanding the result compelled by Appellee's admission that Appellants acted as Mercantile's agents and the releases in the record before the Bankruptcy Court, the Bankruptcy Court refused to accept the clear and well-pled facts as true. To the contrary, the Bankruptcy Court invited Appellee to supplement its response to the motion to dismiss to negate its very own, well-pled facts. The Bankruptcy Court's invitation to Appellee to supplement its response was a misapplication of the standard of review on a motion to dismiss.

_502808_5/

Furthermore, the Bankruptcy Court compounded its error by treating the motion to dismiss as a motion for summary judgment and opening an avenue to permit further briefing by Appellee to negate its own allegations of agency. The action of the Bankruptcy Court in converting the motion to dismiss into one for summary judgment created a most interesting situation. As discussed more fully below, in order to save its claim from dismissal on summary judgment, the Appellee was forced to argue against its own well-pled allegations of agency, an absurd result. Based on the pleadings, the Bankruptcy Court concluded that Appellee alleged agency. Expanding the inquiry beyond the pleadings and record, as if considering a motion for summary judgment, does not change the result; the Proceeding should have been dismissed.

### 2.    Motion for Summary Judgment Standard

When reviewing a summary judgment motion and determining whether there are issues of material fact and if a party is entitled to judgment as a matter of law, the Bankruptcy Court should make all reasonable inferences, and resolve any ambiguities, in favor of the party against whom summary judgment is sought. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990). When applying this standard, as with the standard applicable to motions to dismiss, a court should expand upon the facts. *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) (all ambiguities and inferences drawn from the underlying facts must be resolved in the light most favorable to the non-moving party).

_502808_5/

In response to the Bankruptcy Court's invitation for further briefing, Appellee filed the Certification, requesting discovery in order to refute its own allegations and admissions of agency.[9]  (App. at A00348-A00354.)  Appellee preliminarily attempted to negate its own allegations of agency between Mercantile, as principal, and Appellants, as agents, through the Affidavit of John M. Mervine, Jr. ("Affidavit") attached to the Memorandum. (Affidavit at App. A00464-A00469.)  In his Affidavit, Mr. Mervine testifies, "[i]t almost appeared to me that [Appellants]…were simply doing what Mercantile wanted them to do…."  (Affidavit at ¶7, App. at A00464.)  Interestingly, rather than disproving its own admissions, the Affidavit mounted support for NHI's admissions and allegations that Appellants acted at Mercantile's direction, as its agents.

In order to resolve Appellants' dispositive motion pending before the Bankruptcy Court and to quell its frustration with Appellee's position on the existence of an agency relationship, the Bankruptcy Court conducted a hearing on December 3, 2004.  During the colloquy, the Bankruptcy Court further expanded on its prior finding on the issue of agency, by stating:

> Let me put it succinctly.  And I tried to be polite in my [October 8, 2004] letter where I said - - quoted from paragraph 33 of the complaint, and I said this sure sounds like an agency relationship to me.  Let me put it bluntly.  I conclude that that's an assertion of an agency relationship.

(Transcript of Hearing of December 3, 2004 at 4, App. at A00960.)  The Court then directed the Appellee to remove its agency allegations and file another amended complaint. (Transcript of Hearing of December 3, 2004 at 7, App. at A00963.)

---

[9] The Appellee requested discovery presumably under 56(f), although the Appellee's Certification did not state under what rule it was seeking authority to undertake targeted discovery on the issue of agency. Appellants filed a motion to strike the Certification (App. at A00355-A00376), to which Appellee filed an objection and supporting memorandum of law ("Memorandum") (App. at A00437-A00469).

