## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| FLEETBOSTON FINANCIAL CORPORATION, KMR MANAGEMENT, INC., ROBERT RIESNER, and WARING S. JUSTIS, JR., )))))) | |
| Appellants, )) | |
| v. )) | Civil Action No. 05-004 (SLR) |
| NHI, INC., )) | |
| Appellee. )) | |

### VOLUME I

### APPENDIX TO
### OPENING BRIEF OF APPELLANTS FLEETBOSTON
### FINANCIAL CORPORATION, KMR MANAGEMENT, INC.,
### ROBERT RIESNER AND WARING S. JUSTIS, JR.

Stuart M. Brown, Esq. (No. 4050)
Denise Seastone Kraft, Esq. (No. 2778)
William R. Firth, III, Esq. (No. 4356)
EDWARDS & ANGELL, LLP
919 N. Market Street, 15th Floor
Wilmington, DE 19801
Telephone (302) 777-7770
Facsimile (302) 777-7263

*Attorneys for FleetBoston Financial*
*Corporation, KMR Management, Inc.,*
*Robert Riesner and Waring S. Justis, Jr.*

Dated: October 10, 2005

# TABLE OF CONTENTS

VOLUME I

Complaint [D.I. 1]....................................................................................................A00001

    Exhibit A – Consulting Agreement dated 10/19/00...................................A00030

    Exhibit B – Preference Analysis...............................................................A00037

Motion to Dismiss by Defendant FleetBoston Financial Corporation [D.I. 12]...................A00039

    Memorandum of Law in Support of the Motion to Dismiss by
    Defendant FleetBoston Financial Corporation ...........................................A00040

    Affidavit of Stuart M. Brown...................................................................A00049

    Exhibit A – Pennsylvania Department of State Entity Details
    Regarding KMR Management, Inc............................................................A00051

    Exhibit B – Delaware Secretary of State Merger Documents
    Regarding FleetBoston Financial Corporation ..........................................A00053

Plaintiff's First Amended Complaint [D.I. 17]...........................................................A00078

Plaintiff's Answer to Motion to Dismiss of Defendant, FleetBoston
    Financial Corporation [D.I. 17] ..............................................................A00119

    Exhibit A – Memorandum in Support of Plaintiff's Answer
    to Motion to Dismiss of Defendant, FleetBoston Financial
    Corporation ...........................................................................................A00122

    Exhibit B – Blackline of Plaintiff's First Amended Complaint...................A00125

    Exhibit C – Plaintiff's First Amended Complaint ......................................A00165

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [D.I. 26]...................A00208

Memorandum of Law in Support of Defendants' Motion to Dismiss
    Plaintiff's First Amended Complaint [D.I. 27] ..........................................A00212

    Exhibit A – Agreement dated 2/26/02 between Mercantile-Safe
    Deposit and Trust Company and Nanticoke Homes, Inc., et al. ...............A00232

    Exhibit B – Consent Order Approving Interim Agreement
    for Use of Cash Collateral and Adequate Protection .................................A00251

    Unreported Cases ...................................................................................A00271

WLM_502925_1/JGREGA

## VOLUME II

Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants'
Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] .................................A00293

Defendants' Reply Brief in Response to Answering Brief of
Plaintiff NHI, Inc. in Opposition to Defendants' Motion
to Dismiss Plaintiff's Amended Complaint [D.I. 30] ..............................................A00314

Unreported Decisions..............................................................................A00326

Letter dated October 8, 2004 from the Honorable Peter J. Walsh
to Counsel [D.I. 32] ..............................................................................A00345

Certification of Counsel for Plaintiff NHI, Inc. [D.I. 34] .....................................A00348

Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D.I. 35]..........................A00355

Memorandum of Law in Support of Motion to Strike Certification
of Counsel for Plaintiff NHI, Inc. [D.I. 36] ................................................A00377

Exhibit 1 – Certification of Counsel for Plaintiff NHI, Inc. ....................................A00389

Exhibit 2 – Notice of Agenda of Matters Scheduled for
Hearing on October 19, 2004 at 10:30 a.m. .................................................A00396

Unreported Decisions..............................................................................A00403

Plaintiff's Answer to Motion to Strike Certification of Counsel
for Plaintiff NHI, Inc. [D.I. 39]...........................................................A00409

Defendants' Reply Brief in Response to Plaintiff's Answer to
Defendants' Motion to Strike Certification of Counsel
for Plaintiff NHI, Inc. [D.I. 41].............................................................A00415

Memorandum of Law of Plaintiff NHI, Inc. in Opposition to
Defendants' Motion to Strike Certification of Counsel
for Plaintiff NHI, Inc. [D.I. 40].............................................................A00437

Exhibit A – Request for Production of Documents
Addressed to Defendants FleetBoston Financial
Corporation, KMR Management, Inc., Robert
Riesner and Waring Justis, Jr. of NHI, Inc. and
Interrogatories Addressed to Defendants FleetBoston
Financial Corporation, KMR Management, Inc., Robert
Riesner and Waring Justis, Jr. of NHI, Inc. ...............................................A00449

Exhibit B – Affidavit of John M. Mervine, Jr. in
Support of Plaintiff's Supplemental Response to
Defendants' Motion to Dismiss ............................................................................A00463

Plaintiff's Second Amended Complaint [D.I. 45] ...............................................A00470

    Exhibit A – Consulting Agreement dated 10/19/00 between
    Nanticoke Homes, Inc., et al. and KMR Management, Inc., et al. ...........................A00510

    Exhibit B – Preference Analysis ......................................................................A00517

Notice of Motion for Leave to Appeal [D.I. 46].................................................A00519

Motion for Leave to Appeal [D.I. 46]..................................................................A00521

Notice of Appeal Pursuant to Federal Bankruptcy Procedures
    8001 and 28 U.S.C. Section 158(a)(3) [D.I. 47] .......................................A00532

Designation of the Record and Statement of Issues Pursuant
    to (A) Federal Rule of Appellate Procedure 6(a) and
    (B) Bankruptcy Rule 8006 [D.I. 49] .........................................................A00535

Answer of Plaintiff NHI, Inc. in Opposition to Defendants'
    Motion for Leave to Appeal [D.I. 50]........................................................A00541

    Exhibit A – Transcript of December 3, 2004 Hearing
    before the Honorable Peter J. Walsh......................................................A00551

    Exhibit B – 1998 Del. Ch. LEXIS 115 (*Siegman, et al.
    v. Palomar Medical Technologies, Inc., et al.*) .........................................A00562

    Exhibit C – 1994 Del. Ch. LEXIS 20 (*Coates International,
    Ltd., et al. v. DeMott, et al.*)...................................................................A00572

## VOLUME III

Memorandum of Law in Support of Defendants' Motion to
    Dismiss Plaintiff's Second Amended Complaint [D.I. 52]........................A00582

    Unreported Cases ...........................................................................A00608

    Exhibit A – Agreement dated 2/26/02 between Mercantile-Safe
    Deposit and Trust Company and Nanticoke Homes, Inc., et al. ...............A00625

    Exhibit B – Consent Order Approving Interim Agreement
    for Use of Cash Collateral and Adequate Protection ...............................A00645

Memorandum of Law of Plaintiff NHI, Inc. in Opposition to
    Defendants' Motion to Dismiss Plaintiff's Second
    Amended Complaint [D.I. 54] ..............................................................A00675

    Exhibit A – 1999 Del. Super. LEXIS 468 (*Tucker v. Albun, Inc.*) ...........A00694

Defendants' Reply Brief in Response to Memorandum of Law of
    Plaintiff NHI, Inc. in Opposition to Defendants' Motion to
    Dismiss Plaintiff's Second Amended Complaint [D.I. 60].......................A00709

    Unreported Cases ...................................................................................A00724

Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion
    for Stay Pending Appeal [D.I. 62] ............................................................A00745

Brief in Reply to Brief of Plaintiff's NHI, Inc. in Opposition to
    Defendant's Motion for a Stay Pending Appeal [D.I. 63] ........................A00764

    Exhibit 1 - Transcript of December 3, 2004 Hearing
    before the Honorable Peter J. Walsh.......................................................A00783

    Unreported Cases ...................................................................................A00794

VOLUME IV

Memorandum Opinion [D.I. 65].......................................................................A00807

Order [D.I. 66] ................................................................................................A00830

Notice of Motion for Leave to Appeal [D.I. 68]................................................A00831

Motion for Leave to Appeal [D.I. 68] ..............................................................A00833

    Exhibit A – Order...................................................................................A00842

    Exhibit B – Memorandum Opinion .........................................................A00844

Motion of FleetBoston Financial Corporation, KMR Management,
    Inc., Robert Riesner and Waring S. Justis, Jr. for a Stay
    Pending Appeal of the February 11, 2005 Order and
    Memorandum Opinion [D.I. 69].............................................................A00872

Brief in Support of Motion of FleetBoston Financial Corporation,
    KMR Management, Inc., Robert Riesner and Waring S. Justis,
    Jr. for a Stay Pending Appeal of the February 11, 2005 Order
    and Memorandum Opinion Denying Defendants' Motion to
    Dismiss the Second Amended Complaint [D.I. 70]................................A00878

    Unreported Cases ...................................................................................A00897

Notice of Appeal Pursuant to Bankruptcy Procedures 8001 and
    28 U.S.C. Section 158(a)(3) [D.I. 156].........................................................A00908

       Exhibit A – Order...................................................................................A00910

       Exhibit B – Memorandum Opinion ........................................................A00912

Interim Agreement for Use of Cash Collateral and Adequate
    Protection [Case D.I. 34] ...........................................................................A00940

Transcript of December 3, 2004 Hearing before the Honorable
    Peter J. Walsh...........................................................................................A00957

Defendants' Motion to Dismiss Plaintiff's Second Amended
    Complaint [D.I. 51].....................................................................................A00967

Release Agreement dated October 30, 2003......................................................A00971

Nanticoke Homes, Inc. Voluntary Chapter 11 Petition .......................................A00979

Addendum Compilation of Appellee Agency Pleading Allegations .....................A00989

WLM_502925_1/JGREGA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| A DELAWARE CORPORATION | : | Chapter 11 |
| | : | |
| | : | |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | Adversary No. 04-5_____ |
| v. | : | |
| | : | |
| FLEET BOSTON FINANCIAL | : | |
| COPRORATION, KMR MANAGEMENT, | : | |
| INC., ROBERT RIESNER and WARING | : | |
| S. JUSTIS, JR., | : | |
| | : | |
| Defendants | : | |

### COMPLAINT

### I. PARTIES

1.     Plaintiff, NHI, Inc. (hereinafter "NHI"), formerly known as Nanticoke Homes, Inc., filed a voluntary petition for relief (hereinafter "Petition") with the United States Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code on March 1, 2002.  NHI was incorporated under the laws of the State of Delaware on October 7, 1971.  Prior to 2002, NHI was engaged in manufacturing customized homes at its plant in Greenwood, Delaware.  NHI is currently maintaining its business as a Debtor-in-Possession.

2.      Defendant, KMR Management, Inc., on information and belief, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Blue Bell, Pennsylvania.

3.      Defendant, Fleet Boston Financial Corporation, on information and belief, is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts. On information and belief, Fleet Boston Financial Corporation is successor in interest to Progress Financial Corporation, which, on information and belief, was a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. On information and belief, Defendant KMR Management, Inc., was a wholly owned subsidiary of Progress Financial Corporation, and is now a wholly owned subsidiary of Defendant Fleet Boston Financial Corporation. Defendant Fleet Boston Financial Corporation is named as Defendant herein in the event that Defendant KMR Management, Inc. is without assets to satisfy any judgment entered against KMR Management, Inc., under a theory of piercing the corporate veil. (KMR Management, Inc. and Fleet Boston Financial Corporation are hereinafter collectively referred to as "KMR").

4.      Defendant, Robert Riesner, on information and belief, is an adult resident of or near Willow Grove, Pennsylvania. Defendant Riesner is the President of Defendant KMR Management, Inc.

