91.    KMR, Riesner and Justis, as consultants to NHI, owed a duty to NHI to act in the best interests of NHI and its shareholders and to engage in a course of conduct to place NHI into the position of operating as an ongoing, profitable concern.

92.    KMR, Riesner and Justis breached that duty to NHI and were grossly negligent in their efforts by failing to act in the best interests of NHI and were grossly negligent in their efforts to engage in a course of conduct to place NHI into the position of operating as an ongoing profitable concern by:

    a.   knowingly failing to pay employee wages, workers' compensation benefits and other health benefits;

    b.   knowingly failing to pay sales and use taxes;

    c.   knowingly delaying the payments to Mercantile until after additional penalties for late payment were assessed;

    d.   knowingly assuring payment of KMR's invoices over the payment of other expenses which would have enable NHI to continue in business;

    e.   knowingly issuing checks which would not clear;

    f.   knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy;

    g.   selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI;

20

A00145

h.  knowingly withholding health insurance premiums from the employees and failing to remit those payments to the health plan provider; and

i.  knowingly issuing checks that would not be honored by Mercantile and which were returned "NSF."

93.  The gross negligence of KMR, Riesner and Justis proximately caused NHI damages.

94.  Fleet is liable for the above referenced damages as successor in interest to Progress.

> Formatted: Bullets and Numbering

95.  WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, and any such other and further relief as justice requires.

**COUNT IV**

**NHI v. Fleet, KMR, Riesner and Justis**

**Breach of Fiduciary Duty**

96.  The allegations set forth in paragraphs 1 through 95 above are incorporated herein as though fully set forth at length.

> Formatted: Bullets and Numbering
> Deleted: 81

21

A00146

97.    NHI engaged KMR, Riesner and Justis as consultants to provide statistical analysis, management evaluation, asset evaluation and banking relations, and to perform the functions which a Chief Executive Officer and Chief Operating Officer would perform.

98.    As consultants, KMR, Riesner and Justis were placed in a position of special confidence and trust, requiring the exercise of utmost discretion as fiduciaries in the protection of the interests of NHI.

99.    In complete abrogation of their fiduciary responsibilities to NHI, KMR, Riesner and Justis intentionally, unlawfully and willfully acted in a fashion that served only the interests of Mercantile and their own self-interests, including but not limited to:

     a.    knowingly failing to pay employee wages, workers' compensation benefits and other health benefits;

     b.    knowingly failing to pay sales and use taxes;

     c.    knowingly delaying the payments to Mercantile until after additional penalties for late payment were assessed;

     d.    knowingly assuring payment of KMR's invoices over the payment of other expenses which would have enable NHI to continue in business;

     e.    knowingly issuing checks which would not clear;

     f.    knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy;

22

g. selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI;

h. knowingly withholding health insurance premiums from the employees and failing to remit those payments to the health plan provider; and

i. knowingly issuing checks that would not be honored by Mercantile and which were returned "NSF."

100.    The breaches by KMR, Riesner and Justis of their duties to NHI caused NHI damages.

101.    Fleet is liable for the above referenced damages as successor in interest to Progress.

> **Formatted: Bullets and Numbering**

102.    WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, and any such other and further relief as justice requires.

## VIII. COUNT V

### NHI v. Fleet, KMR, Riesner and Justis

### Fraud

103.    The allegations set forth in paragraphs 1 through 102 above are incorporated herein as though fully set forth at length.

> **Formatted: Bullets and Numbering**
> **Deleted: 87**

23

104.    On information and belief, KMR through Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around, as represented.

105.    KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply the NHI Board of Directors with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into an insolvent condition in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather that utilizing those assets to assist NHI's business operations.

106.    The NHI Board of Directors relied upon the representations of KMR, Riesner and Justis as to their skill and knowledge to their detriment.

107.    The conduct of KMR, Riesner and Justis was intentional and wrongful.

24

A00149

108. Fleet is liable for the above referenced conduct as successor in interest to Progress.

Formatted: Bullets and Numbering

109. WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, plus punitive damages, and any such other and further relief as justice requires.

**COUNT VI**

**NHI v. Fleet, KMR, Riesner and Justis**

**Waste of Corporate Assets**

110. The allegations set forth in paragraphs 1 through 109 above are incorporated herein as though fully set forth at length.

Formatted: Bullets and Numbering
Deleted: 93

111. On information and belief, KMR through Riesner and Justis engaged in a scheme to waste the assets of NHI to the point where NHI could only be liquidated for the benefit of Mercantile.

112. KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating

25

Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which have had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply NHI with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into bankruptcy in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather that utilizing those assets to assist NHI's business operations.

113.    The conduct of KMR, Riesner and Justis was intentional and wrongful.

114.    Fleet is liable for the above referenced conduct as successor in interest to Progress.

115.    WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, and any such other and further relief as justice requires.

## COUNT VII

### NHI v. Fleet, KMR, Riesner and Justis

#### Tortious Interference with Contract and Prospective Business Advantage

116.    The allegations set forth in paragraphs 1 through 115 above are incorporated herein as though fully set forth at length.

26

117.   At all times relevant to the instant case, NHI had contractual rights under all loans with Mercantile, and was ready, willing and able to institute, an actionable and meritorious lender liability claim against Mercantile.

118.   The conduct of KMR, Riesner and Justis, as set forth above, prejudiced NHI's ability to do business and made it impossible for NHI to maintain any semblance of equal bargaining power with Mercantile.

119.   As a direct cause of the conduct of KMR, Riesner and Justis, NHI's shareholders were compelled to provide to Mercantile personal guarantees of all of NHI's loans, secured by virtually all of their personal tangible assets.

120.   Accordingly, and as a direct result of the conduct of KMR, Riesner and Justis, NHI was placed in such a situation of economic duress and in such a disparate bargaining position that it was unable to protect its interests vis-à-vis Mercantile.

121.   Mercantile then was able, through threats against NHI's principals, to compel NHI to provide multiple general releases to Mercantile, foreclosing NHI's ability to enforce its rights under all of its loans or to institute an action against Mercantile for Mercantile's wrongful acts.

27

A00152

122.     The conduct of KMR, Riesner and Justis constitutes intentional interference with all loan agreements between NHI and Mercantile and interfered with NHI's prospective business advantage afforded through an action against Mercantile.

123.     The conduct of KMR, Riesner and Justis was intentional and wrongful, was done without justification and caused harm to NHI.

124.     Fleet is liable for the above referenced conduct as successor in interest to Progress.

*Formatted: Bullets and Numbering*

125.     WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, plus punitive damages, and any such other and further relief as justice requires.

## COUNT VIII

### NHI v. Fleet, KMR, Riesner and Justis

### Fraudulent Transfer, 11 U.S.C. §§ 544(b), 548

126.     The allegations set forth in paragraphs 1 through 125 above are incorporated herein as though fully set forth at length.

*Formatted: Bullets and Numbering*
*Deleted: 107*

127.     The transfers made to KMR, Riesner and Justis were made on or within four years before the date of filing of the Petition.

28

128.   The transfers made to KMR, Riesner and Justis were transferred or incurred with actual intent to hinder, delay or defraud any entity to which NHI was or became indebted to on or after the date that such transfers were made.

129.   The transfers made to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers.

130.   The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

131.   To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

132.   Fleet is liable for the above referenced transfers as successor in interest to Progress.

> Formatted: Bullets and Numbering

133.   WHEREFORE, NHI respectfully requests judgment against Fleet, KMR, Riesner and Justis:

   (a)    declaring that the transfer(s) be set aside and declared void;

29

(b)    entering judgment in favor of the Trustee and against Defendants <u>Fleet</u>, KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

(c)    ordering that the Defendants <u>Fleet,</u> KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

(d)    ordering that any claims which the Defendants <u>Fleet,</u> KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

(e)    granting Plaintiff NHI such other and further relief as may be just and appropriate.

<u>COUNT IX</u>

<u>NHI v. Fleet, KMR, Riesner and Justis</u>

<u>Fraudulent Conveyance</u>

134.   The allegations set forth in paragraphs 1 through 133 above are incorporated herein as though fully set forth at length.

> **Formatted:** Bullets and Numbering
> **Deleted:** 114

135.   The transfers made to KMR, Riesner and Justis as alleged above were made on or within four (4) years before the date of filing of the Petition.

30

A00155

136.    The transfers made to KMR, Riesner and Justis were made for less than reasonably equivalent value in exchange for such transfers.

137.    The transfers made to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers.

138.    The transfers made to KMR, Riesner and Justis were not charitable contributions as defined in 11 U.S.C. § 548(d)(3).

