# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FLEETBOSTON FINANCIAL )
CORPORATION, KMR MANAGEMENT, )
INC., ROBERT RIESNER, and )
WARING S. JUSTIS, JR., )
)
        Appellants, )
)
   v. )     Civil Action No. 05-004 (SLR)
)
NHI, INC., )
)
        Appellee. )

## VOLUME II

### APPENDIX TO
### OPENING BRIEF OF APPELLANTS FLEETBOSTON
### FINANCIAL CORPORATION, KMR MANAGEMENT, INC.,
### ROBERT RIESNER AND WARING S. JUSTIS, JR.

Stuart M. Brown, Esq. (No. 4050)
Denise Seastone Kraft, Esq. (No. 2778)
William R. Firth, III, Esq. (No. 4356)
EDWARDS & ANGELL, LLP
919 N. Market Street, 15th Floor
Wilmington, DE 19801
Telephone (302) 777-7770
Facsimile (302) 777-7263

*Attorneys for FleetBoston Financial
Corporation, KMR Management, Inc.,
Robert Riesner and Waring S. Justis, Jr.*

Dated: October 10, 2005

## TABLE OF CONTENTS

**VOLUME I**

Complaint [D.I. 1] ........................................................................A00001

    Exhibit A – Consulting Agreement dated 10/19/00.................................A00030

    Exhibit B – Preference Analysis ........................................................A00037

Motion to Dismiss by Defendant FleetBoston Financial Corporation [D.I. 12]..................A00039

    Memorandum of Law in Support of the Motion to Dismiss by
    Defendant FleetBoston Financial Corporation ........................................A00040

    Affidavit of Stuart M. Brown............................................................A00049

    Exhibit A – Pennsylvania Department of State Entity Details
    Regarding KMR Management, Inc.......................................................A00051

    Exhibit B – Delaware Secretary of State Merger Documents
    Regarding FleetBoston Financial Corporation .......................................A00053

Plaintiff's First Amended Complaint [D.I. 17] ........................................A00078

Plaintiff's Answer to Motion to Dismiss of Defendant, FleetBoston
    Financial Corporation [D.I. 17] .......................................................A00119

    Exhibit A – Memorandum in Support of Plaintiff's Answer
    to Motion to Dismiss of Defendant, FleetBoston Financial
    Corporation ...............................................................................A00122

    Exhibit B – Blackline of Plaintiff's First Amended Complaint...............A00125

    Exhibit C – Plaintiff's First Amended Complaint ..............................A00165

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [D.I. 26]..................A00208

Memorandum of Law in Support of Defendants' Motion to Dismiss
    Plaintiff's First Amended Complaint [D.I. 27] ....................................A00212

    Exhibit A – Agreement dated 2/26/02 between Mercantile-Safe
    Deposit and Trust Company and Nanticoke Homes, Inc., et al. ...............A00232

    Exhibit B – Consent Order Approving Interim Agreement
    for Use of Cash Collateral and Adequate Protection..............................A00251

    Unreported Cases .......................................................................A00271

WLM_502925_1/JGREGA

VOLUME II

Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] ....A00293

Defendants' Reply Brief in Response to Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 30] ....A00314

Unreported Decisions....A00326

Letter dated October 8, 2004 from the Honorable Peter J. Walsh to Counsel [D.I. 32] ....A00345

Certification of Counsel for Plaintiff NHI, Inc. [D.I. 34] ....A00348

Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D.I. 35]....A00355

Memorandum of Law in Support of Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D.I. 36] ....A00377

Exhibit 1 – Certification of Counsel for Plaintiff NHI, Inc. ....A00389

Exhibit 2 – Notice of Agenda of Matters Scheduled for Hearing on October 19, 2004 at 10:30 a.m. ....A00396

Unreported Decisions....A00403

Plaintiff's Answer to Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D.I. 39]....A00409

Defendants' Reply Brief in Response to Plaintiff's Answer to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D.I. 41]....A00415

Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D.I. 40]....A00437

Exhibit A – Request for Production of Documents Addressed to Defendants FleetBoston Financial Corporation, KMR Management, Inc., Robert Riesner and Waring Justis, Jr. of NHI, Inc. and Interrogatories Addressed to Defendants FleetBoston Financial Corporation, KMR Management, Inc., Robert Riesner and Waring Justis, Jr. of NHI, Inc. ....A00449

Exhibit B – Affidavit of John M. Mervine, Jr. in
Support of Plaintiff's Supplemental Response to
Defendants' Motion to Dismiss ................................................................A00463

Plaintiff's Second Amended Complaint [D.I. 45] ............................................A00470

Exhibit A – Consulting Agreement dated 10/19/00 between
Nanticoke Homes, Inc., et al. and KMR Management, Inc., et al. ............................A00510

Exhibit B – Preference Analysis ................................................................A00517

Notice of Motion for Leave to Appeal [D.I. 46]..................................................A00519

Motion for Leave to Appeal [D.I. 46]..........................................................A00521

Notice of Appeal Pursuant to Federal Bankruptcy Procedures
8001 and 28 U.S.C. Section 158(a)(3) [D.I. 47]........................................A00532

Designation of the Record and Statement of Issues Pursuant
to (A) Federal Rule of Appellate Procedure 6(a) and
(B) Bankruptcy Rule 8006 [D.I. 49] ........................................................A00535

Answer of Plaintiff NHI, Inc. in Opposition to Defendants'
Motion for Leave to Appeal [D.I. 50]........................................................A00541

Exhibit A – Transcript of December 3, 2004 Hearing
before the Honorable Peter J. Walsh.........................................................A00551

Exhibit B – 1998 Del. Ch. LEXIS 115 (*Siegman, et al.
v. Palomar Medical Technologies, Inc., et al.*) .........................................A00562

Exhibit C – 1994 Del. Ch. LEXIS 20 (*Coates International,
Ltd., et al. v. DeMott, et al.*)..................................................................A00572

VOLUME III

Memorandum of Law in Support of Defendants' Motion to
Dismiss Plaintiff's Second Amended Complaint [D.I. 52]......................................A00582

Unreported Cases ................................................................................A00608

Exhibit A – Agreement dated 2/26/02 between Mercantile-Safe
Deposit and Trust Company and Nanticoke Homes, Inc., et al. ..............................A00625

Exhibit B – Consent Order Approving Interim Agreement
for Use of Cash Collateral and Adequate Protection ........................................A00645

WLM_502925_1/JGREGA

Memorandum of Law of Plaintiff NHI, Inc. in Opposition to
    Defendants' Motion to Dismiss Plaintiff's Second
    Amended Complaint [D.I. 54] ...............................................................A00675

       Exhibit A – 1999 Del. Super. LEXIS 468 (*Tucker v. Albun, Inc.*) ...........A00694

