Westlaw.

Not Reported in A.2d
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

Page 1

▷
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware, New Castle County.

J.E. RHOADS & SONS, INC., a Delaware
corporation, Plaintiff,
v.
AMMERAAL, INC., a Delaware corporation, and
Ammeraal Conveyor Belting B.V., a
foreign corporation, Defendants.
AMMERAAL, INC., Third-Party Plaintiff,
v.
Edward K. MOL, Third-Party Defendant.

March 30, 1988.

Upon defendants Ammeraal, Inc. and Ammeraal
Conveyor Belting B.V.'s motion for summary
judgment, or in the alternative, partial summary
judgment. DENIED IN PART, GRANTED IN
PART. Upon defendants Ammeraal, Inc. and
Ammeraal Conveyor Belting B.V.'s motion for a
more definite statement in Counts II and III.
GRANTED. Upon defendants Ammeraal, Inc. and
Ammeraal Conveyor Belting B.V.'s motion to strike
and dismiss. DENIED.

Richard R. Wier, Jr., and Walter P. McEvilly, Jr., of
Prickett, Jones, Elliott, Kristol & Schnee,
Wilmington, for plaintiff.

William D. Bailey, Jr., and Charles Gruver, III, of
Bayard, Handelman & Murdoch, P.A., Wilmington,
and Gerard B. Gallagher, and David L. Joslyn, of
Gallagher & Joslyn, Oakbrook, Illinois, for
defendants Ammeraal, Inc. and Ammeraal Conveyor
Belting, B.V..

William J. Marsden, Jr., of Potter, Anderson &
Corroon, Wilmington, and William H. Fallon, of
Miller, Johnson, Snell & Cummisky, Grand Rapids,

MI for third-party defendant Mol.

MEMORANDUM OPINION

GEBELEIN, Judge.

*1 Pending before the Court is a motion for
summary judgment, or in the alternative, partial
summary judgment, by defendants Ammeraal
Conveyor Belting B.V. (hereinafter "Belting") and
Ammeraal, Inc. (hereinafter "Ammeraal"), based on
plaintiff J.E. Rhoads & Sons, Inc.'s then-announced,
but not yet filed, second amended complaint. A
second amended complaint, then a third amended
complaint, have since been filed. The summary
judgment motion will be viewed in light of the final
complaint. Defendant also claims that the addition
of certain matters and the allegations concerning one
of the defendants come too late to give sufficient
notice to defendant under the State and United States
Constitutions.

THE FACTS

The litigation stems from the termination of a long-
standing arrangement between plaintiff and
Ammeraal under which plaintiff distributed
Ammeraal belting products in the United States.
Plaintiff served as the exclusive sales agent for
Ammeraal products from 1973 until 1981, beginning
with a letter agreement and later serving "at will".
(Depo. David Engler, pp. 59-61, Def.'s Ex. 2).

In 1981, Ammeraal, Inc. was established by Belting
to increase sales in the U.S. (Depo. Roland Oliemans,
"Oliemans", pp. 12-13, Def.'s Ex. 3). Ammeraal first
was established as a wholly-owned subsidiary of
Ammeraal Nederland Beheer (hereinafter
"Nederland"). Nederland was a wholly-owned
subsidiary of Ammeraal Holding, then the parent
company of the entire Ammeraal group. (Affidavit of
Oliemans, para. 5, Def.'s Ex. 1).

A 1984 reorganization placed Ammeraal beneath
Ammeraal International Beheer (hereinafter
"International"), now the holding company for all
companies in the group located outside of Holland.
Ammeraal buys all of its products from International,
a wholly-owned subsidiary of Nederland. Nederland
is the sole shareholder of Ammeraal companies

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

Page 2

located in Holland, including the production and sales companies in the group. Belting owns all of the stock of its two subsidiary holding companies, Nederland and International. (Affidavit of Oliemans, ¶¶ 1-3 and 17, Def.'s Ex. 1). ("Belting" hereafter will refer to the parent company of the entire Ammeraal group before and after the reorganization, for purposes of clarity.)

When Ammeraal was established, Rhoads ceased to be the exclusive sales agent for Ammeraal products in the U.S.. After 1981, Rhoads and others ordered the product directly from Ammeraal, even though drop shipments were made to Rhoads direct from Holland. There is a dispute between the parties as to whether Ammeraal is a company separate and apart from its parent or whether it served as an agent of Belting in the United States.

In October of 1982, Ammeraal President Edward Mol signed a letter agreement with Rhoads Chairman David Engler. (Second amended complaint, Ex. A). The agreement basically required Rhoads to sell Ammeraal products exclusively and prohibited it from selling competing products. The agreement was to last throughout 1983, and was to be continued on a year-to-year basis unless either party submitted a 90-day termination notice, prior to year end, in writing.

In July 1982, Ammeraal President Mol wrote to Rhoads Chairman David Engler outlining a new marketing concept for Ammeraal products. (Second amended complaint, Ex. B). Addressing Rhoads' concern that Ammeraal would eliminate distributors and market through its own direct sales force, Mol wrote that he could not "anticipate this *ever* occurring." Mol further expressed his intent to continue Ammeraal's policy of never discharging a person who had built up a sales territory.

*2 On February 28, 1983, Rhoads' then-vice-president, Ken Bull, forwarded to Ammeraal a list of Rhoads' distributors so that marketing efforts would not be duplicated. Bull said Rhoads had contact with all of the distributors on the list, but that some of them probably did not sell Ammeraal products. (Bull Depo. p. 193, Def.'s Ex. 5). He stated that he did not recall a formal agreement that the list would not be used in marketing by Ammeraal (Bull Depo., pp. 193-94). However, he also stated that there was a request to "leave our accounts alone". (Bull Depo., p. 193).

In September of 1983, Mol was removed from his

position as Ammeraal's president, and from his position on the company's board of directors, allegedly for refusing to follow the board's marketing plan. (Oliemans Depo., pp. 71-72, Def.'s Ex. 6). The following month, Mol was named a vice-president of Rhoads. (Mol Depo., p. 3-4, Def.'s Ex. 7).

An October meeting between Rhoads' representatives Jack McGough and Paul O'Connor and Ammeraal Holding Company (Belting) and Ammeraal Board Chairman, Roland Oliemans, precipitated a second meeting of the parties in November. At the second meeting, the distributorship relationship between the two companies was terminated. The following day, November 17, 1983, Oliemans sent a letter to Rhoads' President McGough confirming the termination. (Complaint, Ex. C). Oliemans and Ammeraal employee Manuel Brentagani (attending the November 16 meeting) both testified they were unaware of the 1982 letter agreement when the relationship was terminated. (Oliemans Depo., pp. 69-70, Def.'s Ex. 10 and Brentagani Depo., p. 17, Def.'s Ex. 10). This is in dispute.

On November 17th, Ammeraal employees contacted Rhoads customers and distributors (listed on the aforementioned distributor list provided by Rhoads) to inform them of the termination and to offer to sell them the product directly. The customers, to include M & M Mars, were told that Ammeraal no longer would be supplying products to Rhoads. (Depo. Jan Brown, p. 44, Def.'s Ex. 12).

### THE ALLEGATIONS

Plaintiff originally filed suit against defendant Belting in Counts I-III, alleging that Belting, as the alterego of Ammeraal, willfully and in bad faith breached the contract by: 1) failing to provide timely written notice in accordance with the 1982 contract, rendering the termination ineffective and the agreement renewed for another year; 2) failing to ship goods and materials ordered by Rhoads and accepted by defendant, damaging Rhoads' business reputation and goodwill with its customers; and 3) willfully engaging in a course of conduct designed to destroy plaintiff's business reputation, customer relations and competitive position (to include misrepresentation and preferential pricing for Ammeraal). Count IV charged Ammeraal, as the alleged alter ego of Belting, and Belting, with conspiring to improperly solicit and interfere with Rhoads customers, providing preferential pricing and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 3
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

engaging in other misconduct and unfair competition.

Plaintiff's first complaint sought a declaration that the termination of the parties' distributorship agreement was invalid and that the distributorship agreement remains in effect.   It also sought compensatory and punitive damages for the purported injury to its business reputation and goodwill, and for its loss of profits due to tortious interference in and disparagement of Rhoads' business and employment relationships.   Finally, it sought attorneys' fees and court costs.

**\*3** The second amended complaint, filed on December 2, 1987, alleged intentional breach of contract in Count I, tortious breach of contract and damage in Count II, and consumer fraud and deceptive trade practices in violation of *6 Del.C. § 2501 et. seq.* in Count III.   All counts were against both defendants.

On December 8, 1987, plaintiff filed its third amended complaint, naming defendant Ammeraal as the agent of Belting.   It alleged in Count I that both defendants intentionally breached the distributorship contract.   Count II alleges violation of the Delaware Deceptive Trade Practices Act.   *6 Del.C. § 2531 et seq.*   Count III alleges violation of Delaware's Uniform Trade Secrets Act, *6 Del.C. § 2001 et. seq.*, due to alleged misappropriation of Rhoads' trade secrets and confidential proprietary information (list of Rhoads' customers, secrets and information on Mars obtained in January 1983; compilation of information on Rhoads' customers and prices.) Count IV alleges that defendants engaged in unfair competition and intentionally and improperly interfered with Rhoads' existing and prospective business relations.   Rhoads seeks compensatory and punitive and treble damages; costs; interest; and attorney's fees.

Defendant moved for summary judgment on October 20, 1987, on the basis of the then-expected second amended complaint.   First, it contended that Belting should be dismissed as a defendant since it was not a signatory to the October 25, 1982 agreement and since Ammeraal is not its agent, but a separate corporate entity.   Second, it asserted that there was no evidence showing that any of the allegations listed in revised Count IV rose to the level of unfair competition.   Defendant also asserted that plaintiff's desired remedies were without basis; specifically, defendants contended that the distributorship agreement remains in force; that damages should be limited to

Ammeraal's failure to give a 90-day notice of termination;   that defendant should not be allowed damages based on speculative sales projections;   and that plaintiff was not entitled to an award of punitive damages.

Defendant in a December 22, 1987 letter informed the Court that on the basis of the third amended complaint, the questions raised by the summary judgment motion remain at issue, with the exception of the following:   1) the question of whether the distributorship agreement remains in force;   and 2) the allegation that there is no evidence to support plaintiff's prayer for recovery for damage to its business reputation and goodwill.

As a preliminary matter, this Court will GRANT summary judgment to defendant only if the pleadings and record show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   Superior Court Civil Rule 56(c).   Any doubts as to the existence of genuine issues of fact will be resolved against the moving party.   *See, e.g., Reiver v. Murdoch & Walsh, P.A.*, D.Del., 625 F.Supp. 998, 1004 (1985).

*THE AGENCY RELATIONSHIP*

**\*4** Turning first to the issue of agency, defendants allege that Belting should be dismissed as a defendant since it was not a signatory to the October 1982 agreement and since Ammeraal is not an agent of Belting but rather, a separate corporate entity.

Plaintiff, on the other hand, asserts that Ammeraal acted as Belting's agent since Belting formulated a long-term plan and a pricing policy for Ammeraal, supplied employees to Ammeraal, participated in limited hiring decisions for Ammeraal, prepared the 1984 budget for Ammeraal, and demonstrated other indicia of what plaintiff termed routine implementation of Belting's business decisions through Ammeraal.

