| Exhibit | Description | Docket No. | Date Docketed |
|---------|-------------|------------|---------------|
| 1 | Complaint by NHI, Inc. against Fleetboston Financial Corporation, KMR Management, Inc., Robert Riesner, Waring Justis, Jr. | 1 | 2/27/2004 |
| 2 | Alias Summons and Notice of Pretrial Conference | 11 | 5/20/2004 |
| 3 | Motion to Dismiss Adversary Proceeding Filed by Fleetboston Financial Corporation | 12 | 6/01/2004 |
| 4 | Memorandum of Law in Support of Motion to Dismiss by Defendant Fleetboston Financial Corporation | 15 | 6/02/2004 |
| 5 | Plaintiff's Answer to Motion to Dismiss of Defendant Fleetboston Financial Corporation | 17 | 6/14/2004 |
| 6 | Amended Motion to Dismiss Adversary Proceeding by Defendant Fleetboston Financial Corporation | 21 | 7/07/2004 |
| 7 | Amended Memorandum of Law in Support of the Motion to Dismiss by Defendant Fleetboston Financial Corporation | 22 | 7/07/2004 |
| 8 | Amended Notice of Completion of Briefing | 23 | 7/08/2004 |
| 9 | Defendants' Motion to Dismiss Plaintiff's First Amended Complaint | 26 | 8/05/2004 |
| 10 | Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint | 27 | 8/05/2004 |
| 11 | Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint | 29 | 9/08/2004 |
| 12 | Defendants' Reply Brief in Response to Answering Brief of Plaintiff NHI in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint | 30 | 9/15/2004 |
| 13 | Notice of Completion of Briefing | 31 | 9/16/2004 |

WLM_501078_1/DKRAFT

**A00536**

| 14 | Court's Letter to Counsel Dated 10/8/04 with Respect to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint | 32 | 10/8/2004 |
|----|---|----|---|
| 15 | Notice of Completion of Briefing | 33 | 10/27/2004 |
| 16 | Certification of Counsel | 34 | 10/29/2004 |
| 17 | Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. | 35 | 11/12/2004 |
| 18 | Memorandum of Law in Support of Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. | 36 | 11/12/2004 |
| 19 | Notice of Service of Discovery Plaintiff's Interrogatories Addressed to Defendants Fleet Boston Financial Corporation, KMR Management, Inc., Robert Riesner and Waring Justis Jr. | 37 | 11/17/2004 |
| 20 | Notice of Service of Discovery Plaintiff's Request for Production Addressed to Defendants Fleet Boston Financial Corporation | 38 | 11/17/2004 |
| 21 | Plaintiff's Answer to Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. | 39 | 11/22/2004 |
| 22 | Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Strike Certification of Counsel | 40 | 11/22/2004 |
| 23 | Defendants' Reply Brief in Response to Plaintiff's Answer to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. | 41 | 11/30/2004 |
| 24 | Notice of Completion of Briefing | 42 | 12/01/2004 |
| 25 | Certification of Counsel Regarding Filing of Second Amended Complaint of Plaintiff | 44 | 12/10/2004 |
| 26 | Second Amended Complaint | 45 | 12/10/2004 |
| 27 | Motion for Leave to Appeal | 46 | 12/3/2004 |

WLM_501078_1/DKRAFT

A00537

| 28 | Notice of Appeal | 47 | 12/13/2004 |
| 29 | Transcript of Hearing Before the Honorable Peter J. Walsh held on December 3, 2004 at 3:30 p.m. | TBD | TBD |

**Statement Of Issues to Be Presented On Appeal**

      1.     Whether the Bankruptcy Court erred in converting Defendants' motion to dismiss the amended complaint to a motion for summary judgment.

      2.     Whether the Bankruptcy Court erred in denying Defendants' motion for summary judgment.

      3.     Whether the Court erred in finding that only paragraph 33 of the amended complaint made agency allegations.

Dated: December 23, 2004

EDWARDS & ANGELL LLP

*Denise S. Kraft*

Stuart M. Brown (#4050)
Denise S. Kraft (#2778)
919 N. Market Street, 14th Floor
Wilmington, DE 19801
(302) 777-7770 - telephone
(302) 777-7263 - facsimile

Counsel for the Defendants
FleetBoston Financial Corporation,
KMR Management Inc.,
Robert Reisner and
Waring S. Justis

- 4 -

WLM_501078_1/DKRAFT

**A00538**

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, certify that on this 23rd day of December, 2004, I caused true and correct copies of the **Designation of the Record and Statement of Issues Pursuant too (A) Federal Rule of Appellate Procedure 6(a) and (B) Bankruptcy Rule 8006** to be served on the following parties in the manner indicated:

**VIA HAND-DELIVERY**

Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

**VIA U.S. FIRST-CLASS MAIL**

Scott R. Withers
Lamb McErlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

Denise S. Kraft (#2778)

## File an Appeal:
04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Kraft, Denise Seastone entered on 12/22/2004 at 3:13 PM EST and filed on 12/22/2004
**Case Name:**         NHI, Inc. v. Fleetboston Financial Corporation et al
**Case Number:**    04-52879-PJW
**Document Number:** 49

**Docket Text:**
Appellant Designation of Contents For Inclusion in Record On Appeal *Designation of the Record and Statement of Issues Pursuant to (A) Federal Rule of appellate Procedure 6(a) and (B) Bankruptcy Rule 8006* (related document(s)[47] ) Filed by Fleetboston Financial Corporation, Waring Justis, Jr., KMR Management, Inc., Robert Riesner Appellee designation due by 1/1/2005. Transmission of Designation Due by 1/21/2005. (Attachments: # (1) Certificate of Service)(Kraft, Denise)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\jgrega\My Documents\Scanner Output\NHIDesignation.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=12/22/2004] [FileNumber=3295722-0
] [569f0f82d82c2244c1b184c615050cdefe8026a6b06a59b7cfa772808cbb31b77e6
728c33d98b0d1ad01e555ca8e9b0ddec56ea5fbe010577a1a076e326d15fc]]
**Document description:**Certificate of Service
**Original filename:**C:\Documents and Settings\jgrega\My Documents\Scanner Output\NHIDesignationCOS.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=12/22/2004] [FileNumber=3295722-1
] [95c1d8e202c853fbd516b4884a9eb9c84e0e5279d4cd609791e7f878cd053822ec5
19ae54cf2ccf9b3f0bf7eb4a87e714fa6bd4c56743715b783853b162b5669]]

**04-52879-PJW Notice will be electronically mailed to:**

Stuart M. Brown     sbrown@edwardsangell.com, DEbankruptcy@edwardsangell.com

Denise Seastone Kraft    dkraft@edwardsangell.com

Stephen W. Spence    tap@pgslaw.com;th@pgslaw.com

**04-52879-PJW Notice will not be electronically mailed to:**

https://ecf.deb.uscourts.gov/cgi-bin/Dispatch.pl?110740583422488          12/22/2004

**A00540**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Case No. 02-10651 (PJW) |
| NHI, INC.,<br>A DELAWARE CORPORATION | :<br>:<br>: | Chapter 11 |
| NHI, INC., | :<br>: | |
|       Plaintiff | :<br>: | Adversary No. 04-52879 |
|   v. | : | |
| FLEET BOSTON FINANCIAL<br>CORPORATION, KMR MANAGEMENT,<br>INC., ROBERT RIESNER and WARING<br>S. JUSTIS, JR., | :<br>:<br>:<br>: | Reference Docket No. 46 |
|       Defendants. | : | |

## ANSWER OF PLAINTIFF NHI, INC.
## IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO APPEAL

James C. Sargent, Esquire
PA Attorney I.D. No. 28642
Guy A. Donatelli, Esquire
PA Attorney I.D. No. 44205
Scot R. Withers, Esquire
PA Attorney I.D. No. 84309
LAMB MCERLANE PC
24 East Market Street
Post Office Box 565
West Chester, PA 19381-0565
(610) 430-8000
Of Counsel
December 23, 2004

Stephen W. Spence, Esquire (#2033)
PHILLIPS GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)
Counsel to NHI, Inc.

Dkt. No. 50
Date Filed: 12-23-04

Debtor/Plaintiff NHI, Inc. submits this opposition to the Motion for Leave to Appeal of FleetBoston Financial ("Fleet"), KMR Management, Inc. ("KMR"), Robert Riesner ("Riesner") and Waring Justis, Jr. ("Justis"). Defendants' motion for leave to appeal the December 3, 2004 bench ruling is without support as a matter of law and ill conceived as a matter of procedure. It does not involve a controlling question of law where a substantial basis exists for a difference of opinion on the question nor will an immediate appeal materially advance the termination of the litigation. To the contrary, Defendants' instant motion is an exercise in pleading gamesmanship that does nothing to address the issues raised in the case and little to achieve a just result on the merits of the claims made. Accordingly, NHI responds to Defendants' motion more fully below as follows:

1.    Admitted.

2.    Admitted in part. Denied as stated in part. NHI did file an adversary complaint on or about February 27, 2004, asserting a number of different claims against Defendants arising out of Defendants failure to honor certain contractual and common law obligations to NHI as well as certain claims under the Bankruptcy Code. The complaint is a written document the contents of which speak for itself and NHI denies Defendants' attempt to paraphrase them.

3.    Admitted.

4.    Admitted.

5.    Denied. Nowhere in the initial complaint or in the first amended complaint did NHI allege that Defendants were acting as the agents of Mercantile Safe Deposit and Trust Company ("Mercantile"), nor did the Court specifically make such a

2

finding. Rather, the Court noted that paragraph 33 of the complaint was an assertion of an agency relationship while other pleadings took the position that Defendants were not the agents of Mercantile, and the Court wanted to know "which is it"? (Colloquy between counsel and the Court at the December 3, 2004 hearing, pp. 4-5. A transcript of the Colloquy is attached to this response). NHI agreed to amend the first amended complaint to withdraw paragraph 33 and the Court permitted that narrow amendment. (Colloquy, pp. 5, 7) It is admitted that NHI had released Mercantile from any claims prior to the filing of NHI's bankruptcy petition, however that release was not intended to, nor did it, apply to Defendants in this case. Indeed, counsel for Defendants themselves conceded on December 3, 2004, that the Defendants were not going to defend against NHI's action based upon a claim of agency. (Colloquy, p. 6)

6.    It is admitted that Defendants filed a motion to dismiss on August 5, 2004.

7.    Admitted in part. Denied in part. It is admitted that NHI filed an answering brief opposing Defendants' Motion to Dismiss. It is denied that NHI made any allegations of agency on the part of Defendants as agent of Mercantile. And, Defendants do not contend they are the agents of Mercantile. The issue raised by Defendants in the instant motion is of no moment and has no legal or practical effect on the outcome of this litigation.

8.    Admitted.

9.    Admitted. In its letter dated October 8, 2004, the Court directed that Defendants' Motion to Dismiss Plaintiff's first amended complaint be treated as a Motion for Summary Judgment. The Court focused on a release provided to Mercantile by NHI and whether Defendants could take advantage of that release as agents of

3

Mercantile. The Court noted that certain allegations of the Complaint sounded like an allegation of an agency relationship and directed that "all parties be given a reasonable opportunity to present material made pertinent to Defendants motion". The Court also directed NHI to file a supplemental response to the motion, after which Defendants would be permitted to file a further reply.