The Bankruptcy Court erred in its application of the summary judgment standard. It should have taken notice of the releases in the record, accepted Appellee's admissions and expanded upon all of the facts alleged. Instead, the Bankruptcy Court actually created its own factual conflict and excluded unambiguous allegations and admissions in drawing inferences. In order to resolve the Court-created factual conflict, the Bankruptcy Court directed Appellee to withdraw its well-pled agency allegations and admissions. Although the Bankruptcy Court was required to accept as true and uncontroverted the agency allegations/admissions, it instead ordered Appellee to recast its claims and omit its agency admissions in order to permit the Proceeding to move forward. This had the effect of redacting a well-pled fact instead of expanding upon all well-pled facts as summary judgment consideration requires.

The Court ordered redaction of the agency admission occurred after the Bankruptcy Court concluded that the Amended Complaint alleged an agency relationship with Mercantile, as principal, and Appellants, as agents and after the Bankruptcy Court further concluded that such agents benefited from the release of Mercantile and its agents. Having reached such conclusions, the Bankruptcy Court was compelled to accept such allegations as true, defer to Appellee's judicial admissions and not draw any inferences from the unambiguous allegations/admissions set forth in the Amended Complaint or Certification. The Bankruptcy Court's application of the standard of review on a motion for summary judgment was erroneous.

Applying the standards on a motion to dismiss and for summary judgment, the Bankruptcy Court certainly should not have ordered that the pleadings be recast. The Bankruptcy Court should have done nothing but grant dismissal or summary judgment,

based on Appellee's repeated agency allegations and admissions and applied its release of Mercantile and its agents to dismiss the Amended Complaint or grant summary judgment on the Amended Complaint in favor of Appellants.

> **C.    The Bankruptcy Court Erred in Denying Appellants' Motion to Dismiss the Amended Complaint and Second Amended Complaint, Because the Bankruptcy Court Ignored Appellee's Judicial Admissions that an Agency Relationship Existed Between Mercantile, as Principal, and Appellants, as Agents.**

The Bankruptcy Court erred by overlooking Appellee's judicial admissions of agency and assisting Appellee in maintaining its Proceeding against Appellants by directing a further amendment of the Amended Complaint. The Bankruptcy Court found and determined that Appellee admitted in its Amended Complaint and answering brief that Appellants acted as Mercantile's agents. Appellee cannot negate or escape this admission, or the result that the action be dismissed by virtue of the releases granted to Mercantile and its agents.

A judicial admission is a formal statement by a party in the course of judicial proceedings, which removes an admitted fact from the field of controversy. *Pesta v. Warren,* 2004 WL 1172996 (Del. Super. Ct. May 13, 2004). *See* 2 John W. Strong, McCormick on Evidence §§ 254, 257 (5th ed.1999) (effective pleadings in a case constitute binding and conclusive judicial admissions within such case); Barry Russell, Bankruptcy Evidence Manual § 801.22 at 884 (2002 ed.2001); *Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3rd Cir.1972) *citing State Farm Mutual Automobile Insurance Co. v. Worthington,* 405 F.2d 683, 686 (8th Cir.1968) (judicial admissions are binding for the purpose of the case in which the admission is made including appeals). Facts asserted in a pleading are considered "judicial admissions" and bind the party asserting the facts. *Glick v. White Motor Co.,* 458 F.2d 1287 (3d Cir. 1972) (where a party offers deliberate, clear

and unequivocal facts in a complaint, those assertions are binding on the party.); *In re Cendant Corp. Securities Litig.,* 109 F. Supp.2d 225, 230 (D.N.J. 2000); *Krauss v. State Farm Mutual Automobile Insr. Co.,* 2004 WL 2830889 at *4 (Del. Super. Ct. 2004); 10A Charles Alan Wright and Arthur R. Miller, *et al.*, Federal Practice and Procedure §§ 2722 and 2723 at 382 (3d ed. 1998) ("Wright & Miller").    Delaware courts have noted that "[t]he determination of whether a party's statement is sufficiently unequivocal to be a judicial admission is a question of law...." *Krauss,* 2004 WL 2830889 at * 4, *citing* 29A Am. Jur. 2d, Evidence § 770 (1994).