5.      Defendant, Waring S. Justis, Jr., on information and belief, is an adult resident of or near Baltimore, Maryland. Defendant Justis is the Regional Vice President of Defendant KMR Management, Inc.

2

A00002

## II.  JURISDICTION AND VENUE

6.     All of the negotiations, discussions, representations and agreements out of which this case arises took place in Delaware; hence this court has jurisdiction over this matter and venue is appropriate in Wilmington, Delaware.  This Court also has venue pursuant to 28 U.S.C. § 1409 and jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 11 U.S.C. §§ 544(B), 547, 548, 550.

7.     This matter is a core proceeding pursuant to 28 U.S.C. § 1409.

## III.  FACTUAL BACKGROUND

8.     NHI was the first pre-manufactured home-builder in Delaware and, for more than thirty years, conducted a successful manufacturing business.  NHI was founded by John M. Mervine, Sr. (hereinafter "Mervine Sr.").

9.     Prior to 2002, NHI's primary manufacturing facilities were located in Greenwood, Delaware.  NHI constructed homes according to customers' specifications and delivered and installed the homes on the customers' property.  NHI's customer base was comprised of individuals and real estate developers throughout the Mid-Atlantic region, although the largest concentration was in Delaware and Maryland.

10.     NHI's business was highly successful.  Over three decades, it established a reputation for manufacturing a high-quality, high-end product in an expanding market.  At the height of NHI's business, it had a sales volume of approximately $60,000,000 a year.  In the early 1990's, NHI decided to expand its business into the manufacturing of lower-cost homes.

11.     Thereafter, Shawnee Homes, Inc. (hereinafter "Shawnee") was incorporated under the laws of the State of Delaware on November 2, 1992.  From 1992 until October 2000, Shawnee was engaged in the manufacturing of mid-range houses at a plant in Salisbury,

3

A00003

Maryland, which was owned by Shawnee Enterprises, LLC, a Delaware Limited Liability Corporation, owned by Mervine Sr.'s three sons, John M. Mervine, Jr. (hereinafter "Mervine Jr."), William H. Mervine, III, and Gregory O. Mervine, and their children. Shawnee's customer base was comprised mostly of Mervine Family owned real estate developers. Shawnee was run by William H. Mervine, III.

12.    Pawnee Homes, Inc. (hereinafter "Pawnee") was incorporated under the laws of the State of Delaware on October 29, 1996. From 1996 to October 2000, Pawnee was engaged in the manufacturing of low-range homes at a NHI plant in Greenwood, Delaware. Pawnee's customer base was comprised mostly of mobile home dealers and mobile home communities. Pawnee was run by Mervine Jr.

13.    Nanticoke Homes Midwest, Inc. (hereinafter "Midwest"), was incorporated under the laws of the State of Indiana in 1999. From 1999 to April 2000, Midwest was engaged in the manufacturing of homes at a plant in Indianapolis, Indiana, which was owned by Shawnee Enterprises Midwest, LLC, which was owned by Shawnee Enterprises, LLC. Midwest was run by Gregory O. Mervine.

14.    In establishing Shawnee, Pawnee and Midwest, NHI greatly increased it indebtedness with the enthusiastic support of its banking institution, Mercantile Safe Deposit and Trust Company (hereinafter "Mercantile"). All outstanding debt owed to Mercantile by NHI and its affiliated companies, Shawnee, Pawnee and Midwest, and its affiliated real estate holding companies and Freedom Motors, Custom Decorative Mouldings, National Concrete and Classic Carpet (hereinafter "Related Entities"), was cross collateralized.

4

A00004

15.    For approximately 6 years prior to 2002, NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities maintained both Term and Demand Loan Lines of Credit relationships with Mercantile.    The interest rate on the Term and Demand Loan Lines of Credit with Mercantile was Mercantile's prime rate.

16.    In late 1999, NHI owned assets with an adjusted book value of approximately $26 million and NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities owed approximately $17 million in multiple loans to Mercantile. NHI had a net book value of approximately $8 million.

17.    Because of increasing cash demands, NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities borrowed on the Term and Demand Loan Lines of Credit with Mercantile in excess of the loans' collateral value, yet remained current on all payment and monetary terms under the Term and Demand Loan Lines of Credit.

18.    Because the balance of the Term and Demand Loan Lines of Credit was in excess of the collateral value, as of late 1999 all of NHI's outstanding debt to Mercantile was considered by Mercantile to be in technical default under the loan documents. All outstanding cross collateralized debt of NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities was considered cross defaulted.

19.    On or about March 21, 2000, Mercantile and NHI entered into a Forbearance Agreement (hereinafter "First Forbearance Agreement"). Pursuant to the First Forbearance Agreement, the interest rate on NHI's Term and Demand Loan Lines of Credit with Mercantile increased from Mercantile's prime rate to Mercantile's prime rate, plus two percent, and all debt of NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities, totaling approximately $17.5

5

million, was being monitored on a month-to-month basis by NHI's contact at Mercantile, Tim Naylon.

20.    On or about June 15, 2000, NHI agreed with Naylon that NHI would bring its outstanding debt to Mercantile down to $9 million by selling off non-operating assets.

21.    On or about July 27, 2000, Mercantile and NHI entered into a Second Forbearance Agreement.

22.    In August 2000, NHI learned that Mercantile was considering calling NHI's loans and placing NHI into liquidation, even though NHI remained current on its loan payments, but was alleged to be in default of technical, non-monetary covenants.

23.    In September 2000, NHI listed for sale various properties, divisions, related entities and other assets.

24.    In early October 2000, Mervine Jr. became Chief Executive Officer of NHI.

25.    On or about October 6, 2000, Scott Krieger, Mercantile's workout manager, replaced Naylon as NHI's contact at Mercantile. Krieger insisted – on the threat of calling all of Mercantile's loans – that NHI retain a management consultant and strongly suggested/urged that Defendants KMR, Riesner and Justis be hired as management consultants. Krieger assured NHI that Defendants KMR, Riesner and Justis were "turn around" consultants, as opposed to "liquidation guys."

26.    On or about October 18, 2000, Krieger indicated to NHI that Mercantile would provide an additional $1.5 million of financing for NHI if KMR, Riesner and Justis considered NHI to be a viable going concern.

6

27.    On or about October 19, 2000, under the threat of calling all of Mercantile's loans, NHI, Pawnee, Shawnee, Midwest and the Mervine family, entered into a Consulting Agreement with Defendants KMR, Riesner and Justis.  A copy of the Consulting Agreement and the amendments thereto are attached hereto as Exhibit "A" (hereinafter the "Consulting Agreement").

28.    Under the Consulting Agreement, KMR, Riesner and Justis, who had represented themselves to be highly skilled professionals, agreed to provide NHI with professional management for the purposes of helping to stabilize NHI's financial condition and perpetuating NHI's business.  Under the Consulting Agreement, KMR, Riesner and Justis undertook to act as fiduciaries, assumed positions of responsibility and undertook a duty of loyalty with respect to NHI as NHI's agents.  Pursuant to the Consulting Agreement, KMR, Riesner and Justis assumed the complete control, responsibility and authority for managing the business of NHI.

29.    On or about October 25, 2000, the Mervine family met with KMR, Riesner and Justis in Baltimore, Maryland.  KMR proposed a plan whereby NHI would cut expenses, sell non-operating assets, close Pawnee and move Shawnee to Greenwood, Delaware, and KMR would hire a Chief Financial Officer and General Manager for NHI and approach Mercantile to request another forbearance agreement and the provision of additional funds to NHI.    To effectuate the plan, the members of the Mervine family agreed to cut their own salaries by fifty percent and to give Mercantile first mortgage liens on their personal residences.

30.    Under the Consulting Agreement, NHI agreed to pay KMR certain specified hourly rates for services rendered.

7

31.    From March 2001 through May 2001, Riesner and Justis hired Pasqualle Petrucci as NHI's Plant Manager, Michael Cottingham as NHI's Chief Financial Officer and G. Robert Lord as NHI's Sales Manager.

32.    After assuming control of NHI, unbeknownst to any of the Mervine family, KMR, Riesner and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their fiduciary duties and obligations of loyalty.  KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for KMR, while at the same time relegating NHI's business operations and viability as a going concern to distant secondary priorities, in direct contravention of the Consulting Agreement.

33.    KMR, Riesner and Justis did not operate independently and for the benefit of NHI.  Upon information and belief, KMR, Riesner and Justis served at the direction and pleasure of Mercantile.

34.    Upon information and belief, Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement.

35.    By the end of December 2000, Riesner and Justis had written approximately $500,000 in checks, which Mercantile refused to cover because a third forbearance agreement had not been negotiated or signed.  NHI's outstanding debt to Mercantile was reduced to $11.5 million as a result of the sale of assets by NHI.

36.    On or about January 2, 2001, Mercantile and NHI entered into a Third Forbearance Agreement made effective to December 31, 2000.  Mercantile subsequently covered

8

the approximately $500,000 in checks issued by Riesner and Justis that had not been paid by Mercantile.

37.    In 2001, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets.    In collaboration with Krieger, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern.

38.    At the same time, although NHI was still only in technical default with Mercantile, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred.    It was apparent that Riesner and Justis were not concerned with NHI's ability to continue as a going concern – rather, the sole concern of Riesner and Justis was that Mercantile and KMR be paid.

39.    By the beginning of September 2001, due to the systematic failure of Riesner and Justis to pay NHI's vendors and suppliers, NHI was the named defendant in approximately twenty-two lawsuits by its customers, vendors and suppliers.  By October 2001, the number of lawsuits against NHI by its customers, vendors and suppliers had increased to forty-three.  As a result, NHI was unable to secure supplies and materials from vendors, which resulted in NHI having to resort to alternate and more expensive sources of supplies and materials.

40.    On or about October 22, 2001, Riesner and Justis removed Cottingham as Chief Financial Officer of NHI.

9

41.     Under the management of NHI by KMR, Riesner and Justis, NHI's reputation as a manufacturer of high quality customized homes was ruined.  Riesner and Justis proved to be incompetent in running the day-to-day operations of NHI's manufacturing business.  Instead of operating NHI with the intent that it continue as a viable going concern, the sole objective of KMR, Riesner and Justis was to pay down bank debt and liquidate assets to the benefit of Mercantile and KMR, and to the detriment of NHI's shareholders.

42.     In November 2001, it became apparent to Mervine Jr. that Riesner and Justis had been systematically failing to make state tax payments on behalf of NHI, failing to pay workers' compensation benefits, and failing to pay health and life insurance premiums and 401(k) contributions for NHI employees.  Mervine Jr. confronted Justis with this information and accused Justis of fraud.

43.     On or about November 7, 2001, Riesner and Justis fired Mervine Jr.

44.     On or about November 12, 2001, Justis proposed to the Mervine Family that Justis be named Chief Executive Officer and Chief Operating Officer of NHI.

45.     On or about November 20, 2001, the members of the Mervine family and the Directors of NHI decided that it was not in NHI's best interests that Justis be Chief Executive Officer and Chief Operating Officer of NHI.  Accordingly, Justis's proposal was revoked by NHI.

46.     Because it had become apparent that NHI needed to discontinue its relationship with Mercantile and find a new lender, the Mervine family initiated negotiations with various lenders.

10

47.     In January 2002, after already having been paid approximately $1.9 million by NHI, KMR, Riesner and Justis submitted a proposal to find a new lender to replace Mercantile in exchange for a two and one-half percent commission.

48.     On or about January 29, 2002, Justis abruptly "went on vacation" and did not maintain contact with NHI or the members of the Mervine family.  This was the first indication to NHI and the Mervine family that KMR was pulling out.  Justis never returned to work at NHI.

49.     From October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; made decisions which maximized cash flows to Mercantile and KMR while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting Agreement; breached their fiduciary duty and duty of loyalty by – rather than providing "turn around" management -- devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis, and to the extreme detriment and prejudice of NHI and its shareholders and creditors.