139.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of either Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

140.    To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

141.    Fleet is liable for the above referenced transfers as successor in interest to Progress.    Formatted: Bullets and Numbering

142.    WHEREFORE, Plaintiff NHI respectfully requests judgment against the Defendants:

31

(a)    declaring that the transfer(s) be set aside and declared void;

(b)    entering judgment in favor of the Trustee and against the Defendants
Fleet, KMR, Riesner and Justis in the amount of $1.9 million plus interest
and costs;

(c)    ordering that the Defendants Fleet, KMR, Riesner and Justis immediately
pay over the sum of $1.9 million to the Trustee in accordance with Section
550(a) of the Bankruptcy Code;

(d)    ordering that any claims which the Defendants Fleet, KMR, Riesner and
Justis may hold against NHI be disallowed until such transfer(s) are
surrendered in accordance with Section 502(d) of the Bankruptcy Code;
and

(e)    granting Plaintiff NHI such other and further relief as may be just and
appropriate.

## COUNT X

### NHI v. Fleet, KMR, Riesner and Justis

### Fraudulent Conveyance

143.    The allegations set forth in paragraphs 1 through 142 above are incorporated
herein as though fully set forth at length.

| Formatted: Bullets and Numbering |
| Deleted: 122 |

144.    The transfers made to KMR, Riesner and Justis were made on or within four years
before the date of filing of the Petition.

32

145.    The transfers made to KMR, Riesner and Justis were made for less than reasonably equivalent value in exchange for such transfers.

146.    NHI was engaged in a business or a transaction or was about to engage in a business or a transaction for which any property remaining with NHI was an unreasonably small capital.

147.    The transfers made to KMR, Riesner and Justis were not charitable contributions as defined in 11 U.S.C. § 548(d)(3).

148.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

149.    To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

150.    Fleet is liable for the above referenced transfers as successor in interest to Progress.

Formatted: Bullets and Numbering

33

A00158

151.    WHEREFORE, Plaintiff NHI respectfully requests judgment against the Defendants:

(a)    declaring that the transfer(s) be set aside and declared void;

(b)    entering judgment in favor of the Trustee and against the Defendants Fleet, KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

(c)    ordering that the Defendants Fleet, KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

(d)    ordering that any claims which the Defendants Fleet, KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

(e)    granting Plaintiff NHI such other and further relief as may be just and appropriate.

## COUNT XI

### NHI v. Fleet, KMR, Riesner and Justis

### Fraudulent Conveyance

152.    The allegations set forth in paragraphs 1 through 151 above are incorporated herein as though fully set forth at length.

| Formatted: Bullets and Numbering |
| Deleted: 130 |

34

A00159

153.    The transfers from NHI to KMR, Riesner and Justis were made on or within four years before the date of filing of the Petition.

154.    The transfers from NHI to KMR, Riesner and Justis were made for less than reasonably equivalent value in exchange for such transfers.

155.    The transfers from NHI to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers.

156.    The transfers from NHI to KMR, Riesner and Justis were made while NHI intended to incur debts beyond its ability to pay as such debt matured.

157.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

158.    The transfers from NHI to KMR, Riesner and Justis are not a charitable contribution as defined in 11 U.S.C. § 548(d)(3).

159.    To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

35

A00160

Formatted: Bullets and Numbering

160.  Fleet is liable for the above referenced transfers as successor in interest to Progress.

161.  WHEREFORE, NHI respectfully requests judgment against the Defendants Fleet, KMR, Riesner and Justis:

(a)   declaring that the transfer(s) be set aside and declared void;

(b)   entering judgment in favor of NHI and against the Defendants Fleet, KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

(c)   ordering that the Defendants Fleet, KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

(d)   ordering that any claims which the Defendants Fleet, KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

(e)   granting Plaintiff such other and further relief as may be just and appropriate.

**COUNT XII**

**NHI v. Fleet, KMR, Riesner and Justis**

36

<u>Avoidance of Preferences, 11 U.S.C. § 547</u>

162.    The allegations set forth in paragraphs 1 through 161 above are incorporated

herein as though fully set forth at length.

163.    During the one year period prior to the Petition Date (hereinafter the "Insider

Preference Period"), KMR, Riesner and Justis received from NHI one or more transfers by

check, wire transfer, or their equivalent (the "Transfers"), in the amounts and on or before the

clear dates identified in Exhibit "B", attached hereto.

164.    Each Transfer identified in Exhibit B hereto was directly to or for the benefit of

KMR, Riesner and Justis.

165.    KMR, Riesner and Justis were creditors of NHI at the time of the Transfers.  At

the time of the Transfers, KMR, Riesner and Justis asserted a right to payment on account of an

obligation owed to KMR, Riesner and Justis by NHI.

166.    The Transfers were to or for the benefit of creditors who were insiders within the

meaning of 11 U.S.C. § 547(b)(1).

167.    The Transfers were made for or on account of an alleged antecedent debt owed by

NHI because the Transfers were made on account of an alleged debt before the Transfers were

made within the meaning of 11 U.S.C. § 101(2).

37

168.    NHI was insolvent throughout the Insider Preference Period.

169.    As a result of the Transfers, KMR, Riesner and Justis received more than they would have received if: (i) NHI's case was a case under chapter 7 of Title 11; (ii) the Transfers had not been made; and (iii) KMR, Riesner and Justis received payment on their debts under the provisions of Title 11.

170.    NHI is entitled to avoid the Transfers pursuant to 11 U.S.C. § 547(b) and to recover for the benefit of its estate from KMR, Riesner and Justis under Section 550 of the Bankruptcy Code all Transfers to or for the benefit of KMR, Riesner and Justis or the aggregate value thereof.

171.    Fleet is liable for the above referenced transfers as successor in interest to Progress.    `Formatted: Bullets and Numbering`

172.    WHEREFORE, Plaintiff NHI prays for entry of judgment in its favor and against the Defendants Fleet, KMR, Riesner and Justis:

(a)    avoiding each of the Transfers set forth in Exhibit B;

(b)    awarding NHI a judgment in an amount against Fleet, KMR, Riesner and Justis equal to the aggregate value of the Transfers to KMR, Riesner and

38

Justis and directing KMR, Riesner and Justis forthwith to return the
amount awarded to NHI;

(c)   providing that any and all claims against NHI scheduled or filed in this
case by Fleet, KMR, Riesner and Justis shall be disallowed in full if Fleet,
KMR, Riesner and Justis fail or refuse to return to NHI the amount
awarded;

(d)   awarding NHI interest on each amount for which judgment is entered at
the maximum legal rate, from the initial date of this Complaint to the date
judgment is entered; and, until the date the judgment is paid in full;

(e)   awarding costs incurred in this suit; and

(f)   awarding any such other relief as this Court may deem necessary and
proper.

Guy A. Donatelli, Esquire
LAMB MCERLANE PC
24 East Market Street
Post Office Box 565
West Chester, PA  19381-0565
(610) 430-8000
Date:   June 10, 2004

Stephen W. Spence, Esquire (#2033)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)
Co-counsel to NHI, Inc.

39

# EXHIBIT "C"

A00165

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| A DELAWARE CORPORATION | : | Chapter 11 |
| | : | |
| | : | |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | Adversary No. 04-52879 |
| v. | : | |
| | : | |
| FLEET BOSTON FINANCIAL | : | |
| COPRORATION, KMR MANAGEMENT, | : | |
| INC., ROBERT RIESNER and WARING | : | Reference Docket No. 1 |
| S. JUSTIS, JR., | : | |
| | : | |
| Defendants | : | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

### I.  PARTIES

1.      Plaintiff, NHI, Inc. (hereinafter "NHI"), formerly known as Nanticoke Homes,

Inc., filed a voluntary petition for relief (hereinafter "Petition") with the United States

Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code on

March 1, 2002.  NHI was incorporated under the laws of the State of Delaware on October 7,

1971.  Prior to 2002, NHI was engaged in manufacturing customized homes at its plant in

Greenwood, Delaware.  NHI is currently maintaining its business as a Debtor-in-Possession.

A00166

2.      Defendant, KMR Management, Inc. (hereinafter "KMR"), on information and belief, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Blue Bell, Pennsylvania.

3.      Defendant, Fleet Boston Financial Corporation (hereinafter "Fleet"), on information and belief, is a corporation organized and existing under the laws of the State of Rhode Island, with its principal place of business in Boston, Massachusetts. On information and belief, Fleet is successor in interest to Progress Financial Corporation (hereinafter "Progress"), which, on information and belief, was a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. On information and belief, Defendant KMR was a wholly owned subsidiary of Progress, and is now a wholly owned subsidiary of Defendant Fleet.

4.      Defendant, Robert Riesner, on information and belief, is an adult resident of or near Willow Grove, Pennsylvania. Defendant Riesner is the President of Defendant KMR.

5.      Defendant, Waring S. Justis, Jr., on information and belief, is an adult resident of or near Baltimore, Maryland. Defendant Justis is the Regional Vice President of Defendant KMR.