Defendants' Reply Brief in Response to Memorandum of Law of
    Plaintiff NHI, Inc. in Opposition to Defendants' Motion to
    Dismiss Plaintiff's Second Amended Complaint [D.I. 60]........................A00709

       Unreported Cases .....................................................................................A00724

Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion
    for Stay Pending Appeal [D.I. 62] ............................................................A00745

Brief in Reply to Brief of Plaintiff's NHI, Inc. in Opposition to
    Defendant's Motion for a Stay Pending Appeal [D.I. 63] ........................A00764

       Exhibit 1 - Transcript of December 3, 2004 Hearing
       before the Honorable Peter J. Walsh........................................................A00783

       Unreported Cases .....................................................................................A00794

VOLUME IV

Memorandum Opinion [D.I. 65]..................................................................A00807

Order [D.I. 66] ............................................................................................A00830

Notice of Motion for Leave to Appeal [D.I. 68] ........................................A00831

Motion for Leave to Appeal [D.I. 68] .........................................................A00833

       Exhibit A – Order.....................................................................................A00842

       Exhibit B – Memorandum Opinion .........................................................A00844

Motion of FleetBoston Financial Corporation, KMR Management,
    Inc., Robert Riesner and Waring S. Justis, Jr. for a Stay
    Pending Appeal of the February 11, 2005 Order and
    Memorandum Opinion [D.I. 69]...............................................................A00872

Brief in Support of Motion of FleetBoston Financial Corporation,
    KMR Management, Inc., Robert Riesner and Waring S. Justis,
    Jr. for a Stay Pending Appeal of the February 11, 2005 Order
    and Memorandum Opinion Denying Defendants' Motion to
    Dismiss the Second Amended Complaint [D.I. 70]..................................A00878

       Unreported Cases .....................................................................................A00897

Notice of Appeal Pursuant to Bankruptcy Procedures 8001 and
    28 U.S.C. Section 158(a)(3) [D.I. 156]........................................................A00908

        Exhibit A – Order........................................................................................A00910

        Exhibit B – Memorandum Opinion ...........................................................A00912

Interim Agreement for Use of Cash Collateral and Adequate
    Protection [Case D.I. 34] .............................................................................A00940

Transcript of December 3, 2004 Hearing before the Honorable
    Peter J. Walsh...............................................................................................A00957

Defendants' Motion to Dismiss Plaintiff's Second Amended
    Complaint [D.I. 51].......................................................................................A00967

Release Agreement dated October 30, 2003 ......................................................A00971

Nanticoke Homes, Inc. Voluntary Chapter 11 Petition .....................................A00979

Addendum Compilation of Appellee Agency Pleading Allegations ...................A00989

WLM_502925_1/JGREGA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                          :

NHI, INC.,                      :          Case No. 02-10651 (PJW)
A DELAWARE CORPORATION          :
                                :          Chapter 11

NHI, INC.,                      :

     Plaintiff           :

    v.                      :          Adversary No. 04-52879

FLEET BOSTON FINANCIAL          :
COPRORATION, KMR MANAGEMENT,    :
INC., ROBERT RIESNER and WARING :
S. JUSTIS, JR.,                 :
                                :
    Defendants          :


### ANSWERING BRIEF OF PLAINTIFF NHI, INC.
### IN OPPOSITION TO DEFENDANTS' MOTION TO
### DISMISS PLAINTIFF'S AMENDED COMPLAINT


LAMB McERLANE PC
James C. Sargent, Jr. Esquire
Attorney I.D. No. 28642
Guy A. Donatelli, Esquire
Attorney I.D. No. 44205
Scot R. Withers, Esquire
Attorney I.D. No. 84309
24 E. Market Street
Box 565
West Chester, PA 19380-0565
(610) 430-8000

Dated:        September 8, 2004

Dkt. No. 29

Date Filed: 9/8/04

A00293

# TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................ ii

I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.................1

II.     CONCISE STATEMENT OF THE FACTS ...............................................................3

III.    SUMMARY OF ARGUMENT ...................................................................................8

IV.     ARGUMENT ...............................................................................................................9

        A.      THE AFFIRMATIVE DEFENSE OF RELEASE IS NOT AVAILABLE
                TO DEFENDANTS ...........................................................................................9

                1.      Defendants Are Not "Agents" of Mercantile Under The Cash
                        Collateral Agreement. ..............................................................................10

                2.      The Doctrine Of Judicial Estoppel Is Inapplicable To The Facts
                        Of This Case .............................................................................................11

        B.      THE CASH COLLATERAL AGREEMENT AND ANY
                REPRESENTATION REGARDING MERCANTILE DO NOT
                EXCUSE THE INDEPENDENT DUTIES OF DEFENDANTS TO NHI ...........13

                1.      This Action Seeks Damages From Defendants Based Upon
                        Defendants' Failure To Discharge Their Own, Independent
                        Contractual And Fiduciary Duties To NHI Under Theories Of
                        Contract, Tort and Bankruptcy Law .........................................................13

                2.      This Action Is Not A Lender Liability Action Against Mercantile...........14

V.      CONCLUSION............................................................................................................16

i

A00294

## TABLE OF CITATIONS

**CASES**

Chakov v. Outboard Marine Corp., 429 A.2d 984 (Del. Super. Ct. 1981) .......................................9

Coates Int'l, Ltd. v. DeMott, 1994 Del. Ch. LEXIS 20 (Del. Ch. 1994) ...........................11

Fisher v. Townsends, Inc., 695 A.2d 53 (Del. 1997).......................................................10

Heller v. Kiernen, 2002 Del. Ch. LEXIS 17 (Del. Ch. 2002)...........................................14

H-M Wexford, LLC v. Encorp, Inc., 832 A.2d 129 (Del. Ch. 2003) ..............................14

National Labor Relations Bd. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 19,
154 F.3d 137 (3d Cir. 1998).....................................................................................10

Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir. 1988).......................12

Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996)............11, 12

Scarano v. Central R. Co. of New Jersey, 203 F.2d 510 (3d Cir. 1953)...........................11

Seigman v. Palomar Med. Techs., Inc., 1998 Del. Ch. LEXIS 115 (Del. Ch. 1998) ...................11

Sutter Opportunity Fund 2 LLC v. Cede & Co., 838 A.2d 1123 (Del. Ch. 2003).........................10

Tucker v. Albun, Inc., 1999 Del. Super. LEXIS 468 (Del. Super. Ct. 1999) ...................................9


**STATUTES**

11 U.S.C. § 544
("Trustee as lien creditor and as successor to certain creditors and purchasers") ........................14

11 U.S.C. § 547 ("Preferences")................................................................................14

11 U.S.C. § 548 ("Fraudulent transfers and obligations")................................................14

11 U.S.C. § 550 ("Liability of transferee of avoided transfer") ......................................14


**RULES**

Federal Rule of Civil Procedure 12(b)(6) ..............................................................2, 3

A00295

## I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, NHI, Inc. (hereinafter "NHI"), formerly known as Nanticoke Homes, Inc., filed a voluntary petition for relief (hereinafter "Petition") with the United States Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code on March 1, 2002. Prior to 2002, NHI was engaged in manufacturing customized homes at its plant in Greenwood, Delaware. NHI is currently maintaining its business as a Debtor-in-Possession.