Agency is a legal relationship which depends upon the existence of required factual elements or situations.   2A C.J.S. *Agency* § 5.   An essential element of agency is that the agent has the power to act on behalf of the principal with third persons.   The agency can be express or implied.   *Id.* See also, *Billops v. Magness Const. Co.*, Del.Supr., 391 A.2d 196 (1978). The principal must manifest, by words or conduct, that the agent shall work for him.   2A C.J.S. *Agency* § 36.   An essential factor in the relation of principal-agent is that the agent do something at the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00004-SLR    Document 14-2    Filed 10/11/2005    Page 4 of 40

Not Reported in A.2d                                                          Page 4
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

behest and for the benefit of the principal. *Id.* § 5. The right to control the conduct of an agent is the test of agency. *Id.* at p. 6.

In a corporate setting, the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary. *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,* D.Del., 658 F.Supp. 1061 (1987). The parent will be liable for its subsidiary's activities only if the parent dominates those activities. *Id.* at 1084. The control must be actual, participatory and total. *Japan Petroleum Co. Nigeria v. Ashland Oil, Inc.,* D.Del., 456 F.Supp. 831, 841 (1940). Factors to consider in determining "domination" include "stock ownership, officers and directors, financing, responsibility for day-to-day operations, arrangements for payment of salaries and expenses and origin of subsidiary's business and assets." *Id.* at 841; *Phoenix,* 658 F.Supp. at 1084; *Fish v. East,* 10th.Cir., 114 F.2d 177, 191.

Case law requires a strong showing of control by the parent to find it to be a principal to its subsidiary. For instance, in *Phoenix,* the court held that the parents were not liable for the activities of their subsidiaries despite the following: (1) they were wholly owned by the parent; (2) there were officers and directors common to the boards of both parent and subsidiary; (3) the parent corporations were involved in substantial financial decisions of the subsidiaries. *Phoenix,* 658 F.Supp. at 1061. In support of the finding that there was no principal-agent relationship, the court cited the facts that each subsidiary kept books and records separate from the parent; maintained its own bank accounts and paid its own taxes; maintained its principal places of business in Ecuador, and was completely responsible for its day-to-day activities.

In the breach of contract action litigated in *Japan,* the Court likewise found that no agency relationship existed between the subsidiary and parent, despite evidence of joint operations. There, the parent was found to have actively aided the startup of the subsidiary, both administratively and monetarily. Most of the officers and directors were the same. *Japan,* 456 F.Supp. at 842-43. The parent approved all expenditures of the subsidiary over $250,000; provided consulting services to the subsidiary; paid the salaries of all the subsidiary's non-Nigerian employees; guaranteed three major bank loans of the subsidiary; and reported in its annual report that the operations of the subsidiary were those of the parent. *Id.*

*5 The Court determined that despite these factors, there was sufficient indicia of separate corporate ownership to find against a principal-agent relationship. Among other factors, it found the subsidiary to be an operating corporation with its own obligations and rights in Nigeria. It also noted the Nigerian government's extensive control over the subsidiary's operations. *Id.* Further, the subsidiary had its own bank account and separate, substantial book value; it repaid bank loans; it hired its own employees; and it debited its accounts for salaries paid by the parent. *Id.* at 844- 45. It also had a substantial source of independent corporate assets. *Id.* at 845.

To support its assertion that Belting, as principal, controlled Ammeraal, plaintiff sets forth the following facts. First, it submits the testimony of Belting's chairman, Roland Oliemans, that the parent company formulated overall strategy for Ammeraal (Plain.'s brief at 15-16, extract of Oliemans Depo.). Second, it asserts that management personnel were routinely assigned by Belting's chairman to Ammeraal. For instance, Japp Romers was assigned to Ammeraal from International in 1982, but remained an employee of International and took directions from Gerald Fit of International, instead of Ammeraal's president. (Depo. of Jaap Romers, pp. 91-92, Plain.'s Ex. 11). Gerald Fit testified that as an International employee, he ran training for International and set pricing schedules for Ammeraal (Depo. of Gerald Fit, at 41-43, Plain.'s Ex. 5). Mr. Fit further testified that he was directed by the International chairman to serve as managing director in the United States while remaining an International employee. (Depo. Fit, pp. 40-42).

Ammeraal employee, Jonathan Spicer, testified that he was told by International employee Jaap Romers that if "Ammeraal, meaning Ammeraal Netherlands, and Rhoads cannot work out the situation, there's a possibility that Rhoads will discontinue work with Ammeraal" (Depo. Spicer, p. 119, Plain.'s Ex. 13). Plaintiff asserts that this provides some evidence that the parent directed the breach of contract. The Executive Board of Ammeraal Holding studied and formulated a worldwide approach to the M & M Mars account. (Depo. Fit, p. 73). Former Ammeraal president Edward Mol implemented instructions from Mr. Oliemans to seek marketing information for Nederland from plaintiff on the Mars account in order for Nederland to prepare a worldwide corporate approach to Mars; Mol was not privy to the policy. (Depo. Mol, p. 60, Plain.'s Ex. 8).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00004-SLR    Document 14-2    Filed 10/11/2005    Page 5 of 40

Not Reported in A.2d                                                                    Page 5
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

There is some evidence to show that other Belting employees handled Ammeraal affairs. Johannes Van der Linden, Belting's chief financial officer and board member, arranged banking matters for Ammeraal, hired Ammeraal's financial officer and prepared Ammeraal's 1984 budget. (Depo. Van der Linden, pp. 7, 20, 21). There has been no evidence produced on the subsidiary's book value or separate corporate assets.

*6 The plaintiff asserts that the forgoing at least raise a factual question as to whether Belting controlled the day-to-day activities of Ammeraal and used it for its own benefit in its dealings with plaintiff. The defendants dispute this assertion, stating that Ammeraal is an independent corporation, separate and apart from Belting and as such, should be dismissed from all counts since none of the offenses charged were performed by Belting and its agents.

It must be noted that despite Rhoads' principal-agent argument in its answering brief and third amended complaint, it had asserted in its original complaint that Ammeraal is the alter ego of Belting. Accordingly, defendant in its brief addressed the original issue of whether Ammeraal is the alter ego or instrumentality of Belting and consequently drew heavily upon the equitable cases of "piercing the corporate veil". Under the principle of "alter ego", the "actor" is not an agent, but a tool used by the principal. *Plunkett v. Nationwide Mut. Ins. Co.*, Conn.Supr.Ct. Errors, 187 A.2d 754, 756 (1963).

The Court in *Phoenix, supra,* at 1061, recognized and discussed *two* theories of liability under which a parent corporation may be held responsible for the obligations of its subsidiaries. The first utilizes the equitable terms of "pierce the corporate veil", "alter ego" or "instrumentality", imposing liability on the parent only upon a showing of fraud or some inequity. *Id.* at 1084. The second is based upon the principles of agency, without reference to fraud or inequity. *Id.* Therefore, the courts do recognize that a corporation may be the principal to its agent subsidiary. We, therefore, will review defendants' equitable arguments and supporting cases only for the purposes of analogy.

Contending that Ammeraal is not a mere instrumentality or agent of its parent, Belting, defendant states that Ammeraal has its own directors, officers and records and is required to pay for its product as purchased. It also maintains its own bank accounts and liabilities, employees and auditors. (Affidavit of Oliemans, ¶ ¶ 7, 14-21, Def.'s Ex. 1).

*See, Pauley Petroleum v. Continental Oil Co.*, Del.Ch., 231 A.2d 450 (1967), aff'd Del.Supr., 239 A.2d 629 (1968). Thus, by extension, Ammeraal controls its own affairs, according to defendants.

Equity dictates that corporate entities will be ignored to defeat a fraud, wrong or injustice, if a corporation's affairs are conducted so as to make it a mere instrumentality of the other. *Pauley*, 239 A.2d 450. However, the "mere instrumentality" rule is invoked cautiously. Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity. *Skouras v. Admiralty Enterprises, Inc.*, Del.Ch., 386 A.2d 674 (1978). Further, sole ownership of stock and common directors and officers between the parent and subsidiary are only some factors to be considered in determining whether or not the corporate fiction should be disregarded and the shareholders held liable. *Scott-Douglas Corp. v. Greyhound Corp.*, Del.Super., 304 A.2d 309, 314 (1973). In sum, it takes a very strong case to induce a court to consider two corporations as one on account of one owning the capital stock of the other.

Defendant alleges that even if plaintiff's statements regarding Belting's hiring of employees and making of business decisions were true, it would not be enough to allow the corporate identity of a parent and subsidiary to be ignored. Again, the Court is not jurisdictionally qualified to pierce the corporate veil and to therefore ignore the entity; to hold shareholders liable; or to find the two corporations as one. However, these cases are instructive in that they highlight the high level of control the first corporation must exert over the second before the second will be found to be without independence, to have only derivative authority or to act only for the first corporation's benefit.

*7 Despite these high standards, agency relationships have been found to exist between large entities, as opposed to individuals. One example is *Billops v. Magness Construction Co.*, Del.Supr., 391 A.2d 196 (1978), which involved allegedly tortious conduct (as opposed to the breach of contract claim in plaintiff's Count I) of the banquet manager of the Brandywine Hilton, a franchisee of the national Hilton chain. The court there found that because the franchise agreement gave the franchisor the right to exercise control over the daily operations of the franchisee, there was a triable issue of fact as to whether an actual agency relationship existed. *Id. at* 197-98. In finding support for day-to-day control, the court cited a very particularized operating

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not.Reported in A.2d                                                   Page 6
1988 WL 32012 (Del.Super.)
**(Cite as: 1988 WL 32012 (Del.Super.))**

manual, the franchisor's right to enter hotel premises for inspection, and the ability to terminate the agreement for failure to comply with the manual requirements. *Id.* The Court also found that there was a question of apparent agency (manifestation by alleged principal, Hilton, which creates a reasonable belief in the third party that the agent is authorized to bind the principle). *See also, Smith v. New Castle County Vo-Tech Sch. Dist.,* D.Del., 574 F.Supp. 813 (1983) (Summary judgment precluded on the basis that a jury could find that plaintiff relied upon some indicia of authority from the district that Leonard possessed authority to contract on the district's behalf.)

Defendant argues that its alleged conduct did not rise to the level of control cited in *Billops,* and that the decision to terminate the contract (the alleged breach) was made solely by Ammeraal's Board. However, plaintiff has cited sufficient facts to the contrary to produce the small measure of evidence necessary to rebut summary judgment on the agency relationship. We make no comment on the strength of that evidence.

Defendant correctly asserts that plaintiff did not dispute its assertion that there was no duty on the part of Belting not to sell to Ammeraal at a lower price than it would to Ammeraal's customer, Rhoads. As this is not addressed in the third amended complaint, the point is now moot. Thus, summary judgment as to the issue of agency must be DENIED.