10. Denied as stated. In response to the Court's October 8, 2004 letter, NHI did file a certification in which it set out for the Court the manner in which NHI would negate an agency relationship and satisfy the Court's inquiry. The discovery was not extensive and was designed to establish what Defendants' counsel admitted in on the record on December 3, 2004 -- that Defendants do not contend that they are agents of Mercantile.

11. Denied as stated. It is admitted that Defendants filed a motion to strike the certification. It is denied that the basis for the motion to strike was because the certification was improper or was in the nature of an ex parte communication to the Court. To the contrary, the motion to strike was based upon the identity of the attorney signing the certification, who had been admitted pro hac vice in the case.

12. Admitted.

13. Admitted.

14. Admitted.

15. Denied as stated. To the contrary, at the status conference, the Court determined that NHI could be construed as having taken inconsistent positions. While the Court found that the language contained in paragraph 33 of the complaint could be construed as an agency allegation, the Court recognized NHI's other submissions, in which NHI clearly set forth in briefs and affidavits, that NHI was

4

making no such claim of agency (quite frankly, it would have made no sense whatsoever for NHI to have made such an allegation – the claims made against Defendants were not derivative of any conduct of Mercantile and providing an opportunity for Defendants to take advantage of the release to Mercantile would work a manifest injustice in this case). Defendants' counsel then admitted that it would not be making any claim that Defendants were Mercantile's agents. The Court, applying the broad discretion available to a trial judge, and recognizing no prejudice could occur to the Defendants, permitted NHI to amend the first amended complaint to remove paragraph 33, thus ending a pointless dispute without any practical effect whatsoever. The second amended complaint was filed on December 10, 2004.

16.    Admitted in part. Denied in part. The Court converted the motion to dismiss to a motion for summary judgment in its October 8, 2004 letter. NHI did not make any judicial admissions and if it had, the Court's permission to amend the complaint did not allow NHI to "escape" from any relevant consideration– the issues raised by Defendants regarding agency and release were not good faith assertions of a factual or legal defense at all – **Defendants admit they were not agents.** Defendants' tactics are merely legal gamesmanship seeking to gain an unfair advantage by torturing vague language contained in one paragraph of the first amended complaint.

## QUESTIONS PRESENTED

17.    Denied. To the contrary, the issue presented is whether a court, in the exercise of its discretion, may permit a plaintiff to amend an allegation in its complaint prior to answer having been filed when every litigant, including the defendant, knows

5

the allegation is ambiguous and there is no prejudice to the defendant whatsoever by the amendment or whether the case will be determined by a game of "gotcha" in which a party will be permitted to insist on the meaning of an ambiguous allegation when that party knows such a meaning is not accurate and unintended. Defendants, however, have waived this issue as it was not raised in its motion.

18.    Denied.  The issue is whether the motion to dismiss pursuant to Rule 12(b)(6) should have been granted when viewing the allegations of the complaint in the light most favorable to plaintiff, the plaintiff is not entitled to relief.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).   Here, applying the deference afforded to NHI in this context, an entry of an order dismissing the complaint would have been error without permitting NHI to clarify its pleadings and claims.  The Court, however, did not grant or deny the motion to dismiss or the motion for summary judgment; it simply permitted NHI to amend, thereby mooting the issue.

## STATEMENT OF REASONS WHY AN APPEAL SHOULD NOT BE GRANTED

19.    Denied.   The standard for allowing an interlocutory appeal by permission pursuant to 28 U.S.C § 158(a) is closely analogous to 28 U.S.C. § 1292 (b) addressing appeals of interlocutory orders from district courts to courts of appeals. "An order not otherwise appealable is appealable under 28 U.S.C. § 1292(b) when three criteria are met: (1) the order appealed from must 'involve[s] a controlling question of law'; (2) the controlling question must be one 'as to which there is substantial ground for difference of opinion'; and (3) the order must be one from

6

which 'an immediate appeal . . . may materially advance the ultimate termination of the litigation.'" Klapper v. Commonwealth Realty Trust, 662 F. Supp. 235, 236 (D. Del. 1987). Defendants cannot satisfy any one of these three criteria.

20.    Admitted, however, Defendants have alleged, and can not meet, the standard articulated in In re Marvel Entertainment Group, Inc., 209 B.R. 832 (D. Del. 1997). By way of further response, the decision to certify an order for appeal under § 1292(b) lies within the sound discretion of the trial court and is only appropriate in "exceptional" cases. Piazza v. Major League Baseball, 836 F. Supp. 269, 270 (E.D.Pa. Oct. 14, 1993). A district court should be mindful of the strong policy against piecemeal appeals when exercising its discretion. Orson, Inc. v. Miramax Film Corp., 867 F. Supp. 319, 321 (E.D. Pa. 1994).

21.    **The Bankruptcy Courts' Ruling does not involve a controlling question of law.** In the instant case, Defendants admit that there is no agency relationship between them and Mercantile and will not seek to prove such a relationship at trial. Accordingly, the matters being raised by Defendants in the within motion are not "serious to the conduct of the litigation, either legally or practically". Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974). They are rather, pointless and a transparent attempt at gaming an ambiguous allegation. Defendants do not contend that the release applies to them as an agent of Mercantile, and therefore, the issue raised herein is moot. In light of the proofs offered by NHI that no such agency relationship exists, the trial judge was correct to permit NHI to amend its 217 paragraph first amended complaint to remove one paragraph, especially because this amendment does not change in any way the claims made against Defendants.

7

22.    **There are no grounds for differences of opinion as to the controlling question of law.** "District courts have substantial discretion to allow plaintiffs to amend complaints, and modern rules of pleading generally counsel in favor such amendments." <u>Anderson v. City of Philadelphia</u>, 65 Fed. Appx. 800, 801 (3d Cir. 2003); <u>see also</u> Fed.R.Civ.P. 15(a) ("leave [to amend] shall be freely given when justice so requires."). In the instant case, the trial court permitted an amendment to avoid a manifest injustice, namely the applicability of a defense that every litigant concedes does not apply. In their memorandum of law in support of their motion to dismiss, Defendants asserted that NHI was "judicially estopped" from asserting a claim in light of the release and that the doctrine of judicial estoppel prohibited NHI from taking inconsistent provisions. ([D.I.12, p.11].[1] However, the doctrine of judicial estoppel is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from 'playing 'fast and loose with the courts.'" <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 358 (3d Cir. 1996) (quoting <u>Scarano v. Central R. Co. of New Jersey</u>, 203 F.2d 510, 513 (3d Cir. 1953)); <u>accord</u> <u>Seigman v. Palomar Med. Techs., Inc.</u>, 1998 Del. Ch. LEXIS 115, *2 (Del. Ch. 1998), attached hereto as Exhibit "B", (under the doctrine of judicial estoppel, "a party may be precluded from asserting in a legal proceeding, a position inconsistent with a position previously taken by him in the same or in an earlier legal proceeding.") (quoting <u>Coates Int'l, Ltd. v. DeMott</u>, 1994 Del. Ch. LEXIS 20, *5

---

[1]    Defendants' assertion in its instant motion for leave to file appeal that reference to authority on judicial estoppel is somehow off-point is mystifying — Defendants' motion to dismiss was based upon judicial estoppel and appropriately addressed by NHI.

8

(Del. Ch. 1994)), attached hereto as Exhibit "C". Here, to the extent there were inconsistencies in the pleading, the trial court was correct to permit an amendment in the absence of prejudice and before Defendants have even filed an answer to the complaint.[2]

23.    **An immediate appeal will not advance the ultimate termination of the litigation.** Defendants admit that "it is not our intention to argue that the defendants were agents of Mercantile" to bring themselves within the release. (Colloquy, p. 6).   The trial judge, not surprisingly, noted "this whole agency is a nonissue at this point". (Colloquy, p. 6).   Accordingly, it is inconceivable how this issue, or the determination of it, could possibly advance the ultimate termination of the litigation – that issue will not even be raised in the case. What Defendants are attempting to do is take the litigants and the Court down an expensive and needless detour in an effort to divert attention from the merits of NHI's substantial and meritorious claims.  And, there are also claims made for fraudulent conveyance, fraudulent transfer and avoidance of preferences under the Bankruptcy Code which are not implicated by the defenses raised herein and this matter will proceed under those theories irrespective of them.

---

[2]     To this extent, Defendants citations to authorities in support of their claim of judicial admission are inapposite. For example, in Glick v. White Motor Company, 458 F.2d 1287 (3d Cir. 1972), the Third Circuit noted that for a judicial admission to be binding, it must be "unequivocal". Id. at 1291. In the instant case, NHI immediately noted its position that there were no allegations of agency, making the language indicating otherwise anything but unequivocal. Furthermore, in Glick, the trial court was addressing whether a third-party litigant was estopped on appeal from disputing the authenticity of certain exhibits when it had taken the position at trial the exhibits were genuine. Id. at 1290. The Court determined that the litigant could not. However, this is a far cry from the instant case, in which NHI is not seeking to present evidence of an agency relationship, Defendants will not claim an agency relationship as a defense and could not be prejudiced by NHI's position.

9

**COPY OF ORDER**

A transcript of the December 3, 2004 Colloquy is attached hereto as Exhibit "A".

**CONCLUSION**

WHEREFORE, NHI respectfully requests that this Court deny Defendants' Motion for Leave to Appeal the December 3, 2004 Bench Ruling of the Bankruptcy Court.

PHILLIPS, GOLDMAN & SPENCE, P.A.

STEPHEN W. SPENCE, ESQUIRE (#2033)
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
(302) 655-4210 (fax)
Counsel to NHI, Inc.

-and-

LAMB MCERLANE PC
GUY A. DONATELLI, ESQUIRE
JAMES C. SARGENT, ESQUIRE
SCOT R. WITHERS, ESQUIRE
24 East Market Street
Post Office Box 565
West Chester, PA  19381-0565
(610) 430-8000
Co-counsel to NHI, Inc.

Date:   December 23, 2004

10

A00550

# EXHIBIT "A"

UNITED STATED BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                              )
                                    )   Chapter 11
NHI, INC., a Delaware               )
Corporation,                        )   Case No. 02-10651 (PJW)
                                    )
                                    )   December 3, 2004, 3:30 p.m.
                    Debtors    )


TRANSCRIPT OF HEARING
BEFORE THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For KMR Management,:        DENISE SEASTONE KRAFT, ESQUIRE
FleetBoston,                EDWARDS & ANGELL, LLP
Robert Riesner, and        919 N. Market Street, 14th Floor
Waring S. Justis, Jr.      Wilmington, DE 19801


For NHI, Inc.:             STEPHEN W. SPENCE, ESQUIRE
                           PHILLIPS, GOLDMAN & SPENCE
                           1200 North Broom Street
                           Wilmington, DE 19806


For NHI, Inc.:             GUY DONATELLI, ESQUIRE
                           SCOTT R. WITHERS, ESQUIRE
                           LAMB, MCERLANE, PC
                           24 East Market Street
                           West Chester, PA 19381




Transcribed by:            DIANA DOMAN TRANSCRIBING
                           P.O. Box 129
                           Gibbsboro, New Jersey   08026-129
                           (856) 435-7172
                           FAX:  (856) 435-7124
                           Email:  Dianadoman@comcast.net


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

Colloquy                                      2

1        (Hearing in session)

2              THE CLERK:  Please rise.

3              THE COURT:  Please be seated.  Yes.

4              MR. SPENCE:  Good afternoon, Your Honor.  Stephen

5    Spence on behalf of NHI, Inc.  Your Honor, I was advised by

6    your staff before we started that the two matters that were the

7    first two items on our agenda today were both the subject of

8    certificates of no objection.  I think the Court has already

9    acted on those.