> Let me put it succinctly. And I tried to be polite in my [October 8, 2004] letter where I said - - quoted from paragraph 33 of the complaint, and I said this sure sounds like an agency relationship to me. Let me put it bluntly. I conclude that that's an assertion of an agency relationship.

(Transcript of Hearing of December 3, 2004 at 4, App. at A00960.)

Allegations in pleadings are to be accorded great weight.    "[E]ven if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." *Missouri Housing Dev. Comm'n v. Brice,* 919 F.2d 1306, 1315 (8th Cir. 1990).    In *Missouri Housing Dev. Comm'n,* the court denied the defendants the ability to amend their answer and upheld plaintiff's motion for summary judgment, because pursuant to Rule 15(a) an amendment to an answer "clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a result, would have the effect of prejudicing another party to the action." (*Id.* at 1316 quoting 6 Wright & Miller § 1487 at 623 (2d ed. 1990)). As the Court further stated: "if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court

_502808_5/

may deem it prejudicial." *Id.* Here, the Bankruptcy Court directed Appellee to change its theory of the case in its own attempt to negate Appellee's admissions.

At the very heart of NHI's Amended Complaint is the claim that Appellants acted as agents for Mercantile in the collection of its pre-petition claims. The Bankruptcy Court unambiguously concluded that Appellee alleged such an agency relationship. Because Appellee and others granted broad releases in favor of Mercantile and its agents, Appellee pled itself out of court by repeatedly admitting that Appellants acted as Mercantile's agents.

In 2004, the Superior Court for the State of Delaware considered the same issue and found that a fact alleged by one plaintiff that tended to negate a theory of liability pled by the other plaintiff was a judicial admission binding both plaintiffs. In the *Krauss* case, two plaintiffs filed a joint complaint arising from an automobile accident in which both were injured while riding in the same automobile. In the complaint, one plaintiff, Linehan, alleged that she was a member of the second plaintiff's household. This created a problem for the second plaintiff, Krauss, because the assertion that Linehan was a member of Krauss' household meant that Krauss was prohibited by law from receiving certain insurance benefits he was requesting in the complaint. The defendant filed a motion to dismiss on the basis that Linehan's judicial admission, that she was a member of Krauss' household, required dismissal of Krauss' claim. The *Krauss* Court reasoned that the judicial admission was included in the joint complaint as a conscious decision made in consultation with plaintiffs' counsel, as part of tactical maneuvers to force the court to consider various legal theories. *Krauss*, 2004 WL 2830889 at *6. Accordingly, the court held that the plaintiffs should be bound by their averments and allowing the plaintiffs to

amend their complaint would permit them to abuse the pleading process, plead a set of contradictory facts and manipulate the course of litigation. *Id.* at *6-7. "A party is bound by what it states in its pleadings." *Id.* at *6 (citations omitted).

Defendant in *Krauss* further asked the court to deny any motion for leave to amend the complaint if the court were to find that Krauss' claim was dismissed due to Linehan's judicial admission. Linehan withdrew her claim and Krauss sought to withdraw the allegations regarding Linehan being a member of Krauss' household. The Court held that Krauss' claim must be dismissed based on Linehan's judicial admission contained in the joint complaint, notwithstanding her attempted withdrawal, and further, Krauss would not be allowed leave to amend to assert "contradictory rather than supplementary facts." *Id.* As the court stated:

> **In a cause of action, pleadings are not mere ordinary admissions but are considered "judicial admissions."** A judicial admission is a formal statement by a party or his or her attorney, in the course of judicial proceedings, which removes an admitted fact from the field of controversy. Judicial admissions are recognized in Delaware. Wigmore states that "a party may at any and all times invoke the language of his opponent's pleading on that particular issue as rendering certain facts indisputable." Wigmore explains: **'judicial admissions ... are not a means of evidence, but a waiver of all controversy (so far as the opponent may desire to take advantage of them) and therefore a limitation of the issues. Neither party may dispute beyond these limits. Thus, any reference [to the judicial admission is] an invocation of the right to confine the issues and to insist on treating as established the facts admitted in the pleadings.**