50.     By February 2002, as a result of the gross mismanagement of NHI by KMR, Riesner and Justis, NHI was in such dire financial straits that it was not able to re-finance or sell its operations as a going concern.

51.     From October 2000 through February 2002, a period of approximately fourteen months, Riesner and Justis caused NHI to pay KMR consulting fees of approximately $1.9 million.

52.     On or about February 6, 2002, Mercantile demanded payment on all of NHI's loans and lines of credit.

11

53.    Thereafter, on or about February 26, 2002, the members of the Mervine family found themselves in such financial duress that they entered into an agreement with Mercantile, which over the next twenty months settled NHI's debt with Mercantile, satisfied Mercantile's liens on the assets of NHI and the Mervine family members' personal residences, and released Mercantile from all liability to NHI.

54.    NHI never received the additional $1.5 million of funding from Mercantile, even though KMR, Riesner and Justis assured Mercantile that NHI was a viable going concern.

55.    NHI terminated its manufacturing operations on February 19, 2002.

56.    On March 1, 2002, NHI filed a voluntary petition for relief with the United States Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code.

**COUNT I**
**NHI v. KMR, Riesner and Justis**
**Breach of Contract**

57.    The allegations set forth in paragraphs 1 through 56 above are incorporated herein as though fully set forth at length.

58.    NHI engaged KMR, Riesner and Justis under the Consulting Agreement.

59.    As part of the Consulting Agreement, on November 12, 2001, NHI and KMR entered into an agreement whereby the parties agreed that Riesner and Justis would perform the functions which a Chief Executive Officer and Chief Operating Officer would perform.

60.    NHI engaged KMR, Riesner and Justis solely at the direction of Mercantile to serve as NHI's management consultants.

61.    KMR, Riesner and Justis knew that in the event NHI failed to execute the Consulting Agreement with KMR, Mercantile would call all of the loans and declare NHI in default thereof.

12

62.    Under the Consulting Agreement, KMR, Riesner and Justis were obligated to provide various services "directed to effect an improvement in the operating structure and content of Nanticoke".

63.    Under the Consulting Agreement, KMR, Riesner and Justis were obligated to provide various services "use its best efforts to cause a change in operation and conduct of the business and to structure the business to profitable operation".

64.    Under the Consulting Agreement, KMR, Riesner and Justis were obligated to "advise and consent with [NHI's] Board of Directors in the implementation of the business plan".

65.    Rather than complying with the above referenced terms of the Consulting Agreement, and as set forth above, KMR, Riesner and Justis failed to provide services directed to effect an improvement in the operating structure and content of NHI, failed to use their best efforts to cause a change in operation and conduct of the business and to structure the business to profitable operation, and failed to secure the advice and consent of NHI's Board of Directors in the implementation of the business plan.

66.    To the contrary, and as set forth above, KMR, Riesner and Justis engaged in a course of conduct designed to: a) destroy NHI as a going concern; b) apply NHI's assets only for the benefit of KMR and Mercantile; c) drive NHI into bankruptcy for the benefit of its secured creditors; and d) ignore the desires and wishes of NHI's Board of Directors.

67.    Under the Consulting Agreement, KMR, Riesner and Justis undertook a duty of loyalty. By their course of action, KMR, Riesner and Justis breached their duty of loyalty.

68.    The conduct of KMR, Riesner and Justis constituted a breach of the Consulting Agreement.

13

69.    The breach by KMR, Riesner and Justis of the Consulting Agreement caused damage to NHI.

70.    WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants KMR, Riesner and Justis, and any such other and further relief as justice requires.

## COUNT II
### NHI v. KMR, Riesner and Justis
### Breach of The Covenant of Good Faith and Fair Dealing

71.    The allegations set forth in paragraphs 1 through 70 above are incorporated herein as though fully set forth at length.

72.    Every contract imposes upon the parties thereto an obligation of good faith and fair dealing.

73.    As set forth above, the conduct of KMR, Riesner and Justis violated the covenant of good faith and fair dealing.

74.    The breach by KMR, Riesner and Justis of their obligation of good faith and fair dealing under the Consulting Agreement and amendments thereto caused damage to NHI.

75.    WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants KMR, Riesner and Justis, and any such other and further relief as justice requires.

## COUNT III
### NHI v. KMR, Riesner and Justis
### Gross Negligence

76.    The allegations set forth in paragraphs 1 through 75 above are incorporated herein as though fully set forth at length.

14

A00014

77.    NHI engaged KMR, Riesner and Justis as consultants to provide statistical analysis, management evaluation, asset evaluation and banking relations, and to perform the functions which a Chief Executive Officer and Chief Operating Officer would perform.

78.    KMR, Riesner and Justis, as consultants to NHI, owed a duty to NHI to act in the best interests of NHI and its shareholders and to engage in a course of conduct to place NHI into the position of operating as an ongoing, profitable concern.

79.    KMR, Riesner and Justis breached that duty to NHI and were grossly negligent in their efforts by failing to act in the best interests of NHI and were grossly negligent in their efforts to engage in a course of conduct to place NHI into the position of operating as an ongoing profitable concern by:

    a.  knowingly failing to pay employee wages, workers' compensation benefits and other health benefits;

    b.  knowingly failing to pay sales and use taxes;

    c.  knowingly delaying the payments to Mercantile until after additional penalties for late payment were assessed;

    d.  knowingly assuring payment of KMR's invoices over the payment of other expenses which would have enable NHI to continue in business;

    e.  knowingly issuing checks which would not clear;

    f.  knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy;

    g.  selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI;

15

A00015

    h.   knowingly withholding health insurance premiums from the employees and

        failing to remit those payments to the health plan provider; and

    i.   knowingly issuing checks that would not be honored by Mercantile and which

        were returned "NSF."

80.    The gross negligence of KMR, Riesner and Justis proximately caused NHI damages.

81.    WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants KMR, Riesner and Justis, and any such other and further relief as justice requires.

**COUNT IV**
**NHI v. KMR, Riesner and Justis**
**Breach of Fiduciary Duty**

82.    The allegations set forth in paragraphs 1 through 81 above are incorporated herein as though fully set forth at length.

83.    NHI engaged KMR, Riesner and Justis as consultants to provide statistical analysis, management evaluation, asset evaluation and banking relations, and to perform the functions which a Chief Executive Officer and Chief Operating Officer would perform.

84.    As consultants, KMR, Riesner and Justis were placed in a position of special confidence and trust, requiring the exercise of utmost discretion as fiduciaries in the protection of the interests of NHI.

85.    In complete abrogation of their fiduciary responsibilities to NHI, KMR, Riesner and Justis intentionally, unlawfully and willfully acted in a fashion that served only the interests of Mercantile and their own self-interests, including but not limited to:

16

   a.  knowingly failing to pay employee wages, workers' compensation benefits
       and other health benefits;

   b.  knowingly failing to pay sales and use taxes;

   c.  knowingly delaying the payments to Mercantile until after additional penalties
       for late payment were assessed;

   d.  knowingly assuring payment of KMR's invoices over the payment of other
       expenses which would have enable NHI to continue in business;

   e.  knowingly issuing checks which would not clear;

   f.  knowingly reducing NHI's obligations to Mercantile to the point where
       Mercantile would compel the filing of a bankruptcy;

   g.  selling assets of NHI which KMR, Riesner and Justis knew would have been
       better utilized in the recovery of NHI;

   h.  knowingly withholding health insurance premiums from the employees and
       failing to remit those payments to the health plan provider; and

   i.  knowingly issuing checks that would not be honored by Mercantile and which
       were returned "NSF."

86.    The breaches by KMR, Riesner and Justis of their duties to NHI caused NHI
damages.

87.    WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against
Defendants KMR, Riesner and Justis, and any such other and further relief as justice requires.

17

## VIII.  COUNT V
## NHI v. KMR, Riesner and Justis
## Fraud

88.     The allegations set forth in paragraphs 1 through 87 above are incorporated herein as though fully set forth at length.

89.     On information and belief, KMR through Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around, as represented.

90.     KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply the NHI Board of Directors with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into an insolvent condition in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather that utilizing those assets to assist NHI's business operations.

91.     The NHI Board of Directors relied upon the representations of KMR, Riesner and Justis as to their skill and knowledge to their detriment.

18

92.     The conduct of KMR, Riesner and Justis was intentional and wrongful.

93.     WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants KMR, Riesner and Justis, plus punitive damages, and any such other and further relief as justice requires.

**COUNT VI**
**NHI v. KMR, Riesner and Justis**
**Waste of Corporate Assets**

94.     The allegations set forth in paragraphs 1 through 93 above are incorporated herein as though fully set forth at length.

95.     On information and belief, KMR through Riesner and Justis engaged in a scheme to waste the assets of NHI to the point where NHI could only be liquidated for the benefit of Mercantile.

96.     KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which have had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply NHI with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into bankruptcy in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather that utilizing those assets to assist NHI's business operations.

19

97.     The conduct of KMR, Riesner and Justis was intentional and wrongful.

98.     WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants KMR, Riesner and Justis, and any such other and further relief as justice requires.

### COUNT VII
### NHI v. KMR, Riesner and Justis
### Tortious Interference with Contract and Prospective Business Advantage

99.     The allegations set forth in paragraphs 1 through 98 above are incorporated herein as though fully set forth at length.

100.    At all times relevant to the instant case, NHI had contractual rights under all loans with Mercantile, and was ready, willing and able to institute, an actionable and meritorious lender liability claim against Mercantile.

101.    The conduct of KMR, Riesner and Justis, as set forth above, prejudiced NHI's ability to do business and made it impossible for NHI to maintain any semblance of equal bargaining power with Mercantile.

102.    As a direct cause of the conduct of KMR, Riesner and Justis, NHI's shareholders were compelled to provide to Mercantile personal guarantees of all of NHI's loans, secured by virtually all of their personal tangible assets.

103.    Accordingly, and as a direct result of the conduct of KMR, Riesner and Justis, NHI was placed in such a situation of economic duress and in such a disparate bargaining position that it was unable to protect its interests vis-à-vis Mercantile.

104.    Mercantile then was able, through threats against NHI's principals, to compel NHI to provide multiple general releases to Mercantile, foreclosing NHI's ability to enforce its rights under all of its loans or to institute an action against Mercantile for Mercantile's wrongful acts.

A00020

105.    The conduct of KMR, Riesner and Justis constitutes intentional interference with all loan agreements between NHI and Mercantile and interfered with NHI's prospective business advantage afforded through an action against Mercantile.

106.    The conduct of KMR, Riesner and Justis was intentional and wrongful, was done without justification and caused harm to NHI.

107.    WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants KMR, Riesner and Justis, plus punitive damages, and any such other and further relief as justice requires.

## COUNT VIII
### NHI v. KMR, Riesner and Justis
### Fraudulent Transfer, 11 U.S.C. §§ 544(b), 548

108.    The allegations set forth in paragraphs 1 through 107 above are incorporated herein as though fully set forth at length.

109.    The transfers made to KMR, Riesner and Justis were made on or within four years before the date of filing of the Petition.

110.    The transfers made to KMR, Riesner and Justis were transferred or incurred with actual intent to hinder, delay or defraud any entity to which NHI was or became indebted to on or after the date that such transfers were made.

111.    The transfers made to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers.

112.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

21

113.    To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

114.    WHEREFORE, NHI respectfully requests judgment against KMR, Riesner and Justis:

    (a)    declaring that the transfer(s) be set aside and declared void;

    (b)    entering judgment in favor of the Trustee and against Defendants KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

    (c)    ordering that the Defendants KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

    (d)    ordering that any claims which the Defendants KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

    (e)    granting Plaintiff NHI such other and further relief as may be just and appropriate.

## COUNT IX
### NHI v. KMR, Riesner and Justis
### Fraudulent Conveyance

115.    The allegations set forth in paragraphs 1 through 114 above are incorporated herein as though fully set forth at length.