## II. JURISDICTION AND VENUE

6.      All of the negotiations, discussions, representations and agreements out of which this case arises took place in Delaware; hence this court has jurisdiction over this matter and

2

A00167

venue is appropriate in Wilmington, Delaware.  This Court also has venue pursuant to 28 U.S.C.

§ 1409 and jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 11 U.S.C. §§ 544(B),

547, 548, 550.


      7.     This matter is a core proceeding pursuant to 28 U.S.C. § 1409.


### III.  FACTUAL BACKGROUND


      8.     NHI was the first pre-manufactured home-builder in Delaware and, for more than

thirty years, conducted a successful manufacturing business.  NHI was founded by John M.

Mervine, Sr. (hereinafter "Mervine Sr.").


      9.     Prior to 2002, NHI's primary manufacturing facilities were located in Greenwood,

Delaware.  NHI constructed homes according to customers' specifications and delivered and

installed the homes on the customers' property.  NHI's customer base was comprised of

individuals and real estate developers throughout the Mid-Atlantic region, although the largest

concentration was in Delaware and Maryland.


      10.    NHI's business was highly successful.  Over three decades, it established a

reputation for manufacturing a high-quality, high-end product in an expanding market.  At the

height of NHI's business, it had a sales volume of approximately $60,000,000 a year.  In the

early 1990's, NHI decided to expand its business into the manufacturing of lower-cost homes.

A00168

11.    Thereafter, Shawnee Homes, Inc. (hereinafter "Shawnee") was incorporated under the laws of the State of Delaware on November 2, 1992. From 1992 until October 2000, Shawnee was engaged in the manufacturing of mid-range houses at a plant in Salisbury, Maryland, which was owned by Shawnee Enterprises, LLC, a Delaware Limited Liability Corporation, owned by Mervine Sr.'s three sons, John M. Mervine, Jr. (hereinafter "Mervine Jr."), William H. Mervine, III, and Gregory O. Mervine, and their children. Shawnee's customer base was comprised mostly of Mervine Family owned real estate developers. Shawnee was run by William H. Mervine, III.

12.    Pawnee Homes, Inc. (hereinafter "Pawnee") was incorporated under the laws of the State of Delaware on October 29, 1996. From 1996 to October 2000, Pawnee was engaged in the manufacturing of low-range homes at a NHI plant in Greenwood, Delaware. Pawnee's customer base was comprised mostly of mobile home dealers and mobile home communities. Pawnee was run by Mervine Jr.

13.    Nanticoke Homes Midwest, Inc. (hereinafter "Midwest"), was incorporated under the laws of the State of Indiana in 1999. From 1999 to April 2000, Midwest was engaged in the manufacturing of homes at a plant in Indianapolis, Indiana, which was owned by Shawnee Enterprises Midwest, LLC, which was owned by Shawnee Enterprises, LLC. Midwest was run by Gregory O. Mervine.

14.    In establishing Shawnee, Pawnee and Midwest, NHI greatly increased it indebtedness with the enthusiastic support of its banking institution, Mercantile Safe Deposit and

4

Trust Company (hereinafter "Mercantile").  All outstanding debt owed to Mercantile by NHI and its affiliated companies, Shawnee, Pawnee and Midwest, and its affiliated real estate holding companies and Freedom Motors, Custom Decorative Mouldings, National Concrete and Classic Carpet (hereinafter "Related Entities"), was cross collateralized.

15.    For approximately 6 years prior to 2002, NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities maintained both Term and Demand Loan Lines of Credit relationships with Mercantile.   The interest rate on the Term and Demand Loan Lines of Credit with Mercantile was Mercantile's prime rate.

16.    In late 1999, NHI owned assets with an adjusted book value of approximately $26 million and NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities owed approximately $17 million in multiple loans to Mercantile.  NHI had a net book value of approximately $8 million.

17.    Because of increasing cash demands, NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities borrowed on the Term and Demand Loan Lines of Credit with Mercantile in excess of the loans' collateral value, yet remained current on all payment and monetary terms under the Term and Demand Loan Lines of Credit.

18.    Because the balance of the Term and Demand Loan Lines of Credit was in excess of the collateral value, as of late 1999 all of NHI's outstanding debt to Mercantile was considered by Mercantile to be in technical default under the loan documents.  All outstanding

5

A00170

cross collateralized debt of NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities was considered cross defaulted.

19.     On or about March 21, 2000, Mercantile and NHI entered into a Forbearance Agreement (hereinafter "First Forbearance Agreement").  Pursuant to the First Forbearance Agreement, the interest rate on NHI's Term and Demand Loan Lines of Credit with Mercantile increased from Mercantile's prime rate to Mercantile's prime rate, plus two percent, and all debt of NHI, Shawnee, Pawnee, Midwest and NHI's Related Entities, totaling approximately $17.5 million, was being monitored on a month-to-month basis by NHI's contact at Mercantile, Tim Naylon.

20.     On or about June 15, 2000, NHI agreed with Naylon that NHI would bring its outstanding debt to Mercantile down to $9 million by selling off non-operating assets.

21.     On or about July 27, 2000, Mercantile and NHI entered into a Second Forbearance Agreement.

22.     In August 2000, NHI learned that Mercantile was considering calling NHI's loans and placing NHI into liquidation, even though NHI remained current on its loan payments, but was alleged to be in default of technical, non-monetary covenants.

23.     In September 2000, NHI listed for sale various properties, divisions, related entities and other assets.

6

A00171

24.    In early October 2000, Mervine Jr. became Chief Executive Officer of NHI.

25.    On or about October 6, 2000, Scott Krieger, Mercantile's workout manager, replaced Naylon as NHI's contact at Mercantile. Krieger insisted – on the threat of calling all of Mercantile's loans – that NHI retain a management consultant and strongly suggested/urged that Defendants KMR, Riesner and Justis be hired as management consultants. Krieger assured NHI that Defendants KMR, Riesner and Justis were "turn around" consultants, as opposed to "liquidation guys."

26.    On or about October 18, 2000, Krieger indicated to NHI that Mercantile would provide an additional $1.5 million of financing for NHI if KMR, Riesner and Justis considered NHI to be a viable going concern.

27.    On or about October 19, 2000, under the threat of calling all of Mercantile's loans, NHI, Pawnee, Shawnee, Midwest and the Mervine family, entered into a Consulting Agreement with Defendants KMR, Riesner and Justis. A copy of the Consulting Agreement and the amendments thereto are attached hereto as Exhibit "A" (hereinafter the "Consulting Agreement").

28.    Under the Consulting Agreement, KMR, Riesner and Justis, who had represented themselves to be highly skilled professionals, agreed to provide NHI with professional management for the purposes of helping to stabilize NHI's financial condition and perpetuating

7

NHI's business. Under the Consulting Agreement, KMR, Riesner and Justis undertook to act as fiduciaries, assumed positions of responsibility and undertook a duty of loyalty with respect to NHI as NHI's agents. Pursuant to the Consulting Agreement, KMR, Riesner and Justis assumed the complete control, responsibility and authority for managing the business of NHI.

29.    On or about October 25, 2000, the Mervine family met with KMR, Riesner and Justis in Baltimore, Maryland. KMR proposed a plan whereby NHI would cut expenses, sell non-operating assets, close Pawnee and move Shawnee to Greenwood, Delaware, and KMR would hire a Chief Financial Officer and General Manager for NHI and approach Mercantile to request another forbearance agreement and the provision of additional funds to NHI. To effectuate the plan, the members of the Mervine family agreed to cut their own salaries by fifty percent and to give Mercantile first mortgage liens on their personal residences.

30.    Under the Consulting Agreement, NHI agreed to pay KMR certain specified hourly rates for services rendered.

31.    From March 2001 through May 2001, KMR, Riesner and Justis hired Pasqualle Petrucci as NHI's Plant Manager, Michael Cottingham as NHI's Chief Financial Officer and G. Robert Lord as NHI's Sales Manager.

32.    After assuming control of NHI, unbeknownst to any of the Mervine family, KMR, Riesner and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their

8

fiduciary duties and obligations of loyalty. KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for KMR, while at the same time relegating NHI's business operations and viability as a going concern to distant secondary priorities, in direct contravention of the Consulting Agreement.

33.    KMR, Riesner and Justis did not operate independently and for the benefit of NHI. Upon information and belief, KMR, Riesner and Justis served at the direction and pleasure of Mercantile.

34.    Upon information and belief, Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement.

35.    Upon information and belief, Riesner and/or Justis were also in contact with Progress, predecessor to Fleet, at least daily during the term of the Consulting Agreement.

36.    Upon information and belief, Riesner and/or Justis apprised Progress, predecessor to Fleet, of the day-to-day business operations of NHI.

37.    Upon information and belief, Progress, predecessor to Fleet, participated with KMR, Riesner and Justis in the making of day-to-day business decisions at NHI.

9

38.    Mervine Jr. and the other members of the Mervine Family were excluded by KMR, Riesner and Justis from any and all discussions with Progress, predecessor to Fleet.