This adversary proceeding is an action by NHI, seeking to recover the losses suffered as a result of the failure of KMR Management, Inc. ("KMR"), Robert Riesner ("Riesner") and Waring Justis, Jr. ("Justis"), and KMR's parent, Fleet Boston Financial ("Fleet"), to comply with the terms set forth in a consulting agreement between Plaintiff and Defendants. Under the consulting agreement, Defendants represented themselves to be highly skilled professionals and agreed to provide NHI with professional management for the purposes of helping to stabilize NHI's financial condition and perpetuating NHI's business. Defendants undertook to act as fiduciaries, assumed positions of responsibility and undertook a duty of loyalty with respect to NHI. They assumed the complete control, responsibility and authority for managing the business of NHI. However, instead of taking actions to improve NHI's position, Defendants undertook a course of conduct designed to assure NHI's insolvency and ultimate dismantlement for the benefit of NHI's creditor, Mercantile Safe Deposit and Trust Company.

The Amended Complaint sets forth twelve causes of action including theories based upon breach of contract, breach of the covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, fraud, waste of corporate assets, tortious interference with contract and prospective business advantage, fraudulent transfer, fraudulent conveyance and avoidance of

1

A00296

preferences under the Bankruptcy Code. These actions were not asserted against Mercantile; indeed, Mercantile is not even named as a defendant. The claims are made against Defendants based upon the independent obligations flowing from Defendants to NHI both pre and post petition.

On August 5, 2004, Defendants filed a 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint. The defenses asserted in that motion are defenses to a hypothetical and un-filed claim by NHI against Mercantile. Because these defenses have no merit, NHI files this response to that Motion.

2

## II. CONCISE STATEMENT OF THE FACTS

Defendants' motion to dismiss is based upon Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, all facts of the Amended Complaint must be accepted as true, and all reasonable inferences there from must be construed in favor of NHI. The facts set forth in the Amended Complaint as they are relevant to the instant motion to dismiss are as follows: NHI was the first pre-manufactured home-builder in Delaware and, for more than thirty years, conducted a successful manufacturing business. (Amended Complaint ¶ 8.) NHI was founded by John Mervine, Sr. Over three decades, NHI established a reputation for manufacturing a high-quality, high-end product in an expanding market. At the height of NHI's business, it had a sales volume of approximately $60,000,000 a year. (Amended Complaint ¶ 8.)

Over time, NHI, its affiliated companies and its related entities greatly increased its indebtedness to its banking institution, Mercantile Safe Deposit and Trust Company ("Mercantile"). All outstanding debt owed to Mercantile by NHI and its affiliated companies, was cross collateralized. (Amended Complaint ¶ 14.) On or about March 21, 2000, Mercantile and NHI, due to a technical default under the loan documents entered into two Forbearance Agreements. In August 2000, NHI learned that Mercantile was considering calling NHI's loans and placing NHI into liquidation, even though NHI remained current on its loan payments, but was alleged to be in default of technical, non-monetary covenants. (Amended Complaint ¶ 22.) On or about October 6, 2000, Mercantile insisted—on the threat of calling all of Mercantile's loans—that NHI retain a management consultant and strongly suggested/urged that Defendants KMR, Riesner and Justis be hired as management consultants. (Amended Complaint ¶ 25.) Scott

3

Krieger, Mercantile's workout manager, assured NHI that Defendants KMR, Riesner and Justis were "turn around" consultants, as opposed to "liquidation guys." (Amended Complaint ¶ 25.)

On or about October 18, 2000, Mercantile indicated it would provide an additional $1.5 million of financing for NHI if KMR, Riesner and Justis considered NHI to be a viable going concern. On or about October 19, 2000, under the threat of calling all of Mercantile's loans, NHI entered into a Consulting Agreement with Defendants KMR, Riesner and Justis. (Amended Complaint ¶ 27.) Under the Consulting Agreement, KMR, Riesner and Justis, who had represented themselves to be highly skilled professionals, agreed to provide NHI with professional management for the purposes of helping to stabilize NHI's financial condition and perpetuating NHI's business. Under the Consulting Agreement, KMR, Riesner and Justis undertook to act as fiduciaries, assumed positions of responsibility and undertook a duty of loyalty with respect to NHI as NHI's agents. Pursuant to the Consulting Agreement, KMR, Riesner and Justis assumed the complete control, responsibility and authority for managing the business of NHI. (Amended Complaint ¶ 28.) Under the Consulting Agreement, NHI agreed to pay KMR certain specified hourly rates for services rendered. (Amended Complaint ¶ 32.)

After assuming control of NHI, KMR, Riesner and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their fiduciary duties and obligations of loyalty. (Amended Complaint ¶¶ 32, 35-37.) KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for KMR, while at the same time relegating NHI's business operations and viability as a going concern to distant secondary priorities, in direct contravention of the Consulting Agreement. (Amended Complaint ¶ 32.) KMR, Riesner and Justis did not operate independently

4

and for the benefit of NHI, upon information and belief, KMR, Riesner and Justis served and the direction and pleasure of Mercantile. Upon information and belief, Riesner and/or Justis was in contact with Mercantile at least daily during the term of the Consulting Agreement. (Amended Complaint ¶ 34.)

In 2001, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. In collaboration with Krieger, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. (Amended Complaint ¶ 41.)

At the same time, although NHI was still only in technical default with Mercantile, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. It was apparent that Riesner and Justis were not concerned with NHI's ability to continue as a going concern—rather, the sole concern of Riesner and Justis was that Mercantile and KMR be paid. (Amended Complaint ¶ 48.)

By the beginning of September 2001, due to the systematic failure of Riesner and Justis to pay NHI's vendors and suppliers, NHI was the named defendant in approximately twenty-two lawsuits by its customers, vendors and suppliers. By October 2001, the number of lawsuits against NHI by its customers, vendors and suppliers had increased to forty-three. As a result, NHI was unable to secure supplies and materials from vendors, which resulted in NHI having to

5

resort to alternate and more expensive sources of supplies and materials. (Amended Complaint ¶ 49.)

Under the management of NHI by KMR, Riesner and Justis, NHI's reputation as a manufacturer of high quality customized homes was ruined. Riesner and Justis proved to be incompetent in running the day-to-day operations of NHI's manufacturing business. Instead of operating NHI with the intent that it continue as a viable going concern, the sole objective of KMR, Riesner and Justis was to pay down bank debt and liquidate assets to the benefit of Mercantile and KMR, and to the detriment of NHI's shareholders.