## UNFAIR COMPETITION

Defendants next move for summary judgment on the basis that the alleged acts of unfair competition in Count IV do not rise to the level of unlawful competition. Note that 6 *Del.C.* § 2532(c) provides that the deceptive trade practices statute does not affect unfair trade practices otherwise actionable. Accordingly, despite a 1975 holding that the act codifies the common law of unfair competition, cases decided after 1975 continue to recognize the similar tort of interference with an existing contract and with probable future contractual relationships, derived from the common law rule against restraint of trade. *See, Young v. Joyce,* Del.Supr., 351 A.2d 857, 859 (1975); *see also, DeBonaventura v. Nationwide Mut. Ins.,* Del.Ch., 419 A.2d 942 (1980); *aff'd.* Del.Supr., 428 A.2d 1151 (1981).

The elements of the tort of interference with an existing contract are as follows:

*8 (a) an intent to induce a breach (b) of an existing contract, (c) proximate causation, and (d) damages. [A] showing of deliberate interference with a prospective business opportunity requires (a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interest in a fair and lawful manner, *Bowl-Mor Company, Inc. v. Brunswick Corp.,* Del.Ch. 297 A.2d 61 (1972), and *Regal Home Distributors, Inc. v. Gordon,* Del.Super., 66 A.2d 754 (1949). *DeBonaventura,* 419 A.2d at 947.

Count IV of the third amended complaint charges defendants with intentionally and improperly interfering with Rhoads' existing and prospective business relations. It supports the allegation with nine specific points, all of which are disputed.

Defendants assert that even if the allegations were true, the parties became competitors when their relationship ended. Thus, they claim Ammeraal was entitled to privileges per the *Restatement of Torts* 2d, § 768, as follows:

Competition as Proper or Improper Interference

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

(2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will (in other words, one cannot cause the third party to breach his legal duty to his competitor).

There are material issues of fact as to whether

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A00332

Not Reported in A.2d
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

Page 7

defendant meets the requisites of § 768(b)-(d). Thus, summary judgment is precluded on the issue. A factual dispute also precludes summary judgment on the issue of whether Ammeraal misrepresented Rhoads' capability to service customers.

* * *

Defendants correctly assert that plaintiff did not address the arguments in their opening brief that there was no evidence to support the allegation that defendants mailed the preliminary injunction to Rhoads' customers; that defendant cancelled a Rhoads sales meeting with M & M Mars or that Ammeraal had any duty not to purchase from Belting at less than the price available to Rhoads. Thus, summary judgment is GRANTED on those issues.

## DAMAGES FOR BREACH OF CONTRACT

Defendant next argues that plaintiff's damages in Count I should be limited to those damages proximately caused by defendant's failure to give notice of termination within 90 days of December 31, 1983; specifically, any damages awarded to plaintiff for breach of contract should compensate it for harm suffered in 1984. Plaintiff asserts that termination following proper notice is not the issue; rather, that Rhoads sustained extraordinary damage due to pulling "its line by ambush without notice and cutting off Rhoads' supply abruptly." Plaintiff further alleges that violation of the covenant of good faith and fair dealing requires that Ammeraal be denied the protections of the limitation, and that defendants must be liable for incidental and consequential damages following breach.

*9 Compensation to one injured by a breach of contract should be such as to place him in the same position he would have been in if the contract had been performed. *J.J. White, Inc. v. Metropolitan Merchandise Mart*, Del.Super., 107 A.2d 892, 894 (1954). This includes compensatory damages, given for the net amount of losses caused and gains prevented, in excess of savings made possible. 5 *Corbin on Contracts* § 992. Compensatory damages are limited to those "caused by the breach". *Id.* Since the purpose of damages is to put plaintiff in as good a position as he would have been in without the breach, the Delaware law does not allow future profits as damages for a period beyond the termination date of the contract sued upon. *Tanner v. Exxon*, Del.Super., C.A. No. 79C-JA-5 at 7, Stiftel, J. (July 23, 1981). This is because termination automatically extinguishes the relationship between

the parties. *Id.* By analogy, 6 *Del.C.* § 2-713 provides that the measure of damages for repudiation by the seller is the cost of cover and incidental and consequential damages. The buyer may recover any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. 6 *Del.C.* § 2-715(2)(a). Incidental damages resulting from the seller's breach include any commercially reasonable charges, expenses or commissions connected with effecting cover and any other reasonable expense related to delay or breach. 6 *Del.C.* § 2-715(1).

Plaintiff alleges that recovery should take four to five years due to loss of a major product line, and incidental and consequential damages sustained should extend beyond the period the contract would have remained in force after cancellation (December 1984). Based on the foregoing, "future profits" for straight contractual breach should be recoverable only through 1984; but incidental and consequential damages could extend beyond that period if proved to be due solely to the breach of the notice provision. This may be extremely difficult to establish and plaintiff should be aware that damages may well be limited to those suffered up to December, 1984.

Plaintiff further asserts that defendant is liable for damages resulting from its bad faith termination, notwithstanding any contractual provision with respect to notice.

*10 The cases cited for denying to defendant the protection of the one-year cut-off after failure to give notice differ somewhat from the case before the Court. In *Bak-A-Lum Corp. of America v. Alcoa Bldg. Prod.*, N.J.Supr., 351 A.2d 349 (1976), plaintiff orally agreed to act as the exclusive area distributor for defendant; the agreement was terminable at will, without cause. The Court found that the agreement was terminable without cause only on reasonable notice, and that a determination of the period of reasonableness was significantly influenced by defendant's failure to inform plaintiff of its intent to terminate the exclusive distributorship while encouraging expansion of warehouse space for defendant's goods. *Id.* at 350, 352. Damages were limited to losses for the reasonable notice period, held to be 20 months. *Id.* at 352, 353.

In *Parade Oil Co. v. Phillips Petroleum*, Del.Ch., 320 A.2d 769 (1973), aff'd. Del.Super., 343 A.2d 610 (1975), a franchised gas distributor was granted a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                              Page 8
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

preliminary injunction against termination of the relationship by the petroleum company. Prior to entry into the contract, plaintiff was told that once defendant entered a market it never retreated from it and that it was looking for a long-term outlet for its products. *Id. at 771.* (Plaintiff here also was given the impression that defendant was looking for a long-term outlet for its products.) Despite these promises, contracts were entered for a stated term of one year. *Id.* They could be terminated by either party upon ninety days notice to the other. *Id.* at 773. Defendant withdrew from the region due to lack of business. *Id.* The court noted that where parties provide by express language that the contract may end at the option of either party, upon notice and without cause, such stipulation generally will be upheld. *Id.* However, the rule is subject to the qualification that termination shall not be contrary to equity and good conscience, particularly as applied to dealers or distributors under a franchise agreement. *Id.* The court in *Paradee* found that plaintiff demonstrated a probability of success in proving that defendant was attempting unjustly to terminate and refuse to renew the relationship in bad faith or without just cause within the meaning of the Franchise Security Law, regardless of the language of yearly contracts, the injunctive relief was granted. *Id.* at 776. Damages were not addressed.

The contract in the instant case did not involve a franchise, as in *Paradee,* although plaintiff was given to believe that the contract would not be terminated without cause. The contract was not terminable at will, as in *Bak-A-Lum;* rather, it clearly required 90-day notice of termination before the end of December before the contract went into effect for another year. There is no indication that either party was mistaken or uninformed as to the meaning of the contractual language.

Based on the foregoing, damages in the contract action must be limited to defendant's failure to give notice of termination within ninety days of December 31, 1983, plus exemplary damages, if found to be applicable. The court notes that plaintiff has failed to allege that the notice provision was modified by any subsequent course of conduct.

\* \* \*

**\*11** Defendants next assert that Rhoads should not be allowed to recover damages based on speculative sales projections prepared by its management. Specifically, defendants dispute the projected $1.7 million sales figure for Ammeraal's product in 1984,

an approximate 70% increase over 1983 attributable to new business generated by an expanded sales staff, better prices from Ammeraal, and increased sales. Projections for 1985 are $2 million; for 1986 $2.2 million. The latter projections are based on the first.

Because we must view the evidence and inferences in a light most favorable to the non-moving party, this Court finds that Rhoads' pre-termination sales history, post-termination performance and market assessment provide some basis for the sales projections. The Court cannot determine at this point that evidence is so meager or uncertain as to afford no reasonable basis for inference. *See, Tanner, supra,* at 5; *Restatement Contracts 2d § 352.* Of course, if the first figure is proven to be unsupportable, the latter two would be without basis, if the facts are as stated. Thus, this issue of damages must await development of the evidence at trial.

\* \* \*

Next, defendant asserts that there is no evidence to show that defendant's conduct is willful and wanton, such as to justify punitive damages for breach of contract. Summary judgment is precluded on this point as there is an issue of fact as to whether Ammeraal was aware of the contract before it was terminated, as to whether the termination was intentional or malicious and as to whether defendants intended to injure plaintiff by terminating the relationship and to thereafter solicit its customers. Where breach amounts to an independent, willful tort, exemplary damages may be available. *2 Am.Jur.2d Damages § 245.* Of course defendant may move for a directed verdict on this issue if evidence at trial supports its view of the facts.

Defendants finally argue that they are entitled to summary judgment as to plaintiff's request for attorney's fees.

It is the general rule in Delaware that attorney's fees cannot be awarded unless authorized by statute or contract. *Honaker v. Farmer's Mutual Insurance Co., Del.Super., 313 A.2d 900, 904 (1973).*

Attorney's fees may be awarded under limited circumstances per *6 Del.C. § 2004* and *6 Del.C. § 2533(b).* Defendants' motion is, therefore, precluded on this basis.

*THE AMENDED COMPLAINTS*

Defendants, in addition to the summary judgment

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

Page 9

motion, assert that the addition of certain matters and the allegations concerning one of the defendants in the amended complaint come too late and are insufficient to give adequate notice under the Fourteenth Amendment of the U.S. Constitution and Article 1.9 of the Delaware Constitution, and that they do not conform to Rules 1, 15 and 9. Defendants state that they were unaware of the changes until November 30, 1987. Trial is set for April 5, 1988.

The specific late claim contested is the allegation that defendants violated the Consumer Fraud and Deceptive Trade Practices Act, the underlying allegations of fraud, and the claim for treble damages. Defendants state that plaintiff did not plead fraud with required specificity. Rule 9(b). Defendants also protest the new complaint's allegation that Ammeraal and Belting breached the distributorship agreement. The first complaint alleged that only Belting terminated the agreement. (The memorandum does not address Count III of the last complaint, alleged violation of the Uniform Trade Secrets Act, as the third complaint was filed after the memorandum.)

*12 At oral argument before this Court, plaintiff asserted that the new allegations arise out of the same transaction and facts previously pled.

Superior Court Civil Rule 9(b) requires that all averments of fraud shall be stated with particularity; malice, intent, knowledge and other condition of mind of a person may be averred generally. The purpose is to apprise the adversary of the acts or omissions by which it is alleged that a duty has been violated. *Mancino v. Webb*, Del.Super., 274 A.2d 711 at 713 (1971).

In *Nutt v. A.C. & S., Inc.*, Del.Super., 466 A.2d 18 (1983), plaintiffs basically and generally alleged that defendant suppliers of asbestos misled them into believing it was safe to work near asbestos and therefore cost them causes of action against third party health care providers due to conflict with a workers' compensation provision. The Court noted that fraud must be pled with sufficient particularity so that parties know what claim was adjudicated. The "circumstances" that must be plead with particularity under Rule 9(b) include the time, place and circumstances of the false representations, as well as the identity of the person making them, according to the Court. *Id.* at 23. The Court found the complaint at issue to be deficient because it did not allege when the purported misrepresentation occurred, when the

harm was discovered, what medical-related information was concealed, and which third parties would have incurred liability to the plaintiffs, but for the fraud. The Court ruled that it may not be necessary for all evidence of fraud to be disclosed, but that it was essential that the precise theory of fraud, with supporting specifics, be laid out so as to notify the other party.