10             THE COURT:  Yes.

11             MR. SPENCE:  And so the only other matter we had on

12   today's agenda was really at my doing a suggest -- or not a

13   suggestion, but the though process that perhaps it might be

14   time to have a -- a status conference really at your discretion

15   as to the status of the adversary proceeding that's mentioned

16   in the agenda, and without further ado, I was going to cede the

17   podium to my co-counsel, Guy Donatelli or -- or to field any

18   questions from the Court before we start as the case may be.

19             THE COURT:  Well, let's see.  I must say at this

20   point I'm confused as to what the plaintiff's case is.

21             MR. SPENCE:  All right.  Then I should -- I should

22   probably cede to Mr. Donatelli.

23             THE COURT:  Okay.

24             MR. DONATELLI:  Your Honor, may I please the Court,

25   Guy Donatelli on behalf of -- of NHI.  I'll start by -- by

Colloquy                                                3

1    trying to address Your Honor's confusion.

2            The complaint is rather lengthy, because we attempted

3    in it to lay out what we thought would be a fairly clear

4    chronological discussion of what occurred over the period of

5    time at issue.  This is a case boiled down to its essence where

6    NHI alleges that KMR and its representatives failed in their

7    contractual duties to NHI in the sense that instead of pulling

8    it out of some financial difficulties as it was required to do

9    under the contractual documents, it simply went about

10   liquidating NHI.

11           The -- the claim is against various defendants.  I'll

12   call them all the KMR defendants.  KMR was supposed to have

13   been a work out -- was supposed to have been a work out company

14   that would come in and restore profitability to NHI.  It failed

15   to do that, and instead, it appeared to the representatives of

16   NHI that they were more interested in paying down the bank debt

17   to Mercantile than they were in restoring KMR to profitability,

18   and part and parcel of KMR's conduct not only was paying down

19   the bank debt as rapidly as possible but also over the course

20   of the roughly 14 months in which they were involved with NHI

21   taking out $1.7 to $1.9 million worth of fees.  Such an

22   accelerated payment to the bank and such a withdrawal of assets

23   from NHI could not possibly have helped NHI regain

24   profitability.

25           The complaint was drafted to -- to try to capture in

Colloquy                                    4

1    a fairly comprehensive form what occurred over that period of

2    time.  We run into problems, Your Honor, because there were

3    some allegations in that -- in that complaint which the

4    defendants painted as allegations of agency, and the reason

5    that became important is because before the petition in this

6    case was filed, there was a settlement agreement between

7    certain representatives of NHI and their principles and

8    Mercantile as it related to Mercantile's loans to NHI and the

9    guarantees that went along with it.

10           The defendants have come in and have said we read

11   plaintiff's complaint as alleging that KMR were the agents of

12   Mercantile.

13           THE COURT:  And I read it that way too.

14           MR. DONATELLI:  There is -- there is one paragraph,

15   Your Honor -- I believe it's paragraph 33 or 34 -- which could

16   be the only paragraph that alleges an agency relationship, but

17   I'd like to expound on that.  Nowhere in our complaint, nowhere

18   do we make the allegation that KMR were the agents of

19   Mercantile.  What we tried to capture in the -- in the

20   complaint --

21           THE COURT:  Let me put it succinctly.  And I tried to

22   be polite in my letter where I said -- quoted from paragraph 33

23   of the complaint, and I said this sure sounds like an agency

24   relationship to me.  Let me put it bluntly.  I conclude that

25   that's an assertion of an agency relationship.

A00555

Colloquy                                    5

1          Now, in your memorandum, docket number 40, you say on

2    page 1, "The first amended complaint did not allege that the

3    defendants were agents of Mercantile."  On page 3, there's a

4    statement, "Defendants were, in fact, not the agents of

5    Mercantile."

6          And my simple question is which is it?

7          MR. DONATELLI:  They were not, Your Honor.

8          THE COURT:  Okay.

9          MR. DONATELLI:  And nor do defendants in this case

10   allege -- at least they haven't to date -- that they were

11   defendants.  And if Your Honor is concerned with paragraph 33

12   or 34 to the extent that you believe it alleges an agency

13   relationship, I will amend the pleading to withdraw that

14   allegation --

15         THE COURT:  Very good.  That's fine.  Okay.

16         MR. DONATELLI:  That should -- hopefully, that should

17   clear up --

18         THE COURT:  That's the only issue I have today.

19         MR. DONATELLI:  Okay.  Then, Your Honor, if you don't

20   have any other questions, may I be seated?

21         THE COURT:  Yes.

22         MR. DONATELLI:  Thank you.

23         THE COURT:  Now, let me ask the defendants --

24         MS. KRAFT:  May I state my name for the record?

25         THE COURT:  Yes.

1          MS. KRAFT:  Denise Kraft representing the defendants

2     Fleet, KMR Management, Robert Riesner, and Waring Justis for

3     the record.

4          THE COURT:  Okay.  Are you going to argue or attempt

5     to prove that the defendants were agents of Mercantile in order

6     to bring them within the release?

7          MS. KRAFT:  It is not our intention to argue that the

8     defendants were agents of Mercantile.  We -- our case at this

9     point --

10         THE COURT:  Okay.  Then this whole agency is a

11    nonissue at this point.

12         MS. KRAFT:  Except for the fact that we have cited

13    the case law that's clear that if you allege in your complaint

14    -- amended complaint and to motions and responses as alleged by

15    the plaintiff here a -- an allegation, then you are not allowed

16    to withdraw that allegation.  It becomes a judicial admission.

17         I believe that the case law is clear as we have cited

18    in the motion to strike and the reply to the motion to strike.

19    We've cited several cases for that proposition, and I have not

20    seen anything from the plaintiffs that alleges otherwise or

21    even addresses that case law.

22         So our position today is that the case law we've

23    cited on judicial admission is the correct law as placed before

24    the Court and that the plaintiffs are not able to amend their

25    complaint at this time if --

Colloquy                                        7

1          THE COURT:   Okay.  Well, I'm going to allow them to

2     amend the complaint.

3          MS. KRAFT:   Okay.  Then I would like to go --

4          THE COURT:   And to remove that one statement in

5     paragraph 33, and I don't believe the other statements that I

6     referred to in my letter and which you refer to in your

7     memoranda supports a finding by me that there was an agency

8     relationship.

9          MS. KRAFT:   Then I would like to address the second

10    point as we brought up in the reply to the motion to strike,

11    and that is that we would not be in the position before the

12    Court that we are in today having filed the motion to dismiss

13    based on the -- the pleadings if it were not for the fact that

14    agency had been pled in this case.  It's caused our clients to

15    expend money in order to put together the motion to dismiss and

16    then to come back into court to address these discovery issues

17    and file the motions and again today to come in to address

18    this.

19          To the extent that the plaintiff has admitted that

20    they had documents in their possession indicating that there

21    was no agency, prior -- at this point, that -- those documents

22    should have been available to them prior to filing the

23    complaint, and under Rule 9011:11, they are required to set

24    forth what they believe to be the true facts.  Our -- our

25    position to the Court today is that they did not do a thorough

1    investigation causing our clients to come in and expend these

2    monies to fight on the release and what appeared to be a valid

3    issue, and it's taken several months until today for them to

4    come into the Court and tell the Court that they are not

5    alleging agency at this point when it was more than clear that

6    they were, and in fact, up to the time that they filed the

7    answering brief to the motion to strike, they even attached the

8    affidavit of John Mervine, III indicating that it even appeared

9    to him that they were acting on behalf of Mercantile.

10         So up until the point they appeared today and told

11    the Court they are not pursuing that, it has always appeared

12    that they were and that we were fighting the good fight, and

13    our clients have expended considerable sums of money in doing

14    that, and we would ask the Court to consider a properly placed

15    Rule 9011 motion or for sanctions.  Not for sanctions.  Just to

16    pay attorneys fees up to this point.

17         THE COURT:  Well, if you want to file a separate

18    distinct Rule 11 motion, you can.  I'll consider it.

19         MS. KRAFT:  Thank you, Your Honor.

20         MR. DONATELLI:  Your Honor, would you like me to

21    reserve any argument on that issue until that motion is filed?

22         THE COURT:  You can respond to it in writing also.

23         MR. DONATELLI:  Thank you.

24         THE COURT:  All right.  Is the case going forward in

25    terms of discovery?

A00559

Colloquy                                                          9

1          MR. DONATELLI:  If I may, Your Honor, there hasn't --

2     there hasn't been an answer to the complaint filed.  Once we

3     file the amended complaint which will have 171 paragraphs

4     instead of 172, I'll reissue discovery.  If I wouldn't -- I

5     won't need to do that, I will issue some written discovery and

6     take some depositions.  It's not a particularly difficult case

7     as far as discovery is concerned, and I suspect once I see the

8     answer, once I see what the defense is going to be, I should be

9     able to cut through that -- cut through that pretty quickly.

10         MS. KRAFT:  If I may, because of the way the -- the

11    posture of the case and the way we've come into the Court, I

12    don't believe we have a scheduling order in place for this case

13    going forward.  So perhaps we should have another conference to

14    put together a scheduling order and then go forward from there

15    in terms of a discovery schedule.

16         THE COURT:  Okay.  Then counsel should get together

17    and see if you can't agree upon one.  If you can't, then we'll

18    set up a status conference.

19         MS. KRAFT:  Thank you, Your Honor.

20         THE COURT:  Okay.

21         MR. DONATELLI:  Thank you, Judge.

22         THE COURT:  All right.  We stand in recess.

23

A00560

10

1                              * * * * *

2                    C E R T I F I C A T I O N

3        I, Maureen Emmons, court approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8    _____           Date:

9    MAUREEN EMMONS

10   DIANA DOMAN TRANSCRIBING

11

A00561

# EXHIBIT "B"

A00562

**LexisNexis** *Total Research System*

Switch Client | Preferences | Feedback | Sign Off | [?] Help

Search | Research Tasks | Search Advisor | Get a Document | Shepard's®

Practice Area Pages | ECLIPSE | History |

FOCUS™ Terms [                    ] Go | FOCUS Options...

View: Full | Custom                      1 of 1

Print | Download | Fax | Email | Text Only

More Like This | More Like Selected Text | Shepardize® | TOA

◆ Slegman v. Palomar Med. Techs., 1998 Del. Ch. LEXIS 115    Pages:    13

Service: Get by LEXSEE®
Citation: 1998 Del. Ch. LEXIS 115

*1998 Del. Ch. LEXIS 115, ***

PAMELA H. SIEGMAN, as Trustee for the Pamela H. Seigman Trust, Plaintiff, v. PALOMAR MEDICAL TECHNOLOGIES, INC., LOUIS P. VALENTE, MICHAEL H. SMOTRICH, STEVEN GEORGIEV, BUSTER GLOSSON, JOHN M. DUETCH, A NEIL PAPPALARDO, and JAMES G. MARTIN, Defendants.