*Id.* at *4 (footnotes omitted; citations omitted) (emphasis added). As the court further stated in denying Krauss leave to amend:

> Allowing Plaintiffs to amend their complaint to aver contradictory facts, as opposed to averring a newly discovered fact or an alternative theory of the case, would be

an attempt to "manipulate the course of litigation." Superior Court Civil Rule 8(e)(2) permits a party to set forth alternative theories of liability or defenses; however, **pleading contradictory facts when the legal theory supported by the original facts is discounted on a motion to dismiss or motion for summary judgment would, to paraphrase the Court in *Gould*, undercut the finality of those motions.** This Court will not grant leave for Krauss to amend his complaint in light of the withdrawal of Linehan's PIP claim because Krauss and Linehan tactically chose to file a joint complaint and therefore each is bound by the other's averments.

*Id.* at *7 (footnotes omitted; citations omitted) (emphasis added). In the instant case, the Bankruptcy Court's denial of the motions to dismiss are directly contrary to he standards and rationale espoused by the *Krauss* Court.

In an earlier decision by this Court, *Gould v. American Hawaiian Steamship Company*, 55 F.R.D. 475 (D. Del. 1972), the Court found that allowing a defendant to amend a complaint would not be allowed after briefing had been completed on two summary judgment motions and extensive discovery had been conducted, because "[h]aving seen one legal theory rejected by this Court these defendants are attempting to alter their factual stance to support an alternative legal theory." *Id.* at 477. In the *Gould* case, defendants requested leave to file an amended answer two years after making certain admissions in the original answer on the grounds that defendants had a lack of recollection regarding the matters admitted in the original answer. This Court took the position that it would not allow a party using Rule 15 of the Federal Rules of Civil Procedure to take "diverse and, in fact, conflicting postures on the facts to facilitate multiple and contradictory defenses. The summary judgment motion would be a non-productive tool were such practices permitted." *Id.* Likewise, whether at Appellee's request or the Bankruptcy Court's direction, Appellee should not benefit from a change in the course it

charted in this Proceeding by craftily alleging facts amounting to admissions of Appellants' agency.

The case *sub judice* is no different than *Krauss or Gould.* In *Krauss and Gould,* the plaintiffs pled themselves out of court. That is what should have happened here. The Appellee pled a set of facts admitting agency and the existence of the releases should have put the Appellee out of court with no ability further to amend its pleading, let alone an instruction to do so by the Bankruptcy Court. Instead, the Bankruptcy Court proactively assisted Appellee in order to sustain its claims by directing it to remove the agency allegations from its Amended Complaint.

As the Bankruptcy Court stated in it's February 11, 2005 Memorandum Opinion:

> [t]hus if reading NHI's pleadings in the light most favorable to it leads to the inescapable conclusion that [Appellants] were Mercantile's agents, [Appellants] would be covered by the actions and this action should be dismissed.

(Memorandum Opinion, p. 7, App. at A00813). Appellants' motion to dismiss the Amended Complaint based on release, therefore, should have been granted by the Bankruptcy Court. No matter how many times Appellee amends the Amended Complaint, it cannot escape or negate its admissions and the resultant dismissal of its claims necessitated by the releases. The Bankruptcy Court erred in its Ruling by suggesting that Appellee could negate its admissions through an amended complaint or supplemental response. Appellee cannot escape or negate its admissions and the Bankruptcy Court should have accepted such admissions as true and dismissed the Amended Complaint and Second Amended Complaint.

**D.    The Bankruptcy Court Erred by Denying Appellants' Motion to Dismiss the Second Amended Complaint Because the Mere Omission of Paragraph 33 of the Amended Complaint did not Eliminate Appellee's Allegations of Agency.**

The Bankruptcy Court erroneously denied Appellants' motion to dismiss the Second Amended Complaint, because the remaining allegations comprising the Second Amended Complaint and the record before the Bankruptcy Court still amount to allegations and admissions of agency.    Consequently, the Second Amended Complaint should likewise have been dismissed as a result of the application of the February 26, 2002 Agreement and release.