116.    The transfers made to KMR, Riesner and Justis as alleged above were made on or within four (4) years before the date of filing of the Petition.

22

117.    The transfers made to KMR, Riesner and Justis were made for less than reasonably equivalent value in exchange for such transfers.

118.    The transfers made to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers.

119.    The transfers made to KMR, Riesner and Justis were not charitable contributions as defined in 11 U.S.C. § 548(d)(3).

120.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of either Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

121.    To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

122.    WHEREFORE, Plaintiff NHI respectfully requests judgment against the Defendants:

(a)    declaring that the transfer(s) be set aside and declared void;

(b)    entering judgment in favor of the Trustee and against the Defendants KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

(c)    ordering that the Defendants KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

23

**A00023**

(d)    ordering that any claims which the Defendants KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

(e)    granting Plaintiff NHI such other and further relief as may be just and appropriate.

**COUNT X**
**NHI v. KMR, Riesner and Justis**
**Fraudulent Conveyance**

123.    The allegations set forth in paragraphs 1 through 122 above are incorporated herein as though fully set forth at length.

124.    The transfers made to KMR, Riesner and Justis were made on or within four years before the date of filing of the Petition.

125.    The transfers made to KMR, Riesner and Justis were made for less than reasonably equivalent value in exchange for such transfers.

126.    NHI was engaged in a business or a transaction or was about to engage in a business or a transaction for which any property remaining with NHI was an unreasonably small capital.

127.    The transfers made to KMR, Riesner and Justis were not charitable contributions as defined in 11 U.S.C. § 548(d)(3).

128.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

A00024

129. To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

130. WHEREFORE, Plaintiff NHI respectfully requests judgment against the Defendants:

    (a)    declaring that the transfer(s) be set aside and declared void;

    (b)    entering judgment in favor of the Trustee and against the Defendants KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

    (c)    ordering that the Defendants KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

    (d)    ordering that any claims which the Defendants KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

    (e)    granting Plaintiff NHI such other and further relief as may be just and appropriate.

**COUNT XI**
**NHI v. KMR, Riesner and Justis**
**Fraudulent Conveyance**

131. The allegations set forth in paragraphs 1 through 130 above are incorporated herein as though fully set forth at length.

132. The transfers from NHI to KMR, Riesner and Justis were made on or within four years before the date of filing of the Petition.

25

133.    The transfers from NHI to KMR, Riesner and Justis were made for less than reasonably equivalent value in exchange for such transfers.

134.    The transfers from NHI to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers.

135.    The transfers from NHI to KMR, Riesner and Justis were made while NHI intended to incur debts beyond its ability to pay as such debt matured.

136.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

137.    The transfers from NHI to KMR, Riesner and Justis are not a charitable contribution as defined in 11 U.S.C. § 548(d)(3).

138.    To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

139.    WHEREFORE, NHI respectfully requests judgment against the Defendants KMR, Riesner and Justis:

      (a)    declaring that the transfer(s) be set aside and declared void;

      (b)    entering judgment in favor of NHI and against the Defendants KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

      (c)    ordering that the Defendants KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

26

(d)    ordering that any claims which the Defendants KMR, Riesner and Justis

may hold against NHI be disallowed until such transfer(s) are surrendered

in accordance with Section 502(d) of the Bankruptcy Code; and

(e)    granting Plaintiff such other and further relief as may be just and

appropriate.

### COUNT XII
### NHI v. KMR, Riesner and Justis
### Avoidance of Preferences, 11 U.S.C. § 547

140.    The allegations set forth in paragraphs 1 through 139 above are incorporated

herein as though fully set forth at length.

141.    During the one year period prior to the Petition Date (hereinafter the "Insider

Preference Period"), KMR, Riesner and Justis received from NHI one or more transfers by

check, wire transfer, or their equivalent (the "Transfers"), in the amounts and on or before the

clear dates identified in Exhibit "B", attached hereto.

142.    Each Transfer identified in Exhibit B hereto was directly to or for the benefit of

KMR, Riesner and Justis.

143.    KMR, Riesner and Justis were creditors of NHI at the time of the Transfers.  At

the time of the Transfers, KMR, Riesner and Justis asserted a right to payment on account of an

obligation owed to KMR, Riesner and Justis by NHI.

144.    The Transfers were to or for the benefit of creditors who were insiders within the

meaning of 11 U.S.C. § 547(b)(1).

145.    The Transfers were made for or on account of an alleged antecedent debt owed by

NHI because the Transfers were made on account of an alleged debt before the Transfers were

made within the meaning of 11 U.S.C. § 101(2).

27

146.    NHI was insolvent throughout the Insider Preference Period.

147.    As a result of the Transfers, KMR, Riesner and Justis received more than they would have received if: (i) NHI's case was a case under chapter 7 of Title 11; (ii) the Transfers had not been made; and (iii) KMR, Riesner and Justis received payment on their debts under the provisions of Title 11.

148.    NHI is entitled to avoid the Transfers pursuant to 11 U.S.C. § 547(b) and to recover for the benefit of its estate from KMR, Riesner and Justis under Section 550 of the Bankruptcy Code all Transfers to or for the benefit of KMR, Riesner and Justis or the aggregate value thereof.

149.    WHEREFORE, Plaintiff NHI prays for entry of judgment in its favor and against the Defendants KMR, Riesner and Justis:

    (a)    avoiding each of the Transfers set forth in Exhibit B;

    (b)    awarding NHI a judgment in an amount against KMR, Riesner and Justis equal to the aggregate value of the Transfers to KMR, Riesner and Justis and directing KMR, Riesner and Justis forthwith to return the amount awarded to NHI;

    (c)    providing that any and all claims against NHI scheduled or filed in this case by KMR, Riesner and Justis shall be disallowed in full if KMR, Riesner and Justis fail or refuse to return to NHI the amount awarded;

    (d)    awarding NHI interest on each amount for which judgment is entered at the maximum legal rate, from the initial date of this Complaint to the date judgment is entered; and, until the date the judgment is paid in full;

    (e)    awarding costs incurred in this suit; and

A00028

(f)    awarding any such other relief as this Court may deem necessary and
proper.


                                        PHILLIPS, GOLDMAN & SPENCE, P.A.



                                        *Stephen W. Spence. by JCP*
                                        STEPHEN W. SPENCE, ESQUIRE (#2033)
                                        1200 North Broom Street
                                        Wilmington, DE 19806
                                        (302) 655-4200
                                        (302) 655-4210
                                        Counsel to NHI, Inc.

                                        And

                                        LAMB McERLANE PC
                                        James C. Sargent, Jr., Esquire
                                        Pa. Supreme Court ID #28642
                                        24 East Market Street
                                        Post Office Box 565
                                        West Chester, PA 19381-0565
                                        (610) 430-8000
                                        Proposed Co-counsel to NHI, Inc.


Date:  February 27, 2004


                                        29

# EXHIBIT "A"

A00030

**KMR MANAGEMENT**

## CONSULTING AGREEMENT

Nanticoke Homes, Inc., Pawnee Homes, Inc., Shawnee Homes Inc. and John Marvine, Jr., Chairman (hereinafter referred to as "Nanticoke") agrees to enter into the Consulting Agreement (hereinafter referred to as the "Agreement") with KMR Management, Inc. and Waring S. Justis, Jr., (hereinafter referred to as "Consultant") effective October 19, 2000.

The Consultant shall provide services, including but not limited to statistical analysis, management evaluation, asset evaluation, and banking relations directed to effect an improvement in the operating structure and content of Nanticoke. Consultant shall have access to all of the books and records of Nanticoke and shall be in communication with whatever personnel it deems necessary to structure a proper business plan, cash flow projection and generation of reports for the secured lender to in develop a plan for the continuity of the business of Nanticoke. The Consultant shall use its best efforts to cause a change in operation and conduct of the business and to structure the business to profitable operation. The Consultant shall have the prerogative of hiring and/or discharging personnel in the implementation of the business plan. In its activities the Consultant shall advise and consent with the Board of Directors in the implementation of the business plan and shall be held harmless from any damages other than damages of fraud or illegal activity.

The Consultant shall maintain communication with the Secured Lender and shall be permitted to communicate with the Secured Lender for the purpose of funding the ongoing renovation of the business. The subject of such communication shall be made known to Nanticoke.

The Consultant shall use the following personnel in the initial stages of the business plan and shall be compensated as follows:

| | |
|---|---|
| Waring S. Justis, Jr., Regional Vice President; | $150.00 per hour plus bona fide business expense |
| Roman Fedirka, Senior Associate | $150.00 per hour plus bona fide business expense |
| Robert Riesner, President | $200.00 per hour plus bona fide business expense |

The Consultant reserves the right to call upon additional resources of KMR Management, Inc. as needed, upon identification of the cost of such additions. Consultants' fees shall be submitted on a weekly schedule and drawn against the initial retainer of $10,000.00, which retainer is payable upon execution of this Agreement. The retainer shall be replenished each week in order to service the agreed upon consulting fees.

The Agreement shall remain in full force and effect and shall be terminated only by written notice provided thirty (30) days in advance of termination by either party.

1

A00031

The Agreement shall be binding upon, and shall inure to the benefit of Consultant and Nanticoke and their respective heirs, personal and legal representatives, successors and assigns.

It is understood and agreed that the interpretation of this Agreement or any disputes pertaining to this Agreement, shall at all times and in all respects be governed by the laws of the State of Maryland.

This Agreement represents the full understanding between the parties and no change or modification hereof shall be valid or binding unless the same is in writing and signed by the party against whom such waiver is sought to be enforced; moreover, no valid waiver of any provision of this Agreement at any time shall be deemed a waiver of any other provision of this Agreement at such time or will be deemed a valid waiver of such provision at any other time.

The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of the provisions hereof shall not affect the validity and enforceability of the other provisions hereof.

Any notice required to be given hereunder shall be sufficient if in writing, and sent by hand delivery or certified or registered mail (return receipt requested and first class postage prepaid), to the following parties:

| | |
|---|---|
| Waring S. Justis, Jr. | Mr. John Mervine, Jr. |
| Regional Vice President | Chairman |
| KMR Management, Inc. | Nanticoke Homes, Inc. |
| 1007 Cold Spring Road | P. O. Box F |
| Baltimore, MD 21220.4425 | Greenwood, DE 19950 |

IN WITNESS HEREOF, the parties hereto have duly executed this Agreement effective for all purposes and in all respects as of the day and year first above written.

KMR Management, Inc. by                    Nanticoke Homes, Inc. by

Waring S. Justis, Jr., Regional Vice President        John Mervine, Jr., Chairman

Date 10/25/0?                              Date 10/25/2570

2



November 12, 2001
Executive Committee
Nanticoke Homes, Inc.
PO Box F
Greenwood DE 19950

To: The Executive Committee of the Board of Directors of Nanticoke Homes, Inc:

Effective November 12, 2001, Nanticoke Homes, Inc. and its subsidiaries, divisions and associated Companies, ("Client") has proposed, and KMR Management, Inc. ("KMR") has accepted, an engagement to be the consultant to Client offering the following services:

KMR will perform the duties of Chief Executive Officer and Chief Operating Officer of Client subject to the terms and conditions of this agreement.
Justis shall perform the usual and customary duties of the CEO/COO and shall have the customary rights of this position including but not limited to authority over financial operations, production facilities, selling and marketing, and general administration and human resources.
Compensation for professional services rendered by KMR shall be based upon billing at the hourly rate(s) as indicated below, plus reimbursement for bona fide business expense. Bills will be rendered weekly with payment required upon presentation of Time and Expense reports.

Hourly Rates:

| | | |
|---|---|---|
| CEO and COO | Waring Justis | Billing rate $150 |
| per hour | | |

Additional staff, at rates to be determined by agreement between Client and KMR, will be provided upon approval of Client and to the extent a need for additional staff is determined to exist.

Client acknowledges that KMR is being engaged to exercise its judgment in making decisions and acting as CEO and COO of Client. KMR will not be held liable for errors in judgment.