39.    All contact made by KMR and/or Riesner and/or Justis to Progress, predecessor to Fleet, was conducted behind closed doors and without the participation of Mervine Jr. or the Mervine Family.

40.    When Riesner and/or Justis went behind closed doors to contact Progress, predecessor to Fleet, Riesner and/or Justis would indicate that they were going to "talk to their boss".

41.    When Mervine Jr. requested that Riesner and/or Justis put Mervine Jr. in direct contact with their "boss", Riesner and/or Justis refused to do so.

42.    When Mervine Jr. asked Riesner and/or Justis who at Progress, predecessor to Fleet, Mervine Jr. could speak to, or who was in charge at Progress, predecessor to Fleet, Riesner and/or Justis responded, "We are Progress."

43.    Accordingly, it is believed and therefore alleged that KMR, Riesner and Justis took their instructions from Progress, predecessor to Fleet.

44.    Fleet is therefore liable to NHI as successor in interest to Progress.

10

45.    By the end of December 2000, KMR, Riesner and Justis had written approximately $500,000 in checks, which Mercantile refused to cover because a third forbearance agreement had not been negotiated or signed. NHI's outstanding debt to Mercantile was reduced to $11.5 million as a result of the sale of assets by NHI.

46.    On or about January 2, 2001, Mercantile and NHI entered into a Third Forbearance Agreement made effective to December 31, 2000. Mercantile subsequently covered the approximately $500,000 in checks issued by KMR, Riesner and Justis that had not been paid by Mercantile.

47.    In 2001, KMR, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. In collaboration with Krieger, KMR, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern.

48.    At the same time, although NHI was still only in technical default with Mercantile, KMR, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. It was apparent that KMR, Riesner and Justis were not

11

concerned with NHI's ability to continue as a going concern -- rather, the sole concern of KMR, Riesner and Justis was that Mercantile and KMR be paid.

49.    By the beginning of September 2001, due to the systematic failure of KMR, Riesner and Justis to pay NHI's vendors and suppliers, NHI was the named defendant in approximately twenty-two lawsuits by its customers, vendors and suppliers. By October 2001, the number of lawsuits against NHI by its customers, vendors and suppliers had increased to forty-three. As a result, NHI was unable to secure supplies and materials from vendors, which resulted in NHI having to resort to alternate and more expensive sources of supplies and materials.

50.    On or about October 22, 2001, KMR, Riesner and Justis removed Cottingham as Chief Financial Officer of NHI.

51.    Under the management of NHI by KMR, Riesner and Justis, NHI's reputation as a manufacturer of high quality customized homes was ruined. KMR, Riesner and Justis proved to be incompetent in running the day-to-day operations of NHI's manufacturing business. Instead of operating NHI with the intent that it continue as a viable going concern, the sole objective of KMR, Riesner and Justis was to pay down bank debt and liquidate assets to the benefit of Mercantile and KMR, and to the detriment of NHI's shareholders.

52.    In November 2001, it became apparent to Mervine Jr. that KMR, Riesner and Justis had been systematically failing to make state tax payments on behalf of NHI, failing to pay

12

workers' compensation benefits, and failing to pay health and life insurance premiums and 401(k) contributions for NHI employees. Mervine Jr. confronted Justis with this information and accused Justis of fraud.

53.    On or about November 7, 2001, KMR, Riesner and Justis fired Mervine Jr.

54.    When Mervine Jr. was fired, Riesner and Justis indicated to Mervine Jr. that their "boss told them KMR could not continue with [Mervine Jr.] in the way."

55.    On or about November 12, 2001, Justis proposed to the Mervine Family that Justis be named Chief Executive Officer and Chief Operating Officer of NHI.

56.    On or about November 20, 2001, the members of the Mervine family and the Directors of NHI decided that it was not in NHI's best interests that Justis be Chief Executive Officer and Chief Operating Officer of NHI. Accordingly, Justis's proposal was revoked by NHI.

57.    Because it had become apparent that NHI needed to discontinue its relationship with Mercantile and find a new lender, the Mervine family initiated negotiations with various lenders.

13

58.     In January 2002, after already having been paid approximately $1.9 million by NHI, KMR, Riesner and Justis submitted a proposal to find a new lender to replace Mercantile in exchange for a two and one-half percent commission.

59.     On or about January 29, 2002, Justis abruptly "went on vacation" and did not maintain contact with NHI or the members of the Mervine family. This was the first indication to NHI and the Mervine family that KMR was pulling out. Justis never returned to work at NHI.

60.     From October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; made decisions which maximized cash flows to Mercantile and KMR while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting Agreement; breached their fiduciary duty and duty of loyalty by – rather than providing "turn around" management -- devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis, and to the extreme detriment and prejudice of NHI and its shareholders and creditors.

61.     By February 2002, as a result of the gross mismanagement of NHI by KMR, Riesner and Justis, NHI was in such dire financial straits that it was not able to re-finance or sell its operations as a going concern.

14

A00179

62.    From October 2000 through February 2002, a period of approximately fourteen months, K MR, R iesner a nd Ju stis c aused N HI t o p ay K MR c onsulting fees o f a pproximately $1.9 million.

63.    On or about February 6, 2002, Mercantile demanded payment on all of NHI's loans and lines of credit.

64.    Thereafter, on or about February 26, 2002, the members of the Mervine family found themselves in such financial duress that they entered into an agreement with Mercantile, which over the next twenty months settled NHI's debt with Mercantile, satisfied Mercantile's liens on the assets of NHI and the Mervine family members' personal residences, and released Mercantile from all liability to NHI.

65.    NHI never received the additional $1.5 million of funding from Mercantile, even though KMR, Riesner and Justis assured Mercantile that NHI was a viable going concern.

66.    NHI terminated its manufacturing operations on February 19, 2002.

67.    On March 1, 2002, NHI filed a voluntary petition for relief with the United States Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code.

## COUNT I

### NHI v. Fleet, KMR, Riesner and Justis

15

A00180

## Breach of Contract

68.     The allegations set forth in paragraphs 1 through 67 above are incorporated herein as though fully set forth at length.

69.     NHI engaged KMR, Riesner and Justis under the Consulting Agreement.

70.     As part of the Consulting Agreement, on November 12, 2001, NHI and KMR entered into an agreement whereby the parties agreed that Riesner and Justis would perform the functions which a Chief Executive Officer and Chief Operating Officer would perform.

71.     NHI engaged KMR, Riesner and Justis solely at the direction of Mercantile to serve as NHI's management consultants.

72.     KMR, Riesner and Justis knew that in the event NHI failed to execute the Consulting Agreement with KMR, Mercantile would call all of the loans and declare NHI in default thereof.

73.     Under the Consulting Agreement, KMR, Riesner and Justis were obligated to provide various services "directed to effect an improvement in the operating structure and content of Nanticoke".

16

A00181

74. Under the Consulting Agreement, KMR, Riesner and Justis were obligated to provide various services "use its best efforts to cause a change in operation and conduct of the business and to structure the business to profitable operation".

75. Under the Consulting Agreement, KMR, Riesner and Justis were obligated to "advise and consent with [NHI's] Board of Directors in the implementation of the business plan".

76. Rather than complying with the above referenced terms of the Consulting Agreement, and as set forth above, KMR, Riesner and Justis failed to provide services directed to effect an improvement in the operating structure and content of NHI, failed to use their best efforts to cause a change in operation and conduct of the business and to structure the business to profitable operation, and failed to secure the advice and consent of NHI's Board of Directors in the implementation of the business plan.

77. To the contrary, and as set forth above, KMR, Riesner and Justis engaged in a course of conduct designed to: a) destroy NHI as a going concern; b) apply NHI's assets only for the benefit of KMR and Mercantile; c) drive NHI into bankruptcy for the benefit of its secured creditors; and d) ignore the desires and wishes of NHI's Board of Directors.

78. Under the Consulting Agreement, KMR, Riesner and Justis undertook a duty of loyalty. By their course of action, KMR, Riesner and Justis breached their duty of loyalty.

17

A00182

79.     The conduct of KMR, Riesner and Justis constituted a breach of the Consulting Agreement.

80.     The breach by KMR, Riesner and Justis of the Consulting Agreement caused damage to NHI.

81.     Fleet is liable for the above referenced damage as successor in interest to Progress.

82.     WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, and any such other and further relief as justice requires.

## COUNT II

### NHI v. Fleet, KMR, Riesner and Justis

### Breach of The Covenant of Good Faith and Fair Dealing

83.     The allegations set forth in paragraphs 1 through 82 above are incorporated herein as though fully set forth at length.

84.     Every contract imposes upon the parties thereto an obligation of good faith and fair dealing.

18

A00183

85.    As set forth above, the conduct of KMR, Riesner and Justis violated the covenant of good faith and fair dealing.

86.    The breach by KMR, Riesner and Justis of their obligation of good faith and fair dealing under the Consulting Agreement and amendments thereto caused damage to NHI.