In November 2001, it became apparent to John M. Mervine, Jr. that Riesner and Justis had been systematically failing to make state tax payments on behalf of NHI, failing to pay workers' compensation benefits, and failing to pay health and life insurance premiums and 401(k) contributions for NHI employees. (Amended Complaint ¶ 52.)

On or about January 29, 2002, Justis abruptly "went on vacation" and did not maintain contact with NHI or the members of the Mervine family. (Amended Complaint ¶ 59.)

From October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; made decisions which maximized cash flows to Mercantile and KMR while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting Agreement; breached their fiduciary duty and duty of loyalty by—rather than providing "turn around" management—devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis, and to the extreme detriment and prejudice of NHI and its shareholders and creditors. (Amended Complaint ¶ 60.)

6

By February 2002, as a result of the gross mismanagement of NHI by KMR, Riesner and Justis, NHI was in such dire financial straits that it was not able to re-finance or sell its operations as a going concern. From October 2000 through February 2002, a period of approximately fourteen months, Riesner and Justis caused NHI to pay KMR consulting fees of approximately $1.9 million. (Amended Complaint ¶¶ 61, 62.) On or about February 6, 2002, Mercantile demanded payment on all of NHI's loans and lines of credit. (Amended Complaint ¶ 63.) Thereafter, on or about February 26, 2002, the members of the Mervine family found themselves in such financial duress that they entered into an agreement with Mercantile, which over the next twenty months settled NHI's debt with Mercantile, satisfied Mercantile's liens on the assets of NHI and the Mervine family members' personal residences, and released Mercantile from all liability to NHI. (Amended Complaint ¶ 64.)

NHI terminated its manufacturing operations on February 19, 2002. (Amended Complaint ¶ 66.)

A00302

# III. SUMMARY OF ARGUMENT

Defendants' motion to dismiss should be denied for two compelling reasons. First, Defendants argue that because NHI agreed in a Cash Collateral Agreement that its pre-petition debt to Mercantile was valid and enforceable, NHI is estopped from asserting other claims against other entities because, it is argued, the Cash Collateral Agreement contains some type of judicial admission. Defendants misapprehend this action as an action by NHI against its former lender, Mercantile, under some lender liability theory. It is not—NHI seeks nothing from Mercantile, and has not named Mercantile in this action. This action seeks damages from Defendants, KMR, Riesner and Justis, and KMR's parent, Fleet, based upon Defendants' failure to discharge their own, independent contractual and fiduciary duties to NHI under theories of contract, tort and bankruptcy law. Accordingly, any reference to the Cash Collateral Agreement, or NHI's relationship with Mercantile, is of no moment.

Second, Defendants attempt to assert the affirmative defense of release arguing that the Cash Collateral Agreement confirmed a release to Mercantile which Defendants themselves should be permitted to use. Defendants' efforts are unavailing; the release was not given to Defendants—it was given to Mercantile. Nowhere are Defendants named in the Release. If Defendants wish to make out the factual defense of release, they should be permitted to do so only after raising the defense in their answer and proving the facts to support whatever theory they assert to take advantage of the release.

8

## IV. <u>ARGUMENT</u>

Defendants argue that because NHI agreed in a Cash Collateral Agreement that its pre-petition debt to Mercantile was valid and enforceable, NHI is estopped from asserting other claims against other entities. Defendants argue that the Cash Collateral Agreement contains some type of judicial admission. The February 26, 2002 Cash Collateral Agreement between the members of the Mervine family and Mercantile released Mercantile and Mercantile's "officers, directors, employees, attorneys, and agents" from all liability to NHI. (<u>See</u> Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Exhibit "A" at 11.) Defendants assert that by virtue of this release by NHI of Mercantile, Defendants are somehow also released from all liability to NHI. Defendants' interpretation of the legal effect of the Cash Collateral Agreement is untenable and contrary to law.

A.    THE AFFIRMATIVE DEFENSE OF RELEASE IS NOT AVAILABLE TO
      <u>DEFENDANTS.</u>

Delaware Courts recognize the validity of a general release of a party from liability. <u>Chakov v. Outboard Marine Corp.</u>, 429 A.2d 984, 985 (Del. Super. Ct. 1981). A release is valid if it meets three requirements: (1) the release must not be ambiguous; (2) the release must not be unconscionable; and (3) the release must not be against public policy. <u>Tucker v. Albun, Inc.</u>, 1999 Del. Super. LEXIS 468, *6 (Del. Super. Ct. 1999).

Defendants assert the affirmative defense of release arguing that the Cash Collateral Agreement confirmed a release to Mercantile, which Defendants themselves should be permitted to use.    However, the release was not given to Defendants—it was given to Mercantile.

9

A00304

Defendants are not named in the Release, nor are the causes of action derivative of Defendants' relationship with Mercantile.

      1.    Defendants Are Not "Agents" of Mercantile Under The Cash Collateral <u>Agreement</u>.

Despite the fact that Defendants are not specifically named in the release contained in the Cash Collateral Agreement, Defendants assert that they are the agents of Mercantile and therefore fall within the scope of the release.

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." <u>Fisher v. Townsends, Inc.</u>, 695 A.2d 53, 57-58 (Del. 1997); <u>accord</u> <u>National Labor Relations Bd. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 19</u>, 154 F.3d 137, 142-43 (3d Cir. 1998). "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." <u>Sutter Opportunity Fund 2 LLC v. Cede & Co.</u>, 838 A.2d 1123, 1128 (Del. Ch. 2003) (quoting RESTATEMENT (FIRST) OF AGENCY § 1(1) (1933)).

Nowhere in Defendants' Motion to Dismiss do Defendants assert, let alone establish, that Mercantile authorized Defendants to act on Mercantile's behalf. Defendants do not claim that they were authorized by Mercantile to transact banking business for Mercantile, nor do Defendants claim that Defendants acted subject to Mercantile's control. Defendants do not meet the legal definition of agents of Mercantile.

Defendants make the naked assertion that "[a]t the very heart of NHI's Amended Complaint is the claim that the Defendants acted as agents for Mercantile in the collection of its

10

pre-petition claims for Mercantile's ultimate benefit . . . ." (Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint at 9-10.) This assertion is wrong. NHI alleges under the facts pleaded that Defendants made Mercantile one of several beneficiaries of Defendants' contractual breaches, tortious conduct and violations of the Bankruptcy Code. This, in and of itself, does not make Defendants agents of Mercantile or transform Defendants' actionable conduct into the conduct insulated from suit by the Cash Collateral Agreement.

Accordingly, because Defendants are not agents of Mercantile, the affirmative defense of release through the Cash Collateral Agreement is not available to Defendants.