In the instant case, the pleading is far more defined than in *Nutt*. The basis for the allegations of deceptive trade, misappropriation and improper interference with Rhoads' business relationship are enumerated in the third amended complaint so as to effectively notify defendant of the acts and omissions of which it is accused. Although plaintiff could more specifically delineate the individual defendant or agent and the date of each alleged act, the basic requisites of Rule 9(b) are met, as to the requirements of adequate notice. The Court addresses the need for a more definite statement later in this opinion.

Defendant also opposes the addition of Ammeraal as a party to the alleged breach of contract in Count I of the third amended complaint. (Note that the first amended complaint charged Ammeraal with various offenses in a single, separate count, as the alter ego of Belting.) An amendment changing the party against whom a claim is asserted relates back if the amended pleading arose out of the conduct or transaction set forth in the original pleading and if the party to be brought in had sufficient notice so as not to be prejudiced in a defense and knew or should have known, but for a mistake, the action would have been brought against him. Rule 15(c). The Court shall freely allow pleadings to be amended when the presentation of the merits of the action shall be subserved thereby and the objecting party fails to show the amendment will cause him undue prejudice in defending the suit. Rule 15.

*13 Here, it is clear that Ammeraal had notice of the suit and claim, as it already was a party defendant. It also was a signatory to the contract allegedly breached, a count included in all previous complaints. As the alleged alter ego of Belting, Ammeraal may also have an identity of interest with Belting that conceivably would have made it a defendant in the count, regardless of any mistake or failure to specifically include it in the count. *See, e.g., Hess v. Carmine*, Del.Super., 396 A.2d 173 (1978) (leave to amend should be granted in cases of identity of interest, as with corporation having same directors, officers). Based on the foregoing, defendant has not proved lack of adequate notice or prejudice

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00004-SLR    Document 14-2    Filed 10/11/2005    Page 10 of 40

Not Reported in A.2d                                                                    Page 10
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

concerning its inclusion in Count I.

The Court also must determine if plaintiffs have been "inexcusably careless" in failing to file a timely motion to amend. *See Hess*, 396 A.2d 173. If plaintiff's own inexcusable neglect was responsible for failure to name the correct party or if the amendment will unfairly prejudice the opposing party, it will not be allowed. *Id.* at 176. Plaintiffs here have been guilty of delay, since Ammeraal was the original signatory on the contract, and plaintiff thus knew of the facts on which the proposed amendment was based before filing the original complaint. However, there is no evidence of improper motive or prejudice to defendant. *Id.* at 177. Under the general standard enunciated by the U.S. Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), leave to amend should be freely granted unless there is evidence of undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies; prejudice; futility or the like.

Plaintiff's counsel is guilty of serious delay. However, in the absence of evidence of prejudice or bad faith, delay is insufficient reason to deny leave to amend. *Chrysler Corp. v. New Castle County*, Del.Super., 464 A.2d 75 (1983). The amendment will be permitted as the desirability of ending the litigation on its merits outweighs possible prejudice to defendant. *Bellanca Corp. v. Bellanca*, Del.Supr., 169 A.2d 620 (1961).

Finally, this Court will address the issue of whether the allegations concerning violation of the Uniform Trade Secrets Act and the Deceptive Trade Practices Act come too late and thus unduly prejudice defendants in their defense.

**\*14** Rule 15(c) allows an amendment to relate back to the original complaint where the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. "If the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what already has been alleged generally, or which changes the theory of the action, will relate back even though the statute of limitations has run in the interim." *DiFonzo v. Robelen Piano Co.*, Del.Super., 144 A.2d 247 at 248 (1958), *rev'd. on other grounds*, Del.Supr., 169 A.2d 240 (1961), quoting 3 *Moore's Federal Practice* at 851-853. However, the amendment must not substantially change the cause

of action or defense. *E.K. Geyser v. Blue Rock Shopping Center, Inc.*, Del.Super., 229 A.2d 499 at 501 (1967).

In the first amended complaint, Count III, plaintiffs alleged that defendants engaged in a concerted course of conduct designed to undermine and destroy plaintiffs' reputation, goodwill, customer relations and competitive position by a course of unfair competition and conduct. Among the conduct charged was willful and knowing misrepresentations as to Rhoads' capability and capacity to serve customers and direct interference with business relations between Rhoads and its customers. Included among deceptive trade practices in 6 *Del.C.* § 2532 is: (8) disparagement of the goods, services or business of another by false or misleading fact, and (12) engaging in other conduct which creates a likelihood of confusion and misunderstanding.

The revised complaint and its theory of deceptive trade practices clearly is based on the same general fact situation and conduct set forth in the original pleading. The theory of the action, not the basic facts of the claim, has changed. Thus, the amendment does give defendants adequate notice, and will be allowed. Because the amendment relates back to the filing of the original complaint, the cause is not time-barred under 10 *Del.C.* § 8106.

In the second and third complaints, plaintiff also alleges that defendants violated the Delaware Uniform Trade Secrets Act, 6 *Del.C.* § 2001, by misappropriating Rhoads' proprietary customer lists and pricing information. 6 *Del.C.* § 2001 defines "misappropriation" as, among other things, acquisition of a trade secret by one who knows or has reason to know the trade secret was acquired by improper means; use of a trade secret without express or implied consent by one who at the time of disclosure or use knew or had reason to know his knowledge of the trade was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

The first amended complaint does not address the issue of misappropriating the customer list or pricing information; it alleges only improper contact and solicitation of existing Rhoads customers. It generally alleged unfair competition and misconduct.

**\*15** Again, an amendment to a pleading ordinarily is permitted under liberal construction of Rule 15,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00004-SLR    Document 14-2    Filed 10/11/2005    Page 11 of 40

Not Reported in A.2d                                                Page 11
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

subject to the principle that such amendments must not substantially change the cause of action or introduce a different claim or defense. *Geyser,* 229 A.2d 499.

In *Wagner v. Olmedo,* Del.Super., 323 A.2d 603 (1974), the Court allowed for relation back of an amendment to add as a ground of recovery that the doctor negligently failed to advise plaintiffs of possible side effects of an operation and thus did not obtain informed consent of a patient (as opposed to the original complaint concerning the *manner of treatment* ). The Court held that defendants were on notice that the transaction between the plaintiffs and defendants, which culminated in plaintiffs' injury, was in issue. Similarly, defendants here were on notice that the alleged breach of contract and aftermath were in issue. However, *Wagner* noted that the damages were the same between the original complaint and proposed amendment. Here, treble damages are available for misappropriation of trade secrets and thus are not the same as those allowed in the original complaint.

In *Blaustein v. Standard Oil Co.,* Del.Super., 70 A.2d 716 (1949), plaintiffs were allowed to amend their complaint, even though statements of legal obligation and duty on defendant's part and breaches by it were different, because both the original and amended pleading asserted responsibility on defendant's part for the same basic situation. Further, the Court held that the filing of lengthy answers did not preclude amendment of the declarations. *Id.* at 722. It also allowed plaintiffs to substitute different allegations with respect to damages. *Id.* at 720.

In *Dunfee v. Black Rock Van & Storage,* Del.Super., 266 A.2d 187 (1970), a bailor sued a bailee for loss of her goods by fire while stored in defendant's warehouse. The Court held that where the bailor admitted limitation of liability set forth in the warehouse receipt and purchased extra insurance to protect herself against loss, she did not suffer surprise or prejudice by raising of the defense of limitation of liability under the warehouse receipt on the *morning of the trial.* The motion to amend the answer to include the defense should have been permitted, according to the Court. "Although better practice requires that defenses be set forth earlier in the proceedings, the Court finds ... that defendant's motion to amend under Rule 15(c) should be sustained, for the reason and upon the grounds that plaintiff has not suffered surprise or prejudice thereby." *Id.* at 189.

The deposition of former Rhoads vice-president Ken Bull indicates earlier questioning regarding the distributorship list (Def.'s appendix, Ex. 5). Defendants in their opening brief in support of summary judgment also addressed the list (Def.'s brief, pp. 6-7). Thus, it is apparent that the parties earlier recognized the import of the customer list to the situation in dispute. The charges of misappropriation did arise out of the conduct described in the original complaint and the proposed amendment came four months before trial.

A case which disallowed an amended complaint adding a consumer fraud charge differs from the instant case. In *Stephenson v. Capano Develop. Co.,* Del.Ch., C.A. No. 6186, Brown, V.C. (December 12, 1980), plaintiff presented a motion, *two days before trial,* to amend her complaint to add a new claim seeking compensatory and statutory damages against the defendant for alleged violations of the consumer fraud statutes. Decision was reserved so that the trial could proceed. The motion to amend was denied as being untimely filed, as the possibility of punitive and treble damages altered the possible gravity of relief (the action was first for specific performance of a real estate contract). *Stephenson* involved an amendment proposed two days before trial, unlike the instant case, and a change from seeking equitable relief.

**\*16** In *Wilson Contracting Co. v. State,* Del.Supr., 224 A.2d 396 (1966), while a motion for summary judgment was pending, but after argument, plaintiffs filed a motion to amend the complaint to add a charge of fraud. The Court granted summary judgment to defendants, but did not pass on fraud allegations. It then granted plaintiff's application to amend the complaint, if it did so within ten days. Plaintiff did not file the complaint within the ten-day period or by the date of its appeal from summary judgment in favor of the defendant. Plaintiff, therefore, was precluded from complaining on appeal of Court's failure to rule on the issue. Clearly, the plaintiffs amended complaint exceeds the ten-day notice period that would have been allowed in *Wilson.*

Based on the foregoing, plaintiff's amendment will be allowed.

### *MORE DEFINITE STATEMENT*

Defendants have moved for a more definite statement for Counts II and III of the Third Amended

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

Complaint in the above-referenced case, pursuant to Superior Court Rule 12(e). Under Rule 12(e), if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired. *Id.*

Defendants first assert that plaintiff in Count II failed to state what section of the Deceptive Trade Practices Act allegedly was violated; i.e., 6 Del.C. § 2532(a)(1), (2) etc. Although the allegations logically could be matched to the statutory violation; the probable matchup is not absolutely certain.

Case law indicates that it is essential for the precise theory of fraud, with supporting specifics, to appear in the complaint *Nutt v. A.C. & S, Inc.,* Del.Super., 466 A.2d 18 (1983), aff'd sub. nom. *Mergenthaler v. Asbestos Corp. of Am.,* Del.Supr., 480 A.2d 647 (1984). Superior Ct.Civ.R. 9(b) also requires that the circumstances constituting fraud be stated with particularity. Further, the pleading is to be concise and direct. Superior Ct.Civ. Rule 8(e). Because defendants failed to specify what section or subsection of the act defendants are alleged to have violated, defendants are entitled to a more definite statement of the theory of deceptive trade practice in Count II. See *Strasburger v. Mars, Inc.,* Del.Super., 83 A.2d 101 (1951) (averments of fraud must be stated with particularity so as to apprise opposing party what fraudulent acts are charged.)