C.A. No. 15894

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

1998 Del. Ch. LEXIS 115

June 12, 1998, Date Submitted
July 13, 1998, Date Decided

**SUBSEQUENT HISTORY: [*1]**

Released for Publication by the Court July 17, 1998.

**DISPOSITION:** Plaintiff's request for an award of reasonable attorneys' fees and concludes that a reasonable award of attorneys' fees and expenses is $ 125,000.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff trustee brought a motion for an award of attorneys' fees and expenses. The court had granted judgment in favor of defendant corporation in the trustee's action.

**OVERVIEW:** The trustee challenged the validity of an issuance of stock. The trustee argued that the series preferred was void because the corporation's certificate of incorporation did not expressly authorize the issuance of stock in series, as the Delaware General Corporation Law required. After the action commenced, the corporation cured the invalidity of and retroactively validated the series preferred stock. The court held that the trustee created a benefit that entitled her to an award of attorneys' fees and expenses, but only for services rendered up to and until the time the benefit was created. The court held that the trustee's claim was meritorious when filed because the series preferred stock was found to be invalid, and it remained invalid until the Certificates of Correction were filed. The court held that the validation of the securities and the avoidance of costly securities litigation and of the resulting potential damage liability if the series preferred had not been validated were a substantial compensable benefit to the corporation and its shareholders. The court reduced the amount of fees awarded.

A00563

**OUTCOME:** The court granted the trustee's request for an award of reasonable attorneys' fees and concluded that a reasonable award of attorneys' fees and expenses was $ 125,000.

**CORE TERMS:** preferred stock, invalid, stockholders, certificate of incorporation, correction, operate retroactively, meritorious, shareholder, issuance, lawsuit, validation, judicial estoppel, amount requested, reasonable fee, conferred, stock, retroactive, cure, American Rule, board of directors, certificate, invalidity, litigative, disclosure, corrected, expended, pre-suit, normally, adversely affected, common stock

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel

*HN1* Judicial estoppel prevents a litigant from advancing an argument that contradicts a position previously taken by that same litigant, and that the court was persuaded to accept as the basis for its ruling. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Attorney Fees

*HN2* The applicable standard on a motion for attorneys' fees is that the plaintiff's claim must have been meritorious when filed, the defendants must have taken action that was causally related to the plaintiff's claims before those claims were judicially resolved, and the action taken benefited the corporation or its stockholders. More Like This Headnote

Business & Corporate Entities > Corporations > Governance > Articles of Incorporation & Bylaws

*HN3* See Del. Code Ann. tit. 8 § 103(f).

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN4* Of the factors normally considered in determining a reasonable fee, the benefit achieved by the litigation is normally accorded the greatest weight. More Like This Headnote

Civil Procedure > Costs & Attorney Fees > Reasonable Fee Amount

*HN5* The appropriate basis for determining a reasonable fee amount is quantum meruit. In performing that analysis, the Court must take into account the time and effort expended by the plaintiff's counsel, the complexity and difficulty of the case, whether the representation was contingent in nature, the standing and ability of plaintiff's counsel, and the benefit conferred. More Like This Headnote

**COUNSEL:** William Prickett, Ronald A. Brown, Jr. and, Thomas A. Mullen, Esquires, of PRICKETT, JONES, ELLIOTT, KRISTOL & SCHNEE, Wilmington, Delaware; and Arthur T. Susman and Charles R. Watkins, Esquires, of SUSMAN & WATKINS, Chicago, Illinois, Attorneys for Plaintiff.

Robert J. Valihura, Jr. and Mark A. Morton, Esquires, of DUANE, MORRIS & HECKSCHER LLP, Wilmington, Delaware; and Thomas A. Reed, Esquire, of PALOMAR MEDICAL TECHNOLOGIES, INC., Lexington, Massachusetts, Attorneys for Defendants.

**JUDGES:** JACK B. JACOBS, VICE CHANCELLOR.

**OPINIONBY:** Jack B. Jacobs

**OPINION:** MEMORANDUM OPINION

JACOBS, VICE CHANCELLOR

Pending is the plaintiff's motion for an award of attorneys' fees and expenses. The plaintiff, as Trustee for the Pamela H. Siegman Trust, holds 2000 shares of common stock of Palomar Medical Technologies, Inc. ("Palomar"). The defendants, who are Palomar and its directors, oppose the application. The issue is whether, in the circumstances of this case, the plaintiff is entitled [*2] to an award of reasonable attorneys' fees and expenses, despite having lost the case on the merits. For the reasons discussed below, the

A00564

Court determines that plaintiff is entitled to an attorneys' fee award, but for less than the amount requested.

I. FACTS

On August 27, 1997, the plaintiff brought this action challenging the validity of ten separately issued series of Palomar preferred stock, and of the common stock into which certain series of the preferred had been converted (collectively, the "series preferred"). The basis for the plaintiff's claim was that the series preferred was void, because Palomar's certificate of incorporation did not expressly authorize the issuance of stock in series as the Delaware General Corporation Law required. On September 3, 1997, the defendants agreed to a standstill order that prohibited Palomar from issuing any additional preferred stock, pendente lite. Following an expedited trial, this Court handed down a Memorandum Opinion dated March 9, 1998 ("Opinion"), holding that (i) the series preferred stock was unauthorized and therefore invalid at the time it originally was issued, but (ii) the Certificates of Correction that Palomar filed [*3] after this action was commenced, cured the invalidity of, and retroactively validated, the series preferred stock. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Siegman v. Palomar Medical Technologies Inc., 1998 Del. Ch. LEXIS 38, Del. Ch. C.A. No. 15894, Jacobs, V.C. (March 9, 1998).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

By way of background, in various board resolutions adopted between October 30, 1995 and March 26, 1997, Palomar's board of directors authorized and issued ten separate issuances of convertible preferred stock. Those stock issuances were significant to Palomar: the capital generated from their sale to investors totaled $ 50 million. n2 In connection with each preferred stock issuance, Palomar obtained legal opinions, some from non-Delaware law firms and others from Palomar's general counsel, stating that in counsel's opinion, Palomar's certificate of incorporation authorized the company's board of directors to issue each of the series of preferred stock. Those opinions were publicly disclosed by Palomar in various documents filed with the United States Securities and Exchange Commission [*4] ("SEC").

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Palomar issued a total of 50,000 shares of preferred stock at a price of $ 1,000 per share.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The complaint averred that none of the ten series of preferred stock was validly issued, because Palomar's certificate of incorporation did not expressly authorize Palomar's Board to issue preferred stock in series as Delaware's corporation statute n3 required. On September 23, 1997, two months after this action was commenced and one week after the plaintiff's pretrial opening brief was filed, Palomar filed Certificates of Correction with the Delaware Secretary of State under 8 Del. C. § 103(f). The Certificates of Correction added the language "series of such," where appropriate, in the "blank-check" provision of Palomar's certificate of incorporation, n4 in order to supply the previously (and inadvertently) omitted authorization for Palomar's board of directors to issue preferred stock in series.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 See, 8 Del. C. §§ 102(a)(4) and 151. [*5]

n4 The Restated Certificate of Incorporation of Palomar, Article 4, relevantly stated that "additional designations and powers, the rights and preferences and the qualifications, limitations or restrictions with respect to each class of stock of the corporation shall be as determined by the Board of Directors from time to time."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Despite the filing of the Certificates of Correction, the plaintiff continued to press her claim that the series preferred were invalid. She argued that the Certificates of Correction did not cure the original invalid issuances of the series preferred, because under 8 Del. C. § 103(f), the Certificates could not operate retroactively as against any common stockholders who would be "adversely affected" by the correction. The plaintiff claimed that all common stockholders would be adversely affected by a retroactive validation of the series preferred, because the common stock would be further diluted when the preferred became converted into common stock.

A00565

In its Opinion, this Court accepted the plaintiff's position that the series preferred were invalid at the [*6] time of their original issuance. The Court rejected, however, plaintiff's argument that the invalidity could not be cured by the Certificates of Correction, and ruled that the filing of those Certificates did operate retroactively to cure the original invalidity. Therefore, the Court granted judgment in favor of the defendants and against the plaintiff.

II. THE PARTIES' CONTENTIONS

The plaintiff contends that even though she did not prevail on the ultimate merits, she is entitled to an award of attorneys' fees because: (i) her claim was meritorious when filed, (ii) the prosecution of the action caused the defendants to correct the invalidity complained of, and (iii) the defendants' actions conferred substantial and important benefits upon Palomar and its stockholders that justify a $ 550,000 fee, plus expenses.

The defendants argue that the plaintiff is not entitled to attorneys' fees and expenses, because (i) under the American Rule the plaintiff must bear her own litigation expenses, particularly where she is not the prevailing party, n5 (ii) no equitable or statutory exception to the American Rule justifies Palomar having to pay the plaintiff's attorneys' fees and expenses [*7] in this case, and (iii) even if a fee is awardable, the $ 550,000 amount requested is grossly excessive.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 See Tandycrafts, Inc. v. Initio Partners, Del. Supr., 562 A.2d 1162 (1989) ("The starting principle is recognition of the so-called American Rule, under which a prevailing party is responsible for the payment of his own counsel fees in the absence of statutory authority or contractual undertaking to the contrary.").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

III. ANALYSIS

These contentions frame three basic issues: (i) is the plaintiff judicially estopped from claiming any fee, (ii) if not, does the plaintiff's fee claim come within an exception to the American Rule and (iii) if so, what is a reasonable fee award in the circumstances of this case?

The problem presented here is best illustrated if it is supposed that at the time the Certificates of Correction were filed, the plaintiff ceased prosecuting this litigation and simply declared victory. Had that occurred, the plaintiff would have been entitled to an award of attorneys' fees [*8] for having caused the board to cure the absence of authority to issue the series preferred. Here, however, the plaintiff continued to prosecute the litigation, albeit unsuccessfully, to a conclusion. That factual twist raises a novel question, namely, whether a plaintiff who continues litigating after the defendants take action that arguably renders her claim moot, n6 and then loses the case on the merits, is entitled to an award of attorneys' fees for the attorney time and effort expended throughout the entire litigation. For the reasons next discussed, the Court concludes that the plaintiff has created a benefit that entitles her to an award of attorneys' fees and expenses, but only for services rendered up to and until the time the benefit was created.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Allied Artists Pictures Corp. v. Baron, Del. Supr., 413 A.2d 876, 878 (1980) (explaining that when a case is settled or mooted, "counsel will be compensated for the beneficial results they produced, provided that the action was meritorious [when filed] and had a causal connection to the conferred benefit."). Although both sides argue this case as if the "merits" claim had been mooted by the defendants' filing of the Certificates of Correction, as a technical matter, the case was not "moot" because all claims were litigated to a conclusion. Nonetheless, both sides appear to agree that this case should be treated as a "mootness" case. For that reason, the Court has evaluated the fee application under that standard.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*9]

A. Judicial Estoppel

I first address the threshold defense that the doctrine of judicial estoppel bars the plaintiff from contending that she created a fee-compensable benefit at all. The plaintiff claims credit for having caused the retroactive validation of the series preferred, arguing that this lawsuit induced the defendants to file Certificates of Correction while the litigation was pending. The defendants contend that the plaintiff should not be entitled to claim credit for that benefit, because she argued (unsuccessfully) throughout the litigation that the Certificates of Correction did not materially cure the original lack of board authority to issue preferred stock in series. The reason, plaintiff urged, was that the correction could not operate retroactively as against the common stockholders. Under the doctrine of judicial estoppel, "a party may be precluded from asserting in a legal proceeding, a position inconsistent with a position previously taken by him in the same or in an earlier legal proceeding." n7 Seeking to apply that principle to these facts, the defendants urge that because the plaintiff claimed that the Certificates of Correction were legally ineffective, [*10] which forced

A00566

the defendants to incur the cost and risk of litigating that claim, the plaintiff cannot now be heard to contend the opposite, viz., that the curative effect of the Certificates of Correction was a benefit for which she may claim credit for fee-awarding purposes.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Coates International, Ltd., v. De Mott, 1994 Del. Ch. LEXIS 20, *14, Del. Ch., C.A. No. 12346, Jacobs, V.C., (Feb. 4, 1994), and cases cited therein.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The plaintiff contends that the judicial estoppel defense is inapplicable, because that doctrine does not prevent a litigant from advancing an argument premised upon the acceptance of a judicial ruling that the litigant earlier opposed. Rather (the plaintiff argues), judicial estoppel operates only where the litigant's present position contradicts another position that the litigant previously took and that the Court was successfully induced to adopt in a judicial ruling. In this case, the argument goes, (i) the plaintiff's contention that the Certificates of Correction did not operate retroactively was [*11] never accepted, or relied upon, by this Court, and (ii) at this juncture the plaintiff is merely accepting the Court's retroactivity ruling and proceeding to the next stage -- this fee application.