In looking at the facts in the Second Amended Complaint, the Bankruptcy Court stated that the "plain language of the allegations in the Second Amended Complaint does not support the conclusion that Mercantile in any way controlled Defendants or that any party expressly or impliedly consented to an agency relationship."    (Memorandum Opinion, p. 7, App. at A00927.)  In the Bankruptcy Court's view, after the forced removal of paragraph 33 of the Amended Complaint, the allegations did not reach the traditional definition of actual agency where control or consent is necessary.[10]   The Bankruptcy Court no longer saw agency in the allegations without the language "served at the direction and pleasure of Mercantile" in paragraph 33 of the Amended Complaint.    (Memorandum Opinion p. 17, App. at A00823.)   The Bankruptcy Court's conclusion is erroneous.

First, in construing the allegations against this actual agency standard, the Bankruptcy Court ignored Appellee's admissions in the record that Appellants acted as

---

[10] The Bankruptcy Court's denial of the motion to dismiss the Second Amended Complaint is inconsistent with the Bankruptcy Court's finding with respect to the Amended Complaint that it contained numerous allegations of agency.  The mere removal of paragraph 33 did not fully "cure" Appellee's pleading, especially with the record of apparent agency being supplemented by Appellee.  (Affidavit at ¶ 7, App. at A00464.)

_502808_5/

Mercantile's apparent agents. (*See, e.g.* Affidavit at ¶ 7, App. at A00464.) The allegations of apparent agency in the record (Affidavit at ¶ 7, App. at A00464; Addendum Compilation , App. at A00989-A01005] and in the Second Amended Complaint lead to a sole reasonable inference and demand dismissal.

Second, in subsequently determining whether the allegations in the Second Amended Complaint satisfied the elements of agency, the Bankruptcy Court did not fully analyze what constitutes agency under Delaware law. The application of the facts to the elements of apparent agency under Delaware law would have led to the irrefutable conclusion that the allegations satisfy the elements.

The law of apparent agency is well established in Delaware. The concept of apparent agency or authority focuses not upon the actual relation of a principal and agent, but the apparent relationship. *Billops v. Magness Constr. Co.,* 391 A.2d 196 (Del. 1978). Manifestations by the alleged principal that create a reasonable belief in a third party that the alleged agent is authorized to bind the principal, create an apparent agency from which spring the same legal consequences as those which result from an actual agency. *Finnegan Constr. Co. v. Robino-Ladd Co.,* 354 A.2d 142 (Del. Super. Ct. 1976). Apparent agency or apparent authority "arises when the principal creates by its words or conduct the reasonable impression in a third party that the agent has authority to act." *Guyer v. Haveg Corp.,* 205 A.2d 176, 180 (Del. Super. Ct. 1964), *affd.* 211 A.2d 910 (Del. 1965).

The manifestations may be made directly to the third party, or may be made to the community in general, for example, by way of advertising. *Gizzi v. Texaco, Inc.,* 437 F.2d 308 (3d Cir.), *cert. denied,* 404 U.S. 829 (1971); Restatement 2d Agency §§ 8, 8B, 27 (1957). In order to establish a chain of liability to the principal based upon apparent

_502808_5/

agency, as in a case where Appellee were trying to hold Mercantile liable for the actions of its apparent agents, Appellants in this case, a litigant must show reliance on the indicia of authority originated by the principal, *Bowman v. Home Life Ins. Co. of America*, 260 F.2d 521 (3d Cir. 1958)]; Restatement 2d Agency § 267; and such reliance must have been reasonable. *Finnegan Constr. Co. v. Robino-Ladd Co.,* 354 A.2d at 145.