Client agrees to indemnify, hold harmless, and defend KMR, its affiliated entities, directors, officers, employees and agents, including without limitation Waring Justis, upon demand, to the full extent lawful, from and

A00033

against any and all losses, actions, claims, damages, liabilities, or costs, including reasonable legal fees and costs, incurred directly or indirectly, caused by, relating to, based upon, or arising out of KMR's performance of its services. Client shall have no duty to indemnify or hold harmless KMR for any loss, action, claim, or damage that is found in a final judgement by a court of competent jurisdiction to have resulted from the gross negligence, willful misconduct, or unlawful activities of KMR.

KMR shall not be liable to Client other than for gross negligence, willful misconduct or unlawful activities. Client agrees that any recovery from KMR, to the extent not otherwise limited, indemnified or held harmless, is shall not exceed the amount of fees paid to KMR.

The agreement of Client to indemnify and hold KMR harmless, and to the limit on KMR's liability, shall survive the termination of KMR's duties as a consultant.

This agreement shall inure to the benefit of and be binding upon the parties and their respective administrators, assigns, heirs, and successors.

Sincerely,

KMR Management, Inc. by Robert Riesner, President

Accepted this 12-th day of November, 2001:

ATTEST:

NANTICOKE HOMES, INC.

By William H Mervine
Vice President and
Member of the
Executive Committee

A00034



Ejecutive Quarters

2205 Computer Ave.

Suite G-30

Willow Grove,

PA 19090

Tel: 215.830.1369

Fax: 215.657.3170

November 23, 2001
John "Moky" Mervine, Jr.
Nanticoke Homes, Inc
11582 Sussex Highway
Greenwood, DE 19950

Dear Moky:

Effective October 19, 2000, Nanticoke Homes, Inc (Client) proposed, and KMR Management, Inc. (KMR) has accepted an engagement to be the consultant to Client offering the services outlined in the Engagement Letter of that date.

Compensation for professional services rendered by KMR shall be based upon billing at the rates as indicated below, plus reimbursement for bona fide business expense. Staff for the engagement will be based upon KMR's judgment of need and Client's approval. Bills will be rendered weekly, with payment required upon presentation, including reimbursement for bona fide business expense.

| Rate schedule | | |
|---|---|---|
| Project Leader | Waring Justis, Jr | $150 per hour |
| Staff | Roman Fedirka | $150 per hour |
| | John Devlin | $150 per hour |
| | Michael Fodel | $120 per hour |
| KMR Oversight | Robert Riessner | $200 per hour |

Client agrees to indemnify, hold harmless, and defend KMR, its affiliated entities, directors, officers, employees and agents, upon demand, to the full extent lawful and from time to time, from and against any and all losses, actions, claims, damages, liabilities, or costs, including reasonable legal fees and costs, incurred directly or indirectly, caused by, relating to, based upon, or arising out of KMR performing its services. Client shall have no duty to indemnify or hold harmless KMR for any loss, action, claim, or damage which is found in a final judgment by a court of competent jurisdiction to have resulted from the gross negligence, willful misconduct, or unlawful activities of KMR.

KMR will not be held liable for errors in judgment.

Client agrees that KMR's liability to it to the extent not otherwise limited, indemnified or held harmless, is limited to the amount of fees paid by Client to KMR.

This agreement of Client to indemnify and hold harmless shall survive the termination

A00035

**KMR MANAGEMENT**

of KMR's duties as a consultant.

This agreement shall inure to the benefit of and be binding upon the parties and their respective administrator, assigns, heirs, and successors.

Sincerely

KMR Management, Inc

By: Robert Riesner, President

Executive Quarters

2300 Computer Ave.

Suite G-30

Willow Grove,

PA 19090

Tel: 215.637.3369

Fax: 215.637.7170

Accepted

Nanticoke Homes Inc.

By John Mervine, Jr.

November 23, 2001

A00036

# EXHIBIT "B"

A00037

ATTORNEY WORK PRODUCT

Nanticoke Homes, Inc
Preference Analysis

| Rank | Company | Account | Vendor | Pmt Type | Check Number | Check Amount | Check Date | Invoice Amount | Invoice Date | Invoice Number | Invoice Terms | Clear Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | KMR Management | | | 50,000.00 | 03/08/01 | | | | | |
| | | | KMR Management | | | 50,000.00 | 03/16/01 | | | | | |
| | | | KMR Management | | | 50,000.00 | 03/22/01 | | | | | |
| | | | KMR Management | | | 50,000.00 | 03/29/01 | | | | | |
| | | | KMR Management | | | 50,000.00 | 04/05/01 | | | | | |
| | | | KMR Management | | | 35,000.00 | 04/12/01 | | | | | |
| | | | KMR Management | | | 30,000.00 | 04/20/01 | | | | | |
| | | | KMR Management | | | 30,000.00 | 04/27/01 | | | | | |
| | | | KMR Management | | | 30,000.00 | 05/04/01 | | | | | |
| | | | KMR Management | | | 30,144.00 | 05/11/01 | | | | | |
| | | | KMR Management | | | 25,000.00 | 05/17/01 | | | | | |
| | | | KMR Management | | | 30,000.00 | 05/25/01 | | | | | |
| | | | KMR Management | | | 35,000.00 | 05/31/01 | | | | | |
| | | | KMR Management | | | 25,000.00 | 06/08/01 | | | | | |
| | | | KMR Management | | | 25,000.00 | 06/15/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 06/21/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 06/27/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 07/05/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 07/13/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 07/20/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 07/27/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 08/06/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 08/10/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 08/17/01 | | | | | |
| | | | KMR Management | | | 25,000.00 | 08/27/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 08/31/01 | | | | | |
| | | | KMR Management | | | 25,000.00 | 09/06/01 | | | | | |
| | | | KMR Management | | | 25,000.00 | 09/13/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 09/20/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 09/27/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 10/05/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 10/12/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 10/19/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 10/26/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 11/05/01 | | | | | |
| | | | KMR Management | | | 20,000.00 | 11/13/01 | | | | | |
| 3 | Nanticoke | 6514774 | KMR Management | Check | 25032 | 5,000.00 | 11/27/01 | 5,000.00 | 04/15/01 | | | 12/03/01 |
| 3 | Nanticoke | 6514774 | KMR Management | Check | 25033 | 5,000.00 | 11/27/01 | 5,000.00 | 04/15/01 | | | 12/04/01 |
| 3 | Nanticoke | 6514774 | KMR Management | Check | 25034 | 5,000.00 | 11/27/01 | 5,000.00 | 04/15/01 | | | 12/05/01 |
| 3 | Nanticoke | 6514774 | KMR Management | Check | 25035 | 5,000.00 | 11/27/01 | 5,000.00 | 04/15/01 | | | 12/06/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8727 | 5,000.00 | 12/11/01 | 5,000.00 | | | | 12/14/01 |
| 3 | Shawnee | 6514804 | KMR??? | Check | 8728 | 5,000.00 | 12/11/01 | 5,000.00 | | | | 12/17/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8729 | 5,000.00 | 12/11/01 | 5,000.00 | | | | 12/17/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8730 | 5,000.00 | 12/11/01 | 5,000.00 | | | | 12/17/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8731 | 5,000.00 | 12/11/01 | 5,000.00 | | | | 12/19/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8732 | 5,000.00 | 12/11/01 | 5,000.00 | | | | 12/19/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8734 | 5,000.00 | 12/11/01 | 5,000.00 | | | | 12/21/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8735 | 5,000.00 | 12/11/01 | 5,000.00 | | | | 12/24/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8807 | 5,000.00 | 12/13/01 | 5,000.00 | | | | 12/24/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8808 | 5,000.00 | 12/13/01 | 5,000.00 | | | | 12/24/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8809 | 5,000.00 | 12/13/01 | 5,000.00 | | | | 12/24/01 |
| 3 | Shawnee | 6514804 | KMR Management | Check | 8810 | 5,000.00 | 12/13/01 | 5,000.00 | | | | 12/24/01 |
| | | | | | | 1,060,144.00 | | | | | | |

Note: Total of payments listed on SOFA Question 3(b) was $1,005,144. Unknown difference of $55,000.

A00038

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: : 

NHI, INC., :     Case No. 02-10651 (PJW)

_____ Debtor. _____ :     Chapter 11

NHI, INC., :

         Plaintiff :     Adversary No. 04-52879

         :

v. :

FLEETBOSTON FINANCIAL :
CORPORATION, KMR MANAGEMENT, :
INC., ROBERT RIESNER and :
WARING S. JUSTIS, JR., :

         Defendants. :

### MOTION TO DISMISS BY DEFENDANT, FLEETBOSTON FINANCIAL CORPORATION

The Defendant, FleetBoston Financial Corporation ("Fleet"), by and through its counsel,

Edwards & Angell LLP, hereby moves to dismiss the Complaint (Docket No. 1) of the Plaintiff,

NHI, Inc. ("NHI") pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, as

made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy

Procedure. A memorandum in support of this motion is attached hereto and incorporated herein

by reference.

                          FLEETBOSTON FINANCIAL CORPORATION
                          By their attorneys,

Dated: June 1, 2004          /s/ Stuart M. Brown
                          Stuart M. Brown, Esquire (#4050)
                          EDWARDS & ANGELL, LLP
                          919 N. Market Street
                          Wilmington, DE 19801
                          302.777.7770
                          302.777.7263 - facsimile

Docket# 12
Date: 6|1|04

A00039

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                     :
                                           :        Case No. 02-10651 (PJW)
NHI, INC.,                                 :
                                           :        Chapter 11
                    Debtor.                :
_____          :
                                           :
NHI, INC.,                                 :
                                           :
                    Plaintiff              :        Adversary No. 04-52879
                                           :
v.                                         :
                                           :
FLEETBOSTON FINANCIAL                      :
CORPORATION, KMR MANAGEMENT,               :
INC., ROBERT RIESNER and                   :
WARING S. JUSTIS, JR.,                     :
                                           :
                    Defendants.            :

### MEMORANDUM OF LAW IN SUPPORT OF THE
### MOTION TO DISMISS BY DEFENDANT, FLEETBOSTON
### FINANCIAL CORPORATION

### I.    INTRODUCTION

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, as

made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy

Procedure, the Defendant, FleetBoston Financial Corporation ("Fleet") by and through its

counsel, Edwards & Angell LLP, respectfully and timely[1] submits this Memorandum Of

Law in Support of its Motion to Dismiss the Complaint. For all of the reasons set forth

below and in the Affidavit of Stuart M. Brown, filed contemporaneously herewith, the

Plaintiff, NHI, Inc.'s ("NHI") claims against Fleet should be dismissed with prejudice.

---

[1]   Plaintiff and Defendant FleetBoston Financial Corporation stipulated and agreed to service of the
Complaint and that Fleet's response to the Complaint would be due May 31, 2004.

**A00040**

## II.    FACTS[2]

Fleet is a corporation organized under the laws of the State of Rhode Island. (Complaint, ¶ 3). Fleet is a successor in interest to Progress Financial Corporation ("Progress"). Progress was merged with and into Fleet effective as of January 30, 2004. Defendant KMR Management, Inc. ("KMR") was a wholly-owned subsidiary of Progress. (Id., ¶ 3). KMR is a corporation subsisting under the laws of the Commonwealth of Pennsylvania. (Id., ¶ 2). NHI acknowledges that its inclusion of Fleet as a Defendant in the instant proceeding is for the sole purpose of satisfying any judgment against KMR in the event KMR is without assets "under a theory of piercing the corporate veil." (Id., ¶ 3). Although the Complaint seeks to include Fleet in all of its allegations, the Complaint nevertheless contains no information or facts about the relationship or interactions of Fleet or Progress with the other Defendants.