87.    Fleet is liable for the above referenced damage as successor in interest to Progress.

88.    WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, and any such other and further relief as justice requires.

## COUNT III

### NHI v. Fleet, KMR, Riesner and Justis

### Gross Negligence

89.    The allegations set forth in paragraphs 1 through 88 above are incorporated herein as though fully set forth at length.

90.    NHI engaged KMR, Riesner and Justis as consultants to provide statistical analysis, management evaluation, asset evaluation and banking relations, and to perform the functions which a Chief Executive Officer and Chief Operating Officer would perform.

19

A00184

91.    KMR, Riesner and Justis, as consultants to NHI, owed a duty to NHI to act in the best interests of NHI and its shareholders and to engage in a course of conduct to place NHI into the position of operating as an ongoing, profitable concern.

92.    KMR, Riesner and Justis breached that duty to NHI and were grossly negligent in their efforts by failing to act in the best interests of NHI and were grossly negligent in their efforts to engage in a course of conduct to place NHI into the position of operating as an ongoing profitable concern by:

    a.  knowingly failing to pay employee wages, workers' compensation benefits and other health benefits;

    b.  knowingly failing to pay sales and use taxes;

    c.  knowingly delaying the payments to Mercantile until after additional penalties for late payment were assessed;

    d.  knowingly assuring payment of KMR's invoices over the payment of other expenses which would have enable NHI to continue in business;

    e.  knowingly issuing checks which would not clear;

    f.  knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy;

    g.  selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI;

h.  knowingly withholding health insurance premiums from the employees and failing to remit those payments to the health plan provider; and

i.  knowingly issuing checks that would not be honored by Mercantile and which were returned "NSF."

93.  The gross negligence of KMR, Riesner and Justis proximately caused NHI damages.

94.  Fleet is liable for the above referenced damages as successor in interest to Progress.

95.  WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, and any such other and further relief as justice requires.

## COUNT IV

## NHI v. Fleet, KMR, Riesner and Justis

## Breach of Fiduciary Duty

96.  The allegations set forth in paragraphs 1 through 95 above are incorporated herein as though fully set forth at length.

21

A00186

97.    NHI engaged KMR, Riesner and Justis as consultants to provide statistical analysis, management evaluation, asset evaluation and banking relations, and to perform the functions which a Chief Executive Officer and Chief Operating Officer would perform.

98.    As consultants, KMR, Riesner and Justis were placed in a position of special confidence and trust, requiring the exercise of utmost discretion as fiduciaries in the protection of the interests of NHI.

99.    In complete abrogation of their fiduciary responsibilities to NHI, KMR, Riesner and Justis intentionally, unlawfully and willfully acted in a fashion that served only the interests of Mercantile and their own self-interests, including but not limited to:

    a.    knowingly failing to pay employee wages, workers' compensation benefits and other health benefits;

    b.    knowingly failing to pay sales and use taxes;

    c.    knowingly delaying the payments to Mercantile until after additional penalties for late payment were assessed;

    d.    knowingly assuring payment of KMR's invoices over the payment of other expenses which would have enable NHI to continue in business;

    e.    knowingly issuing checks which would not clear;

    f.    knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy;

22

A00187

g.   selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI;

h.   knowingly withholding health insurance premiums from the employees and failing to remit those payments to the health plan provider; and

i.   knowingly issuing checks that would not be honored by Mercantile and which were returned "NSF."

100.   The breaches by KMR, Riesner and Justis of their duties to NHI caused NHI damages.

101.   Fleet is liable for the above referenced damages as successor in interest to Progress.

102.   WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, and any such other and further relief as justice requires.

## VIII.  COUNT V

### NHI v. Fleet, KMR, Riesner and Justis

### Fraud

103.   The allegations set forth in paragraphs 1 through 102 above are incorporated herein as though fully set forth at length.

23

A00188

104.    On information and belief, KMR through Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around, as represented.

105.    KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply the NHI Board of Directors with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into an insolvent condition in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather that utilizing those assets to assist NHI's business operations.

106.    The NHI Board of Directors relied upon the representations of KMR, Riesner and Justis as to their skill and knowledge to their detriment.

107.    The conduct of KMR, Riesner and Justis was intentional and wrongful.

24

A00189

108. Fleet is liable for the above referenced conduct as successor in interest to Progress.

109. WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, plus punitive damages, and any such other and further relief as justice requires.

## COUNT VI

### NHI v. Fleet, KMR, Riesner and Justis

### Waste of Corporate Assets

110. The allegations set forth in paragraphs 1 through 109 above are incorporated herein as though fully set forth at length.

111. On information and belief, KMR through Riesner and Justis engaged in a scheme to waste the assets of NHI to the point where NHI could only be liquidated for the benefit of Mercantile.

112. KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating

25

Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which have had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply NHI with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into bankruptcy in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather that utilizing those assets to assist NHI's business operations.

113. The conduct of KMR, Riesner and Justis was intentional and wrongful.

114. Fleet is liable for the above referenced conduct as successor in interest to Progress.

115. WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, and any such other and further relief as justice requires.

## COUNT VII

### NHI v. Fleet, KMR, Riesner and Justis

### Tortious Interference with Contract and Prospective Business Advantage

116. The allegations set forth in paragraphs 1 through 115 above are incorporated herein as though fully set forth at length.

26

117.    At all times relevant to the instant case, NHI had contractual rights under all loans with Mercantile, and was ready, willing and able to institute, an actionable and meritorious lender liability claim against Mercantile.

118.    The conduct of KMR, Riesner and Justis, as set forth above, prejudiced NHI's ability to do business and made it impossible for NHI to maintain any semblance of equal bargaining power with Mercantile.

119.    As a direct cause of the conduct of KMR, Riesner and Justis, NHI's shareholders were compelled to provide to Mercantile personal guarantees of all of NHI's loans, secured by virtually all of their personal tangible assets.

120.    Accordingly, and as a direct result of the conduct of KMR, Riesner and Justis, NHI was placed in such a situation of economic duress and in such a disparate bargaining position that it was unable to protect its interests vis-à-vis Mercantile.

121.    Mercantile then was able, through threats against NHI's principals, to compel NHI to provide multiple general releases to Mercantile, foreclosing NHI's ability to enforce its rights under all of its loans or to institute an action against Mercantile for Mercantile's wrongful acts.

27

122.    The conduct of KMR, Riesner and Justis constitutes intentional interference with all loan agreements between NHI and Mercantile and interfered with NHI's prospective business advantage afforded through an action against Mercantile.

123.    The conduct of KMR, Riesner and Justis was intentional and wrongful, was done without justification and caused harm to NHI.

124.    Fleet is liable for the above referenced conduct as successor in interest to Progress.

125.    WHEREFORE, Plaintiff NHI seeks damages of in excess of $100,000 against Defendants Fleet, KMR, Riesner and Justis, plus punitive damages, and any such other and further relief as justice requires.

## COUNT VIII

### NHI v. Fleet, KMR, Riesner and Justis

### Fraudulent Transfer, 11 U.S.C. §§ 544(b), 548

126.    The allegations set forth in paragraphs 1 through 125 above are incorporated herein as though fully set forth at length.

127.    The transfers made to KMR, Riesner and Justis were made on or within four years before the date of filing of the Petition.

28

A00193

128.    The transfers made to KMR, Riesner and Justis were transferred or incurred with actual intent to hinder, delay or defraud any entity to which NHI was or became indebted to on or after the date that such transfers were made.

129.    The transfers made to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers.

130.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

131.    To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

132.    Fleet is liable for the above referenced transfers as successor in interest to Progress.

133.    WHEREFORE, NHI respectfully requests judgment against Fleet, KMR, Riesner and Justis:

          (a)     declaring that the transfer(s) be set aside and declared void;

29

(b)    entering judgment in favor of the Trustee and against Defendants Fleet, KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

(c)    ordering that the Defendants Fleet, KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

(d)    ordering that any claims which the Defendants Fleet, KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

(e)    granting Plaintiff NHI such other and further relief as may be just and appropriate.

## COUNT IX

### NHI v. Fleet, KMR, Riesner and Justis

### Fraudulent Conveyance

134.    The allegations set forth in paragraphs 1 through 133 above are incorporated herein as though fully set forth at length.

135.    The transfers made to KMR, Riesner and Justis as alleged above were made on or within four (4) years before the date of filing of the Petition.

30

A00195

136.   The transfers made to KMR, Riesner and Justis were made for less than reasonably equivalent value in exchange for such transfers.

137.   The transfers made to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers.

138.   The transfers made to KMR, Riesner and Justis were not charitable contributions as defined in 11 U.S.C. § 548(d)(3).