2.    The Doctrine Of Judicial Estoppel Is Inapplicable To The Facts Of This Case.

"Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from 'playing 'fast and loose with the courts.'" Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (quoting Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir. 1953)); accord Seigman v. Palomar Med. Techs., Inc., 1998 Del. Ch. LEXIS 115, *2 (Del. Ch. 1998) (under the doctrine of judicial estoppel, "a party may be precluded from asserting in a legal proceeding, a position inconsistent with a position previously taken by him in the same or in an earlier legal proceeding.") (quoting Coates Int'l, Ltd. v. DeMott, 1994 Del. Ch. LEXIS 20, *5 (Del. Ch. 1994)).

11

A00306

Under Ryan Operations, whether a litigant asserts inconsistent positions within the meaning of the judicial estoppel doctrine entails a two part inquiry: (1) whether the party's present position is inconsistent with a position it asserted in its prior judicial proceeding; and (2) if so, whether the party asserted the inconsistent position in bad faith. Ryan Operations, 81 F.3d at 361. Both prongs must be satisfied to apply judicial estoppel as an appropriate remedy. Id. at 364 (judicial estoppel is an "extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice") (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 424 (3d Cir. 1988) (Stapleton, J., dissenting)).

In bringing this action against Defendants, NHI is not attempting to play "fast and loose with the courts." Pursuant to the Cash Collateral Agreement, NHI confirmed the release of Mercantile from any liability arising out of the loans, loan documents, obligations, collateral or the administration of such by Mercantile, which were the subjects of the Cash Collateral Agreement between Mercantile and NHI. The Cash Collateral Agreement did not release Defendants from NHI's claims against Defendants based upon Defendants' independent contractual and fiduciary duties to NHI under theories of contract, tort and bankruptcy law.

NHI does not seek to violate the release contained in the Cash Collateral Agreement and it has not named Mercantile as a defendant. In this action, NHI therefore, cannot assert a position inconsistent with the Cash Collateral Agreement—the doctrine of judicial estoppel is therefore inapplicable. See Ryan Operations, 81 F.3d at 361. Furthermore, there is no colorable argument to be made that allowing the instant action by NHI against Defendants will result in a miscarriage of justice. See id. at 364. For these reasons, Defendants' use of the doctrine of judicial estoppel is without merit.

12

B.    THE CASH COLLATERAL AGREEMENT AND ANY REPRESENTATION REGARDING MERCANTILE DO NOT EXCUSE THE INDEPENDENT DUTIES OF DEFENDANTS TO NHI.

1.    This Action Seeks Damages From Defendants Based Upon Defendants' Failure To Discharge Their Own, Independent Contractual And Fiduciary Duties To NHI Under Theories Of Contract, Tort and Bankruptcy Law.

Under the Consulting Agreement entered into on October 19, 2000, between NHI and Defendants, KMR, Riesner and Justis, Defendants agreed to provide NHI with professional management for the purposes of helping to stabilize NHI's financial condition and perpetuating NHI's business. Under the Consulting Agreement, KMR, Riesner and Justis undertook to act as fiduciaries, assumed positions of responsibility, undertook a duty of loyalty with respect to NHI as NHI's agents, and assumed the complete control, responsibility and authority for managing the business of NHI. NHI's amended complaint asserts that Defendants made their primary priorities in managing the business of NHI the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for Defendants without regard to the continuation of NHI's business, in direct contravention of the Consulting Agreement between the parties and in violation of Defendants' fiduciary duties and obligations of loyalty to NHI.

The Amended Complaint sets forth twelve causes of action including theories based upon breach of contract, breach of the covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, fraud, waste of corporate assets, tortious interference with contract and prospective business advantage, fraudulent transfer, fraudulent conveyance and avoidance of preferences under the Bankruptcy Code.

13

A00308

The causes of action set forth in the Amended Complaint have as their foundation the independent contractual and fiduciary duties undertaken[1] by Defendants to NHI, and the fraudulent transfers and avoidance of preferences by Defendants in violation of the Bankruptcy Code, 11 U.S.C. §§ 544, 547, 548, 550.[2] These causes of action are wholly separate and distinct from the Cash Collateral Agreement between Mercantile and NHI. The Cash Collateral Agreement did not encompass any of the claims set forth in the Amended Complaint and cannot form the bases of any defenses to such claims.

The claims set forth in the Amended Complaint, therefore, are NHI's claims against Defendants based upon Defendants' independent contractual and fiduciary duties to NHI under theories of contract, tort and bankruptcy law. The Cash Collateral Agreement does not and could not excuse Defendants' independent contractual and fiduciary duties to NHI.

    2.    <u>This Action Is Not A Lender Liability Action Against Mercantile.</u>

Defendants misapprehend this action as an action by NHI against its former lender, Mercantile, under some lender liability theory—it is not. This action is not an action arising out of the loans, loan documents, obligations, collateral or the administration of such by Mercantile,

---

[1] NHI has pleaded all the elements of the causes of action identified. <u>See, e.g.</u>, <u>H-M Wexford, LLC v. Encorp, Inc.</u>, 832 A.2d 129, 140 (Del. Ch. 2003) (the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff); <u>Heller v. Kiernen</u>, 2002 Del. Ch. LEXIS 17, *9 (Del. Ch. 2002) (the elements of breach of fiduciary duty are: (1) that a fiduciary duty exists; and (2) that a fiduciary breached that duty).

[2] Irrespective of any alleged release of Defendants by NHI through the Cash Collateral Agreement, the Bankruptcy Code specifically allows NHI's claims against Defendants for fraudulent transfer and avoidance of preferences.

14

A00309

which were the subjects of the Cash Collateral Agreement between Mercantile and NHI. Mercantile is not even a named defendant in the Amended Complaint.

That Mercantile was one of several beneficiaries of Defendants' contractual breaches, tortious conduct and violations of the Bankruptcy Code does not, in and of itself, transform Defendants' actionable conduct into the conduct insulated from suit by the Cash Collateral Agreement.

Accordingly, any reference to the Cash Collateral Agreement, or NHI's relationship with Mercantile, is of no moment. The Cash Collateral Agreement provides no basis to dismiss the Amended Complaint. Defendants' Motion to Dismiss should be denied.

A00310

## V. CONCLUSION

If Defendants wish to make out the factual defense of release, they should be permitted to do so only after raising the defense in an Answer to the Amended Complaint and proving the facts to support whatever theory they assert to take advantage of the release contained in the Cash Collateral Agreement.

The causes of action set forth in the Amended Complaint are separate and distinct from the Cash Collateral Agreement between Mercantile and NHI, having as their foundation the independent contractual and fiduciary duties undertaken by Defendants to NHI, and the fraudulent transfers and avoidance of preferences by Defendants in violation of the Bankruptcy Code. Accordingly, as the Cash Collateral Agreement does not encompass any of the claims set forth in the Amended Complaint, it provides no defense to such claims.