In Count III of the Third Amended Complaint, Rhoads alleges that defendants violated Delaware's Uniform Trade Secrets Act, 6 Del.C., § 2001 et seq., causing it actual loss and unjustly enriching Ammeraal by a series of enumerated acts. It failed to point out the theory of misappropriation relied upon under § 2001(2). Although the theory proceeded upon under the statute likely can be inferred in light of the allegation, it is not absolutely certain. Thus defendants' motion is GRANTED on that section.

**\*17** Next, defendants assert that the plaintiff in Count III fails to allege the type of loss suffered and the manner in which plaintiff was unjustly enriched, rendering it impossible to formulate an answer.

As to the specifics of the type of loss suffered, Rule 9(g) provides that a party shall demand damages generally, with out specifying the amount, except when special items are claimed. General damages

are the necessary result of the acts complained of. Special damages are the natural but not necessary result of the wrongful acts or injury. 25 C.J.S. *Damages* § 131(c)(1). The latter must be averred particularly. *Id.* Recall that the purpose of alleging special damages with certainty is to prevent surprise and to afford the defendant fair notice and opportunity to meet the allegations at trial. *Hollenbacker v. Bryant,* Del.Super., 30 A.2d 561 (1943). Some cases have held that *only* special damages may be recovered in unfair competition actions. See, e.g. *Landstrom v. Thorpe,* 8th Cir., 189 F.2d 46, 55, cert. denied, 342 U.S. 810 (1951).

Because of the complexity of this case and the right of defendants to have time to prepare a defense for alleged actual loss and unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss (6 Del.C. § 2003), plaintiff must at least provide notice to defendants as to the theories of actual loss and unjust enrichment it plans to pursue. Defendant need not produce evidence in the pleading; rather, it must specify the type of loss which Rhoads suffered and the manner in which Ammeraal was unjustly enriched. See *Int'l Industries v. Warren Petrol Corp.,* 3d.Cir., 248 F.2d 696 (1957); 11 A.L.R. 4th 12 *Damages--Misappropriation of Trade Secrets* (1982).

Defendant's motion for a more definite statement as to the type of actual loss and the manner of unjust enrichment is GRANTED.

Pursuant to Rule 12(e), the defendants are ordered to file a more definite statement, pursuant to the instructions above.

*MOTIONS TO STRIKE AND DISMISS*

Defendants Ammeraal, Inc. (hereinafter "Ammeraal") and Ammeraal Conveyor Belting B.V. (hereinafter "Belting") also move to strike and dismiss certain counts of the complaint, as well as certain phrases of the counts.

First, defendants move to dismiss Counts II and III as the acts complained of took place outside of the State of Delaware.

Count II deals with alleged willful engagement in deceptive trade practices, to include luring away Rhoads' customers and misrepresenting facts to them. Count III alleges willful and malicious misappropriation of trade secrets, to include a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

Rhoads' customer list, information on Mars, and information on Rhoads' customers and prices. The above acts allegedly occurred upon the contact of Rhoads' customers by defendant. This contact originated via phone calls from Michigan (Depo. Spicer, Ex.D., Def.'s Brief in Support of Motion, pp. 243-245) and concluded with customer contact at locations throughout the country. (See, e.g., Depo. Spicer, App. to Plain.'s Answering Brief in Summary Judgment Motion, p. 282).

It is agreed that the *lex loci delecti* for negligent torts is the place of injury. *See, Johnson Associates Inc. v. Rohm & Haas, Co.,* D.Del., 560 F.Supp. 916, 918 (1983); *Tew v. Sun Oil Co.,* Del.Super., 407 A.2d 240, 242 (1979). Therefore, the law of the State where the economic injury is felt will apply for a tort claim based on negligence. The parties disagree over whether Delaware choice of law principles differ for intentional torts, as alleged in the disputed counts. [FN1]

**\*18** A 1973 case involving Delaware law held that in an action for misrepresentation, the wrong is deemed to occur where the misrepresentation operated to cause the injury or loss, not where the fraudulent misrepresentations were made. *Autrey v. Chemitrust Industries Corp.,* D.Del., 362 F.Supp. 1085 (1973). The Court decided that since the fraudulent misrepresentations made by defendant, a Delaware corporation, in regards to sales to plaintiffs caused business losses in Florida, Florida substantive law would apply. In the instant case, like in *Autrey,* plaintiff's Count II alleges that defendants made willful misrepresentations to Rhoads customers. This case supports plaintiff's allegation that the place of injury should govern the application of substantive law.

Two years later, the Delaware Court of Chancery applied the law of the place where defendant improperly traced plaintiff's logic design of a minicomputer to plaintiff's common law suit for misappropriation of a trade secret and unfair competition. *Data General Corp. v. Digital Computer Controls, Inc.,* Del.Ch., 357 A.2d 105 (1975). New Jersey was the site of the improper use of the document, or the wrongful act, according to the court; i.e., the tracing of the design and the evolvement of the design into a competing product occurred there. The court cited *Friday v. Smoot,* Del.Supr., 211 A.2d 594 (1965) as the basis for its holding. *Friday* upheld Delaware's traditional *lex loci delecti* rule, applying the law of the place of the wrong.

A more recent case involving a choice of law problem was *Johnson Associates, Inc. v. Rohm & Haas Co.,* D.Del., 560 F.Supp. 916 (1983). The Court there held that the place of injury rule is appropriate only to negligent torts. *Id.* It cited for support a District Court of Vermont case noting that courts have preferred to apply the law of the place of defendant's conduct, rather than injury, in intentional torts. *Id.* and *Marra v. Bushee,* D.Vt., 317 F.Supp. 972, 974 (1970), aff'd in relevant part, reversed in part, 2d Cir., 447 F.2d 1282 (1971). It further cited *Bushee* for the guidance that when a punitive element is dominant, the conduct which is offensive to morals is critical in applying the law. *Id.* The court, therefore, borrowed the law of the state where most of the tortious interference with the contract occurred--Massachusetts. *Id.* The Court noted that the result was in accord with the modern trend to apply the law of the state with the most significant relationship to the occurrence in a contract case. *Id.*

In the instant case, there is no clear situs of improper conduct, as in *Johnson* or *Data General.* Rather, the alleged misrepresentations and misuse of information occurred when defendants contacted Rhoads customers throughout the United States; i.e., the misrepresentation occurred when and where the customers answered the phone. Even if this Court were to look at the place of conduct as urged in *Johnson,* as opposed to the place of injury, as dictated by *Autrey,* there is no clear situs for the conduct. Therefore, the Court will look to the law of the place of injury, Delaware.

**\*19** The same result would apply under the modern trend, as discussed in *Johnson.* The *Restatement of Conflict of Laws 2d, § 145,* outlines contacts to be taken into account in determining the law applicable to an issue in an interests analysis. They are: 1) place of injury, 2) place of conduct, 3) domicile, residence, place of incorporation and business, 4) place where relationship entered. In the instant case, the place of injury is Delaware. The place of conduct is not clearly ascertainable, although if it were, it would be heavily weighed. Ammeraal and plaintiff are incorporated in Delaware; Belting is a foreign corporation, with a foreign domicile. Plaintiff's principal place of business is Delaware; Ammeraal's is Michigan. The relationship does not appear to be centered in one particular place, as plaintiff placed orders with defendants and then distributed the merchandise to their customers. The letter agreement originated with defendants, but was mailed to defendants in Delaware, and presumably

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not.Reported in A.2d
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

was accepted there. From the foregoing, it appears that Delaware has the most significant relationship to the issue.

In addition to the foregoing, the conduct complained of is actionable at common law in Michigan and defendants, therefore, cannot assert unfair surprise that such conduct is prohibited. Further, since Ammeraal is a Delaware corporation with a history of involvement with a one-time exclusive Delaware distributor of its products, it should not be surprised to find itself subject to the laws of this State.

For the foregoing reasons, defendants' motion to dismiss the statutory counts is DENIED.

Defendants also move to strike Count III on the basis that none of the items enumerated constitute trade secrets. This includes 1) the Rhoads customer list, 2) information on the Mars account, 3) the compilation of information on Rhoads' customers and prices. Defendants state that there was no agreement to keep the items secret and that the information was known to the industry or easily ascertainable. The plaintiffs dispute the degree of public knowledge regarding the items.

*Customer List*

Rhoads gave the list to Ammeraal with no understanding limiting its use, according to defendants, and the information was generally available to Ammeraal through its sales invoice records and the phone book. Plaintiff asserts that Ammeraal asked for the list because it did not know who its customers were, and that secrecy was implied and reasonably guarded. All parties agree that Rhoads was told the list was to be used to reduce wasted efforts in duplicating contacts by Ammeraal and plaintiff.

*Mars*

**\*20** It is agreed that Ammeraal was given Mars marketing information for use in its worldwide survey, using existing distribution channels. Defendants state that there was no secrecy agreement and that the information was readily available from Mars itself. Plaintiff contends that the information was considered proprietary by Ammeraal's past president and that it was used by Ammeraal to get the Mars business.

*Information on Rhoads' Customers, Pricing, Shipments & Materials*

This information was put together by Ammeraal employees using their records relating to Rhoads. Plaintiff contends that the information was not readily available.

A trade secret is defined in 6 Del.C. § 2001 as follows:

(4) "Trade secret" shall mean information, including a formula, pattern, compilation, program, device, method, technique or process, that:

a. Derives independent economic value, actual or potential, from *not being generally known to, and not being readily ascertainable* by proper means by, other *persons who can obtain economic value* from its disclosure or use; and

b. Is the subject of *efforts that are reasonable* under the circumstances to maintain its secrecy. (63 Del. Laws, c. 218, § 1.)

The foregoing factual dispute as to whether the enumerated items fall under 6 Del.C. § 2001 precludes summary judgment on this issue. For example, *see, Wilmington Trust Co. v. Consistent Asset Management,* Del.Ch., C.A. No. 8867 (March 25, 1987) (secrecy can be express or implied; preliminary injunction granted as there was some support for finding that some aspects of the formula were treated with confidentiality, that reasonable steps were taken to keep certain elements secret and that plaintiffs realized some benefits from the fact that some elements were not generally known, despite defendant's assertion that all elements can be derived from published sources). *Newell v. O.A. Newton & Sons, Co.,* Del. 104 F.Supp. 162 (1952) (relationship may be of a nature where there is an implied covenant not to use or disclose information). *Jager Trade Secrets Law* § 301(2) (better rule is that valuable customer lists should be afforded trade secret protection unless customer identity is known or is easily obtainable from published sources). *Data General Corp. v. Digital Controls, Inc.,* Del.Ch., 357 A.2d 105 (1975) (although plaintiff distributed limited copies of design drawings for a limited purpose to its customers, they constituted trade secrets because plaintiff had not made them generally available to the public).

The following motions are DENIED for reasons fully set forth in the opinion regarding motions for summary judgment.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1988 WL 32012 (Del.Super.)
(Cite as: 1988 WL 32012 (Del.Super.))

1. Motion to dismiss Counts II and III on the basis that they are barred by the statute of limitations. (The amendments relate back to the original filing.)