The plaintiff's position is correct. HN1 Judicial estoppel prevents a litigant from advancing an argument that contradicts a position previously taken by that same litigant, and that the Court was persuaded to accept as the basis for its ruling. n8 In this case, the Court neither accepted, nor did it rely upon, the plaintiff's claim that the filing of the Certificates of Correction did not operate retroactively.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 See Solomon Bros., Inc. v. Interstate Brands Corp., Del. Ch., C.A. No. 10054, Berger, V.C. (July 12, 1991).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Having rejected the threshold defense, the Court now turns to the merits of the fee application itself.

* * *

B. The Merits of the Fee Application

The parties agree that HN2 the applicable standard on this motion for attorneys' fees is that (i) the plaintiff's claim must have been meritorious [*12] when filed, (ii) the defendants must have taken action that was causally related to the plaintiff's claims before those claims were judicially resolved, n9 and (iii) the action taken benefited the corporation or its stockholders. n10 Each of these elements is separately treated below.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 As previously noted, the parties appear to agree that the standard to be applied on this motion is that which normally governs "mootness" cases. See n.6, supra. One element of that test is that the defendants must have taken action that was causally related to the plaintiff's claims. The defendants do not dispute that they took action causally related to the filing of this action; indeed in their Reply Brief, the defendants state that they would have corrected the certificate of incorporation if a pre-suit demand had been made. That concession, plus the filing of the Certificates of Correction, establish that in taking that corrective action, the defendants were reacting to this lawsuit.

n10 See Tandycrafts, Inc., Del. Supr., 562 A.2d at 1167.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*13]

1. The Meritorious-When-Filed Requirement

The plaintiff argues that her claim was meritorious when filed, because in its Opinion the Court ultimately found that the series preferred stock was invalidly issued, and that that invalid status continued until the defendants caused the filing of the Certificates

A00567

of Correction. The defendants argue that the claim was not meritorious when filed, because under § 103(f), the Certificates of Correction operated retroactively to the filing of the original certificate of Incorporation -- a date that long preceded the filing of the complaint. The defendants emphasize that all that the plaintiff had to do was bring her concerns to their attention before filing this action, and that they would have responded by immediately correcting the error and obviating the need for this lawsuit.

These arguments are unpersuasive. While deserving points for metaphysical creativity, the argument that this suit was not meritorious when filed ignores the indisputable fact that this Court has now adjudicated that at the time of their original issuance, the series preferred stock was invalid. Moreover, the self-serving argument that a prompt "demand" would [*14] have rectified the problem and obviated the need for litigation, is legally irrelevant, because 8 Del. C. § 103(f) contains no "demand" requirement n11 and no basis has been shown to read that requirement into that statute. In this case the plaintiff's claim was meritorious when filed, because (i) the series preferred stock was found to be invalid ab initio, and it remained invalid until the Certificates of Correction were filed, and (ii) those Certificates were not filed until after this action was well underway.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 HN3 8 Del. C. § 103(f) states in relevant part: "whenever any instrument authorized to be filed with the Secretary of State under any provision of this title, has been so filed and is an inaccurate record of the corporate action therein referred to, or was defectively or erroneously executed, sealed or acknowledged, the instrument may be corrected by filing with the Secretary of State a certificate of correction of the instrument which shall be executed, acknowledged, filed and recorded in accordance with this section." Compare Chancery Court Rule 23.1 ("the complaint shall ... allege ... the efforts ... made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority.")

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*15]

2. The Requirement of Benefit to Palomar and Its Stockholders

HN4 Of the factors normally considered in determining a reasonable fee, the benefit achieved by the litigation is normally accorded the greatest weight. n12 The issue here is whether this litigation created a benefit, and if so, what was that benefit's value. The defendants argue that the benefit must be defined in terms of the relief the plaintiff ultimately seeks, here the invalidation of the series preferred. Because the plaintiff never achieved that objective, it is argued, this litigation conferred no benefit at all. Alternatively, the defendants contend that even if one accepts as valid the quite different benefit upon which the plaintiff presently relies (the retroactive validation of the preferred stock), that benefit is of no cognizable value, because the Certificates of Correction created no new legal right and only corrected a ministerial error in the original certificate of incorporation. Third, the defendants argue that this litigation did not benefit Palomar, and indeed was detrimental to it, because the lawsuit created needless expense and distraction and because the standstill order prohibited Palomar [*16] from raising capital by issuing new preferred stock until the litigation was resolved.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Croyden Associates v. Tesoro Petroleum Corp., 1994 Del. Ch. LEXIS 57, Del. Ch., C.A. No. 13162, Jacobs, V.C. (Apr. 20, 1994).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The plaintiff responds that (a) the correction of a fundamental flaw in Palomar's equity structure was an important and substantial benefit to Palomar and its stockholders, (b) the plaintiff's litigative efforts directly caused that benefit. In addition, (c) the Certificates of Correction eliminated any risk of future liability arising out of having void securities outstanding in the marketplace, in cases involving different facts where the Certificates of Correction might not have retroactive effect. n13 Finally, the plaintiff argues that the holders of thousands of shares of preferred stock, plus the holders of over 9 million shares of common stock issued on conversion of some of the preferred stock, benefited from this litigation because they had originally acquired preferred stock they had no reason to believe [*17] was invalid. The plaintiff argues that, because the holders of that void stock received the benefit of having their stock validated retroactively, it is fair and equitable that those shareholders be required to share in the litigation costs incurred to obtain that benefit.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 For example, other persons to whom false warranties concerning the validity of the preferred stock were made could have been substantially and adversely affected by a retroactive correction. See 8 Del. C. § 103(f).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

A00568

I am fully satisfied that this lawsuit conferred a significant benefit upon Palomar and its stockholders, because it induced the defendants to file the Certificates of Correction. This Court has recognized, although in a somewhat different context, that the correction of improper disclosures in a tender offer disclosure document is a fee-compensable benefit, because "where a representative shareholder succeeds in correcting invalid disclosures in connection with a transaction ... our case law recognizes that for [*18] fee awarding purposes, the corporation and all of its shareholders are benefited." n14 The Certificates of Correction created an analogous benefit here, by furnishing the corporation and its shareholders reliable information about the validity of their series preferred stock, and, equally important, by substantially validating the series preferred in conformity with the Company's representations to the SEC and its preferred stock investors. The validation of those securities, and the avoidance of costly securities litigation and of the resulting potential damage liability if the series preferred had not been validated, was a substantial compensable benefit to Palomar and its shareholders.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n14 Eisenberg v. Chicago Milwaukee Corp., 1988 Del. Ch. LEXIS 141, *8, Del. Ch., C.A. No. 9374, Jacobs, V.C. (Oct. 25, 1988) summarily aff'd in Chicago Milwaukee Corp. v. Eisenberg, Del. Supr., 560 A.2d 489 (1989) (Order) (plaintiff found entitled to an award of attorneys' fees and expenses where the lawsuit led to a preliminary injunction and order that caused the defendants to make a correction that resulted in "a tender offer based on corrected disclosures and free of coercive elements.").

- - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - [*19]

3. The Reasonableness of the Amount Requested

Because the plaintiff has satisfied all three prongs of the test for an award of attorneys' fees and expenses, the final issue concerns the reasonableness of the amount requested. Plaintiff seeks a fee of $ 550,000, plus out-of-pocket expenses of $ 9,726.71. All parties agree that HN5 the appropriate basis for determining a reasonable fee amount is quantum meruit. In performing that analysis, the Court must take into account (1) the time and effort expended by the plaintiff's counsel, (2) the complexity and difficulty of the case, (3) whether the representation was contingent in nature, n15 (4) the standing and ability of plaintiff's counsel, n16 and (5) the benefit conferred. n17 The relevant analysis appears below.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n15 It is undisputed that because this litigation was undertaken entirely on a contingency basis, it involved significant risk to counsel.

n16 It is also undisputed, and the Court is aware, that both Prickett, Jones, Elliott, Kristol & Schnee and Susman & Watkins are highly respected firms with significant experience in shareholder litigation. The plaintiff claims that because the behavior of Palomar's spokesman after the Opinion was issued (describing the action as a "strike suit") subjected counsel to the additional risk of losing clients, the Court should take Palomar's conduct, and its possible effect on plaintiff's reputation, into account in determining what constitutes a reasonable fee. The defendants respond (and I agree) that this argument only serves to distract the Court from the issue at hand. If plaintiff's counsel believes they have been disparaged, they are free to take whatever legal action they deem appropriate, and seek compensation for any wrongful conduct, in a different forum. This forum is not the proper one to address that kind of intramural dispute. [*20]

n17 See Gelobter v. Bressler, 1991 Del. Ch. LEXIS 186, Del. Ch., C.A. No. 7293, Jacobs, V.C. (Nov. 6, 1991); See also Sugarland Indus. v. Thomas, Del. Supr., 420 A.2d 142, 149-150 (1980); Goodrich v. E.F. Hutton Group, Inc., Del. Supr., 681 A.2d 1039, 1050 (1996).

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - a. The Time and Effort of Plaintiff's Counsel

The defendants first argue that the 174.2 hours expended by plaintiff's counsel up to the filing of the Certificates of Correction was excessive, because a simple pre-suit demand could have avoided the litigation in its entirety. Alternatively, the defendants urge that if the Court decides to award attorneys' fees, the only legal services that merit compensation are those that were performed up to the filing of the Certificates of Correction. The reasons, defendants claim, are that (i) only those litigative efforts brought about the curative acts found to constitute a benefit, and (ii) any time devoted thereafter to prosecuting the claim that the Certificates of Correction did not operate retroactively, should not be considered. The plaintiff responds that in order to be fair the fee must compensate [*21] her counsel for all the attorney time and effort that was required to litigate the entire case.