Under Delaware law, two elements are necessary to establish apparent agency. *See Billops v. Magness Constr. Co.,* 391 A.2d 196 (Del. 1978); *see also Yellow Book USA, LP v. Dearworth,* 2002 WL 31499361 (Del. Co. Pl. 2002) (discussing *Billps v. Magness Constr. Co.*). First, by its acts and conduct the principal must hold out the alleged agent as being authorized to act in the principal's behalf.    *Id.*    Second, the third party must reasonably rely upon this representation.    *Id.*    Appellee's allegations demonstrate unambiguously that NHI believed that Mercantile held out the Appellants to act for and in collaboration with Mercantile. Some of those allegations, in addition to the admission in the Affidavit at ¶ 7 (App. at A00464), are as follows:

- On or about October 6, 2000, Scott Krieger, Mercantile's workout manager, replaced Naylor as NHI's contact at Mercantile. Krieger insisted – on the threat of calling all of Mercantile's loans – that NHI retain a management consultant and strongly suggested/urged that Defendants KMR, Riesner and Justis be hired as management consultants. Krieger assured NHI that Defendants KMR, Riesner and Justis were "turn around" consultants, as opposed to "liquidation guys." (Second Amended Complaint, ¶ 25, App. at A00476.)

- On or about October 18, 2000, Krieger indicated to NHI that Mercantile would provide an additional $1.5 million of financing for NHI if KMR, Riesner and Justis considered NHI to be a viable going concern. (Second Amended Complaint, ¶ 26, App. at A00476.)

- On or about October 19, 2000, under the threat of calling all of Mercantile's loans, NHI, Pawnee, Shawnee, Midwest and the Mervine family, entered into a Consulting Agreement with Defendants KMR, Riesner and Justis. (Second Amended Complaint, ¶ 27, App. at A00476.)

- Upon information and belief, Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement. (Second Amended Complaint, ¶ 33, App. at A00478.)

- In 2001, KMR, Riesner and Justis continued on a concentrated course of action to pay Merantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. In collaboration with Krieger, KMR, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. (Second Amended Complaint, ¶ 46, App. at A00480.)

- NHI engaged KMR, Riesner and Justis solely at the direction of Mercantile to serve as NHI's management consultants. (Second Amended Complaint, ¶ 70, App. at A00485.)

The Second Amended Complaint and the record before the Bankruptcy Court demonstrate that NHI believed that Mercantile not only consented, but directed, that Appellants act for Mercantile. *See* Restatement (Second) of Agency, supra at § 27. (Apparent authority, is "created as to a third person by written or spoken words or any other conduct of the principal, which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."); *see also Theos & Sons, Inc. v. Mack Trucks, Inc.,* 729 N.E.2d 1113 (Mass. 2000).

By requiring NHI to remove the most obvious and incriminating allegation of agency in paragraph 33 of the Amended Complaint, the Bankruptcy Court sought to proceed with a clean slate. However, the Bankruptcy Court only went half way in its analysis. Had the Bankruptcy Court more closely scrutinized the Second Amended Complaint and the Affidavit in light of the law of apparent agency, the Bankruptcy Court would have reached the inescapable conclusion that the Plaintiff's Second Amended

_502808_5/

Complaint, even without the prior record in the Case and Proceeding, continued to set forth judicial admissions of agency. With the prior record of the Case and Proceeding before it, the Bankruptcy Court had no choice, but to dismiss the Second Amended Complaint. The Bankruptcy Court misapplied the law of agency and apparent agency and erroneously denied Appellants' motion to dismiss the Second Amended Complaint.