The allegations that form the basis for NHI's claims occurred from October 2000 through January 2002. (Id., ¶¶ 8 through 49). On or about January 6, 2000, the Defendant, KMR was merged with and into Progress Asset Management Company, which is a wholly-owned subsidiary of Progress and which changed its name to KMR Management. (Affidavit Of Stuart Brown at ¶ 3, Ex.A).[3] On or about August 28, 2003, Fleet acquired Progress. (Id. at ¶ 4, Ex.B). The Complaint incorporates Fleet into all of the allegations against KMR by referring to both entities under the name, "KMR". (Id., ¶ 3).

---

[2]  For the purposes of this memorandum of law, and in order to comply with the requirements of Rule 12(b)(6), Fleet will assume that the allegations in the Complaint are true.
[3]  In fact, Progress was probably the proper party to name under Rule 20 as a Defendant instead of Fleet given the timing of the allegations in the Complaint and the relationship between KMR and Progress at that time.

- 2 -

BOS_447741_1/MCORMIER

A00041

Among other things the Complaint alleges against all of the Defendants claims of fraud (Count V), fraudulent transfer under 11 U.S.C. §§ 544(b) and 548 (Count VIII), and fraudulent conveyance (Counts IX through XI).

## IV.    ARGUMENT

### A.    Standard of Law

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6) and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, this Court must accept as true all of the allegations pled in the complaint and view the facts in the pleadings and all reasonable inferences in favor of the Debtor, the non-moving party. *See Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir. 1991); *BP Amoco Chem. Co. v. Sun Oil Co.,* 166 F. Supp. 2d 984, 989 (D. Del. 2001). This Court may dismiss a complaint for failure to state a claim only when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the Complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

In order to comply with Fed. R. Civ. P. 9(b) and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, a plaintiff must plead fraud with particularity, meaning the plaintiff must allege specific facts sufficient to show the circumstances of the alleged fraud "in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *See Lum v. Bank Of America,* 361 F.3d 217, 223-24 (3d Cir. 2004). As to Fleet, NHI has completely failed to plead any facts, let alone facts with that level of specificity.

- 3 -

A00042

B.    <u>NHI Has Not Alleged Facts Sufficient to State A Claim Against Fleet.</u>

NHI's claim must be dismissed as to Fleet because it has not alleged facts sufficient to state a claim against Fleet. As a threshold matter, Fleet had no involvement with the affairs of KMR until over eighteen months *after* all of the conduct contained in the Complaint had concluded. Moreover, NHI does not allege facts sufficient to pierce the corporate veil between KMR and Progress. Finally, even if NHI were able to overcome those failings, they have not advanced any set of facts against Fleet that would satisfy the pleading requirements of Rule 9(b).

1.    <u>The Complaint Does Not Allege Any Facts Which Could Implicate Fleet In The Allegations In The Complaint.</u>

The Complaint alleges that the actions that form the basis of NHI's claims took place from October 2000 through January 2002. (Complaint at ¶¶8 through 49). On or about January 6, 2000, Progress Asset Management acquired KMR. (Brown Aff. at ¶3, Ex. A). Four years later on January 30, 2004 – more than 24 months *after* the end date of the allegations in the Complaint – Progress merged with and into Fleet. (Id. at ¶4, Ex. B).

Regardless of whatever successor liability Fleet might have for the actions of Progress, it cannot have any direct liability for actions taken by another company, Progress Asset Management or KMR with which it had no involvement at the time.

2.    <u>The Complaint Does Not Allege Facts Sufficient To Pierce The Corporate Veil.</u>

Perhaps realizing that its claims against Fleet are weak because it was a complete stranger to the allegations in the Complaint, NHI explains that it named Fleet as a Defendant for the sole purpose of satisfying any judgment against KMR in the event KMR is without assets "under a theory of piercing the corporate veil." (Complaint, ¶ 3). That

- 4 -

BOS_447741_1/MCORMIER

A00043

strategy must fail, because the Complaint contains no information or facts about the relationship or interactions of Waring Justis ("Justis") or Robert Riesner ("Reisner") with KMR, or KMR's relationship with Progress or its successor Fleet.

It is only the exceptional case where a court will disregard the corporate form and pierce the corporate veil. *See Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D. Del. 1989); *Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1297, 1304-1305 (D. Del. 1990). To pierce the corporate veil under Delaware law, a plaintiff must show (1) that the parent and the subsidiary operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2nd Cir. 1995); *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990); *In re Foxmeyer Corp.*, 290 B.R. 229, 235 (Bankr. D. Del. 2003). The requisite injustice or unfairness is not simple in nature, but rather something similar in nature to fraud or sham. *See In re Mobil Oil Corp.*, 718 F. Supp. at 269; *In re Foxmeyer*, 290 B.R. at 236. The party attempting to pierce the corporate veil under Delaware law must demonstrate that the fraud or similar injustice, in particular, "be found in the defendants' use of the corporate form." *See In re Mobil Oil Corp.*, 718 F. Supp. at 269; *see also Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("Piercing the corporate veil ... 'requires that the corporate structure cause fraud or similar injustice'"); *Sears*, 744 F. Supp. at 1304-1305; *In re Foxmeyer*, 290 B.R. at 236.

A court shall only pierce a corporate veil "in order to prevent fraud, illegality, or injustice," or the adverse effects thereof. *See United States v. Del Campo Baking Mfg. Co.*, 345 F. Supp. 1371, 1378 (D. Del. 1972); *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1521 (3rd Cir. 1994); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456

- 5 -

BOS_447741_1/MCORMIER

A00044

F. Supp. 831, 839 (D. Del. 1978) ("subsidiary's separate existence will be disregarded only when this is in the interest of justice, e.g., when it is necessary to avoid fraud or inequity"). It is not sufficient to allege fraud of a subsidiary, a plaintiff must plead independent facts of the alleged fraudulent handling of the subsidiary by the parent. Underlying causes of action do not supply the necessary fraud or injustice to pierce the corporate veil because to hold otherwise would render the fraud or injustice element meaningless, and "would sanction bootstrapping." *See In re Mobil Oil*, 718 F. Supp. at 268; *see also Sears*, 744 F. Supp. at 1305 ("Thus, the alleged fraud or inequity must be distinct from the tort alleged in the complaint"); *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996) ("The 'injustice' must be more than the breach of contract alleged in the complaint").

NHI has not alleged any facts, specific or conclusory, demonstrating the relationship between KMR and Progress that would show fraud or any similar injustice, nor has NHI alleged any facts at all about the corporate structure of KMR, much less Fleet. NHI has alleged no facts that would lead this Court to take the exceptional step of piercing the corporate veil to an acquiring company that was a complete stranger to the events alleged in the Complaint. NHI has plead no facts from which the Court can make any inference sufficient to sustain a claim to pierce the corporate veil of KMR. The Complaint absolutely omits anything beyond the bald statement of the purpose of including Fleet in the proceeding: to wit, to satisfy any judgment KMR is incapable of satisfying. *See In re Crowthers McCall Pattern, Inc.*, 129 B.R. 992, 996 (S.D.N.Y. 1991) (complaint for recovery of fraudulent transfers dismissed as to parent corporation because complaint did not allege any facts about parent except fact that it was parent corporation); *In re Funquest*

- 6 -

BOS_447741_1/MCORMIER

A00045

*Vacations, Inc.,* 1998 Bankr. LEXIS 1285 *8 (Bankr. E.D.N.Y. June 16, 1998) (complaint dismissed because it did not allege "any factors that would support a decision to disregard the corporate form" to hold shareholder's estate liable).

 In order to grant the relief requested by NHI, therefore, this Court must pierce the veil of KMR for the activities of Defendants KMR, Justis and Riesner, to hold Fleet liable as successor to Progress, a corporation Fleet acquired only *after* the completion of all of the activities alleged in the Complaint. Moreover, the Court must take these extraordinary measures based on a Complaint deplete of any facts relating to a claim for piercing the veil or to establish fraud.

 **3. The Complaint Fails To Allege Fraud With The Requisite Specificity.**

 NHI alleges against all of the Defendants claims of fraud (Count V), fraudulent transfer under 11 U.S.C. §§ 544(b) and 548 (Count VIII), and fraudulent conveyance (Counts IX through XI). In order for these fraud and fraud-based claims to withstand a motion to dismiss under Rule 9(b), NHI must plead facts with a degree of particularity sufficient to show the specific circumstances of the alleged fraud. *See Lum,* 361 F.3d at 223-24. At a bare minimum, therefore, NHI must plead the "date, place or time" of Fleet's alleged fraud in the handling of the corporate separateness of the subsidiary corporations or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud," as well as who made any allegedly fraudulent representations and the general content of such representations. *See id.; Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984). As to Fleet, NHI has completely failed to plead its facts, let alone with anything close to that level of specificity and the claims must therefore be dismissed for two reasons.

BOS_447741_1/MCORMIER

A00046

First, as shown above, the Complaint does not make any allegations against Fleet specifically, including the failure to include any allegations containing the level of specificity required by the pleading requirements of Rule 9(b).   The only link between Fleet and the allegations in the Complaint is the corporate veil theory, which itself is devoid of specific allegations.

Second, and as described above, the actions of Defendants Riesner and Justis cannot be attributed to Fleet on any theory of derivative liability since NHI has failed to allege any facts to establish that first, KMR should be held liable for the alleged fraudulent conduct of Riesner and Justis and second, any level of corporate veil should be pierced. Moreover, the allegations against the other named Defendants do not satisfy the Rule 9(b) requirements.  The Complaint fails to specify the date, time, or place of any of the fraudulent actions complained of.  For instance, the Complaint baldly alleges:

> 32.    After assuming control of NHI, and unbeknownst to any of the Mervine family, KMR, Reisner, and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their fiduciary duties and obligations of loyalty.  KMR, Reisner and Justis made their primary priorities paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees  for KMR . . . (Complaint at ¶32)

> 33.    KMR, Reisner and Justis did not operate independently for the benefit of NHI.  Upon information and belief, KMR, Reisner, and Justis served at the direction and pleasure of Mercantile. (Id. at 33)

> . . .
> 37.    In 2001, Reisner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. (Id. 37).

Nowhere in those allegations, or anywhere else in the Complaint, is there any indication of the specific date and time that these allegations took place or the identity of the *Fleet*

- 8 -

BOS_447741_1/MCORMIER

A00047

representatives or agents that participated in these activities. Accordingly, even if there were sufficient facts to allow the corporate veil to be pierced between KMR and Fleet, that would not address NHI's failure to satisfy the Rule 9(b) pleading requirements as to KMR, Reisner, and Justis. For those reasons alone the Complaint should be dismissed.

### III.    CONCLUSION

For the reasons set forth in this memorandum and in the Affidavit Of Stuart Brown, the Defendant, FleetBoston Financial Corp. respectfully requests that the Court dismiss this proceeding with prejudice as to the Defendant FleetBoston Financial Corp. and to grant other such relief as is just and proper.

FLEETBOSTON FINANCIAL
CORPORATION
By their attorneys,


Dated:  June 1, 2004                  /s/ Stuart M. Brown
                                      Stuart M. Brown, Esquire (#4050)
                                      EDWARDS & ANGELL, LLP
                                      919 N. Market Street
                                      Wilmington, DE 19801
                                      302.777.7770
                                      302.777.7263 - facsimile

- 9 -

BOS_447741_1/MCORMIER

**A00048**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| _____ Debtor. _____ | : | Chapter 11 |
| NHI, INC., | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| v. | : | |
| FLEETBOSTON FINANCIAL CORPORATION, KMR MANAGEMENT, INC., ROBERT RIESNER and WARING S. JUSTIS, JR., | : | |
| Defendants. | : | |

### AFFIDAVIT OF STUART M. BROWN

I, Stuart M. Brown, depose and state in fact:

      1.     I have personal knowledge of the facts contained in this affidavit.

      2.     I am a Partner with the law firm Edwards & Angell, LLP and I represent the Defendant FleetBoston Financial Corporation in the above referenced case.