139.   The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of either Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

140.   To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

141.   Fleet is liable for the above referenced transfers as successor in interest to Progress.

142.   WHEREFORE, Plaintiff NHI respectfully requests judgment against the Defendants:

31

(a)     declaring that the transfer(s) be set aside and declared void;

(b)     entering judgment in favor of the Trustee and against the Defendants Fleet, KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

(c)     ordering that the Defendants Fleet, KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

(d)     ordering that any claims which the Defendants Fleet, KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

(e)     granting Plaintiff NHI such other and further relief as may be just and appropriate.


## COUNT X

### NHI v. Fleet, KMR, Riesner and Justis

### Fraudulent Conveyance


143.    The allegations set forth in paragraphs 1 through 142 above are incorporated herein as though fully set forth at length.


144.    The transfers made to KMR, Riesner and Justis were made on or within four years before the date of filing of the Petition.

32

A00197

145.    The transfers made to KMR, Riesner and Justis were made for less than reasonably equivalent value in exchange for such transfers.

146.    NHI was engaged in a business or a transaction or was about to engage in a business or a transaction for which any property remaining with NHI was an unreasonably small capital.

147.    The transfers made to KMR, Riesner and Justis were not charitable contributions as defined in 11 U.S.C. § 548(d)(3).

148.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

149.    To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

150.    Fleet is liable for the above referenced transfers as successor in interest to Progress.

33

A00198

151.    WHEREFORE, Plaintiff NHI respectfully requests judgment against the Defendants:

(a)    declaring that the transfer(s) be set aside and declared void;

(b)    entering judgment in favor of the Trustee and against the Defendants Fleet, KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

(c)    ordering that the Defendants Fleet, KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

(d)    ordering that any claims which the Defendants Fleet, KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

(e)    granting Plaintiff NHI such other and further relief as may be just and appropriate.

## COUNT XI

### NHI v. Fleet, KMR, Riesner and Justis

### Fraudulent Conveyance

152.    The allegations set forth in paragraphs 1 through 151 above are incorporated herein as though fully set forth at length.

34

A00199

153.    The transfers from NHI to KMR, Riesner and Justis were made on or within four years before the date of filing of the Petition.

154.    The transfers from NHI to KMR, Riesner and Justis were made for less than reasonably equivalent value in exchange for such transfers.

155.    The transfers from NHI to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers.

156.    The transfers from NHI to KMR, Riesner and Justis were made while NHI intended to incur debts beyond its ability to pay as such debt matured.

157.    The transfers from NHI to KMR, Riesner and Justis are voidable pursuant to the Uniform Fraudulent Transfer Act of Maryland or Delaware as incorporated pursuant to Section 544(b) of the United States Bankruptcy Code.

158.    The transfers from NHI to KMR, Riesner and Justis are not a charitable contribution as defined in 11 U.S.C. § 548(d)(3).

159.    To the extent that any of the above referenced transfers from NHI to KMR, Riesner and Justis were made within one year before the filing of the Petition, they are voidable pursuant to 11 U.S.C. § 548.

35

A00200

160.    Fleet is liable for the above referenced transfers as successor in interest to Progress.

161.    WHEREFORE, NHI respectfully requests judgment against the Defendants Fleet, KMR, Riesner and Justis:

    (a)    declaring that the transfer(s) be set aside and declared void;

    (b)    entering judgment in favor of NHI and against the Defendants Fleet, KMR, Riesner and Justis in the amount of $1.9 million plus interest and costs;

    (c)    ordering that the Defendants Fleet, KMR, Riesner and Justis immediately pay over the sum of $1.9 million to the Trustee in accordance with Section 550(a) of the Bankruptcy Code;

    (d)    ordering that any claims which the Defendants Fleet, KMR, Riesner and Justis may hold against NHI be disallowed until such transfer(s) are surrendered in accordance with Section 502(d) of the Bankruptcy Code; and

    (e)    granting Plaintiff such other and further relief as may be just and appropriate.

## COUNT XII

## NHI v. Fleet, KMR, Riesner and Justis

36

## Avoidance of Preferences, 11 U.S.C. § 547

162.    The allegations set forth in paragraphs 1 through 161 above are incorporated herein as though fully set forth at length.

163.    During the one year period prior to the Petition Date (hereinafter the "Insider Preference Period"), KMR, Riesner and Justis received from NHI one or more transfers by check, wire transfer, or their equivalent (the "Transfers"), in the amounts and on or before the clear dates identified in Exhibit "B", attached hereto.

164.    Each Transfer identified in Exhibit B hereto was directly to or for the benefit of KMR, Riesner and Justis.

165.    KMR, Riesner and Justis were creditors of NHI at the time of the Transfers.  At the time of the Transfers, KMR, Riesner and Justis asserted a right to payment on account of an obligation owed to KMR, Riesner and Justis by NHI.

166.    The Transfers were to or for the benefit of creditors who were insiders within the meaning of 11 U.S.C. § 547(b)(1).

167.    The Transfers were made for or on account of an alleged antecedent debt owed by NHI because the Transfers were made on account of an alleged debt before the Transfers were made within the meaning of 11 U.S.C. § 101(2).

37

168.     NHI was insolvent throughout the Insider Preference Period.

169.     As a result of the Transfers, KMR, Riesner and Justis received more than they would have received if: (i) NHI's case was a case under chapter 7 of Title 11; (ii) the Transfers had not been made; and (iii) KMR, Riesner and Justis received payment on their debts under the provisions of Title 11.

170.     NHI is entitled to avoid the Transfers pursuant to 11 U.S.C. § 547(b) and to recover for the benefit of its estate from KMR, Riesner and Justis under Section 550 of the Bankruptcy Code all Transfers to or for the benefit of KMR, Riesner and Justis or the aggregate value thereof.

171.     Fleet is liable for the above referenced transfers as successor in interest to Progress.

172.     WHEREFORE, Plaintiff NHI prays for entry of judgment in its favor and against the Defendants Fleet, KMR, Riesner and Justis:

    (a)     avoiding each of the Transfers set forth in Exhibit B;

    (b)     awarding NHI a judgment in an amount against Fleet, KMR, Riesner and Justis equal to the aggregate value of the Transfers to KMR, Riesner and

38

Justis and directing KMR, Riesner and Justis forthwith to return the amount awarded to NHI;

(c)    providing that any and all claims against NHI scheduled or filed in this case by Fleet, KMR, Riesner and Justis shall be disallowed in full if Fleet, KMR, Riesner and Justis fail or refuse to return to NHI the amount awarded;

(d)    awarding NHI interest on each amount for which judgment is entered at the maximum legal rate, from the initial date of this Complaint to the date judgment is entered; and, until the date the judgment is paid in full;

(e)    awarding costs incurred in this suit; and

(f)    awarding any such other relief as this Court may deem necessary and proper.

Guy A. Donatelli, Esquire
LAMB MCERLANE PC
24 East Market Street
Post Office Box 565
West Chester, PA  19381-0565
(610) 430-8000
Date:   June 10, 2004

Stephen W. Spence, Esquire (#2033)
PHILLIPS GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)
Co-counsel to NHI, Inc.

39

A00204

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| A DELAWARE CORPORATION | : | Chapter 11 |
| | : | |
| | : | |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | Adversary No. 04-52879 |
| v. | : | |
| | : | |
| FLEET BOSTON FINANCIAL | : | |
| COPRORATION, KMR MANAGEMENT, | : | Reference Docket No. 12, |
| INC., ROBERT RIESNER and WARING | : | |
| S. JUSTIS, JR., | : | |
| | : | |
| Defendants | : | |

## ORDER DENYING MOTION OF FLEETBOSTON
## FINANCIAL CORPORATION AND ALLOWING THE FILING
## OF THE AN AMENDED COMPLAINT

And Now this _____ day of _____, 2004, having considered the Motion to

Dismiss filed by Fleet Boston Financial Corporation (the "Motion"), and the response filed by

the Debtor/Plaintiff (the "Response"); and it appearing that good cause exists for denying the

Motion and for granting the relief requested by the Plaintiff in its Response, it is hereby

ORDERED that the Motion is denied; and it is further

ORDERED that the Plaintiff may file its First Amended Complaint.


_____
THE HONORABLE PETER J. WALSH
U.S. BANKRUPTCY COURT JUDGE


2

A00205

## CERTIFICATE OF SERVICE

I, CELESTE A. HARTMAN, Senior Paralegal, do hereby certify that I caused the foregoing document to be served upon those persons appearing on the attached list, via U.S. Mail on June 14, 2004.

Under penalty of perjury, I certify the foregoing to be true and correct.