For the foregoing reasons, Plaintiff, NHI, Inc., respectfully requests that the United States Bankruptcy Court for the District of Delaware DENY Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

PHILLIPS, GOLDMAN & SPENCE, P.A.

Dated: September 8, 2004

STEPHEN W. SPENCE, Esquire (#2033)
1200 N. Broom Street
Wilmington, DE  19806
(302) 655-4200

-and-

James C. Sargent, Jr., Esq.
Guy A. Donatelli, Esq.
Scot R. Withers, Esquire
LAMB McERLANE PC
24 E. Market Street, Box 565
West Chester, PA  19380-0565
(610) 430-8000

16

A00311

## CERTIFICATE OF SERVICE

I, TAMMY A. PATTERSON, Legal Secretary, do hereby certify that I caused the foregoing document to be served upon those persons listed below as stated on September 8, 2004.

**VIA FACSIMILE & U.S. MAIL**

Stuart M. Brown, Esquire
Denise Seastone Kraft, Esquire
Edwards & Angell, LLP
919 Market Street, 14 Floor
Wilmington, DE  19801

**VIA U.S. MAIL**

Richard Shepacarter, Esquire
Office of the U.S. Trustee
844 King Street, Suite 2313,
Lockbox 35
Wilmington, DE  19801-3519

Morton R. Branzburg, Esquire
Klehr, Harrison, Harvey, Branzburg & Ellers
260 S. Broad Street
Philadelphia, PA 19102-5003

James E. Huggett, Esquire
Klehr, Harrison, Harvey, Branzburg & Ellers
919 Market Street, Suite 1000
Wilmington, DE   19801

Under penalty of perjury, I certify the foregoing to be true and correct.

TAMMY A. PATTERSON

A00312

**File an answer to a motion:**

04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

## U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Spence, Stephen W. entered on 9/8/2004 at 3:28 PM EDT and filed on 9/8/2004
**Case Name:**     NHI, Inc. v. Fleetboston Financial Corporation et al
**Case Number:**  04-52879-PJW
**Document Number:** 29

**Docket Text:**
Objection to - *Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Certificate of Service attached]* (related document(s)[26] ) Filed by NHI, Inc. (Spence, Stephen)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** I:\Scanned Docs\Tap\ans brief.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=9/8/2004] [FileNumber=2954398-0]
[36e509fae2fc8088cf42738c8500327cc7a351ac33eb0e082d6dda38968a608417d0b
290db9471f622b982dcc38552a408ea82d1c597f9e088b29aa526bea6c8]]

**04-52879-PJW Notice will be electronically mailed to:**

Stuart M. Brown    sbrown@edwardsangell.com, DEbankruptcy@edwardsangell.com

Denise Seastone Kraft    dkraft@edwardsangell.com

Stephen W. Spence    tap@pgslaw.com;th@pgslaw.com

**04-52879-PJW Notice will not be electronically mailed to:**

A00313

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| | : | |
| _____Debtor._____ | : | Chapter 11 |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| | : | |
| v. | : | |
| | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | Related Docket No. 1 and 17 |
| INC., ROBERT RIESNER and | : | |
| WARING S. JUSTIS, JR., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' REPLY BRIEF IN RESPONSE TO ANSWERING BRIEF OF
PLAINTIFF NHI, INC. IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

EDWARDS & ANGELL, LLP
Stuart M. Brown (No. 4050)
Denise Seastone Kraft (No. 2778)
919 Market St., 14th Floor
Wilmington, DE 19801
Tel. 302-777-7770
Fax 888-325-9741

Docket #  30
r        9/15/04

A00314

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iii

I.     INTRODUCTION .............................................................................................1

II.    ARGUMENT......................................................................................................2

      A.     By NHI's Own Assertions, Defendants Acted As Agents Of Mercantile
            And, Therefore, Are Released From Liability Pursuant To The February
            26, 2002 Agreement.......................................................................................2

      B.     NHI's Plaintiff's Amended Complaint Establishes That The Defendants
            Were Agents Of Mercantile ..........................................................................3

      C.     NHI's Mischaracterizes Its Own Amended Complaint And Must Stand
            On Its Pleading.............................................................................................6

      D.     By NHI's Own Assertions, Defendants' Alleged Wrongdoing Arose Out
            Of The Loans To Mercantile And Was Released On February 26, 2002................7

BOS_459965_1/NROSENBERG

A00315

## TABLE OF AUTHORITIES

### CASES

Brooks v. Euclid Systems Corp.,
   151 Md. App. 487, 827 A.2d 887 (2003)....................................................................... 3

Citibank, N.A. v. Data Lease Financial Corp.,
   828 F.2d 686 (11th Cir. 1987) ..................................................................................... 4

Corporate Property Associates v. Hallwood Group Inc.,
   Del. Supr., 817 A.2d 777 (2003)................................................................................... 8

Fisher v. Townsends, Inc.,
   Del. Supr., 695 A.2d 53 (1997)..................................................................................... 3

Golub v. Cohen,
   138 Md. App. 508, 772 A.2d 880 (2001)....................................................................... 8

J.E. Rhoads & Sons, Inc. v. Ammeral, Inc.,
   Del. Super., C.A. No. 83C-NO-98, 1988 WL 32012 (March 30, 1988)........................ 3

Shear v. Motel Mgmt. Corp. of Amer.,
   61 Md. App. 670, 487 A.2d 1240 (1985)....................................................................... 3

### OTHER

Restatement (Second) of Agency............................................................................................ 3

BOS_459965_1/NROSENBERG

A00316

## I.    INTRODUCTION

NHI Inc. ("NHI") is weaving a tangled web of inconsistent statements and allegations. NHI's Answering Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Answering Brief") furthers its attempts to obfuscate the very clear and unambiguous release granted by NHI and others in favor of Mercantile and its agents. NHI clearly and unambiguously alleges that Defendants acted as Mercantile's agents, thus benefiting from the release.

Now, in order to sustain its claim, NHI attempts to cloud the issues by reasserting the grounds in its Amended Complaint rather than dealing with the release issue head on. The substance of NHI's argument is that defendants cannot be the beneficiaries of a release in which they were not specifically named and *defendants'* allegations that they acted as Mercantile's agent in order to bring themselves under the umbrella of the release are unfounded. NHI attempts to turn the motion to dismiss standard on its head and have the Court examine the defendants' supposed allegations of agency, but when viewed through a clean glass the matter is clear. NHI alleges that defendants acted at Mercantile's direction and pleasure, NHI alleges defendants acted as Mercantile's agent, and Mercantile and its agents were generally released by NHI on February 26, 2002. NHI can not now turn its back and walk away from its own pleading. It must stand on and behind the agency allegations in its Amended Complaint and address the fact that it gave a general release to the Defendants and cannot now sustain this action.