2. Motion to dismiss Count II on the grounds that it fails to set forth acts violating the Delaware Deceptive Trade Practices Act (also addressed in motion for a more definite statement).

3. Motion to dismiss Count IV regarding unfair competition because it fails to state a claim upon which relief can be granted. (Relief under _6 Del.C. § 2531 et. seq._ is in addition to remedies available under the common law.)

*21 4. Motion to dismiss Belting from Counts I, II, III, and IV as the acts complained of were not performed by it or its employees (there is a question of fact as to whether Ammeraal was the agent of Belting).

Finally, defendants move to strike and dismiss certain language in the complaint, as follows:

1) The second phrase of paragraph 5, Count I, alleging a prior business relationship (ongoing distributorship relationship and course of dealing) between plaintiff and defendant's predecessors on the basis that it predated the 1982 letter agreement, was terminable at will and, thus, was immaterial to the breach of contract claim in Count I. (Plaintiff asserts the phrase is pertinent to a course of dealing, detrimental reliance, damages in the other counts, and as to the alleged intentional tort in Count I).

2) The section of paragraph 12, Count II, regarding open orders on the basis that Ammeraal offered to fill outstanding orders, at any time, for Rhoads. (Plaintiff asserts that even if this were so, it has no bearing on the allegation that defendants in their contract with Rhoads' customers _represented_ that Ammeraal would fill any open orders with Rhoads.)

3) Paragraph 21(a), the first phrase of paragraph 21(b), the first three allegations of paragraph 21(c), and paragraphs (d) and (e) of Count IV because they sound in breach of contract, and thus are irrelevant to a claim of unfair competition. (Paragraphs (a) through (e) allege facts which would tend to show intent or motive going to improper interference with performance of a contract, or to show how Rhoads' trade with the customers was made more burdensome and expensive. Even the lack of proper notice cited in paragraph (e) tended to make servicing of Rhoads' customers more burdensome.)

Paragraph 21(f), (g), and (h) because (f) only elaborates (e) and because (g) and (h) allege the tort of intentional interference with business relationships. Paragraph 21(i), on the basis that plaintiff failed to allege defendants had any duty to advise Rhoads' customers regarding the hiring of Mol, and paragraph 22 on the basis that unjust enrichment is a quasi-contractual remedy.

4) Plaintiff's prayer for punitive and treble damages, and attorneys' fees. (As the statutory causes were not stricken, these remedies may be pled by plaintiffs.)

Motions to strike under _Super.Ct.Civ.R. 12(f)_ are not favored and are granted sparingly. _Pack & Process, Inc. v. Celotex Corp.,_ Del.Super., 503 A.2d 646 (1985). Ammeraal's motion to strike reaches formal defects only. Although there is a question of relevancy and redundancy with some of the language, none of the language sought to be stricken appears to prejudice defendants. Because of the proximity to trial, and the absence of any substantive prejudice, the Court will DENY defendants' motion to strike. _See, Fowler v. Mumford,_ Del.Super., 102 A.2d 535 (motions to strike should be limited where there is no showing of prejudice to the moving party if the attacked allegations are left in the pleadings).

IT IS SO ORDERED.

FN1. Although plaintiffs correctly state that statutory language does not require plaintiff to show an express intent or design on the part of defendant to injure, _6 Del.C. § 2003, 2004, 2532(a), 2533(a)(6);_ _Air Reduction Co. v. Airco Supply Co.,_ Del.Ch. 258 A.2d 302 (1969), their complaint alleges that the acts constituting violation of the acts were willful and/or malicious. This requires intent.

1988 WL 32012 (Del.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Denise S. Kraft, certify that on this 15th day of September, 2004, I caused true and correct copies of the **Defendants' Reply Brief in Response to Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint** to be served on the following parties in the manner indicated:

### VIA HAND-DELIVERY

Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

### VIA U.S. FIRST-CLASS MAIL

Scot R. Withers, Esquire
Lamb McERlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

Denise S. Kraft (No. 2778)

A00342

## File an answer to a motion:

04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

**U.S. Bankruptcy Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Kraft, Denise Seastone entered on 9/15/2004 at 5:06 PM EDT and filed on 9/15/2004

**Case Name:**       NHI, Inc. v. Fleetboston Financial Corporation et al
**Case Number:**     04-52879-PJW
**Document Number:** 30

**Docket Text:**
Reply *Defendants' Reply Brief in Response to Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint* (related document(s)[1], [17] ) Filed by Fleetboston Financial Corporation, Waring Justis, Jr., KMR Management, Inc. (Attachments: # (1) Attachment Unreported Decisions# (2) Certificate of Service) (Kraft, Denise)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\jgrega\My Documents\Sanner Output\NHIBrief.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=9/15/2004] [FileNumber=2974765-0]
[9560f8a56a1729b57cbaf5c8393dd1ebc8e354f8eaebcf125c34627b52a89b991d0d
a650b43d16e07523f4af45e8db69cc1b20350e267ac30022b7efab138970]]
**Document description:**Attachment Unreported Decisions
**Original filename:**C:\Documents and Settings\jgrega\My Documents\Sanner
Output\NHIUnreported.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=9/15/2004] [FileNumber=2974765-1]
[5a4f1c013bfdb60a16f88096b65bea1d5d85604b506bb09063086ad2cbfe2af57841
10053affcafe422c210b3925e048ce579f9dc355118a45847b5678cd263c]]
**Document description:**Certificate of Service
**Original filename:**C:\Documents and Settings\jgrega\My Documents\Sanner Output\NHICOS.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=9/15/2004] [FileNumber=2974765-2]
[0100cc51d44aa1795db2755d57c27f2c3b0d36704caa9615d9f1b744b8ccb144362a
988ba68b0d102260b0337b31e69d8758b0f1827d47e6e5631b258f7e01e0]]

**04-52879-PJW Notice will be electronically mailed to:**

Stuart M. Brown     sbrown@edwardsangell.com, DEbankruptcy@edwardsangell.com

Denise Seastone Kraft     dkraft@edwardsangell.com

Stephen W. Spence    tap@pgslaw.com;th@pgslaw.com

**04-52879-PJW Notice will not be electronically mailed to:**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

JUDGE PETER J. WALSH

824 MARKET STREET
WILMINGTON, DE 19801
(302) 252-2926

October 8, 2004

Stuart M. Brown
Denise Seastone Kraft
Edwards & Angell, LLP
919 Market Street, 14th Floor
Wilmington, DE 19801

Counsel for Defendants

Stephen W. Spence
Phillips, Goldman & Spence, P.A.
1200 N. Broom Street
Wilmington, DE 19806

James C. Sargeant, Jr.
Guy A. Donatelli
Scot R. Withers
Lamb McErlane PC
24 E. Market Street
Box 565
West Chester, PA 19380-0565

Counsel for Plaintiff

Re:  NHI, Inc.  v.  FleetBoston  Financial  Corporation,  KMR
     Management, Inc. Robert Riesner and Waring S. Justis, Jr.
     Adv. Proc. No. 04-52879

Dear Counsel:

        This is with respect to Defendants' motion (Doc. # 26) to

dismiss Plaintiff's first amended complaint (Doc. # 17).  I will

briefly comment on the major issue raised by the motion papers and

request a further response by Plaintiff.

2

The principal issue here is whether Defendants were acting as agents of Mercantile Safe Deposit and Trust Company ("Mercantile") during the period covered by the alleged improper conduct of Defendants. Defendants cite the release provision of Section 20 of the February 26, 2002 Agreement.

In its answering brief, Plaintiff asserts that it seeks damages only from Defendants "based upon Defendants' failure to discharge their own, independent contractual and fiduciary duties to NHI under theories of contract, tort and bankruptcy law. Accordingly, any reference to the Cash Collateral Agreement or NHI's relationship with Mercantile, is of no moment." (Doc. # 29, p. 8). That the complaint seeks no recovery from Mercantile seems quite clear.

With respect to the defense of release as raised by Defendants, Plaintiff argues that Defendants are not named in the release and any factual defense of a release should be pursued by an answer. As a matter of procedure, I disagree.

There is no doubt that the release provision set forth in the February 26, 2002 Agreement releases not only Mercantile but its "officers, directors, employees, attorneys and agents." While the October 19, 2000 Consulting Agreement does not suggest an agency relationship between Defendants and Mercantile, there are numerous allegations in the complaint that suggest such an agency relationship. While most of those allegations do not necessarily

3

prove an agency relationship, the complaint is more pointed in paragraph 33 which alleges that Defendants "served at the direction and pleasure of Mercantile." (Doc. # 17, ¶ 33). This allegation must be accepted as true. See Schrob v. Catterson, 948 F.2d 1402, 1405 (3rd Cir. 1991). In its answering brief Plaintiff likewise states that Defendants "served and [sic] the direction and pleasure of Mercantile." (Doc. # 29, p. 5). This sure sounds like an agency relationship to me.

Defendants' motion is filed pursuant to Rule 12(b)(6), alleging a failure to state a claim upon which relief can be granted. Pursuant to Rule 12(b), since Defendants have introduced matters outside the pleadings (e.g., the February 26, 2002 Agreement), the motion should be treated as one for summary judgment and all parties should be given a reasonable opportunity to present material made pertinent to such a motion. Therefore, I believe it is incumbent upon Plaintiff to present facts which negate an agency relationship or otherwise show why the release provision does not apply to Defendants.

In treating Defendants' motion as a motion for summary judgment I am requesting Plaintiff to file a supplemental response to the motion. Defendants may thereafter file a further reply.

Very truly yours,

Peter J. Walsh

PJW:ipm

A00347

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

RECEIVED
NOV 0 3 2004

| | |
|---|---|
| IN RE: | : |
| | : Case No. 02-10651 (PJW) |
| NHI, INC., | : |
| A DELAWARE CORPORATION | : Chapter 11 |
| | : |
| | : |
| NHI, INC., | : |
| | : |
| Plaintiff | : |
| | : Adversary No. 04-52879 |
| v. | : |
| | : |
| FLEET BOSTON FINANCIAL | : |
| COPORATION, KMR MANAGEMENT, | : |
| INC., ROBERT RIESNER and WARING | : |
| S. JUSTIS, JR., | : |
| | : |
| Defendants | : |

## CERTIFICATION OF COUNSEL FOR PLAINTIFF NHI, INC.

I, Guy A. Donatelli, Esquire, counsel to Plaintiff in the above captioned matter, hereby

certify to the Honorable Peter J. Walsh, United States Bankruptcy Court, District of Delaware,

the status of the above-captioned matter and more particularly, the intentions of Plaintiff

regarding this Court's Letter dated October 8, 2004, directing Defendants' 12(b)(6) motion to be

treated as a motion for summary judgment. This certification is also designed to address the

recent and untimely filing by the Defendants of a Notice of Completion of Briefing where there

has been no such completion.

1

#34
10-29-04

A00348

By letter dated October 8, 2004, the Court directed that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint be treated as a Motion for Summary Judgment. The issues raised in that Motion and identified by the Court focused on a release provided to Mercantile and whether Defendants could take advantage of that release as agents of Mercantile. The Court directed that "all parties be given a reasonable opportunity to present material made pertinent to such a motion". The Court also directed Plaintiff to file a supplemental response to the motion, after which Defendants would be permitted to file a further reply. No dates or schedule were imposed for such supplemental briefing.