I cannot fully agree with either side's position. Only 174.2 hours of attorney time -- expended from the preparation of the complaint

A00569

up to the filing of the Certificates of Correction -- were needed to create the benefit that is the predicate for a fee award. There is no showing that those 174.2 hours were excessive; indeed, plaintiff's counsel had a duty to their client to prepare their case in the most effective way possible in the circumstances. Counsel are entitled to be compensated for the attorney time and effort required to bring about the benefit what counsel are not entitled to is compensation for their subsequent litigative efforts that did not result in any compensable benefit. n18

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n18 Even if a pre-suit demand might have avoided the need for this litigation, 8 Del. C. § 103(f) does not require a pre-suit demand and this Court declines to read such a requirement into that statute.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -b. The [*22] Complexity of the Case

The complexity of the case is another factor that bears on the amount of the fee. Plaintiff argues that this case was complex, indeed difficult, if only because their counsel were required to discredit ten separate opinions of counsel stating that Palomar had the authority under Delaware law to issue each of the multiple series of preferred stock. The defendants respond that the only "complexity" in this case was the plaintiff's refusal to recognize that she had no chance of establishing that the certificate of incorporation contained a mistake that was incapable of correction. Defendants urge that this case would have been short and simple had the plaintiff declared victory by conceding that the Certificates of Correction rectified the error, rather than forging ahead with this litigation.

I agree that the complexity of this matter favors an award of attorneys' fees for the services rendered up to the filing of the Certificates of Correction. The plaintiff was required to, and did, satisfy the Court that the opinions of Palomar's various attorneys -- that the series preferred had been validly issued -- were not correct. c.

c. The Reasonableness of the [*23] Fee in Light of the Benefit Conferred

The final question is whether the $ 550,000 amount being requested is reasonable. The plaintiff claims that it is, because the benefit was substantial. Although the plaintiff concedes that the benefit is not precisely quantifiable, she argues that the validation of stock transactions that generated $ 50.million of capital evidences that the benefit had significant monetary value, and that therefore it is fair that a quantum meruit-based fee bear a reasonable relationship to the dollar amount of the underlying transactions. Plaintiff contends that the amount requested is quite modest, because $ 550,000 represents only one cent ($ .01) for each Palomar common share currently outstanding.

The defendants disagree. They argue that the $ 550,000 is unreasonably high because that amount represents $ 887 per hour -- far more than the hourly rates plaintiff's counsel normally command. The defendants argue that any fee should bear some reasonable relationship to the plaintiff's attorney's standard hourly rate(s), multiplied by the hours worked by each attorney up to the date the Certificates of Correction were filed.

Having considered these [*24] colliding positions, I conclude that a reasonable fee is $ 125,000, inclusive of expenses. I do not agree that the fee should be predicated on a benefit valued at $ 50 million, because that amount is not a correct measure of the benefit achieved. Moreover, the $ 550,000 figure bears little or no relationship to the $ 50 million amount. The benefit, to be sure, was significant, but it was also intangible and incapable of precise quantification, at least on the present record. In the Court's opinion, an award of $ 125,000 is more than adequate to compensate plaintiff's counsel for taking the case on a contingency basis, with its attendant financial risks, and for performing the work that created the benefit. n19 The plaintiff's counsel are not entitled to compensation for work done thereafter which did not contribute to the benefit.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 For such relevance as it may have, $ 125,000 represents (after deducting out-of-pocket expenses) an hourly rate of more than $ 650 per hour for each attorney who worked on the case.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - [*25]

The lesser fee amount being awarded here is not intended to, and should not be viewed as, a penalty for or criticism of the plaintiff's decision to prosecute to a conclusion her claims that the Certificates of Correction did not operate retroactively. Although she did not prevail on the merits of that claim, the plaintiff cannot be faulted for pressing the claim, because at that time, it was unknowable whether or not it would succeed. Having said that, the Court is nonetheless constrained to conclude that attorneys' fees cannot be awarded as compensation for litigative efforts that, with the perspective of hindsight, turned out to be unsuccessful.

IV. CONCLUSION

A00570

For the reasons set forth above, the Court grants plaintiff's request for an award of reasonable attorneys' fees and concludes that a reasonable award of attorneys' fees and expenses is $ 125,000. IT IS SO ORDERED.

Jack B. Jacobs

Vice Chancellor

View: Full | Custom                        ◀ 1 of 1 ▶                 Print | Download | Fax | Email | Text Only
                        More Like This | More Like Selected Text | Shepardize® | TOA
                        ◆ Slegman v. Palomar Med. Techs., 1998 Del. Ch. LEXIS 115          Pages:    13

Service:   Get by LEXSEE®
Citation:  1998 Del. Ch. LEXIS 115
View:      Full
Date/Time: Thursday, December 23, 2004 - 12:49 PM EST

* Signal Legend:
⊛ -  Warning: Negative treatment is indicated
△ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
* Click on any Shepard's signal to Shepardize® that case.

Search | Research Tasks | Search Advisor | Get a Document | Shepard's ®
Eclipse ™ | History | Delivery Manager | Practice Area Pages | Switch Client | Preferences | Feedback | Sign Off | Help
About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

A00571

# EXHIBIT "C"

A00572

**LexisNexis** *Total Research System*

Switch Client | Preferences | Feedback | Sign Off | ? Help

Search | Research Tasks | Search Advisor | Get a Document | Shepard's®

Practice Area Pages | ECLIPSE | History |

FOCUS™ Terms [                                    ] Go FOCUS Options...

View: Full | Custom

⟨⟨⟨⟨⟨ 1 of 1 ⟩⟩⟩⟩⟩

More Like This | More Like Selected Text | Shepardize® | TOA

Print | Download | Fax | Email | Text Only

◈ Coates Int'l v. De Mott, 1994 Del. Ch. LEXIS 20

Pages:   11

Service:  Get by LEXSEE®
Citation: 1994 Del. Ch. LEXIS 20

*1994 Del. Ch. LEXIS 20, \**

COATES INTERNATIONAL, LTD., a Delaware corporation, GEORGE J. COATES, Plaintiffs, v. ALAN P. DE MOTT and ROBERT F. DE MOTT, Defendants.

Civil Action No. 12346

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

1994 Del. Ch. LEXIS 20

October 22, 1993, Submitted
February 4, 1994, Decided

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, majority shareholder and corporation, filed an action against defendant directors for breach of fiduciary duty. The directors filed a counterclaim for fraud and breach of fiduciary duty. The majority shareholder and corporation filed a motion for summary judgment.

**OVERVIEW:** The directors issued private stock themselves. The corporation was then dissolved due to the corporation and majority shareholder's efforts, who then brought a breach of fiduciary duty claim. The directors filed counterclaims for fraud and breach of fiduciary duty. The directors then filed a petition for bankruptcy without disclosing their stock or counterclaims to the bankruptcy court. One bankruptcy was completed, and the other was dismissed. The court granted summary judgment against the director whose bankruptcy was completed because the non-disclosed interests were part of the bankruptcy estate under 11 U.S.C.S. § 541(a)(1). As a result, that director had no standing to bring a counterclaim, and his stock interests were abandoned. The court denied the motion for summary judgment against the other director whose bankruptcy petition was dismissed because there was insufficient evidence to apply judicial estoppel to his claims for the non-disclosure. The court reasoned that there was no evidence that the non-disclosure affected any interests or the bankruptcy proceeding, given its dismissal. As a result, that director's equity claims in his shares were not extinguished.

**OUTCOME:** In the majority shareholder and corporation's breach of fiduciary duty action, the court granted the motion for summary judgment against one director but not against the other in the claims for breach of fiduciary duty.

**CORE TERMS:** counterclaim, shareholder, estoppel, bankruptcy proceeding, abandoned, judicial estoppel, equity interest, summary judgment, dissolution, administered, asserting, bankruptcy estate, amended answer, standing to assert, declaratory judgment, affirmative claim, undisputed, placement, stock, property interest, scheduled, bankruptcy proceedings, failure to disclose, bankruptcy petition, divorce proceeding, declaratory relief, pending motion, misappropriated, extinguishing, prosecuting

A00573

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard 🔲
*HN1* Summary judgment will be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Del. Ch. Ct. R. Civ. P. 56(c). More Like This Headnote

Bankruptcy Law > Estate Property
*HN2* See 11 U.S.C.S. § 554(d).

Bankruptcy Law > Estate Property
*HN3* Under 11 U.S.C.S. § 554(d), even after an estate has been discharged, property that is not abandoned or administered remains part of the estate. More Like This Headnote

Bankruptcy Law > Estate Property > Abandonment 🔲
*HN4* 11 U.S.C.S. § 554 recognizes two procedures by which property of a bankrupt's estate may be abandoned. The property may be formally abandoned after notice and a hearing. 11 U.S.C.S. § 554(a). Or, it may be abandoned by operation of law under 11 U.S.C.S. § 554(c). More Like This Headnote

Bankruptcy Law > Estate Property > Abandonment 🔲
*HN5* See 11 U.S.C.S. § 554(c).

Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel 🔲
*HN6* Under judicial estoppel, a party may be precluded from asserting in a legal proceeding, a position inconsistent with a position previously taken by him in the same or in an earlier legal proceeding. The purpose of the doctrine of judicial estoppel is to protect the integrity of judicial proceedings. More Like This Headnote

Civil Procedure > Preclusion & Effect of Judgments > Judicial Estoppel 🔲
*HN7* Under New Jersey law, a party may be judicially estopped from taking a position in a judicial proceeding that is inconsistent with a position taken by that party in an earlier proceeding. For the estoppel doctrine to apply, the position taken in the initial proceeding need not have been formally adopted by a court, so long as it had some material impact on the resolution of the dispute. More Like This Headnote

**COUNSEL:** [*1]

Michael Hanrahan, Esquire, of PRICKETT, JONES, ELLIOTT, KRISTOL & SCHNEE, Wilmington, Delaware; Of Counsel: BUDD, LARNER, GROSS, ROSENBAUM, GREENBERG & SADE, P.C., Short Hills, New Jersey; Attorneys for Plaintiffs.

Gary W. Aber, Esquire, of HEIMAN, ABER & GOLDLUST, Wilmington, Delaware; Of Counsel: Jon Steiger, Esquire, Manasquan, New Jersey; Attorneys for Defendants.

**JUDGES:** JACOBS

**OPINIONBY:** JACOBS

**OPINION:** MEMORANDUM OPINION

JACOBS, VICE CHANCELLOR

Presently pending is a motion for summary judgment in this action seeking damages and declaratory relief for alleged self-dealing and other breaches of fiduciary duty by the defendants, who were directors of Coates International, Ltd., a recently dissolved corporation ("Old Coates"). The plaintiffs are George Coates, the founder of Old Coates, and Coates International, Ltd., the majority shareholder of Old Coates. n1 The defendants, Alan and Robert DeMott (sometimes referred to as "the DeMotts"), were the directors and shareholders of Old Coates before its dissolution in November, 1991.

A00574

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The formal name of Old Coates was Coates International, Ltd., which is identical to the name of the corporate plaintiff, Coates International, Ltd. The plaintiff corporation originally had a different name, but that name was changed to Coates International, Ltd. immediately after the dissolution of Old Coates.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*2]

The complaint was filed on November 8, 1991. On January 15, 1992, the DeMotts filed an amended answer and counterclaim, alleging that the dissolution of Old Coates was unlawful and violated their rights as shareholders of Old Coates. The defendants seek (inter alia) to rescind the dissolution of Old Coates and subsequent corporate actions, and to be awarded damages against plaintiff George Coates for alleged self-dealing.