E.    **The Bankruptcy Court Erred by Permitting Appellee's Preference Claim to Proceed Against Riesner and Justis Despite Deficiencies in the Prima Facie Allegations.**

The Bankruptcy Court erred by not dismissing the $1,060,144.00 preference count stated in the Amended Complaint and Second Amended Complaint as to Riesner and Justis because the pleadings fail sufficiently to allege a preference avoidance claim pursuant to 11 U.S.C. § 547 and practice before the Bankruptcy Court. The Bankruptcy Court has stated that the proper pleading of preference actions requires that specific identifying factors be included in a preferential transfer claim, namely: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) *name of transferee* and (iv) the amount of the transfer." *See In re APF Co.*, 308 B.R. 183, 188 (Bankr. D. Del. 2004) quoting *In re Valley Media*, 288 B.R. 189, 192 (Bankr. D. Del. 2003) (emphasis supplied).[11] As the Bankruptcy Court has previously stated: "the following information must be pled in a complaint to survive a motion to dismiss: '(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and

---

[11] There appears to be a recent split in the Bankruptcy Court's decisions regarding when to apply the heightened pleading standard for preference claims. *See TW, Inc. v. R.J. Polmer LLC et al.*, No. A 05-50579, Slip Op. (Bankr. D. Del. Aug. 31, 2005). Judge Lindsey, in his *TW, Inc.* Opinion, appears to be following the rationale Judge Walsh used in his February 11, 2005 Memorandum Opinion denying Appellants' relief.

_502808_5/

(iv) the amount of the transfer.'" *In re TWA Inc., See* Decision, p. 22 *citing TWA Inc. Post*

*Confirmation Estate v. Marsh USA, Inc. (In re TWA Inc. Post Confirmation Estate),* 305

B.R. 228, 232 (Bankr. D. Del. 2004) (citing Valley Media Inc. v. Borders, Inc. (In re

Valley Media, Inc.), 288 B.R. 189, 192 (Bankr. D. Del. 2003).

The Complaint, Amended Complaint and Second Amended Complaint generally

plead that KMR, Riesner and Justis received one or more of the alleged transfers and that

the transfers were to or for their benefit.  However, Exhibit B to the Complaint and Second

Amended Complaint,[12] identifies "KMR Management" as the recipient of each alleged

transfer.[13]  (Complaint, Exhibit B, App. at A00038; Second Amended Complaint, Exhibit

B, App. at A00518.)

The stated allegations fail to show that any of the alleged preferential transfers were

"to or for the benefit of" Riesner and/or Justis, individually.  The allegations further fail to

identify or adequately plead that Riesner and/or Justis received the alleged transfers

identified in Exhibit B.  However, rather than requiring Appellee in the Second Amended

Complaint to specifically identify Justis and Riesner, each as transferees, the Bankruptcy

Court inferred their names.  As the Bankruptcy Court stated in its opinion:

> Exhibit B identifies the transferee, the check date and check
> amount.  The name of the transferor is easily inferred.  NHI
> is only required at this stage to provide [Appellants] with
> notice regarding its claim and the basis of the claim.

(Memorandum Opinion, p. 23, App. at A00867.)

The Bankruptcy Court, therefore, allowed the identity of a transferee to be inferred,

rather than specifically identified, as required under the proper application of the law.

Accordingly, the Bankruptcy Court erred in finding that NHI sufficiently alleged the

---

[12] The Amended Complaint did not attach Exhibit B.

[13] The single exception is transfer identified as Check No. 8728, which identifies "KMR ???" as the vendor.

elements required to defeat dismissal of the preference claim and Count XII must be dismissed as to the individual defendants Riesner and Justis.

## IX.    CONCLUSION

For all of the foregoing reasons, the Appellants respectfully submit that the Court should reverse the December 3, 2004 Ruling on which the First Appeal is based and the February 10, 2005 Order on which the Second Appeal is based and grant Appellants' motions to dismiss without further remand needed for any factual findings.

Dated: October 11, 2005

EDWARDS & ANGELL, LLP

Stuart M. Brown, Esquire (DE No. 4050)
Denise Seastone Kraft (DE No. 2778)
William R. Firth, III (DE No. 4356)
919 N. Market Street, Suite 1500
Wilmington, DE 19801
Tel.: 302.777.7770
Fax: 302.777.7263

*Attorneys for FleetBoston Financial
Corporation, KMR Management, Inc.,
Robert Riesner, and Waring S. Justis, Jr.*

_502808_5/