      3.     Attached hereto as Exhibit A are the entity details for KMR Management, Inc. from the Commonwealth of Pennsylvania's Department of State website showing that on January 6, 2000 Articles of Merger/Consolidation were filed in connection with Progress Asset Management Company and KMR Management, Inc. Progress Asset Management Company is a wholly owned subsidiary of Progress Financial Corporation and was renamed KMR Management, Inc.

**A00049**

4.    Attached hereto as Exhibit B are the Merger Certificate from the Secretary of State of the State of Delaware certifying the merger of Progress Financial Corporation with and into FleetBoston Financial Corporation and the Certificate of Merger or Consolidation of the Secretary of the State of Rhode Island and Providence Plantations certifying the merger of Progress Financial Corporation and FleetBoston Financial Corporation.

/s/ Stuart M. Brown
Stuart M. Brown

SWORN AND SUBSCRIBED BEFORE ME ON THIS 1st DAY OF JUNE, 2004.

/s/ Jamie L. Osburn

A Notary Public, State of Delaware
My Commission Expires July 14th, 2005

**JAMIE L. OSBURN**
**A Notary Public, State Of Delaware**
**My Commission Expires July 14th, 2005**

# EXHIBIT A

A00051



**PENNSYLVANIA**
**Department of State**

PA Keyword [ ] Go

Search [ ] Go
Advanced Search

DOS Homepage

## Entity Details

[?]

**Request**
* New Request

**Free Search**
* General Name Search
* Old Name Search
* Orphan Search

| Basic Entity Information | | | |
|---|---|---|---|
| Entity Type | PENNSYLVANIA BUSINESS CORPORATION | | |
| Entity Name | KMR MANAGEMENT, INC. | | |
| Entity No. | 2723196 | | |
| Filing Date | 11/07/1996 | Letter of Consent | No |
| Address | 4 SENTRY PKWY STE 200 | | |
| | BLUE BELL    Pennsylvania   USA  19422 | | |
| County | Montgomery | Jurisdiction | PA |
| Purpose | BROAD | | |
| Limited Authority | No | | |

| Corporate Officers | |
|---|---|
| Updated Date | 11/07/1996 |
| President | W KIRK WYCOFF |
| Secretary | ERIC J MORGAN |
| Treasurer | FREDERICK E SHEA |
| Vice-President | STEVE HOBMAN/TERRY J SOEFERA |

| Instrument History |
|---|

| Doc Type | Microfilm# | Micro# Start | Micro# End | Filing Date | Comments |
|---|---|---|---|---|---|
| ARTICLES MERGER/CONSOLIDATION-ALL TYPES | 200001 | 1359 | 1361 | 01/06/2000 | SRV NCFR: PROGRESS ASSET MANAGEMENT COMPANY |
| ARTICLES OF INCORPORATION-BUSINESS | 9673 | 1615 | 1615 | 11/07/1996 | |

Home | Site Map | View as Text Only



A00052

# EXHIBIT B

A00053

# Delaware

PAGE 1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"PROGRESS FINANCIAL CORPORATION", A DELAWARE CORPORATION,

WITH AND INTO "FLEETBOSTON FINANCIAL CORPORATION" UNDER THE NAME OF "FLEETBOSTON FINANCIAL CORPORATION", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF RHODE ISLAND, AS RECEIVED AND FILED IN THIS OFFICE THE THIRTIETH DAY OF JANUARY, A.D. 2004, AT 1:21 O'CLOCK P.M.



3759013   8100M

040066150

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 2901460

DATE: 01-30-04

A00054



STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
Office of the Secretary of State

Matthew A. Brown
Secretary of State

## CERTIFICATE OF MERGER OR CONSOLIDATION INTO

### FleetBoston Financial Corporation

I, MATTHEW A. BROWN, Secretary of State of the State of Rhode Island and Providence Plantations, hereby certify that duplicate originals of Articles of Merger of **FleetBoston Financial Corporation,**, a domestic corporation, and **Progress Financial Corporation,** a foreign corporation. Duly signed and verified pursuant to the applicable provisions of the Rhode Island General Laws, 1956, as amended, have been received in this office and are found to conform to law. The affixed is a duplicate original of the Articles of Merger or Consolidation.

WITNESS my hand and the seal of the State of Rhode Island and Providence Plantations on this 30th day of January, 2004.

*Matthew Brown*

**Secretary of State**

By _____*Jane Berthiaume*_____

A00055

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                      :

NHI, INC.,                                  :    Case No. 02-10651 (PJW)

                                            :

_____Debtor._____:    Chapter 11

NHI, INC.,                                  :

                         Plaintiff          :    Adversary No. 04-52879

                                            :

v.                                          :

FLEETBOSTON FINANCIAL                       :
CORPORATION, KMR MANAGEMENT,                :
INC., ROBERT RIESNER and                    :
WARING S. JUSTIS, JR.,                      :

                         Defendants.        :

## ORDER

     Upon consideration of the Complaint filed by the Debtor, NHI, Inc. and the Motion to

Dismiss filed by Defendant FleetBoston Financial Corporation filed in response thereto and any

opposition to the Motion to Dismiss filed by Plaintiff, it is hereby:

**ORDERED, ADJUDGED AND ADJUDGED** that:

    1.     The Motion to Dismiss by Defendant FleetBoston Financial Corporation is

GRANTED; and

    2.     The Complaint be and hereby is DISMISSED WITH PREJUDICE; and

**A00056**

3.      Defendant, Fleet Boston Financial Corporation shall file a bill of costs in connection with its Motion to Dismiss whereupon Plaintiff will remit to Fleet Boston Financial Corporation same within ten (10) business days of the docketing of the bill of costs.

Dated: June ___, 2004                          By the Court

                                               _____
                                               Honorable Peter J. Walsh
                                               United States Bankruptcy Judge

A00057

## CERTIFICATE OF SERVICE

I, Stuart M. Brown, certify that on this 1st day of June, 2004, I caused true and correct

copies of the Motion to Dismiss by Defendant, FleetBoston Financial Corporation,

Memorandum of Law in Support of the Motion to Dismiss by Defendant, FleetBoston Financial

Corporation, and Affidavit of Stuart M. Brown to be served on the following parties in the

manner indicated:

**VIA HAND-DELIVERY**
Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

**VIA U.S. FIRST-CLASS MAIL**
KMR Management, Inc.
4 Sentry Parkway
Blue Bell, PA 19422

Robert Riesner
KMR Management, Inc.
4 Sentry Parkway
Blue Bell, PA 19422

Waring Justis, Jr.
1007 Cold Spring Road
Baltimore, MD 21220-4425

/s/ Stuart M. Brown
Stuart M. Brown

**File a Motion:**

04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Brown, Stuart M. entered on 6/1/2004 at 11:07 AM EDT and filed on 6/1/2004

| | |
|---|---|
| **Case Name:** | NHI, Inc. v. Fleetboston Financial Corporation et al |
| **Case Number:** | 04-52879-PJW |
| **Document Number:** | 12 |

**Docket Text:**
Motion to Dismiss Adversary Proceeding Filed by Fleetboston Financial Corporation. (Attachments: # (1) Attachment Memorandum of Law in Support# (2) Attachment Affidavit of Stuart M. Brown# (3) Exhibit A to Affidavit# (4) Exhibit B to Affidavit# (5) Proposed Form of Order # (6) Certificate of Service) (Brown, Stuart)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**U:\Wilmington Bankruptcy\NHI\Mtn to Dismiss.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=6/1/2004] [FileNumber=2661015-0]
[199c1b67c8b649e37541abc24f74a8004272401725d1accdaed218f26eb917c4e1468
53e19a42776dc17a25aa1ee18b5e13a2f88876c075089a85978abcd6c9c]]
**Document description:**Attachment Memorandum of Law in Support
**Original filename:**U:\Wilmington Bankruptcy\NHI\Memo in Support of Mtn to Dismiss.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=6/1/2004] [FileNumber=2661015-1]
[166f4a86fe4325b1a002ea17406f932a98485f53eefa9536183c9e99095773d06277e
a8ec38eab1c75fe13ab55589e3fae0972c4c2ab4386ed3966532a515794]]
**Document description:**Attachment Affidavit of Stuart M. Brown
**Original filename:**U:\Wilmington Bankruptcy\NHI\Affidavit of Stuart M Brown.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=6/1/2004] [FileNumber=2661015-2]
[9d8035b3ec513c77acf4664c9456487103550531dc85382ac3dbbd6e29ddd5f24a5db
3567674ca28c8a8f74e74c6d5a4d2d5ef2d188bfa1ac9c08c0425f83abd]]
**Document description:**Exhibit A to Affidavit
**Original filename:**U:\Wilmington Bankruptcy\NHI\Exhibit A to Mtn to Dismis.pdf

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| | : | Chapter 11 |
| Debtor. | : | |
| _____ | : | |
| | : | |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| | : | |
| v. | : | |
| | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | |
| INC., ROBERT RIESNER and | : | |
| WARING S. JUSTIS, JR., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION TO DISMISS BY DEFENDANT, FLEETBOSTON
## FINANCIAL CORPORATION

### I.    INTRODUCTION

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, as

made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy

Procedure, the Defendant, FleetBoston Financial Corporation ("Fleet") by and through its

counsel, Edwards & Angell LLP, respectfully and timely[1] submits this Memorandum Of

Law in Support of its Motion to Dismiss the Complaint.  For all of the reasons set forth

below and in the Affidavit of Stuart M. Brown, filed contemporaneously herewith, the

Plaintiff, NHI, Inc.'s ("NHI") claims against Fleet should be dismissed with prejudice.

---

[1]  Plaintiff and Defendant FleetBoston Financial Corporation stipulated and agreed to service of the
Complaint and that Fleet's response to the Complaint would be due May 31, 2004.

Docket#  15
Date: 6/2/04

A00060

## II.   FACTS[2]

Fleet is a corporation organized under the laws of the State of Rhode Island. (Complaint, ¶ 3).  Fleet is a successor in interest to Progress Financial Corporation ("Progress").  Progress was merged with and into Fleet effective as of January 30, 2004. Defendant KMR Management, Inc. ("KMR") was a wholly-owned subsidiary of Progress. (Id., ¶ 3).  KMR is a corporation subsisting under the laws of the Commonwealth of Pennsylvania.  (Id., ¶ 2).  NHI acknowledges that its inclusion of Fleet as a Defendant in the instant proceeding is for the sole purpose of satisfying any judgment against KMR in the event KMR is without assets "under a theory of piercing the corporate veil."  (Id., ¶ 3). Although the Complaint seeks to include Fleet in all of its allegations, the Complaint nevertheless contains no information or facts about the relationship or interactions of Fleet or Progress with the other Defendants.

The allegations that form the basis for NHI's claims occurred from October 2000 through January 2002.  (Id., ¶¶ 8 through 49).  On or about January 6, 2000, the Defendant, KMR was merged with and into Progress Asset Management Company, which is a wholly-owned subsidiary of Progress and which changed its name to KMR Management. (Affidavit Of Stuart Brown at ¶ 3, Ex.A).[3]  On or about August 28, 2003, Fleet acquired Progress.  (Id. at ¶ 4, Ex.B).  The Complaint incorporates Fleet into all of the allegations against KMR by referring to both entities under the name, "KMR".  (Id., ¶ 3).

---

[2]  For the purposes of this memorandum of law, and in order to comply with the requirements of Rule 12(b)(6), Fleet will assume that the allegations in the Complaint are true.

[3]  In fact, Progress was probably the proper party to name under Rule 20 as a Defendant instead of Fleet given the timing of the allegations in the Complaint and the relationship between KMR and Progress at that time.

BOS_447741_1/MCORMIER

A00061

Among other things the Complaint alleges against all of the Defendants claims of

fraud (Count V), fraudulent transfer under 11 U.S.C. §§ 544(b) and 548 (Count VIII), and

fraudulent conveyance (Counts IX through XI).