_____
CELESTE A. HARTMAN

3

A00206

# File an answer to a motion:

04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Spence, Stephen W. entered on 6/14/2004 at 3:34 PM EDT and filed on 6/14/2004

**Case Name:**      NHI, Inc. v. Fleetboston Financial Corporation et al

**Case Number:**    04-52879-PJW

**Document Number:** 17

**Docket Text:**

Response to *Plaintiff's Answer to Motion to Dismiss of Defendant, Fleet Boston Financial Corporation (Exhibits A-C, Propsed ORder, Certificate of Service with List)* (related document(s)[12] ) Filed by NHI, Inc. (Spence, Stephen)

The following document(s) are associated with this transaction:

**Document description:**Main Document

**Original filename:**ANSWER.pdf

**Electronic document Stamp:**

[STAMP bkecfStamp_ID=983460418 [Date=6/14/2004] [FileNumber=2705363-0] [2eed07b8d3ad43c45f1925044783421a91860955534498a4e6db14fa62dea79a51c6 93102d152d810f8f548f6480b9a5f5ddba55257984a8b94c361abc608c65]]

**04-52879-PJW Notice will be electronically mailed to:**

Stuart M. Brown    sbrown@edwardsangell.com,
DEbankruptcy@edwardsangell.com

Stephen W. Spence    tap@pgslaw.com;th@pgslaw.com

**04-52879-PJW Notice will not be electronically mailed to:**

6/14/2004 3:30 PM

A00207

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE | : | Case No. 02-10651 (PJW) |
| NHI, INC.,<br>A DELAWARE CORPORATION | :<br>: | Chapter 11 |
| _____ | : | |
| NHI, INC., | : | |
| Plaintiff | :<br>: | Adversary No. 04-52879 |
| v. | :<br>: | |
| FLEETBOSTON FINANCIAL<br>CORPORATION, KMR MANAGEMENT,<br>INC., ROBERT RIESNER and<br>WARING S. JUSTIS, JR., | :<br>:<br>:<br>: | Related Docket No. 1 and 17 |
| Defendants | :<br>: | |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made

applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy

Procedure, FleetBoston Financial Corporation, KMR Management, Inc., Robert Riesner

and Waring S. Justis, Jr. (together, "Defendants") hereby move to dismiss the Plaintiff's

First Amended Complaint ("Amended Complaint")[1] filed by, NHI, Inc. ("NHI"). A

memorandum in support of this motion is being filed contemporaneously herewith and is

incorporated herein by reference.

---

[1] The Amended Complaint is attached as Exhibit C to Plaintiff's Answer to Motion to Dismiss of Defendant
Fleet Boston Financial Corporation [D.I. 17] and was deemed filed as of July 8, 2004 by agreement of the
parties at a Court hearing on that same day.

Docket No. 26

Date 4/5/04

A00208

FLEETBOSTON FINANCIAL
CORPORATION
By their attorneys,

Dated: August 5, 2004

/s/ Stuart M. Brown
Stuart M. Brown, Esquire (#4050)
Denise Seastone Kraft (#2778)
EDWARDS & ANGELL, LLP
919 N. Market Street
Wilmington, DE 19801
302.777.7770
302.777.7263 - facsimile

500372-1

A00209

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Case No. 02-10651 (PJW) |
| NHI, INC.,<br>A DELAWARE CORPORATION | : | Chapter 11 |
| ——————————————— | : | |
| NHI, INC., | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| v. | : | |
| FLEETBOSTON FINANCIAL<br>CORPORATION, KMR MANAGEMENT,<br>INC., ROBERT RIESNER and<br>WARING S. JUSTIS, JR., | : | Related Docket No. 1 and 17 |
| Defendants | : | |

## ORDER

Upon consideration of the Plaintiff's First Amended Complaint filed by the Debtor, NHI, Inc. ("Amended Complaint") and the Motion to Dismiss the Plaintiff's First Amended Complaint filed by the Defendants in response thereto, it is hereby:

**ORDERED, ADJUDGED AND ADJUDGED** that the Motion to Dismiss Plaintiff's First Amended Complaint is Granted.

Dated: August __, 2004                                                    By the Court

_____
Honorable Peter J. Walsh
United States Bankruptcy Judge

BOS_500373_1/TCONNOLLY

**A00210**

## CERTIFICATE OF SERVICE

I, Stuart M. Brown, certify that on this 5th day of August, 2004, I caused true and correct copies of the **Defendants' Motion to Dismiss Plaintiff's First Amended Complaint** to be served on the following parties in the manner indicated:

**VIA HAND-DELIVERY**
Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

**VIA U.S. FIRST-CLASS MAIL**
Scot R. Withers, Esquire
Lamb McERlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

/s/ Stuart M. Brown
Stuart M. Brown

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| _____Debtor._____ | : | Chapter 11 |
| NHI, INC., | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| v. | : | |
| FLEETBOSTON FINANCIAL CORPORATION, KMR MANAGEMENT, INC., ROBERT RIESNER and WARING S. JUSTIS, JR., | : | Related Docket No. 1 and 17 |
| Defendants. | : | |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS
### PLAINTIFF'S FIRST AMENDED COMPLAINT


EDWARDS & ANGELL, LLP
Stuart M. Brown (No. 4050)
Denise Seastone Kraft (No. 2778)
919 Market St., 14th Floor
Wilmington, DE 19801
Tel. 302-777-7770
Fax 888-325-9741

Docket # 27
Date: 8|5|04

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 1

II. FACTS ................................................................................................................ 2

The Amended Complaint alleges that KMR, Riesner and Justis Financially Destroyed NHI while Acting as Mercantile's Agents ....................................................................... 3

NHI Released all Claims against Mercantile and its Agents, KMR, Riesner and Justis ............ 5

In Order to Obtain Mercantile's Consent to Debtor's Use of Cash Collateral, Debtor Reaffirmed to this Court that it has Released all Claims against Mercantile and its Agents, KMR, Riesner and Justis ................................................................................................ 6

III. ARGUMENT ...................................................................................................... 8

A.  Standard Of Law ............................................................................................. 8

B.  The Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted ......................... 9

1.  The Cash Collateral Agreement Contains Judicial Admissions. ................................... 9

2.  NHI Is Judicially Estopped From Pursuing The Claims Alleged In The Amended Complaint As A Result Of Its Judicial Admissions ................................................... 11

3.  Plaintiff's Claims have been Released ................................................................. 15

IV. CONCLUSION .................................................................................................. 16

_500371_1/

**A00213**

## TABLE OF AUTHORITIES

**Cases**
Adams v. Jankouskas, Del. Supr., 452 A.2d 148, 155-56 (1982) ................................................. 16
BP Amoco Chem. Co. v. Sun Oil Co., 166 F. Supp. 2d 984, 989 (D. Del. 2001) ......................... 8
Chakov v. Outboard Marine Corp., Del. Supr., 429 A.2d 984 (1981) .......................................... 15
Conley v. Gibson, 355 U.S. 41, 45-46 (1957) .............................................................................. 8
Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555 (1895) ......................................................... 11
End of the Road Trust ex rel. Fruehauf Trailer Corp. v. Terex Corp. (In re Fruehauf Trailer
    Corp.), 250 B.R. 168, 194 (D. Del., 2000) ............................................................................ 15
Glick v. White Motor Co., 458 F.2d 1287, 1291 (3rd Cir.1972) ................................................... 11
Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984) ............... 8
Hob Tea Room v. Miller, Del. Supr., 89 A.2d 851 (1952) ........................................................... 16
In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999) ..................................................... 12
In re Foxmeyer Corp., 286 B.R. 546, 567 (Bankr. D. Del. 2002) ............................................... 11
In re Kindred Healthcare, Inc., 2003 WL 22327933 *2-3 (Bankr. D. Del. Oct. 9, 2003) ............ 14
New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814 (2001) ............................... 11
Okan's Foods v. Windsor Assocs. Ltd. Pshp. (In re Okan's Foods), 217 B.R. 739, 755 (Bankr.
    E.D.Pa. 1998) .................................................................................................................. 14, 15
Pesta v. Warren, 2004 WL 1172996 (Del. Super. May 13, 2004) ................................................. 9
Rochen v. Huang, Del.Super., 1989 WL 5374 (1989) ................................................................ 16
Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) ......... 12
Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991) ........................................................... 8
State Farm Mutual Automobile Insurance Co. v. Worthington, 405 F.2d 683, 686 (8th Cir.1968)
    .............................................................................................................................................. 11
Three Rivers Motors Ford Co. v. Ford Motor Co., 522 F.2d 885 (3d Cir. 1975) ......................... 12
Tucker v. Albun, Inc., Del.Super., 1999 WL 1241073 (1999) ..................................................... 16
United States v. Transport Administrative Services, 260 F.3d 909, 917 (8th Cir. 2001) ............. 11
Williams v. Stone, 109 F.3d 890, 893 (3d Cir. 1997) ................................................................... 15
Wilmington Trust Co. v. Calhoun (In re Geotek Communs., Inc.), 282 B.R. 165, 169 (Bankr. D.
    Del., 2002) (J. Walsh) ......................................................................................................... 15

**Rules**
Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 1, 2, 8
Federal Rules of Bankruptcy Procedure 7012(b) ....................................................................... 1, 8

**Other Authorities**
2 John W. Strong, McCormick on Evidence §§ 254, 257 (5th ed.1999) ....................................... 11
Barry Russell, Bankruptcy Evidence Manual § 801.22 at 884 (2002 ed.2001) ............................ 11

**Miscellaneous**
In re NHI, Inc., United States Bankruptcy Court for the District of Delaware, Case No. 02-10651
    (PJW). ................................................................................................................................... 6

_500371_1/

**A00214**

# I.    **INTRODUCTION**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, FleetBoston Financial Corporation ("Fleet"), KMR Management Inc. ("KMR"), Robert Reisner ("Reisner"), and Waring S. Justis ("Justis") (together, the "Defendants"), respectfully submit this Memorandum Of Law in Support of their Motion to Dismiss Plaintiff's First Amended Complaint.