## II.    ARGUMENT

### A.    By NHI's Own Assertions, Defendants Acted As Agents Of Mercantile And, Therefore, Are Released From Liability Pursuant To The February 26, 2002 Agreement

In its Answering Brief, NHI argues that Defendants cannot claim to be agents of Mercantile, because Defendants have not claimed "that they were authorized by Mercantile to transact banking business for Mercantile, nor do Defendants claim that Defendants acted subject to Mercantile's control." [Answering Brief, at p.10.]  Similarly, NHI accuses the Defendants of making the "the naked assertion that at the heart of NHI's Amended Complaint is the claim that the Defendants acted as agents for Mercantile in the collection of its pre-petition claims for Mercantiles ultimate benefit," and states that "[t]his assertion is wrong." [Answering Brief at p.11.]

NHI's arguments are astounding.  In a motion to dismiss context, it is plaintiff's allegations, not defendant's, that are assumed to be true and all reasonable inferences therefrom taken.  Defendants' admissions or denials are not relevant to the instant matter.  *For purposes of their Motion to Dismiss, Defendants and the Court are bound to accept as true NHI's allegations.*

The court is directed to NHI's Amended Complaint to draw its own conclusions. Defendants submit that their conclusions are inescapable:  NHI alleges that Defendants acted as Mercantile's agents.  The Amended Complaint on its face can be construed in no way other than NHI alleging that Defendants acted as Mercantile's agents.  Both in its Amended Complaint and its Answering Brief, NHI alleges that "KMR, Riesner and Justis served at the direction and pleasure of Mercantile." [Answering Brief at p. 5; Amended Complaint ¶33.]  Defendants draw

- 2 -

A00318

the very clear conclusion that, accepting NHI's allegations as true, Defendants acted as

Mercantile's agents and as such, were released by NHI.

### B. NHI's Plaintiff's Amended Complaint Establishes That The Defendants Were Agents Of Mercantile

The essential elements of agency are that (1) the agent has the power to act on behalf of

the principal with third persons; (2) the agent acts at the behest and for the benefit of the

principal; and (3) the agent is subject to the principal's control. See J.E. Rhoads & Sons, Inc. v.

Ammeral, Inc., Del. Super., C.A. No. 83C-NO-98, 1988 WL 32012 (March 30, 1988); accord

Brooks v. Euclid Systems Corp., 151 Md. App. 487, 827 A.2d 887 (2003). Thus "[a]n agency

relationship is created when one party consents to have another act on its behalf, with the

principal controlling and directing the acts of the agent." Fisher v. Townsends, Inc., Del. Supr.,

695 A.2d 53 (1997); see also Shear v. Motel Mgmt. Corp. of Amer., 61 Md. App. 670, 487 A.2d

1240 (1985) (citing to the Restatement (Second) of Agency as explaining that "[i]t is the element

of continuous subjection to the will of the principal which distinguishes the...agency

agreement").

NHI's complaint is wholly premised on an agency relationship between Mercantile and

the Defendants. Not only does NHI make express allegations that the Defendants were

Mercantile's agents, but inherent in the wrongdoing for which NHI seeks relief is the allegation

throughout the Amended Complaint that the Defendants acted under Mercantile's control and for

their benefit.

The allegations in NHI's Amended Complaint clearly establish that the Defendants had

"the power to act on behalf of the principal (Mercantile)." J.E. Rhoads & Sons, Inc., 1998 WL

32012 at *4. For example, NHI alleges that the Defendants used their agency power when "[o]n

or about November 7, 2001, KMR, Riesner and Justis fired Mervine Jr." (Amended Complaint at

- 3 -

¶53), and indicated to Mervine Jr. that this power was exercised because "their 'boss told them KMR could not continue with Mervine Jr. in the way'." (Amended Complaint at ¶54.)

NHI's claims against the Defendants are similarly premised on the very notion that they acted "at the behest and for the benefit of the principal (Mercantile)." J.E. Rhoads & Sons, Inc., 1998 WL 32012 at *4. The crux of NHI's claims that the Defendants breached their duties to NHI, is the allegation that the Defendants "were not concerned with NHI's ability to continue as a going concern – rather, the sole concern of KMR, Riesner and Justis was that Mercantile and KMR be paid," and that they devised a plan of wrongdoing "all for the sole benefit of Mercantile, KMR, Riesner and Justis." (Amended Complaint at ¶¶48, 60.) Thus the alleged wrongdoing for which NHI seeks relief is based upon the claim that the Defendants acted "for the sole benefit" of Mercantile. NHI cannot now deny the existence of this fundamental element of the alleged agency relationship.

Finally, the Amended Complaint contains express affirmation of the element of control that is crucial to the agency relationship. See Fisher, 695 A.2d at 57; Shear, 487 A.2d at 1248 – 49. For example, NHI expressly states that the Defendants "served at the direction and pleasure of Mercantile" (Amended Complaint at ¶33.) NHI's further description of the relationship between the Defendants and Mercantile, in which "Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement," (Amended Complaint at ¶34) is also consistent with an agency relationship. See Fisher, 695 A.2d at 57; Shear, 487 A.2d at 1248 – 49; see also Citibank, N.A. v. Data Lease Financial Corp., 828 F.2d 686 (11th Cir. 1987).

In Citibank, a debtor company pledged a voting block of stock in Miami Bank as collateral on a loan from Citibank. 828 F.2d at 689. After the company defaulted on the loan,

BOS_459965_1/NRROSENBERG

A00320

Citibank exercised its rights to vote the Miami National stock, using them to change the composition of the company's board. Id. The stock was sold pursuant to a foreclosure action by Citibank, and the company made several affirmative defenses to the foreclosure alleging that the individuals Citibank installed on the Miami National board mismanaged the company, bringing about a dramatic decline in the value of the stock, and also named the individuals as third party defendants in its counterclaim. Id. After applying the Restatement (Second) of Agency, the Court overturned the district court's determination that the individual board members were not agents of Citibank, holding that "the agency relationship may be implied from a course of dealing," and that the evidence suggested that the board members were there "at the wishes of Citibank," and that they "worked in close coordination with Citibank." Id. at 691. Because the individuals were chosen by Citibank and because Citibank controlled their activities during their tenure on the board, the court held that they were Citibank's agents. Id.

Here, NHI has plainly alleged that the Defendants were present at the wishes of Mercantile, and that Mercantile controlled their activities. (Amended Complaint at ¶33, 48, 60.) Like the Board members in Citibank, the Defendants here are charged with their own individual wrongdoing in managing the company, but as in Citibank, this does nothing to diminish the fact that they allegedly served on behalf of a principal, and are therefore its agents. Citibank, N.A., 828 F.2d at 692. Like the board members in Citibank, the Defendants' worked closely with Mercantile, and had "contact with Mercantile at least daily," (Amended Complaint at ¶34). As the court found in Citibank, the fact that the Defendants here were allegedly chosen by, and worked at the wishes of Mercantile, establish that they were its agents for purposes of deciding the present motion to dismiss NHI's Amended Complaint. See Citibank, N.A., 828 F.2d at 692.