There was a conference scheduled before the Court on October 19, 2004, at which time Plaintiff's counsel intended to advise the Court of the matters which needed to be taken in order to develop the record necessary for the Court to determine Defendants' motion. Those matters to be completed included:

- Depositions of the individual defendants on the issue of agency and the release;

- A deposition of a designee of KMR on the issue of agency and the release;

- A deposition of a designee of Mercantile on the issue of agency and the release;

- A deposition of Plaintiff on the relationship with KMR and the release;

- Assembly of documents, some of which Plaintiff has already uncovered, refuting any actual agency relationship between Mercantile and KMR or release of KMR, and;

2

A00349

- A possible amendment to the First Amended Complaint based upon that discovery.

Plaintiff also intended to inform the Court of that it contemplated completing the discovery by the end of 2004 with briefing promptly thereafter.

Unfortunately, the status conference scheduled for October 19, 2004, was cancelled and no report was made to the Court. However, without notice to Plaintiff's counsel, on October 27, 2004, Defendants filed a Notice of Completion of Briefing. This Notice is ill-advised, without support and premature. Plaintiff will proceed to develop the materials necessary for the Court to determine the agency/release issue within a reasonable time and consistent with the plan set forth above. It is obvious at this stage that the materials necessary to present the supplemental briefs to the Court have not been developed, and Defendants' suggestion through their Notice that they have or could have been since the Court's October 8, 2004 Letter is unreasonable. Indeed, no discovery has been taken or made available to Plaintiff (an advantage Plaintiff would have if the issue had been raised after the pleadings had been closed) and Plaintiff has not had the opportunity to question Defendants on this specific affirmative defense.

This Certification is to advise the Court that Plaintiff will proceed with its plan to address the agency and release arguments through the discovery anticipated above in the time period set forth above. The information uncovered through the depositions will enable the Court to address the release/agency argument raised by Defendants in favor of Plaintiff and

3

Plaintiff respectfully suggests that it be given the reasonable opportunity to develop those materials and respectfully requests that Plaintiff be given the very reasonable time frame anticipated above in which to do so. [1]


Date:    October 29, 2004

_____

Guy A. Donatelli, Esquire
LAMB MCERLANE PC
24 East Market Street
Post Office Box 565
West Chester, PA  19381-0565
(610) 430-8000


Stephen W. Spence, Esquire (#2033)
PHILLIPS GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)

---

[1]    In any event, the Counts VIII through XII of the First Amended Complaint which assert causes of action under the United States Bankruptcy Code for fraudulent transfer, fraudulent conveyance and avoidance of preferences, are not affected by Defendants' claim of release.

4

## CERTIFICATE OF SERVICE

I, CELESTE A. HARTMAN, Senior Paralegal, hereby certify that I am not less than 18 years of age, and that service of this *Certification of Counsel for Plaintiff NHI, Inc.* was made on October 29, 2004 upon the persons on the listed below by U.S. First Class Mail.

President
KMR Management, Inc.
4 Sentry Parkway, Suite 200
Blue Bell, PA 19422

Mr. Waring Justis
1007 Cold Spring Road
Baltimore, MD 21220-4425

FleetBoston Financial Corporation
Corporation Trust Company,
Registered Agent
1209 Orange Street
Wilmington, DE 19801

Mr. Robert Riesner
c/o KMR Management, Inc.
4 Sentry Parkway, Suite 200
Blue Bell, PA 19422

President,
FleetBoston Financial Corporation
c/o Legal Dept.
100 Federal Street
Boston, MA 02110

Stuart M. Brown, Esquire
Edwards & Angell, LLP
919 N. Market Street
Wilmington, DE 19801

Richard Shepacarter, Esquire
Office of the U.S. Trustee
844 King Street, Suite 2313,
Lockbox 35
Wilmington, DE  19801-3519

Nicole M. Nigrelli, Esquire
Klehr, Harrison, Harvey, Branzburg
  & Ellers, LLP
260 South Broad Street
Philadelphia, Pennsylvania  19102

Under penalty of perjury, I declare that the foregoing is true and correct.

*Celeste A. Hartman*
CELESTE A. HARTMAN

**File a Court document:**

04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

**U.S. Bankruptcy Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Spence, Stephen W. entered on 10/29/2004 at 2:54 PM
EDT and filed on 10/29/2004

Case Name:        NHI, Inc. v. Fleetboston Financial Corporation et al
Case Number:      04-52879-PJW
Document Number: 34

Docket Text:
Certification of Counsel (related document(s)[33] ) Filed by Lamb McErlane PC, NHI, Inc. (Spence,
Stephen)

The following document(s) are associated with this transaction:

Document description:Main Document
Original filename:\\Ws-dewey4\scanned docs\JJF\_1029144240_001.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=983460418 [Date=10/29/2004] [FileNumber=3105322-0
] [10f9de33c45579e8fcc371203dd82fba5f3e5e97ffe79f60a635f15b3697844e872
f00f01d95ddfc40e24c52187c4fc58e87abc3ab40de4d5e8907a4d4ecf95f]]

**04-52879-PJW Notice will be electronically mailed to:**

Stuart M. Brown     sbrown@edwardsangell.com, DEbankruptcy@edwardsangell.com

Denise Seastone Kraft    dkraft@edwardsangell.com

Stephen W. Spence    tap@pgslaw.com;th@pgslaw.com

**04-52879-PJW Notice will not be electronically mailed to:**

10/29/2004

A00353



PHILLIPS, GOLDMAN & SPENCE, P. A.
1509 HIGHWAY ONE
DEWEY BEACH, DE 19971

02110+18998 58

President,
FleetBoston Financial Corporation
c/o Legal Dept.
100 Federal Street
Boston, MA 02110

neopost
0444830042880
10/29/2004
$0.60⁰
Mailed From 19971
US POSTAGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                                  :

NHI, INC., f/n/a NANTICOKE HOMES, INC. :    Case No. 02-10651 (PJW)
A DELAWARE CORPORATION                 :    Chapter 11

_____        :

NHI, INC.,                             :

        Plaintiff                    :    Adversary No. 04-52879

v.                                     :

FLEETBOSTON FINANCIAL                  :
CORPORATION, KMR MANAGEMENT,           :
INC., ROBERT RIESNER and               :
WARING S. JUSTIS, JR.,                 :
                                       :
        Defendants.                  :

## MOTION TO STRIKE CERTIFICATION OF
## COUNSEL FOR PLAINTIFF NHI, INC.

Defendants Fleet Boston Financial Corporation, KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr. (collectively, "Defendants"), by and through their undersigned counsel, hereby respectfully move this Court pursuant to Fed. R. Civ. P. 12(f), as made applicable by Fed.. R. Bankr. P. 7012(b), to strike and disallow as procedurally improper and inappropriate the certification of counsel for NHI, Inc. (the "Certification") [D.I. 34]. A memorandum in support of this motion is being filed contemporaneously herewith and is incorporated herein by reference.

35
11/12/04

WLM_500883_1/DKRAFT

**A00355**

Dated: November 12, 2004

/s/Denise S. Kraft
Stuart M. Brown (#4050)
Denise S. Kraft (#2778)
EDWARDS & ANGELL, LLP
919 N. Market Street, 14th Floor
Wilmington, DE 19801
302.777.7770
302.777.7263 - facsimile

Counsel for the Defendants

- 2 -

WLM_500883_1/DKRAFT

## NATURE AND STAGE OF PROCEEDING

On August 5, 2004, Defendants filed a motion to dismiss [D.I. 26] the first amended complaint [D.I. 17] filed by NHI, Inc. ("NHI" or "Plaintiff") based on Plaintiff's release of Defendants. Plaintiff alleges throughout its initial and again through its first amended complaint that Defendants were acting as agents of Mercantile Safe Deposit and Trust Company ("Mercantile"). Plaintiff unquestionably released Mercantile and its agents.

The Plaintiff filed an answering brief to the motion to dismiss [D.I. 29] on September 8, 2004, wherein it repeated its allegations of agency on the part of Defendants as agent and Mercantile as principal. On October 8, 2004, the Court entered a letter on the docket converting Defendants' motion to one for summary judgment and directing the Plaintiff to file a supplemental answering brief to its answering brief [D.I. 32]. The Court's letter stated in part:

> I believe it is incumbent upon Plaintiff to present facts which
> negate an agency relationship or otherwise show why the release
> provision does not apply to Defendants.

When no reply brief was filed by Plaintiff in a timely manner in response to the Court's letter dated October 8, 2004 [D.I. 32] and Defendants' counsel were not contacted by Plaintiff requesting an extension to file such a supplemental answering brief, Defendants filed a Notice of Completion of Briefing [D.I. 33] on October 27, 2004[1]. On October 29, 2004, Plaintiff NHI, Inc. ("Plaintiff") filed the Certification in response to Defendants' Notice of Completion of Briefing [D.I. 33].

Defendants now file this motion to strike the Certification.

---

[1] In accordance with paragraph 9 of the Bankruptcy Court's Procedural Matters directive, effective October 5, 2001, all motions filed in adversary proceedings are subject to the briefing schedule set forth in District Court Local Rule 7.1.2, which provides that answering briefs and accompanying affidavit(s) shall be served and filed no later than ten (10) business days after service and filing of the opening brief and upon completion of briefing, a "Notice of Completion of Briefing" shall be filed with the Court.

WLM_500883_1/DKRAFT

## FACTS

Counsel's Certification requests additional time of at least 2 months to undertake an investigation into their own factual allegation of agency, including the taking of at least 6 depositions and the "[a]ssembly of documents, some of which Plaintiff has already uncovered, refuting any actual agency relationship between Mercantile and KMR or release of KMR." *See* Certification at p. 2, attached hereto as **Exh. 1**. Plaintiff's counsel also indicated that they may need to further amend their first amended complaint after conducting the above-requested discovery. *See* Certification at p. 3, attached hereto as **Exh.1**.

The Certification further states that at a scheduled October 19, 2004 status conference, Plaintiff's counsel "intended to advise the Court of the matters which needed to be taken in order to develop the record necessary for the Court to determine Defendants' motion," but that the status conference was "unfortunately" cancelled. *See* Certification at p. 2, attached hereto as **Exh. 1**. The Certification was signed by Guy A. Donnatelli of Lamb McErlane PC. *See* Certification at P. 4, attached hereto as **Exh. 1**.

## ARGUMENT

A.    **Plaintiff's Certification Requests Discovery on its Own Factual Allegations of Agency in Order to Impeach Itself.**

In the Certification, Plaintiff's counsel requests that Plaintiff be allowed two months of discovery in order to formulate its supplemental brief. Plaintiff suggests that such discovery is required to respond to Defendants' factual allegations. The Court directed Plaintiff to supplement its own answering brief, if it can, to refute _its own_ factual allegations of agency contained in its complaint, amended complaint and again in its answering brief to Defendants' motion to dismiss.

- 2 -

WLM_500883_1/DKRAFT

A00358

The motion to dismiss, and accordingly, the converted motion for summary judgment, are grounded in the release and highlight Plaintiff's factual allegations of agency, the same factual allegations of agency that Plaintiff <u>again</u> repeated in its answering brief. Plaintiff's repeated factual allegations of agency, especially in its answering brief, are not immaterial, mistaken, inadvertent or pled in the alternative. It is clear that the discovery requested by Plaintiff in its Certification was required to have been conducted prior to filing the initial complaint and certainly prior to filing the answering brief. Fed. R. Bankr. P. 9011(b)(3) provides in pertinent part:

Rule 9011.