Shortly thereafter, both DeMotts filed voluntary petitions for relief under the Federal Bankruptcy Code. Neither DeMott disclosed his counterclaim in this action or his shareholder interest in Old Coates, in his bankruptcy petition and related filings. The DeMotts' failure to disclose that information is the factual predicate for the plaintiffs' pending motion for summary judgment.

This is the Opinion of the Court on the plaintiffs' motion for summary judgment, the matter having been submitted on the briefs without oral argument.

I.

Although the underlying claims in this action are disputed, the few facts that are material to the pending motion are undisputed. What follows is a narrative of how this dispute arose, and a description of the claims and counterclaims [*3] advanced in this litigation.

A. Formation of Old Coates

Old Coates was incorporated in Delaware on August 31, 1988. Its business was developing new designs for a combustion engine utilizing a "spherical rotary valve system" on which the plaintiff, George Coates, had obtained a patent. (Coates Aff. P 4). Robert DeMott introduced himself to George Coates in August of 1988, and told Mr. Coates that he was skilled and experienced in raising venture and other equity capital and in managing and operating a business. Thereafter, George Coates hired both Robert and Alan DeMott to operate the financial and management side of the business. Robert DeMott became Old Coates' Vice President and Director, and Alan DeMott became its Treasurer. (Coates Aff. P 6).

B. The Claims in the Complaint

The plaintiffs allege that sometime after Old Coates was formed, Robert and Alan DeMott caused to be issued to themselves a substantial equity stake in that corporation, allegedly without the consent of Old Coates' Board of Directors. The plaintiffs also allege that Robert and Alan DeMott hired The Armitage Financial Group, a firm controlled by Robert DeMott, to conduct a private placement of Old Coates [*4] stock. It is claimed that Armitage Financial Group conducted that private placement improperly and that as a result, Old Coates was forced to pay a legal penalty for violating federal securities laws, to enter into a consent order, and to incur legal expenses. (Compl. P 11.) The plaintiffs also claim that Robert DeMott agreed to share in a finders fee paid to a broker hired to find a buyer for Old Coates, and that the DeMotts misappropriated corporate funds. By way of relief, the plaintiffs seek, inter alia, an accounting of all misappropriated funds, a declaratory judgment that the Old Coates stock issued to defendants was invalidly issued and void ab initio, and an order appointing them as trustees of Old Coates.

C. The Claims of the Counterclaim

The DeMotts dispute these claims in their answer, and in their counterclaim they contend that the private placement conducted in October, 1988 was proper and successfully raised $ 500,000 for the corporation. The DeMotts further claim that they were preparing to conduct a second such placement in the Spring of 1990 (amended answer and counterclaim, P 13), but because of legal and ethical concerns relating to the second offering [*5] and an increasingly strained relationship with George Coates, the DeMotts resigned from their positions with Old Coates.

The counterclaim goes on to allege that on February 13, 1991, Robert DeMott received a letter from plaintiff Coates International, Ltd. demanding the return of the Old Coates stock "now in your possession or the possession of your brother, Alan DeMott." The letter charged that the Old Coates shares had been unlawfully issued to the DeMotts, and that Coates International, Ltd. would sue them if the certificates were not returned.

On October 25, 1991, the DeMotts received another letter from Old Coates, n2 informing them that Old Coates' shareholders had voted to recapitalize the corporation at a February 23, 1991 special meeting of stockholders. As a result, all of the defendants' Old Coates common stock had been cancelled, and would be exchanged for shares of preferred stock in that corporation.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

A00575

Get a Document - by Citation - 1994 Del. Ch. LEXIS 20

n2 In their amended answer and counterclaim the defendants allege that this letter was from plaintiff Coates International, Ltd. However, the plaintiff corporation's name was not changed to Coates International, Ltd. until after the November 1, 1991 dissolution of Old Coates (Compl. P 2). I therefore conclude that the October 25, 1991 letter was from Old Coates.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*6]

Finally, in early November, 1991, the DeMotts received a letter dated October 30, 1991, which advised that (i) the holders of a majority of the outstanding stock of Old Coates had voted, by written consent, to dissolve Old Coates; and that (ii) the company's preferred stockholders (including the DeMotts) would be entitled to receive the par value of their shares, plus any unpaid dividends, prior to any distribution to the holders of the Old Coates common stock. The DeMotts also allege that Old Coates sent, along with the notice of dissolution, a formal offer to purchase the preferred stock of all shareholders. This offer was not included in the notice sent to the DeMotts, however.

Accordingly, in their "amended answer and counterclaim," the DeMotts allege (inter alia) that (i) the dissolution of Old Coates was a scheme to defraud them of their interest as shareholders, and that (ii) George Coates breached his fiduciary duty to them as a director of Old Coates, by diverting corporate funds to himself on various occasions. The DeMotts, as counterclaimants, seek a declaratory judgment that the dissolution of Old Coates was null and void, an accounting for all monies allegedly misappropriated [*7] by George Coates, and an award of damages against George Coates for his alleged breaches of duty.

D. The DeMotts File for Bankruptcy

On February 5, 1992, twenty-one days after the DeMotts filed their amended answer and counterclaim, Alan DeMott filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. On July 2, 1992, Robert DeMott filed a voluntary petition in the same Court under Chapter 13 of the Bankruptcy Code. Nine months later, by decree dated March 12, 1993, Robert DeMott's case was converted from a Chapter 13 to a Chapter 11 case.

It is undisputed that Alan DeMott did not disclose in the bankruptcy proceeding either his counterclaim in this action or his equity interest in Old Coates. On August 20, 1992, Bankruptcy Judge Stephen A. Stripp issued in the Alan DeMott Chapter 7 proceeding a final decree, which recited that "The estate of the above named debtors has been fully administered," (Coates Aff. Exh. E), terminated the proceeding, and discharged the bankruptcy trustee.

It also is undisputed that Robert DeMott never disclosed to the Bankruptcy Court either his equity interest in Old Coates [*8] or his counterclaim in this action. On July 21, 1993, the plaintiffs were granted relief from the automatic stay provisions of 11 U.S.C. 362(a) to pursue this action against the DeMotts in Delaware. The lifting of the stay later became mooted when Robert DeMott's bankruptcy case was subsequently dismissed on September 30, 1993. (Aron Aff. P 3). There is no record of the reasons for, or the nature of, the dismissal of the Robert DeMott bankruptcy proceeding.

II.

The plaintiffs have moved for summary judgment on two claims. First, they seek a judgment dismissing the DeMotts' counterclaims. Second, they ask the Court to award them judgment on their affirmative claim for a declaration that the DeMotts' equity interest in Old Coates is void and extinguishable.

HN1 Summary judgment will be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Chancery Court Rule 56(c); See also, Empire of America Relocation Services, Inc. v. Commercial Credit Co., Del. Supr., 551 A.2d 433, 435 (1988). The defendant-counterclaimants concede that they do not dispute [*9] any fact material to the pending motion. Accordingly, the analysis will focus upon the legal issues presented by those facts.

The plaintiffs first contend that Alan DeMott's counterclaim must be dismissed because Alan DeMott lacks standing to assert his counterclaim in this action. The basis for that contention is that as a matter of federal bankruptcy law his interest in that counterclaim still resides in, and remains a part of the bankruptcy estate. Plaintiffs argue that when a bankruptcy proceeding is commenced, all of the debtor's legal or equitable interests in property become part of the bankruptcy estate. 11 U.S.C. 541 (a)(1). Such property includes any causes of action in which the debtor has an interest. 4 Collier's on Bankruptcy, P 541.01 (1990). Under HN2 11 U.S.C. § 554 (d), "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." Plaintiffs contend that because Alan DeMott's stock interest in Old Coates and the counterclaim were never abandoned, and were never administered by the bankruptcy trustee, they remain [*10] the property of his bankruptcy estate. Therefore, plaintiffs conclude, Alan DeMott no longer has ownership rights in the counterclaim, and therefore lacks standing to assert that counterclaim in this action, for which reason it must be dismissed.

Alternatively, the plaintiffs contend (independent of the standing question) that the DeMotts are judicially estopped from maintaining their counterclaim in this action. The estoppel argument runs as follows: the DeMotts failed to disclose to the Bankruptcy Court their counterclaim in this action and their equity interest in Old Coates. Their failure to disclose the existence of an asset, or legal claim, in the bankruptcy proceeding was equivalent to an affirmative representation that the DeMotts had no such asset or claim, a position diametrically opposite to that now being asserted in their counterclaim. Therefore, the doctrine of judicial estoppel is applicable and operates to preclude the DeMotts from prosecuting their counterclaim in this action, or otherwise from asserting any right or claim as shareholders of Old Coates. As a consequence of the judicial estoppel, the plaintiffs claim entitlement to (i) the dismissal of the DeMotts' [*11] counterclaims, and (ii) a declaratory judgment extinguishing any equity interest of the DeMotts in Old Coates.

The plaintiffs further contend that if the doctrine of judicial estoppel does not technically apply, the doctrine of equitable estoppel does,

A00576

Get a Document - by Citation - 1994 Del. Ch. LEXIS 20

and precludes the DeMotts from asserting their counterclaim or claiming any rights as shareholders of Old Coates.

The DeMotts respond that the doctrine of judicial estoppel is not applicable to them. They argue that the policy underlying the judicial estoppel doctrine, to protect the integrity of prior judicial decisions, is not implicated, because the plaintiffs were not listed as creditors in either defendant's bankruptcy petition, and because the plaintiffs claim no rights as creditors in the bankruptcy proceedings. Because the plaintiffs had no cognizable interest in DeMotts' bankruptcy proceedings, the DeMotts conclude that the assertion of their counterclaims against the plaintiffs could not affect the integrity of Alan DeMott's Chapter 7 proceeding or of Robert DeMott's Chapter 11 Reorganization. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The defendants also argue that to bar their counterclaims, or declare that any equity interest they had in Old Coates is extinguished, would operate inequitably to deprive innocent third party creditors of a source of money that might otherwise be available to satisfy their outstanding loans.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*12]

These contentions are now addressed.

III.

A. Alan DeMott's Standing to Sue

The plaintiffs argue that defendant Alan DeMott lacks standing to sue because his counterclaim in this litigation is one in which he has no property interest. I agree. Alan DeMott had filed his counterclaim in this action before filing for bankruptcy. Therefore, his right to prosecute this claim became vested in, and a part of, his bankruptcy estate upon his filing the bankruptcy petition. See 11 U.S.C. § 541(a)(1). HN3↑Under 11 U.S.C. § 554(d), even after the estate has been discharged, property that is not abandoned or administered remains part of the estate. n4 Since Alan DeMott's counterclaim was never administered, the issue becomes whether his bankruptcy estate ever "abandoned" its rights to bring the counterclaim.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 In Stanley v. The Sherwin Williams Company, 24 BCD 693 (W.D. Va, 1993), the plaintiff had failed to amend his Chapter 11 filing to reflect a claim against Sherwin Williams. After the case was converted to a Chapter 7 liquidation, the estate was administered and the bankrupt was later discharged. The plaintiff then brought suit against the company. The Court found that the plaintiff lacked standing to sue because his claim remained the property of his estate, and that since the claim was never scheduled, it could not be deemed abandoned by operation of law. See also 4 Colliers on Bankruptcy P 554.03 (1990).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*13]  HN4↑

11 U.S.C. § 554 recognizes two procedures by which property of a bankrupt's estate may be abandoned. The property may be formally abandoned after notice and a hearing. § 554(a). Or, it may be abandoned by operation of law under HN5↑§ 554(c), which provides: "Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."