## IV.     ARGUMENT

### A.     Standard of Law

In considering a motion to dismiss for failure to state a claim upon which relief can

be granted, pursuant to Fed. R. Civ. P. 12(b)(6) and Rule 7012(b) of the Federal Rules of

Bankruptcy Procedure, this Court must accept as true all of the allegations pled in the

complaint and view the facts in the pleadings and all reasonable inferences in favor of the

Debtor, the non-moving party. *See Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.

1991); *BP Amoco Chem. Co. v. Sun Oil Co.,* 166 F. Supp. 2d 984, 989 (D. Del. 2001).

This Court may dismiss a complaint for failure to state a claim only when it is clear that no

relief could be granted under any set of facts that could be proved consistent with the

allegations in the Complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 81 L. Ed.

2d 59, 104 S. Ct. 2229 (1984); *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

In order to comply with Fed. R. Civ. P. 9(b) and Rule 7012(b) of the Federal Rules

of Bankruptcy Procedure, a plaintiff must plead fraud with particularity, meaning the

plaintiff must allege specific facts sufficient to show the circumstances of the alleged fraud

"in order to place the defendants on notice of the precise misconduct with which they are

charged, and to safeguard defendants against spurious charges of immoral and fraudulent

behavior." *See Lum v. Bank Of America,* 361 F.3d 217, 223-24 (3d Cir. 2004). As to

Fleet, NHI has completely failed to plead any facts, let alone facts with that level of

specificity.

BOS_447741_1/MCORMIER

**A00062**

B.    **NHI Has Not Alleged Facts Sufficient to State A Claim Against Fleet.**

NHI's claim must be dismissed as to Fleet because it has not alleged facts sufficient to state a claim against Fleet.  As a threshold matter, Fleet had no involvement with the affairs of KMR until over eighteen months *after* all of the conduct contained in the Complaint had concluded.  Moreover, NHI does not allege facts sufficient to pierce the corporate veil between KMR and Progress.  Finally, even if NHI were able to overcome those failings, they have not advanced any set of facts against Fleet that would satisfy the pleading requirements of Rule 9(b).

1.    **The Complaint Does Not Allege Any Facts Which Could Implicate Fleet In The Allegations In The Complaint.**

The Complaint alleges that the actions that form the basis of NHI's claims took place from October 2000 through January 2002.  (Complaint at ¶¶8 through 49).  On or about January 6, 2000, Progress Asset Management acquired KMR.  (Brown Aff. at ¶3, Ex. A).  Four years later on January 30, 2004 – more than 24 months *after* the end date of the allegations in the Complaint – Progress merged with and into Fleet.  (Id. at ¶4, Ex. B).

Regardless of whatever successor liability Fleet might have for the actions of Progress, it cannot have any direct liability for actions taken by another company, Progress Asset Management or KMR with which it had no involvement at the time.

2.    **The Complaint Does Not Allege Facts Sufficient To Pierce The Corporate Veil.**

Perhaps realizing that its claims against Fleet are weak because it was a complete stranger to the allegations in the Complaint, NHI explains that it named Fleet as a Defendant for the sole purpose of satisfying any judgment against KMR in the event KMR is without assets "under a theory of piercing the corporate veil." (Complaint, ¶ 3).  That

- 4 -

BOS_447741_1/MCORMIER

**A00063**

strategy must fail, because the Complaint contains no information or facts about the relationship or interactions of Waring Justis ("Justis") or Robert Riesner ("Reisner") with KMR, or KMR's relationship with Progress or its successor Fleet.

It is only the exceptional case where a court will disregard the corporate form and pierce the corporate veil. *See Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260, 271 (D. Del. 1989); *Sears, Roebuck & Co. v. Sears,* 744 F. Supp. 1297, 1304-1305 (D. Del. 1990). To pierce the corporate veil under Delaware law, a plaintiff must show (1) that the parent and the subsidiary operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present. *See Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1457 (2nd Cir. 1995); *Harper v. Delaware Valley Broadcasters, Inc.,* 743 F. Supp. 1076, 1085 (D. Del. 1990); *In re Foxmeyer Corp.,* 290 B.R. 229, 235 (Bankr. D. Del. 2003). The requisite injustice or unfairness is not simple in nature, but rather something similar in nature to fraud or sham. *See In re Mobil Oil Corp.,* 718 F. Supp. at 269; *In re Foxmeyer,* 290 B.R. at 236. The party attempting to pierce the corporate veil under Delaware law must demonstrate that the fraud or similar injustice, in particular, "be found in the defendants' use of the corporate form." *See In re Mobil Oil Corp.,* 718 F. Supp. at 269; *see also Wallace v. Wood,* 752 A.2d 1175, 1184 (Del. Ch. 1999) ("Piercing the corporate veil ... 'requires that the corporate structure cause fraud or similar injustice'"); *Sears,* 744 F. Supp. at 1304-1305; *In re Foxmeyer,* 290 B.R. at 236.

A court shall only pierce a corporate veil "in order to prevent fraud, illegality, or injustice," or the adverse effects thereof. *See United States v. Del Campo Baking Mfg. Co.,* 345 F. Supp. 1371, 1378 (D. Del. 1972); *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1521 (3rd Cir. 1994); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.,* 456

BOS_447741_1/MCORMIER

**A00064**

F. Supp. 831, 839 (D. Del. 1978) ("subsidiary's separate existence will be disregarded only when this is in the interest of justice, e.g., when it is necessary to avoid fraud or inequity"). It is not sufficient to allege fraud of a subsidiary, a plaintiff must plead independent facts of the alleged fraudulent handling of the subsidiary by the parent.  Underlying causes of action do not supply the necessary fraud or injustice to pierce the corporate veil because to hold otherwise would render the fraud or injustice element meaningless, and "would sanction bootstrapping." *See In re Mobil Oil*, 718 F. Supp. at 268; *see also Sears*, 744 F. Supp. at 1305 ("Thus, the alleged fraud or inequity must be distinct from the tort alleged in the complaint"); *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996) ("The 'injustice' must be more than the breach of contract alleged in the complaint").

NHI has not alleged any facts, specific or conclusory, demonstrating the relationship between KMR and Progress that would show fraud or any similar injustice, nor has NHI alleged any facts at all about the corporate structure of KMR, much less Fleet. NHI has alleged no facts that would lead this Court to take the exceptional step of piercing the corporate veil to an acquiring company that was a complete stranger to the events alleged in the Complaint.  NHI has plead no facts from which the Court can make any inference sufficient to sustain a claim to pierce the corporate veil of KMR.  The Complaint absolutely omits anything beyond the bald statement of the purpose of including Fleet in the proceeding: to wit, to satisfy any judgment KMR is incapable of satisfying. *See In re Crowthers McCall Pattern, Inc.*, 129 B.R. 992, 996 (S.D.N.Y. 1991) (complaint for recovery of fraudulent transfers dismissed as to parent corporation because complaint did not allege any facts about parent except fact that it was parent corporation); *In re Funquest*

BOS_447741_1/MCORMIER

A00065

*Vacations, Inc.,* 1998 Bankr. LEXIS 1285 *8 (Bankr. E.D.N.Y. June 16, 1998) (complaint dismissed because it did not allege "any factors that would support a decision to disregard the corporate form" to hold shareholder's estate liable).

In order to grant the relief requested by NHI, therefore, this Court must pierce the veil of KMR for the activities of Defendants KMR, Justis and Riesner, to hold Fleet liable as successor to Progress, a corporation Fleet acquired only *after* the completion of all of the activities alleged in the Complaint. Moreover, the Court must take these extraordinary measures based on a Complaint deplete of any facts relating to a claim for piercing the veil or to establish fraud.

### 3. The Complaint Fails To Allege Fraud With The Requisite Specificity.

NHI alleges against all of the Defendants claims of fraud (Count V), fraudulent transfer under 11 U.S.C. §§ 544(b) and 548 (Count VIII), and fraudulent conveyance (Counts IX through XI). In order for these fraud and fraud-based claims to withstand a motion to dismiss under Rule 9(b), NHI must plead facts with a degree of particularity sufficient to show the specific circumstances of the alleged fraud. *See Lum,* 361 F.3d at 223-24. At a bare minimum, therefore, NHI must plead the "date, place or time" of Fleet's alleged fraud in the handling of the corporate separateness of the subsidiary corporations or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud," as well as who made any allegedly fraudulent representations and the general content of such representations. *See id.; Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984). As to Fleet, NHI has completely failed to plead its facts, let alone with anything close to that level of specificity and the claims must therefore be dismissed for two reasons.

- 7 -

First, as shown above, the Complaint does not make any allegations against Fleet specifically, including the failure to include any allegations containing the level of specificity required by the pleading requirements of Rule 9(b). The only link between Fleet and the allegations in the Complaint is the corporate veil theory, which itself is devoid of specific allegations.

Second, and as described above, the actions of Defendants Riesner and Justis cannot be attributed to Fleet on any theory of derivative liability since NHI has failed to allege any facts to establish that first, KMR should be held liable for the alleged fraudulent conduct of Riesner and Justis and second, any level of corporate veil should be pierced. Moreover, the allegations against the other named Defendants do not satisfy the Rule 9(b) requirements. The Complaint fails to specify the date, time, or place of any of the fraudulent actions complained of. For instance, the Complaint baldly alleges:

> 32. After assuming control of NHI, and unbeknownst to any of the Mervine family, KMR, Reisner, and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their fiduciary duties and obligations of loyalty. KMR, Reisner and Justis made their primary priorities paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for KMR . . . (Complaint at ¶32)

> 33. KMR, Reisner and Justis did not operate independently for the benefit of NHI. Upon information and belief, KMR, Reisner, and Justis served at the direction and pleasure of Mercantile. (Id. at 33)

> . . .

> 37. In 2001, Reisner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. (Id. 37).

Nowhere in those allegations, or anywhere else in the Complaint, is there any indication of the specific date and time that these allegations took place or the identity of the *Fleet*

- 8 -

BOS_447741_1/MCORMIER

representatives or agents that participated in these activities.  Accordingly, even if there

were sufficient facts to allow the corporate veil to be pierced between KMR and Fleet, that

would not address NHI's failure to satisfy the Rule 9(b) pleading requirements as to KMR,

Reisner, and Justis.  For those reasons alone the Complaint should be dismissed.

### III.    CONCLUSION

For the reasons set forth in this memorandum and in the Affidavit Of Stuart Brown,

the Defendant, FleetBoston Financial Corp. respectfully requests that the Court dismiss

this proceeding with prejudice as to the Defendant FleetBoston Financial Corp. and to

grant other such relief as is just and proper.

FLEETBOSTON FINANCIAL
CORPORATION
By their attorneys,

Dated:  June 1, 2004                          /s/ Stuart M. Brown
                                             Stuart M. Brown, Esquire (#4050)
                                             EDWARDS & ANGELL, LLP
                                             919 N. Market Street
                                             Wilmington, DE 19801
                                             302.777.7770
                                             302.777.7263 - facsimile

- 9 -                          BOS_447741_1/MCORMIER

**A00068**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| | : | |
| _____ Debtor. _____ | : | Chapter 11 |
| | : | |
| NHI, INC., | : | |
| | : | |
| · Plaintiff | : | Adversary No. 04-52879 |
| | : | |
| v. | : | |
| | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | |
| INC., ROBERT RIESNER and | : | |
| WARING S. JUSTIS, JR., | : | |
| | : | |
| Defendants. | : | |

**AFFIDAVIT OF STUART M. BROWN**

I, Stuart M. Brown, depose and state in fact:

1.    I have personal knowledge of the facts contained in this affidavit.

2.    I am a Partner with the law firm Edwards & Angell, LLP and I represent the Defendant FleetBoston Financial Corporation in the above referenced case.

3.    Attached hereto as Exhibit A are the entity details for KMR Management, Inc. from the Commonwealth of Pennsylvania's Department of State website showing that on January 6, 2000 Articles of Merger/Consolidation were filed in connection with Progress Asset Management Company and KMR Management, Inc.  Progress Asset Management Company is a wholly owned subsidiary of Progress Financial Corporation and was renamed KMR Management, Inc.