Plaintiff NHI, Inc. ("NHI", "Plaintiff" or "Debtor") represented to the Court in the Cash Collateral Agreement and Consent Order ("Cash Collateral Order") [D.I. 34] that "no offsets, defenses or counterclaims to the [pre-petition indebtedness to Mercantile] exist...". Now, in a Janus-like assertion, Debtor takes a subsequent, contrary, position in the Amended Complaint and alleges that the Defendants, acting as Mercantile's agent and in concert with and at the direction of Mercantile, improperly caused NHI to pay down its pre-petition indebtedness to Mercantile. Under the doctrine of judicial estoppel, Debtor is bound by its judicial admissions in the Cash Collateral Order and cannot by law take a subsequent, contrary, position in the Amended Complaint.

In addition, in an agreement dated February 26, 2002, among Mercantile and the obligors to Mercantile, including NHI, NHI and the other obligors released Mercantile **and its agents** of and from any and all claims relating to their obligations to Mercantile or Mercantile's administration of the loan. According to the Amended Complaint, KMR, Riesner and Justis acted as Mercantile's agents and, therefore, benefit from the release.

Accordingly, and for all of the reasons set forth below, the claims of Debtor against the Defendants[1] should be dismissed with prejudice.

## II.    FACTS[2]

NHI was the first pre-manufactured home builder in Delaware, and for more than thirty years, conducted a successful manufacturing business. [Plaintiff's First Amended Complaint ("Amended Complaint") ¶8.]  In the early 1990s, NHI decided to expand its business into the manufacturing of lower-cost homes.  [Amended Complaint ¶10 - 13.]  To this end, NHI incorporated three other entities and expanded its real estate holdings.  [Amended Complaint ¶¶10, 11, 12, 13.]  In expanding, NHI greatly increased its indebtedness with the enthusiastic support of its banking institution, Mercantile Safe Deposit and Trust Co. ("Mercantile"). [Amended Complaint ¶14.]  All outstanding debt owed to Mercantile by NHI and its insiders and affiliates was cross collateralized.  [Amended Complaint ¶14.]

On or about March 21, 2000 Mercantile and NHI entered into a Forbearance Agreement pursuant to which, among other things, all debt of NHI and its related affiliates was monitored on a month-to-month basis by NHI's contact at Mercantile, Tim Naylon.  [Amended Complaint ¶19.]  On or about July 27, 2000, Mercantile and NHI entered into a Second Forbearance Agreement.  [Amended Complaint ¶21.]

In August 2000, NHI learned that Mercantile was considering calling all of NHI's loans and placing NHI into liquidation, because it believed that NHI was in default of certain technical non-monetary covenants.  [Amended Complaint ¶22.]  On or about October 6, 2000, Scott

---

[1]  The allegations purportedly sustaining the claims against Fleet are internally inconsistent with Plaintiff's allegations that KMR, Reisner and Justis acted at the direction of Mercantile. Plaintiff has admitted that it named Fleet as a Defendant only because it has the financial wherewithal to satisfy any judgment that might be entered. Accordingly, Fleet should be dismissed if KMR, Reisner and Justis are dismissed.

[2]  For the purposes of this memorandum of law, and in order to comply with the requirements of Rule 12(b)(6), Defendants will assume that the allegations in the Amended Complaint are true.

_500371_1/

A00216

Krieger ("Krieger"), Mercantile's workout manager, replaced Naylon as NHI's contact at

Mercantile and Krieger insisted – on the threat of calling all of Mercantile's loans – that NHI

retain a management consultant and strongly urged that Defendants KMR, Riesner and Justis be

hired as management consultants. Krieger assured NHI that Defendants KMR, Riesner and

Justis were "turn around" consultants, as opposed to "liquidation guys." [Amended Complaint ¶

25.]

On or about October 19, 2000, again, under the threat of calling all of Mercantile's loans,

NHI, its principals and its affiliated companies entered into a Consulting Agreement with

Defendants KMR, Riesner and Justis (the "Consulting Agreement"). A copy of the Consulting

Agreement and the amendments thereto were attached as Exhibit "A" to the Amended

Complaint. [Amended Complaint ¶ 27.]

**The Amended Complaint alleges that KMR, Riesner and Justis**
**Financially Destroyed NHI while Acting as Mercantile's Agents**

According to the Amended Complaint, after assuming control of NHI, and unbeknownst

to any of NHI's principals, KMR, Riesner and Justis embarked on a short-sighted and results-

oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting

Agreement and in violation of their fiduciary duties and obligations of loyalty. KMR, Riesner

and Justis made their primary priorities Mercantile's collateral realization and KMR's collection

of exorbitant and extorted consulting fees, while at the same time relegating NHI's business

operations and viability as a going concern to distant secondary priorities, in direct contravention

of the Consulting Agreement. [Amended Complaint ¶ 32.]

As alleged in the Amended Complaint, KMR, Riesner and Justis did not operate

independently and for the benefit of NHI. Instead, KMR, Riesner and Justis acted as

3

_500371_1/

**A00217**

Mercantile's agents. [Amended Complaint ¶ 33.] Specifically, Debtor in its Amended

Complaint alleges that:

- Mercantile insisted on NHI hiring KMR, and then KMR placed NHI into an insolvent condition in a fashion designed to protect only Mercantile. [Amended Complaint ¶¶ 105, 112.]

- Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement. [Amended Complaint ¶ 34.]

- KMR, Riesner and Justis engaged in a scheme to waste the assets of NHI in order to liquidate it for the benefit of Mercantile. [Amended Complaint ¶ 111.]

- KMR, Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around. [Amended Complaint ¶ 104.]

According to NHI, in 2001, KMR, Riesner and Justis continued on a concentrated course

of action to pay Mercantile and KMR at the fastest possible rate without regard to the

continuation of NHI's business, while stripping NHI of assets. In collaboration with Krieger

(Mercantile's workout manager), KMR, Riesner and Justis discontinued paying NHI's vendors,

suppliers, health care claims and taxing authorities, removed critical employees from plant

operations, shipped homes out of the plant prior to completion and with substantial defects,

failed to complete homes in the field and focused on short-term returns to Mercantile and KMR,

without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's

viability as a going concern. [Amended Complaint ¶ 47.]

At the same time, although NHI was still only in technical default with Mercantile, KMR,

Riesner and Justis systematically made payments to Mercantile the day after late fees and

penalties were incurred. According to NHI, it was apparent that KMR, Riesner and Justis were

_500371_1/

A00218

not concerned with NHI's ability to continue as a going concern – rather, the sole concern of KMR, Riesner and Justis was that Mercantile and KMR be paid. [Amended Complaint ¶ 48.]

The Amended Complaint alleges that from October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; made decisions which maximized cash flows to Mercantile and KMR, while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting Agreement; breached their fiduciary duty and duty of loyalty by – rather than providing "turn around" management – devising a stealth plan to strip NHI of all cash and assets before running NHI into liquidation, all for the sole benefit and at the direction of Mercantile, and to the extreme detriment and prejudice of NHI and its shareholders and creditors. [Amended Complaint ¶ 60.] According to the Amended Complaint, all of KMR's, Riesner's and Justis' relationships and contracts with NHI terminated in or before January 2002. [Amended Complaint ¶ 59.]

By February 2002, as a result of the gross mismanagement of NHI by KMR, Riesner and Justis, for Mercantile's benefit, as alleged in the Amended Complaint, NHI was in dire financial straits and was not able to re-finance or sell its operations as a going concern. [Amended Complaint ¶61.] On February 6, 2002, Mercantile demanded payment on all of NHI's lines of credit. [Amended Complaint ¶63.]

**NHI Released all Claims against Mercantile and its Agents, KMR, Riesner and Justis**

On February 26, 2002, NHI and the principals of NHI entered into an agreement and release with Mercantile ("February 26, 2002 Agreement"), which provided a mechanism to settle NHI's debt to Mercantile and satisfied Mercantile's liens on the assets of NHI and its principals, and released Mercantile **and its agents** from all liability to NHI. [Amended Complaint ¶64.]

_500371_1/

**A00219**