- 5 -

A00321

**C.    NHI's Mischaracterizes Its Own Amended Complaint And Must Stand On Its Pleading.**

NHI has grossly mischaracterized its own Amended Complaint. Contrary to what NHI now claims it previously alleged, nowhere in its Amended Complaint does NHI "allege[]...that Defendants made Mercantile one of several beneficiaries of Defendants' contractual breaches, tortious conduct and violations of the Bankruptcy code." [Answering Brief, at p.11.] Quite to the contrary and as previously stated supra, NHI alleged in its Amended Complaint that the Defendants "served at the direction and pleasure of Mercantile," [Amended Complaint ¶ 33] and that their "stealth plan" was "all for the sole benefit of Mercantile, KMR, Riesner and Justis." [Amended Complaint ¶¶ 33, 60]. Even while making the new and unsupported assertion in its Answering Brief that the Defendants "made Mercantile one of several beneficiaries," rather than acting for Mercantile's ultimate benefit, NHI again takes a contrary position in the very same pleading. Therein, NHI asserts again that "KMR, Riesner and Justis did not operate independently and for the benefit of NHI, upon information and belief, KMR, Riesner and Justis served at the direction and pleasure of Mercantile." [Answering Brief at pp.4-5].

NHI cannot recast its unambiguous allegations (in both its Amended Complaint and now its Answering Brief) that the Defendants acted at Mercantile's pleasure and for its "sole benefit" in order to assert now that Mercantile acted for the benefit of others and was therefore not Mercantile's agent. It is clear from the allegations of the Amended Complaint and the facts asserted in NHI's Answering Brief, that the Defendants were agents of Mercantile within the meaning of the release.

NHI now asserts that "On or about March 21, 2000, Mercantile and NHI...entered into two Forbearance Agreements." [Answering Brief at p. 3.] This fact is nowhere previously plead and NHI does not now provide any citation with respect thereto. NHI now asserts that

- 6 -

Defendants were to act as NHI's agents, but again NHI provides no citation. [Answering Brief at p. 4.] Both pre-petition and post-petition NHI represented to this Court that it held no claims against Mercantile and no defenses to or set-offs against Mercantile's claims. NHI now alleges that at all times NHI held claims against Mercantile. See Defendants' Memorandum of Law in Support of their Motion to Dismiss at footnote 4 and accompanying text. The Amended Complaint, and now the Answering Brief, are replete with inconsistent statements, but NHI has consistently alleged that Defendants did not operate independently, they served at the direction and pleasure of Mercantile, were in daily contact with Mercantile, and in collaboration with Mercantile, acted to benefit Mercantile as their first priority. NHI does not contradict these statements.

### D.    By NHI's Own Assertions, Defendants' Alleged Wrongdoing Arose Out Of The Loans To Mercantile And Was Released On February 26, 2002

The import of the allegations in NHI's Amended Complaint is more than semantic. NHI's allegations that the Defendants acted "for the sole benefit of Mercantile" and "at the direction and pleasure of Mercantile," illustrate the nature of the claims at issue. NHI seeks to hold the Defendants liable for their actions in connection with a debt owed to Mercantile. Any claims brought by NHI against the Defendants for their actions on behalf of Mercantile could only arise out of the loans from Mercantile to NHI, including Mercantile's administration of the loans and the relationship with NHI. All such claims fall squarely within the broad release contained in the February 26, 2002 Agreement.

Pursuant to the release, NHI:

"forever releases and discharges the lender and the lender's officers, directors, employees, attorneys, and agents (collectively "the released parties") from any and all claims, causes of action, suits and damages…which any of the obligors jointly or severally, ever had or may now have of any kind or nature against any of the released parties arising out of or related in any way to any of the loans, the loan documents, the obligations or the collateral or the administration

- 7 -

A00323

thereof....including but not limited to any and all claims based upon or relying on any allegations or assertions of duress, illegality, unconscionability, bad faith, breach of contract, regulatory violations, improper control of the companies or their affairs, negligence, misconduct, or any other tort, contract or regulatory claim of any kind or nature." [February 26, 2002 Agreement at Section 20.]

The release specifically includes a release of matters pertaining to improper control, breach of contract, breach of duty and any tort and contract claim of any kind. The release unambiguously includes the causes of action that are within the scope of the allegations in the Amended Complaint.

In its Amended Complaint, NHI makes clear that its claims are based on the acts of the Defendants in making "their primary priorities the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for KMR." [Amended Complaint ¶ 32.] NHI's claims are premised on the Defendants' actions vis-à-vis the repayment of loans owed to Mercantile, and their duties "arising out of and related" to those loans, and thus are well within the release. See Corporate Property Associates v. Hallwood Group Inc., Del. Supr., 817 A.2d 777 (2003) ("a general release is one which is intended to cover everything – what the parties presently have in mond, as well as what they do not have in mind....Such general releases are in common use....Their validity is unchallenged"); Golub v. Cohen, 138 Md. App. 508, 772 A.2d 880 (2001) ("When the scope of a release agreement is stated in clear and unambiguous language, the words utilized to express this breadth should be given their ordinary meaning as there is no room for interpretation") (internal quotations omitted).

NHI's argument that its claims against the Defendants are "wholly separate and distinct from the Cash Collateral Agreement between Mercantile and NHI," [Answering Brief at p.14.] is similarly without merit. The February 26, 2002 Agreement released any claims in tort, contract or otherwise, "related in any way" to the debt relationship between NHI and Mercantile. In

- 8 -

addition to the broad release language, all of NHI's claims against the Defendants, as plead in the

Amended Complaint, relate to and arise out of the loans which are the subject of the release

ratified by the Cash Collateral Agreement and, therefore, are clearly within its scope.

      The only issue is whether the Defendants were Mercantile's agents. NHI already

admitted in its Amended Complaint that they were. Accordingly, the Court should apply the

agency law to the facts pled by NHI, recognize the clear release of Defendants by NHI and grant

Defendants' motion to dismiss the Amended Complaint.

Dated: September 15, 2004               EDWARDS & ANGELL, LLP


                                    Stuart M. Brown (No. 4050)
                                    Denise Seastone Kraft (No. 2778)
                                    919 Market St., 14th Floor
                                    Wilmington, DE 19801
                                    Tel. 302-777-7770
                                    Fax 888-325-9741
                                    sbrown@EdwardsAngell.com
                                    dkraft@EdwardsAngell.com

BOS_459965_1/NROSENBERG

A00325

# UNREPORTED
# DECISIONS