SIGNING OF PAPERS; REPRESENTATIONS TO THE COURT; SANCTIONS; VERIFICATION AND COPIES OF PAPERS

(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –

\* \* \*

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

Unbelievably, and perhaps unprecedented, Plaintiff is now attempting through post-complaint investigation (no discovery has been propounded by Plaintiff upon any Defendant), in lieu of Plaintiff's good faith, pre-complaint investigation obligation, <u>to impeach itself</u> and negate its very own factual allegations of agency as alleged throughout the complaint, amended complaint and alleged and argued in its answering brief to defendants' motion to dismiss.

- 3 -

A00359

It is inconceivable that Plaintiff is now representing the Court that it requires extensive discovery in order to negate its own factual allegations of agency. By Plaintiff's Counsel's own admission in the Certification, the recently discovered relevant documents were <u>assembled by the Plaintiff</u>. These documents obviously were under the Plaintiff's control previously, as Defendants have not been asked to produce and have not produced any documents. These documents should have been reviewed by the Plaintiff prior to commencing the instant proceeding and included prior to repeating the allegations of agency.

Throughout its pleadings, as recognized by the Court, the Plaintiff reiterates allegations of agency. In the Amended Complaint, the Plaintiff states that the defendants "served at the direction and pleasure of Mercantile." [D.I. 17, ¶ 33]. Likewise, in its answering brief, the Plaintiff states that the defendants "served and [sic] the direction and pleasure of Mercantile." [D.I. 29, p.5]. The plaintiff alleges the facts concerning agency to form a basis for the defendants' motive. *See, eg.,* D.I. 17, ¶111 ("[The Defendants] engaged in a scheme to waste the assets of NHI in order to liquidate it for the benefit of Mercantile."); D.I. 17, ¶104 ("[The Defendants] engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around."). The Court can only perceive these allegations to be material to the Plaintiff and that the Plaintiff had the documents on which it based its allegations before filing its Amended Complaint. Clearly, the Plaintiff did not plead facts in the alternative or hypothetical, nor did the Plaintiff assert alternative or inconsistent theories of recovery. The Plaintiff is proceeding down a straight and narrow path from which it cannot now turn off in an effort to negate such allegations and escape summary judgment in favor of the defendants.

- 4 -

A00360

**B.**    **Plaintiff's Allegations of Agency in its Complaint, Amended Complaint and Answering Brief are Judicial Admissions Upon Which Defendants are Entitled to Rely.**

Facts contained in the pleadings, depositions, answers to interrogatories, admissions and

affidavits, if any, are considered by the Court when deciding whether summary judgment is

appropriate. Fed. R. Civ. P. 56(c). Further, the facts asserted in a pleading are considered

"judicial admissions" and bind the party asserting the facts. *See Glick v. White Motor Co.,* 458

F.2d 1287 (3d Cir. 1972) (where a party offers deliberate, clear and unequivocal facts in a

complaint, those assertions are binding on the party.); *In re Cendant Corp. Securities Litig.,* 109

F. Supp.2d 225, 230 (D.N.J. 2000); 10A Charles Alan Wright and Arthur R. Miller, *et al.,*

Federal Practice and Procedure §§ 2722 and 2723 at 382 (3d ed. 1998) ("Wright & Miller").

The Third Circuit has held that "to be binding, judicial admissions must be unequivocal."

*Glick,* 458 F.2d at 1291; *see also Greenwell v. Boatwright,* 184 F.3d 492, 498 (6th Cir. 1999)

(holding that only "deliberate, clear and unambiguous" statements are judicial admissions);

*Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58, 61 (1st Cir. 1992)

(affirming the District Court's finding of a judicial admission from a "clear[] and

unambiguous[]" allegation in the complaint); *In re Corland Corp.,* 967 F.2d 1069, 1074 (5th Cir.

1992) (holding that only "deliberate, clear and unequivocal" statements can constitute conclusive

judicial admissions). When a statement meets such a threshold, "even if the post-pleading

evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on

the parties and may support summary judgment against the party making such admissions."

*Missouri Housing Dev. Comm'n v. Brice,* 919 F.2d 1306, 1315 (8th Cir. 1990); *Electric Mobility*

*Corp. v. Bourns Sensors/Controls, Inc.,* 87 F. Supp. 2d 394, 405 (D.N.J. 2000). The plaintiff

should not be allowed to contradict its express factual assertion in an attempt to avoid summary

judgment. *See Schott Motorcycle Supply, Inc.,* 976 F.2d at 61-62; *Brice,* 919 F.2d at 1315.

WLM_500883_1/DKRAFT

A00361

Accordingly, a party is not allowed to retreat from prior factual assertions in its pleading. *See Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956); *Kean v. Adler*, 2002 WL 31641650, *1-2 (D.V.I. Nov. 18, 2002) (government estopped from retreating from earlier factual assertions regarding the extent of another party's ownership interests in the disputed property). In particular, a party is precluded from retreating from a factual allegation that it affirmatively asserted in support of its cause of action in an effort to avoid summary judgment. *Sobratti v. Tropical Shipping & Constr. Co.*, 267 F. Supp. 2d 455, 462-463 (D.V.I. 2003); *see, e.g., Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105 (5th Cir. 1987) (summary judgment granted despite plaintiff's effort to recant by affidavit the factual assertions in pleading that would have resulted in dismissal of the claim based on statute of limitations); *Schott Motorcycle Supply, Inc.*, 976 F.2d at 61 (summary judgment granted where despite plaintiff's later arguments to the contrary, factual allegations in the pleadings established the contract issue).

The Federal Rules of Civil Procedure allow the pleading of hypothetical and alternate theories of recovery. Alternative or hypothetical pleadings will not be construed as judicial admissions. *See McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990); *Garman v. Griffin*, 666 F.2d 1156, 1159 (8th Cir. 1981); *see also* Fed. R. Civ. P. 8(e)(2) (allowing alternative and hypothetical pleading). However, the Federal Rules do not permit the pleading (and briefing) of alternate factual allegations and the Plaintiff does not, but for the Court's direction, attempt to do so. The Plaintiff alleges and realleges facts purporting agency, recognized by the court as such in its Letter. *See Schott Motorcycle Supply, Inc.*, 976 F.2d at 62; 5 Wright & Miller § 1282 at 525 (1990) (generally an alternative claim is drafted in the form of "either-or" and a hypothetical claim is in the form of "if-then"). Likewise, a party can plead himself out of court by alleging facts that show that he has no claim, even though he was not

- 6 -

WLM_500883_1/DKRAFT

**A00362**

required to allege those facts. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000); 30B Wright & Miller § 7026 (2000).

Defendant's have expended a great sum of money in briefing and filing the motion to dismiss, only to be faced now with a moving target of factual allegations that Fed. R. Bankr. P. 9011(b)(3) was meant to eradicate. The doctrine of judicial admission will apply under notions of fair play and justice to hold Plaintiff accountable for its repeated clear, underlying and actual factual allegations of agency. At this point, Plaintiff must be made to stand on the factual allegations of agency in its multiple pleadings and answering brief, live with the release of defendants as agents of Mercantile and recognize judgment must be entered in favor of the defendants.

**C.    This Adversary Matter was Not Listed for Any Proceedings According to the Agenda Filed for the October 19, 2004 Status Conference.**

Plaintiff's Counsel is disingenuous in the Certification when he certifies that at a scheduled October 19, 2004 status conference, he "intended to advise the Court of the matters which needed to be taken in order to develop the record necessary for the Court to determine Defendants' motion," but that the status conference was "unfortunately" cancelled. *See* Certification at p. 2, attached hereto as **Exh. 1.** The Notice of Agenda of Matters Scheduled for Hearing on October 19, 2004 ("Agenda") was filed on October 15, 2004 [D.I. 645]. *See* Agenda for October 19, 2004 status conference attached hereto as **Exh. 2.** The Agenda, the only notice of matters to be or "intended" to be presented to the Court at that hearing and of which Defendants had notice, did not list this particular adversary proceeding anywhere.[2]

---

[2] "Only those items listed on the Notice of Agenda and the relevant pleadings delivered to Chambers before noon, two business days prior to the date of the hearing will be considered." Bankruptcy Court Procedural Matters directive, effective October 5, 2001, para.3.

WLM_500883_1/DKRAFT

A00363

**D.    The Certification is Taken by a Non-Delaware Attorney.**

The foregoing notwithstanding, the certification by Guy A. Donnatelli of Lamb McErlane

PC, a non-Delaware attorney, is a violation of Delaware District Court Local Rule 83.5(d) which

provides that:

> An attorney not admitted to practice by the Supreme Court of
> Delaware may not be admitted *pro hac vice* in this Court unless
> associated with an attorney who is a member of the Bar of this
> Court and who maintains an office in the District of Delaware for
> the regular transaction of business, upon whom all notices, orders,
> pleadings and other papers filed in the case shall be served and
> who shall be required to sign all papers filed with the Court where
> the signature of an attorney is required, and attend proceedings
> before the Court, Clerk, United States Magistrate, Bankruptcy
> Judge, Auditors, Trustees, Receivers, or other officers of the Court.

Plaintiff's Counsel's Certification, therefore, is not properly before this Court and must

be stricken and disallowed as procedurally improper.

## CONCLUSION

WHEREFORE, for the above-stated reasons, Defendants respectfully request that the

Court strike and disallow Plaintiff's Certification in its entirety.

Dated: November 12, 2004                    /s/Denise S. Kraft
                                            Stuart M. Brown (#4050)
                                            Denise S. Kraft (#2778)
                                            EDWARDS & ANGELL, LLP
                                            919 N. Market Street, 14th Floor
                                            Wilmington, DE 19801
                                            302.777.7770
                                            302.777.7263 - facsimile

                                            Counsel for the Defendants

WLM_500883_1/DKRAFT

A00364

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:                                    :

NHI, INC.,                                :          Case No. 02-10651 (PJW)
A DELAWARE CORPORATION                    :          Chapter 11

_____        :

NHI, INC.,                                :

        Plaintiff                    :          Adversary No. 04-52879

v.                                        :

FLEETBOSTON FINANCIAL                     :
CORPORATION, KMR MANAGEMENT,              :
INC., ROBERT RIESNER and                  :
WARING S. JUSTIS, JR.,                    :

        Defendants                   :

## ORDER

    IT IS HEREBY ORDERED this ____ day of December, 2004 that Defendants' Motion to

Strike Certification of Counsel for Plaintiff NHI, Inc. is GRANTED.


                                          _____
                                          Honorable Peter J. Walsh

WLM_500883_1/DKRAFT

A00365

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, certify that on this 12th day of November, 2004, I caused true and correct copies of the **Motion to Strike Certification of Counsel for Plaintiff NHI, Inc.** to be served on the following parties in the manner indicated:

### VIA HAND-DELIVERY

Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

### VIA U.S. FIRST-CLASS MAIL

Scott R. Withers, Esquire
Lamb McErlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

/s/Denise S. Kraft
Denise S. Kraft (#2778)

WLM_500883_1/DKRAFT

**A00366**