That the estate never formally abandoned any right it had to assert the counterclaim against Old Coates is undisputed. Nor was the counterclaim ever abandoned pursuant to § 554(c), because that provision applies only to property that has been scheduled, and the counterclaim never was. Therefore, Alan DeMott's right to assert his counterclaim continues to be vested in, and remain a part of, his bankruptcy estate. For that reason Alan DeMott has no property interest in the counterclaim and lacks standing to assert it. See Stanley at 694. Because Alan DeMott's counterclaim is barred for lack of standing, I need not address whether that counterclaim [*14] is also barred on the alternative ground of estoppel. The estoppel argument is pertinent only with respect to Robert DeMott, against whom the plaintiffs do not assert a lack-of-standing defense. (Pls.' Reply Br. at 5.)

B. Whether Robert DeMott Is Judicially Estopped to Assert his Counterclaim

The plaintiffs next contend that Robert DeMott is barred from prosecuting his counterclaim by operation of the doctrine of judicial estoppel. HN6↑Under that doctrine a party may be precluded from asserting in a legal proceeding, a position inconsistent with a position previously taken by him in the same or in an earlier legal proceeding. See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank, 3d Cir., 848 F.2d 414 cert. denied, 488 U.S. 967, 102 L. Ed. 2d 532, 109 S. Ct. 495 (1988); Edwards v. Aetna Life Ins. Co., 6th Cir., 690 F.2d 595, 598-99 (1982); Levin v. Robinson, Wayne & La Sala, N.J. Super., 246 N.J. Super. 167, 586 A.2d 1348 (1990). The purpose of the doctrine of judicial estoppel is to protect the integrity of judicial proceedings. Scarano v. Central Railroad Co., 3d Cir., 203 F.2d 510, 513 (1953). [*15] Oneida Motor Freight, Inc., supra.

In this case all parties agree that the judicial estoppel question is governed by New Jersey law. HN7↑Under New Jersey law, a party may

A00577

be judicially estopped from taking a position in a judicial proceeding that is inconsistent with a position taken by that party in an earlier proceeding. It also appears that for the estoppel doctrine to apply, the position taken in the initial proceeding need not have been formally adopted by the Court, so long as it had some material impact on the resolution of the dispute. Levin v. Robinson, Wayne & La Sala, N.J., Super., 246 N.J. Super. 167, 586 A.2d 1348 (1990), n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 In Levin, the husband in a divorce proceeding represented to the Court that he had received all compensation to which he was entitled from his law firm. Based on that representation, the plaintiff and his former wife concluded a property settlement that resolved the litigation. Thereafter, the husband sued his law firm for additional compensation in an unrelated action. The Court in the second action held that the plaintiff was judicially estopped from asserting the claim by reason of his inconsistent representation in the divorce action, even though the divorce proceeding had ended in a settlement without any formal adjudication. The Court in the later action found as a matter of fact that the husband's position in the earlier divorce proceeding had substantially influenced the terms of the settlement.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*16]

Robert DeMott does not contest these principles, only their applicability to him. Although his position is unclearly presented, it appears to be that his omission to disclose the counterclaims and his shareholder interest in the bankruptcy proceeding did not affect the integrity of the bankruptcy proceeding or this Delaware action, because (he argues) the plaintiffs were not parties to, and had no interest in, the earlier bankruptcy. Therefore, the plaintiffs, who are strangers to the bankruptcy proceeding, cannot be permitted to rely upon Robert DeMott's conduct in that proceeding in which they had no interest, to defeat an otherwise valid claim against them in this action.

I disagree with defendants' suggestion that the plaintiffs must have had a property interest in the bankruptcy proceeding to have standing to assert a judicial estoppel defense in this action. New Jersey law does not support that contention, see Levin, supra, nor does the policy underlying the doctrine. That policy protects the integrity of the judicial system, not the individual interest of the party asserting the estoppel, and the policy would go unvindicated in most cases if [*17] the DeMotts' theory of "standing" to raise an estoppel were the law. Thus, if Robert DeMott's nondisclosure of the counterclaim and shareholder status were a basis for an earlier Bankruptcy Court action or determination that affected in some material way the rights of parties other than the plaintiffs, the later assertion of the counterclaim could be barred. See Levin; Oneida Motor Freight, Inc., 848 F.2d 414 (claims in subsequent lawsuit amounted to a collateral attack upon a prior Bankruptcy Court determination). In such circumstances the counterclaim would threaten the integrity of the bankruptcy proceeding, despite the fact that the plaintiffs were not parties to that proceeding.

The record in this case is too sparse to permit any evaluation of whether (and if so, how) Robert DeMott's assertion of his counterclaim in this action affected the integrity of the earlier bankruptcy proceeding. All the present record reveals is that the Robert DeMott bankruptcy proceeding was dismissed. It does not disclose the basis for the dismissal or the impact of any judicial action upon the parties to the bankruptcy prior to the dismissal. For that reason, the plaintiffs [*18] have failed as a matter of evidence to establish that Robert DeMott's position in the bankruptcy action was so significant to the integrity of that proceeding as to require that he be precluded from asserting his counterclaim in this action. n6 Accordingly, the plaintiffs are not entitled to summary judgment dismissing Robert DeMott's counterclaim.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 For that same reason the plaintiffs have failed to establish their alternative contention that Robert DeMott is equitably estopped from asserting his counterclaim. There is no evidence, or any contention, that the plaintiffs relied to their detriment upon any position taken by Mr. DeMott in the bankruptcy proceeding.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

IV.

Finally, the plaintiffs seek summary judgment on their affirmative claim for a declaratory judgment extinguishing any equity interest of the DeMotts in Old Coates. The argument, as I understand it, is that the DeMotts' failure to disclose their shareholdings in Old Coates in their respective bankruptcy proceedings, estops them from asserting any [*19] interest, within or outside the context of this litigation, as shareholders of Old Coates.

For the reasons previously set forth, the plaintiffs have failed to establish a valid claim for either equitable or judicial estoppel against Robert DeMott. That defeats the claim for extinguishment as against Robert DeMott, since that claim rests upon a theory of estoppel. But the claim also fails as against Robert DeMott, because as a matter of law the declaratory relief that plaintiffs seek goes far beyond the scope of the estoppel doctrine.

The plaintiffs' extinguishment claim, if granted, would effectively divest the DeMotts of their entire equity interest in Old Coates for all purposes. The plaintiffs cite no authority predicating the grant of such relief on a theory of estoppel. An estoppel would, at best, operate only to preclude the (inconsistent) assertion by the defendants of their shareholder status in this litigation. An estoppel would not, as a conceptual matter, necessarily operate to extinguish the entirety of their ownership rights in the stock for purposes unrelated to the litigation. Such broad relief would not be a legally permissible consequence of an estoppel. If plaintiffs [*20] seek to extinguish the DeMotts equity interest in Old Coates, they must accomplish that by prosecuting their affirmative claim that the DeMotts' stock was issued

A00578

invalidly, on its merits. They cannot achieve that result through the back door by invocation of the doctrine of estoppel.

V.

To summarize: the plaintiffs' motion for summary judgment dismissing the counterclaim of Alan DeMott is granted on the ground that Alan DeMott lacks standing to assert his counterclaim in this action. The plaintiffs' motion for summary judgment dismissing the counterclaim brought by Robert DeMott is denied because no estoppel has been established. Finally, the plaintiffs' motion for summary judgment on their affirmative claim for declaratory relief extinguishing the DeMotts' shareholder interest in Old Coates is also denied.

IT IS SO ORDERED.

View: Full | Custom                    ◀◀◀ 1 of 1 ▶▶▶                    Print | Download | Fax | Email | Text Only
                              More Like This | More Like Selected Text | Shepardize® | TOA
                              ◆ Coates Int'l v. De Mott, 1994 Del. Ch. LEXIS 20                    Pages:    11

Service: Get by LEXSEE®
Citation: 1994 Del. Ch. LEXIS 20
View: Full
Date/Time: Thursday, December 23, 2004 - 12:47 PM EST

* Signal Legend:
🛑 -  Warning: Negative treatment is indicated
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
* Click on any Shepard's signal to Shepardize® that case.

Search | Research Tasks | Search Advisor | Get a Document | Shepard's ®
Eclipse ™ | History | Delivery Manager | Practice Area Pages | Switch Client | Preferences | Feedback | Sign Off | Help
About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

## CERTIFICATE OF SERVICE

I, CELESTE A. HARTMAN, Senior Paralegal, do hereby certify that I am over the age of 18, and that on December 23, 2004 I caused the foregoing *Answer of Plaintiff NHI, Inc. In Opposition to Defendants' Motion for Leave to Appeal* upon those persons listed below via U.S. First Class Mail.

Stuart M. Brown, Esquire
Denise Seastone Kraft, Esquire
Edwards & Angell, LLP
919 Market Street, 14 Floor
Wilmington, DE   19801

Richard Shepacarter, Esquire
Office of the U.S. Trustee
844 King Street, Suite 2313,
Lockbox 35
Wilmington, DE   19801-3519

Morton R. Branzburg, Esquire
Nicole Nigrelli, Esquire
Klehr, Harrison, Harvey, Branzburg & Ellers
260 S. Broad Street
Philadelphia, PA 19102-5003

Guy A. Donatelli, Esquire
James C. Sargent, Esquire
Scot R. Withers, Esquire
Lamb McErlane PC
24 East Market Street
Post Office Box 565
West Chester, PA  19381-0565

Under penalty of perjury, I certify the foregoing to be true and correct.

_Celeste A. Hartman_
CELESTE A. HARTMAN

## File an answer to a motion:

04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Spence, Stephen W. entered on 12/23/2004 at 1:14 PM EST and filed on 12/23/2004

**Case Name:**      NHI, Inc. v. Fleetboston Financial Corporation et al
**Case Number:**    04-52879-PJW
**Document Number:** 50

**Docket Text:**
Response to *Answer of Plaintiff NHI, Inc. in Opposition to Defendants' Motion for Leave to Appeal (Exhibits A-C, Certificate of Service)* (related document(s)[46] ) Filed by NHI, Inc. (Spence, Stephen)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** _1223130139_001.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=12/23/2004] [FileNumber=3298724-0
] [3d9acd5a6bb1a9082b0b34be7380bfd4256059ad5fcbadc851a7de002e73ab47f65
d57879e397f7f04834197ff2f4219b33d87041dfb179d178de395d3546eac]]

**04-52879-PJW Notice will be electronically mailed to:**

Stuart M. Brown      sbrown@edwardsangell.com, DEbankruptcy@edwardsangell.com

Denise Seastone Kraft      dkraft@edwardsangell.com

Stephen W. Spence      tap@pgslaw.com;th@pgslaw.com

**04-52879-PJW Notice will not be electronically mailed to:**