Plaintiff] to amend its pleading to remove any allegation of agency." The Plaintiff is attempting to reframe the issues on appeal in order to avoid discussing the issues that are actually on appeal. Moreover, Plaintiff's self-proclaimed "only probative issue" is necessarily included and addressed in the Defendants' appeal of the Court's decision to not allow the Motion to Dismiss. The Court recognized that the Complaint could not stand but then allowed the Plaintiff to amend instead of granting the Motion to Dismiss. The Defendants assert, and set forth in the appeal, that the proper procedure is to dismiss the case, not grant the Plaintiff leave to amend.

The Defendants' assertion is thoroughly supported in case law. Under Fed. R. Civ. P. 15(a), "leave to amend shall be freely given when justice so requires."[1] Whether to grant such leave to amend lies within the discretion of the trial court, after consideration of the potential for unfair prejudice to the adverse party. Further, a court's decision in that regard is ultimately reviewed for abuse of that discretion. *See Foman v. Davis,* 371 U.S. 178 (1962); *Krantz v. Prudential Investments Fund Management, LLC,* 305 F.3d 140, 144 (3d Cir. 2002). Common considerations that justify denial of a motion to amend are "undue delay, bad faith or dilatory motive on the part of the movant," and "undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman,* 371 U.S. at 182.

In this case, the Plaintiff has demonstrated bad faith and contempt for the Bankruptcy Court in filing the Complaint and Amended Complaint with the agency allegations and then seeking to remove them to avoid pleading itself out of Court. Where the plaintiff first presents a theory difficult to establish but favorable and, only after that theory fails, presents a less

---

[1] Fed. R. Civ. P. is made applicable to adversary proceedings under the Bankruptcy Code by Fed. R. Bankr. P. 7015, and states in relevant part:

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive **pleading** is served ... Otherwise a party may amend the party's **pleading** only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires ...

WLM_501271_1/DKRAFT

**A00771**

favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate. *See Zenith Radio v. Hazeltine Research,* 401 U.S. 321, 332-33 (1971) (alternative holding); *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 599 (5th Cir.1981); *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir. 1981); *Freeman v. Continental Gin,* 381 F.2d 459 (5th Cir. 1967). The Plaintiff's Amended Complaint should have been dismissed and the Plaintiff should not have been allowed leave to amend. It was bad faith for Plaintiff to present its more favorable theory of the case, fail, and then further amend its Complaint to prevent dismissal due to previously pleading itself out of Court.

The bad faith of the Plaintiff's actions is fully explored in the recent Delaware Superior Court case of *Krauss v. State Farm Mutual Automobile Ins. Co.,* 2004 WL 2830889 (Del. Supr. April 23, 2004). The *Krauss* case is on all fours with the issue before this Court. In *Krauss,* the Defendant sought to dismiss the Plaintiff's case because of previous judicial admissions by the Plaintiff that contradicted her claims in the case before the court. *Id.* The Plaintiff attempted to finesse the language in the complaint to disguise the judicial admission and then place the burden on the Defendant to prove the truth of her judicial admissions. *Id.* The court found that the judicial admissions relieved the Defendant from having to prove the truth behind the Plaintiff's judicial admissions and dismissed the case. *Id.* Most interesting, the court in *Krauss* determined that under the particular circumstances of the case, the Plaintiff could not amend her complaint despite the liberal nature of the rules on amendment of complaints. *Id.* The court found that allowing the Plaintiff to amend her complaint would abuse the pleading process by permitting her to plead a contradictory set of facts. The Court stated that the pleading of contradictory facts would constitute an attempt to "manipulate the course of litigation." *Id.*

WLM_501271_1/DKRAFT

A00772

Before issuing its decision, the *Kraus* court surveyed the case law in Delaware and found that a plaintiff seeking to amend its pleadings to plead contradictory facts was a case of first impression in Delaware. However, it found instructive the circumstances where defendants have attempted to amend their answers to plead contradictory facts. In its decision, the *Krauss* court relied upon *Gould v. American-Hawaiian Steamship Co.,* in which the United States District Court for the District of Delaware held that "while Rule 15(a) stresses liberality to guarantee that litigants be afforded the opportunity to respond to new or unexpected developments, the rule cannot be utilized to sanction a defendant's taking diverse and, in fact, conflicting postures on the facts to facilitate multiple and contradictory defenses." *Gould et. al. v. American-Hawaiian Steamship Co. et. al.,* 55 F.R.D. 475 (D.Del.1972). Accordingly, in the *Gould* case, the Delaware District Court denied defendants' motion to amend its answer because defendant attempted to alter their factual stance to support an alternative legal theory after a previous theory was rejected by the court. As in the *Kraus* and *Gould* decisions, the Plaintiff in this adversary proceeding cannot avoid dismissal by the granting of leave to amend a contradictory set of facts.

The inclusion of carefully constructed allegations of agency were not mistakes or misunderstandings by the Plaintiff. Instead, the Plaintiff made a calculated and tactical decision in developing the Amended Complaint to craft agency allegations without expressly stating agency in order to ensure that its financings with Mercantile (in which it granted releases to "Mercantile and its agents") were not jeopardized by pleading the causes of actions against the Defendants. Denying the Defendants' Motion to Dismiss and allowing Plaintiffs to amend their complaint to aver contradictory facts, as opposed to averring a newly discovered fact or an

- 6 -

A00773

alternative theory of the case, is an attempt to manipulate the course of litigation and an abuse of the judicial system.

**C.**    **ISSUES ON APPEAL**

**1.**    **Conversion to Summary Judgment in Error**

The first issue on appeal is whether it was proper for the Court to convert Defendants' Motion to Dismiss to one for summary judgment on October 8, 2004. The issue is whether the documents attached to the Motion to Dismiss converted the motion to one for summary judgment. The Plaintiff wrongly claims that the Court's grant of leave to amend somehow "mooted" the Court's conversion of the Motion to Dismiss into a Motion for Summary Judgment. Had this Court wrongfully granted leave to amend, it would have had to examine the Motion to Dismiss by the standards applicable to motions to dismiss.

For the majority of its paragraph in the Opposition Brief discussing conversion, the Plaintiff does not address the conversion but instead argues that the Court's direction to remove paragraph 33 was permission to "clarify its pleadings and claims." However, as discussed above, the Plaintiff did not "clarify" its pleadings and claims. Instead, the Plaintiff's removal of paragraph 33 altered the factual basis underlying all of the Plaintiff's claims. The Court does not have discretion to permit amendment when the Plaintiff is "playing fast and loose with the court." At the hearing on December 3, 2004, the Court did not eliminate the issue of agency except to the extent it was looking at the Motion to Dismiss. The Defendants could not possibly have had the defense of agency eliminated from their universe of defenses to the Plaintiff's claims even before they had an opportunity to file an answer.

WLM_501271_1/DKRAFT

A00774

## 2. Judicial Admissions of Agency

The second issue on appeal is whether the Court can effectively deny the Defendants' Motion to Dismiss and/or for Summary Judgment by allowing NHI to amend its complaint to remove its judicial allegations of agency. In seeking to discredit this issue on appeal, the Plaintiff ignores the Court's finding on the record at the December 3, 2004 hearing that the Court affirmatively and definitively stated that it found agency allegations in the Amended Complaint. The Plaintiff did not appeal the Court's finding of agency.

The factual allegations of agency in the Amended Complaint are now deemed judicial admissions by the Court and not subject to further debate or discussion by the Plaintiff. In a cause of action, pleadings are not mere ordinary admissions but are considered "judicial admissions." *Giannone v. U.S. Steel Corp.,* 238 F.2d 544, 547 (3d Cir. 1956). Further, in this case, the Court affirmatively, on the record, found that allegations of agency were pled in the Amended Complaint. Accordingly, no question remains as to whether the judicial admission of agency is unequivocal.

The issue on appeal is not one of judicial estoppel as claimed by Plaintiff, but that the Plaintiff is bound by its judicial admissions and by what it stated in its numerous pleadings. *Soo Line RR Co. v. St. Louis Southwestern Railway Co.,* 125 F.3d 481, 483 (7th Cir.1997) (holding that "judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible"); *see also Keller v. United States,* 58 F.3d 1194, 1198 (7th Cir. 1995) (holding that "[j]udicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them"); *Jackson v. Marion County,* 66 F.3d 151, 153 (7th Cir. 1995) (holding that a "plaintiff can plead himself out of court by alleging facts which show that he has

WLM_501271_1/DKRAFT

A00775

no claim, even though he was not required to allege those facts"). Admissions in a pleading are binding on the parties and factual statements in the pleadings are considered conclusive unless they have been amended or withdrawn. 29A Am Jur 2d, Evidence § 775 (1994).

Defendants only seek to hold the Plaintiff to its judicial admissions of agency as alleged in the Complaint and put a stop to the expensive ongoing litigation between the parties. The Appeal will determine whether the Plaintiff pled itself out of court by alleging facts that show it has no claim, even though it was not required to allege those facts. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000); 30B Wright & Miller § 7026 (2000).

### 3.    Agency Allegations throughout the Complaint

The third issue on appeal is whether the Court erred in finding that only paragraph 33 of the Amended Complaint made agency allegations. Throughout the Amended Complaint, the Plaintiff alleges that KMR, Riesner and Justis did not operate independently and for the benefit of NHI, rather, Defendants acted as Mercantile's agents in grossly mismanaging NHI for Mercantile's benefit. Despite numerous, and repeated, allegations of agency by Plaintiff throughout the Amended Complaint, the Court nonetheless held that only paragraph 33 alleged agency.

Apparently the Plaintiff agrees with Defendants as it did not touch upon this issue in its Opposition Brief.

### D.    THE STAY SHOULD BE GRANTED

#### 1.    Defendants Will Suffer Irreparable Harm if a Stay is Not Granted

If a stay is not granted, both the Defendants and Plaintiff will suffer irreparable harm as they will be forced to defend and incur additional, and substantial, costs. To date, as a result of the Court's holdings, Plaintiff has continued to plead agency throughout its Second Amended Complaint [D.I. 45] and consequently has forced Defendants to file a Motion to Dismiss the

-9-

WLM_501271_1/DKRAFT

Second Amended Complaint and address issues related to the same issues on appeal currently. Furthermore, absent the entry of a stay, the parties will engage in discovery and motion practice as well as other procedural matters while the appeal is pending. These costs would likely be substantial for both the Defendants and the Debtor's estate but may be averted by the timely entry of a stay by the Court.

Moreover, this matter may be disposed of entirely on appeal. The Plaintiff broadly and generally released Mercantile and its agents on February 26, 2002[2] in a written document filed with the Court in the main bankruptcy case and in the Cash Collateral Agreement and Consent Order [D.I. 34] stating that "no offsets, defenses or counterclaims to the [pre-petition indebtedness to Mercantile] exist . . .". The terms of the Releases, read broadly, include all claims, any preference or fraudulent transfer claims against the Defendants.

### 2.    Granting a Stay Will Not Substantially Injure Other Parties

A stay of the Adversary Proceeding pending Defendants' appeal will not cause substantial harm to any of the parties in the bankruptcy proceeding. The Debtor will not suffer any substantial harm by waiting until the appeal is decided. The adversary proceeding is essentially still in the initial stages of the litigation – as previously noted, Plaintiff recently filed a

---

[2]    Section 20 of the February 26, 2002 Agreement provides:

IN ORDER TO INDUCE [MERCANTILE] TO ENTER INTO THIS AGREEMENT, [NHI] FOREVER RELEASES AND DISCHARGES [MERCANTILE] AND [MERCANTILE'S] ... AGENTS (COLLECTIVELY, THE "RELEASED PARTIES") FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, SUITS AND DAMAGES (INCLUDING CLAIMS FOR ATTORNEYS' FEES AND COSTS) WHICH [NHI] ... EVER HAD OR MAY NOW HAVE OF ANY KIND OR NATURE AGAINST ANY OF THE RELEAED PARTIES ARSIING OUT OF OR RELATED IN ANY WAY TO ANY OF THE LOANS, THE LOAN DOCUMENTS, THE OBLIGATIONS OR THE COLLATERAL OR THE ADMINISTRATION THEREOF OR THIS AGREEMENT, WHETHER KNOW OR UNKNOWN, INCLUDING BUT NOT LIMITED TO ANY AND ALL CLAIMS BASED UPON OR RELYING ON ANY ALLEGATIONS OR ASSERTIONS OF DURESS, ILLEGALITY, UNCONSCIONABILITY, BAD FAITH, BREACH OF CONTRACT, REGULATORY VIOLATIONS, IMPROPER CONTROL OF THE COMPANIES OR THEIR AFFAIRS, NEGLIGENCE, MISCONDUCT, OR ANY OTHER TORT, CONTRACT OR REGULATORY CLAIM OF ANY KIND OR NATURE. THIS RELEASE IS INTENDED TO BE FINAL, IRREVOCABLE AND IMMEDIATE AND IS NOT SUBJECT TO THE SATISFACTION OF ANY CONDITIONS OF ANY KIND.

WLM_501271_1/DKRAFT

A00777

Second Amended Complaint with continued allegations of agency, to which Defendants, not surprisingly, replied by filing a Motion to Dismiss.

All of the delays in the proceeding thus far are on account of the Debtor's continuous allegations of agency which necessarily drew from Defendants the Motions to Dismiss asserting the release of Mercantile and the Defendants as their agents. The Motions to Dismiss filed in response to the Complaint and Amended Complaint clearly had merit as the Defendants were successful in the first two Motions to Dismiss and the third Motion to Dismiss is still pending before the Court.

At the time of the filing of the Motion to Stay, no scheduling order had been established, no trial date had been scheduled, and no discovery requests were outstanding. Finally, the stay is beneficial to the estate to the extent that the Defendants are successful on appeal because the estate will not incur the additional costs associated with prosecuting the adversary proceeding.

### 3.    A Stay Pending Appeal Would Serve the Public Interest

The imposition of a stay pending appeal would undoubtedly benefit the public interest because there is an obvious concern in maintaining the integrity of the Court and the rules of procedure, as well as ensuring that the rights of defendants are not disregarded. A court cannot allow defendants' rights to be trampled by allowing parties to amend complaints after they have effectively pled themselves out of court.

Allowing the Plaintiff to simply amend its Complaint to remove judicial admissions of agency so as to escape a motion to dismiss and/or for summary judgment is reversible error and is a serious issue in this litigation. Reversal is appropriate where substantial rights are affected by an error. See, *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 261 (3d Cir. 1995) (citing *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 923-28 (3d Cir. 1985)).

- 11 -

Further, allowing amendments of judicial admissions makes a mockery of Rule 11 of the Federal Rule of Civil Procedure and Rule 9011 of the Bankruptcy Rules of Civil Procedure and is absolutely inappropriate and prejudicial when the amendment is not the result of newly discovered evidence but merely a change in strategy by the amending party to escape dismissal of its action or summary judgment.

The stay is beneficial as the appeal will not only completely end the litigation, it would end an abusive use of the judicial system by NHI. The relief requested would relieve the Court of further hearings and promote judicial economy

### 4.    No Bond Should be Required

Bankruptcy Rule 8005 allows the Court, in its discretion, to condition a stay pending appeal on the filing of a bond. Fed. R. Bankr. P. 8005. *See In re United Merchants & Manufacturers, Inc.*, 138 B.R. 426, 430 (D.Del. 1992); *see e.g., In re Farrell Lines, Inc.*, 761 F.2d 796 (D.C. Cir. 1985) (involuntary debtor's appeal to district court was not dismissed for failure to post a bond); *In re Byrd*, 172 B.R. 970, 974 (Bankr. W.D. Wash. 1994) (holding that posting of a bond is discretionary, and thus, not a prerequisite to granting a stay pending appeal); *In re Sphere Holding Corp.*, 162 B.R. 639, 644-45 (E.D.N.Y. 1994) (debtor would not be required to file bond as condition to obtaining injunctive relief against creditors' pursuit of collection); *In re Westwood Plaza Apartments, Ltd.*, B.R. 163 (Bankr. E.D. Tex. 1993) (HUD would be granted stay pending appeal without posting supersedeas bond, subject to conditions requested by debtor).

Because the requirement of posting a bond is discretionary, courts have relieved appellants of the obligation to post security for a stay where little or no injury or prejudice to appellees will occur. *In re United Merchs. & Mfrs., Inc.*, 138 B.R. 426, 427 (D.Del. 1992) (stay

WLM_501271_1/DKRAFT

A00779

of further distributions pursuant to confirmed chapter 11 plan would not be conditioned upon filing of a bond because the debtor would not suffer any loss as a result of the stay pending appeal.); *see also, In re Sphere Holding Corp.,* 162 B.R. at 144 (recognizing that the posting of a bond is discretionary); *see also, In re Theatre Holding Corp.,* 22 B.R. 884, 885-86 (Bankr. S.D.N.Y. 1982) (the only compensable damages to a party opposing the appeal are those which are the "natural and proximate" result of the stay).   The relief sought by Defendants will not jeopardize the Debtors' estate.   Beyond speculation, Plaintiff has not come forward with any colorable reason as to why a bond should be posted.   Further, by staying the underlying action, Debtor will not incur the additional litigation costs associated with prosecuting the adversary proceeding.

## IV.   CONCLUSION

The Opposition Brief presented to this Court by the Plaintiff is further demonstration that the Plaintiff does not squarely address issues before it, but instead attempts to recharacterize and reframe the facts and issues in a manner that is most favorable to it.   In its Opposition Brief, the Plaintiff does not address the three issues appealed by Defendants.   The Plaintiff states that the question of conversion to a motion of summary judgment is mooted because the Court granted leave to amend.   The Plaintiff does not address whether the attached pleadings necessitate conversion.   The Plaintiff challenges the Court's conclusion of agency rather than attempting to dissuade this Court that the Defendants will not succeed on the second issue on appeal of whether the Court properly allowed amendment of a complaint that effectively pled itself out of court through judicial admissions.   The Plaintiff does not even touch upon or discuss the third issue on appeal of whether other statements in the Amended Complaint sound in agency.   Instead the Plaintiff continues to assert that agency is no longer a defense because the Court allowed the

- 13 -

A00780

Amendment. The Plaintiff fails to recognize that the Defendants' position on agency is only applicable to the adversary proceeding up **to this point** and not a waiver of a defense not yet required to be plead. The Defendants have yet to file an answer. The Defendants in no way have excluded a defense from what they may answer should the adversary proceeding continue. The Plaintiff wrongfully accuses the Defendants of delay when the Defendants have only exerted their rights in successfully filing and succeeding on motions to dismiss. The Plaintiff's complaints have caused all of the delay because the Plaintiff has, and continues, to bring forth an adversary proceeding that it believes apparently cannot succeed without allegations of agency. The allegations of agency, however, cannot be asserted without the risk of dismissal due to the releases previously granted by the Plaintiffs.

WHEREFORE, Defendants respectfully requests that the Court enter an order staying the Adversary Proceeding pending decision of the appeal, and grant such other and further relief as the Court may deem proper.

- 14 -

WLM_501271_1/DKRAFT

**A00781**

Dated:  February 1, 2005        EDWARDS & ANGELL LLP


Stuart M. Brown, Esquire (No. 4050)
Denise Seastone Kraft (No. 2778)
Mark D. Olivere (No. 4291)
919 N. Market Street
Wilmington, DE 19801
Tel:  302.777.7770
Fax:  302.777.7263

Counsel for Defendants
FleetBoston Financial Corporation,
KMR Management Inc.,
Robert Reisner and
Waring S. Justis

- 15 -

WLM_501271_1/DKRAFT

# EXHIBIT 1

A00783

UNITED STATED BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          )
                                )   Chapter 11
NHI, INC., a Delaware           )
Corporation,                    )   Case No. 02-10651 (PJW)
                                )
                                )   December 3, 2004, 3:30 p.m.
                    Debtors      )

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For KMR Management,:          DENISE SEASTONE KRAFT, ESQUIRE
FleetBoston,                  EDWARDS & ANGELL, LLP
Robert Riesner, and           919 N. Market Street, 14th Floor
Waring S. Justis, Jr.         Wilmington, DE 19801


For NHI, Inc.:                STEPHEN W. SPENCE, ESQUIRE
                              PHILLIPS, GOLDMAN & SPENCE
                              1200 North Broom Street
                              Wilmington, DE 19806


For NHI, Inc.:                GUY DONATELLI, ESQUIRE
                              SCOTT R. WITHERS, ESQUIRE
                              LAMB, MCERLANE, PC
                              24 East Market Street
                              West Chester, PA 19381




Transcribed by:               DIANA DOMAN TRANSCRIBING
                              P.O. Box 129
                              Gibbsboro, New Jersey  08026-129
                              (856) 435-7172
                              FAX:  (856) 435-7124
                              Email:  Dianadoman@comcast.net


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

A00784

Colloquy                                2

1      (Hearing in session)

2              THE CLERK:  Please rise.

3              THE COURT:  Please be seated.  Yes.

4              MR. SPENCE:  Good afternoon, Your Honor.  Stephen

5      Spence on behalf of NHI, Inc.  Your Honor, I was advised by

6      your staff before we started that the two matters that were the

7      first two items on our agenda today were both the subject of

8      certificates of no objection.  I think the Court has already

9      acted on those.

10             THE COURT:  Yes.

11             MR. SPENCE:  And so the only other matter we had on

12     today's agenda was really at my doing a suggest -- or not a

13     suggestion, but the though process that perhaps it might be

14     time to have a -- a status conference really at your discretion

15     as to the status of the adversary proceeding that's mentioned

16     in the agenda, and without further ado, I was going to cede the

17     podium to my co-counsel, Guy Donatelli or -- or to field any

18     questions from the Court before we start as the case may be.

19             THE COURT:  Well, let's see.  I must say at this

20     point I'm confused as to what the plaintiff's case is.

21             MR. SPENCE:  All right.  Then I should -- I should

22     probably cede to Mr. Donatelli.

23             THE COURT:  Okay.

24             MR. DONATELLI:  Your Honor, may I please the Court,

25     Guy Donatelli on behalf of -- of NHI.  I'll start by -- by

Colloquy                                    3

1    trying to address Your Honor's confusion.

2           The complaint is rather lengthy, because we attempted

3    in it to lay out what we thought would be a fairly clear

4    chronological discussion of what occurred over the period of

5    time at issue.  This is a case boiled down to its essence where

6    NHI alleges that KMR and its representatives failed in their

7    contractual duties to NHI in the sense that instead of pulling

8    it out of some financial difficulties as it was required to do

9    under the contractual documents, it simply went about

10   liquidating NHI.

11          The -- the claim is against various defendants.  I'll

12   call them all the KMR defendants.  KMR was supposed to have

13   been a work out -- was supposed to have been a work out company

14   that would come in and restore profitability to NHI.  It failed

15   to do that, and instead, it appeared to the representatives of

16   NHI that they were more interested in paying down the bank debt

17   to Mercantile than they were in restoring KMR to profitability,

18   and part and parcel of KMR's conduct not only was paying down

19   the bank debt as rapidly as possible but also over the course

20   of the roughly 14 months in which they were involved with NHI

21   taking out $1.7 to $1.9 million worth of fees.  Such an

22   accelerated payment to the bank and such a withdrawal of assets

23   from NHI could not possibly have helped NHI regain

24   profitability.

25          The complaint was drafted to -- to try to capture in

A00786

Colloquy                                    4

1   a fairly comprehensive form what occurred over that period of

2   time.  We run into problems, Your Honor, because there were

3   some allegations in that -- in that complaint which the

4   defendants painted as allegations of agency, and the reason

5   that became important is because before the petition in this

6   case was filed, there was a settlement agreement between

7   certain representatives of NHI and their principles and

8   Mercantile as it related to Mercantile's loans to NHI and the

9   guarantees that went along with it.

10          The defendants have come in and have said we read

11  plaintiff's complaint as alleging that KMR were the agents of

12  Mercantile.

13          THE COURT:  And I read it that way too.

14          MR. DONATELLI:  There is -- there is one paragraph,

15  Your Honor -- I believe it's paragraph 33 or 34 -- which could

16  be the only paragraph that alleges an agency relationship, but

17  I'd like to expound on that.  Nowhere in our complaint, nowhere

18  do we make the allegation that KMR were the agents of

19  Mercantile.  What we tried to capture in the -- in the

20  complaint --

21          THE COURT:  Let me put it succinctly.  And I tried to

22  be polite in my letter where I said -- quoted from paragraph 33

23  of the complaint, and I said this sure sounds like an agency

24  relationship to me.  Let me put it bluntly.  I conclude that

25  that's an assertion of an agency relationship.

Colloquy                                                    5

1        Now, in your memorandum, docket number 40, you say on

2  page 1, "The first amended complaint did not allege that the

3  defendants were agents of Mercantile."  On page 3, there's a

4  statement, "Defendants were, in fact, not the agents of

5  Mercantile."

6        And my simple question is which is it?

7        MR. DONATELLI:  They were not, Your Honor.

8        THE COURT:  Okay.

9        MR. DONATELLI:  And nor do defendants in this case

10  allege -- at least they haven't to date -- that they were

11  defendants.  And if Your Honor is concerned with paragraph 33

12  or 34 to the extent that you believe it alleges an agency

13  relationship, I will amend the pleading to withdraw that

14  allegation --

15        THE COURT:  Very good.  That's fine.  Okay.

16        MR. DONATELLI:  That should -- hopefully, that should

17  clear up --

18        THE COURT:  That's the only issue I have today.

19        MR. DONATELLI:  Okay.  Then, Your Honor, if you don't

20  have any other questions, may I be seated?

21        THE COURT:  Yes.

22        MR. DONATELLI:  Thank you.

23        THE COURT:  Now, let me ask the defendants --

24        MS. KRAFT:  May I state my name for the record?

25        THE COURT:  Yes.

Colloquy                                          6

1          MS. KRAFT:  Denise Kraft representing the defendants

2   Fleet, KMR Management, Robert Riesner, and Waring Justis for

3   the record.

4          THE COURT:  Okay.  Are you going to argue or attempt

5   to prove that the defendants were agents of Mercantile in order

6   to bring them within the release?

7          MS. KRAFT:  It is not our intention to argue that the

8   defendants were agents of Mercantile.  We -- our case at this

9   point --

10         THE COURT:  Okay.  Then this whole agency is a

11  nonissue at this point.

12         MS. KRAFT:  Except for the fact that we have cited

13  the case law that's clear that if you allege in your complaint

14  -- amended complaint and to motions and responses as alleged by

15  the plaintiff here a -- an allegation, then you are not allowed

16  to withdraw that allegation.  It becomes a judicial admission.

17         I believe that the case law is clear as we have cited

18  in the motion to strike and the reply to the motion to strike.

19  We've cited several cases for that proposition, and I have not

20  seen anything from the plaintiffs that alleges otherwise or

21  even addresses that case law.

22         So our position today is that the case law we've

23  cited on judicial admission is the correct law as placed before

24  the Court and that the plaintiffs are not able to amend their

25  complaint at this time if --

Colloquy                                                    7

1          THE COURT:  Okay.  Well, I'm going to allow them to

2    amend the complaint.

3          MS. KRAFT:  Okay.  Then I would like to go --

4          THE COURT:  And to remove that one statement in

5    paragraph 33, and I don't believe the other statements that I

6    referred to in my letter and which you refer to in your

7    memoranda supports a finding by me that there was an agency

8    relationship.

9          MS. KRAFT:  Then I would like to address the second

10   point as we brought up in the reply to the motion to strike,

11   and that is that we would not be in the position before the

12   Court that we are in today having filed the motion to dismiss

13   based on the -- the pleadings if it were not for the fact that

14   agency had been pled in this case.  It's caused our clients to

15   expend money in order to put together the motion to dismiss and

16   then to come back into court to address these discovery issues

17   and file the motions and again today to come in to address

18   this.

19          To the extent that the plaintiff has admitted that

20   they had documents in their possession indicating that there

21   was no agency, prior -- at this point, that -- those documents

22   should have been available to them prior to filing the

23   complaint, and under Rule 9011:11, they are required to set

24   forth what they believe to be the true facts.  Our -- our

25   position to the Court today is that they did not do a thorough

Colloquy                                                8

1    investigation causing our clients to come in and expend these

2    monies to fight on the release and what appeared to be a valid

3    issue, and it's taken several months until today for them to

4    come into the Court and tell the Court that they are not

5    alleging agency at this point when it was more than clear that

6    they were, and in fact, up to the time that they filed the

7    answering brief to the motion to strike, they even attached the

8    affidavit of John Mervine, III indicating that it even appeared

9    to him that they were acting on behalf of Mercantile.

10           So up until the point they appeared today and told

11   the Court they are not pursuing that, it has always appeared

12   that they were and that we were fighting the good fight, and

13   our clients have expended considerable sums of money in doing

14   that, and we would ask the Court to consider a properly placed

15   Rule 9011 motion or for sanctions.  Not for sanctions.  Just to

16   pay attorneys fees up to this point.

17           THE COURT:  Well, if you want to file a separate

18   distinct Rule 11 motion, you can.  I'll consider it.

19           MS. KRAFT:  Thank you, Your Honor.

20           MR. DONATELLI:  Your Honor, would you like me to

21   reserve any argument on that issue until that motion is filed?

22           THE COURT:  You can respond to it in writing also.

23           MR. DONATELLI:  Thank you.

24           THE COURT:  All right.  Is the case going forward in

25   terms of discovery?

1    MR. DONATELLI:  If I may, Your Honor, there hasn't --

2    there hasn't been an answer to the complaint filed.  Once we

3    file the amended complaint which will have 171 paragraphs

4    instead of 172, I'll reissue discovery.  If I wouldn't -- I

5    won't need to do that, I will issue some written discovery and

6    take some depositions.  It's not a particularly difficult case

7    as far as discovery is concerned, and I suspect once I see the

8    answer, once I see what the defense is going to be, I should be

9    able to cut through that -- cut through that pretty quickly.

10    MS. KRAFT:  If I may, because of the way the -- the

11    posture of the case and the way we've come into the Court, I

12    don't believe we have a scheduling order in place for this case

13    going forward.  So perhaps we should have another conference to

14    put together a scheduling order and then go forward from there

15    in terms of a discovery schedule.

16    THE COURT:  Okay.  Then counsel should get together

17    and see if you can't agree upon one.  If you can't, then we'll

18    set up a status conference.

19    MS. KRAFT:  Thank you, Your Honor.

20    THE COURT:  Okay.

21    MR. DONATELLI:  Thank you, Judge.

22    THE COURT:  All right.  We stand in recess.

23

10

```
1                        * * * * *

2                    C E R T I F I C A T I O N

3          I, Maureen Emmons, court approved transcriber,

4     certify that the foregoing is a correct transcript from the

5     official electronic sound recording of the proceedings in the

6     above-entitled matter.

7

8     _____        Date:  12/22/04

9     MAUREEN EMMONS

10    DIANA DOMAN TRANSCRIBING

11
```

A00793

# UNREPORTED CASES

A00794

Westlaw.

Slip Copy                                                                    Page 1
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware.

Christopher M. KRAUSS and Laurie Ann Linehan,
Plaintiffs,
v.
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY Defendant.

No. 03C-08-252 RRC.

Submitted March 9, 2004.
Decided April 23, 2004.

Upon Defendant's Motion to Dismiss Counts I, II
and IV of the Complaint. Granted.

Michael D. Carr, The Law Offices of Michael D.
Carr, Wilmington, Delaware, for Plaintiffs.

Daniel V. Folt, and Gary W. Lipkin, Duane Morris
L.L.P., Wilmington, Delaware, for Defendant.

MEMORANDUM OPINION

COOCH, J.

INTRODUCTION

**\*1** This case stems from a June 26, 2000
automobile accident in which plaintiffs Christopher
M. Krauss ("Krauss") and Laurie Ann Linehan
("Linehan") were injured. Krauss was driving
Linehan's car and Linehan was a passenger. Krauss
and Linehan, in their complaint, seek PIP benefits
(Count I), damages from "Unfair Practices in
Insurance" (Count II), underinsured motorists
benefits ("UIM") (Count III), and punitive damages
(Count IV). Before this Court is a motion to dismiss
filed by the defendant State Farm Mutual

Automobile Insurance Company ("State Farm"),
Krauss' insurer, in which State Farm seeks dismissal
of Counts I, II and IV of the complaint filed by
Krauss and Linehan on the grounds that neither
Krauss nor Linehan are eligible for insurance
coverage under Krauss' two State Farm insurance
policies.

With respect to State Farm's motion to dismiss
Krauss' claims: Krauss is seeking insurance benefits
under his two State Farm policies because these
policies potentially provide him coverage if he was
injured in a car accident involving a car other than
his own. The issues for the Court to decide are (1)
whether Linehan's judicial admission set forth in the
complaint that she "qualif[ied] as [an] insured[ ]
under the Krauss policies" (thereby in effect
asserting that she was a "member of Krauss'
household") requires dismissal of his PIP claim
because he would thereby become disqualified from
receiving PIP benefits under the "owned motor
vehicle" exception in his policies, (2) if Krauss' PIP
claim is thus dismissed, whether he should be
granted leave to amend his complaint to reassert his
PIP claim by excluding Linehan's averments from
any new amended complaint as to the PIP claim,
and (3) whether Krauss has alleged sufficient facts
to sustain either the "Unfair Practices in Insurance"
claim or the punitive damages claim against his
insurer, State Farm.

With respect to State Farm's motion to dismiss
Linehan's claims: Linehan has recently withdrawn
her claim for PIP benefits, implicitly conceding that
she is not eligible to make a PIP claim under
Krauss' policies. [FN1] The Court must also decide
whether Linehan has alleged sufficient facts to
sustain either the "Unfair Practices in Insurance"
claim or the punitive damages claim against Krauss'
insurer, State Farm. [FN2]

> FN1. To be eligible for PIP benefits under
> the terms of Krauss' State Farm policies,
> Linehan needed to be a member of Krauss'
> household, and the car involved in the
> accident had to have belonged to someone

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A00795

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

Page 2

other than her or Krauss. The complaint filed by Krauss and Linehan tacitly asserts that she was a member of his household and it is undisputed that the car involved was her car.

FN2. State Farm now concedes that the UIM claims are ripe because the underlying claim has recently settled and all of the available insurance benefits have been tendered. Linehan's judicial admission has no affect on the UIM claim because the definition of "insured" under section III (UIM claims) does not include the "members of your household" language, but instead defines "insured," in part, as follows
1. the first *person* named in the declarations
4. any other *person* while *occupying*
b. a *car* not owned by *you, your spouse* or any *relative*, or a trailer attached to such a car. It has to be driven by the first person named in the declarations or that *person's spouse* and within the scope of the owner's consent. (emphasis in original).
Therefore, State Farm's motion to dismiss Count III of the complaint, in effect, has been withdrawn.

State Farm's motion to dismiss Krauss' PIP claim (Count I), both Plaintiffs' "Unfair Practices in Insurance" claims (Count II) and the punitive damages claims (Count IV) is GRANTED. This Court also holds that, under the particular circumstances of this case, Krauss should not be granted leave to amend his complaint to restate his PIP claim by withdrawing his prior joint assertion with Linehan that she "qualif[ied] as [an] insured" for purposes of her recovering PIP benefits.

## FACTS

Plaintiffs were unmarried at the time of the accident and resided together in Millsboro, Delaware. [FN3] On June 26, 2000 Krauss and Linehan were involved in a two vehicle collision while traveling southbound on U.S. Route 13 near Townsend, New Castle County, Delaware. Krauss was driving Linehan's car, with her permission, at the time of the accident. Both Plaintiffs sustained

serious injuries, which have required ongoing medical treatment.

FN3. Def's Mot. to Dismiss at Ex A at Pls' Compl. at ¶ 1 (hereinafter "Pls' Compl. at _").

*2 Initially, Plaintiffs made claims under Linehan's policy with State Farm Fire and Casualty Company and each exhausted $50,000 in PIP coverage under that policy. Plaintiffs then brought a tort action against Donna Whedbee, [FN4] the driver of the other car involved in the accident, who was (coincidentally) also insured by State Farm Mutual Automobile Insurance Company. [FN5] The underlying case was settled in February 2004.

FN4. Donna Whedbee died sometime after the accident from an unrelated cause and the underlying action was subsequently defended by Robert Whedbee, the administrator for the estate of Donna Whedbee.

FN5. Pls' Compl. at ¶¶ 10, 4 (*Krauss et. al. v. Whedbee*, Del.Super. Ct., 03C-03-240 RRC)

While the underlying claim was still unresolved, Plaintiffs filed claims with State Farm for PIP benefits and UIM benefits under two policies held by Krauss, which claims were denied. [FN6] Under Krauss' State Farm policies, the PIP claims are governed by Section II, No-Fault Coverage. Section II (PIP claims) defines an "insured" as

FN6. *Id.* at ¶ 17.

1. any *person* while *occupying* or injured in an accident as a pedestrian by *your car* or a *newly acquired* car, if registered in Delaware; and
2. *you* or any *member of your household* while *occupying* or injured in an accident as a pedestrian by any other land motor vehicle designed for use on public highways and which IS NOT:
b. OWNED BY OR FURNISHED FOR THE REGULAR USE OF *YOU* OR ANY *MEMBER OF YOUR HOUSEHOLD*. [FN7] (emphasis in original)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

Page 3

FN7. Def's Mot. to Dismiss at Exhibit B at 11.

not a co-owner of the car involved, nor was he included as a named insured on Linehan's insurance policy covering the car. Linehan was not a co-owner of either of Krauss' vehicles, nor was she included on his policies.

In August 2003, Plaintiffs filed the instant lawsuit in Superior Court against State Farm for PIP benefits, damages from "Unfair Practices in Insurance", UIM damages and punitive damages. [FN8] The joint complaint states that "[t]he Plaintiffs are Christopher M. Krauss and Laurie Ann Linehan" [FN9] and that "[b]oth Plaintiffs qualify as insureds under the Krauss policies and each have fulfilled any and all conditions precedent required for payments sought." [FN10]

FN8. The "unfair practices in insurance" claim stems from the alleged conduct of State Farm in the instant case and in the underlying tort claim. Plaintiffs generally plead that State Farm is in violation of 18 *Del. C.* § 2301 and that "[i]n an effort to not expose the [UIM] ... [policy limits], and in an effort not to pay PIP benefits, Defendant has intentionally denied the tender of the companion tortfeasor policy limits." Pls' Compl. at ¶¶ 22-23.

FN9. Pls' Compl. at ¶ 1

FN10. Ps' Compl. at ¶ 16.

At oral argument, Plaintiffs' counsel withdrew Linehan's PIP benefit claim, and the Court asked the parties to submit supplemental memoranda addressing the effect of Linehan's judicial admission that she "qualif[ied] as [an] insured" on Krauss' PIP claim and, assuming the complaint against Krauss were to be dismissed, whether the Court should allow Krauss an opportunity to restate his PIP claim by excluding Linehan's averments from any new amended complaint as to the PIP claim. [FN11]

FN11. The Court in its letter of December 2, 2003 to counsel stated that it "wished to hear from the parties on an additional

issue: assuming (without deciding) that the Court dismisses the Complaint against Krauss (all or in part), should the Court allow Krauss an opportunity to amend the Complaint?" Plaintiffs chose only to address the issue of Krauss amending his PIP claim.

STANDARD OF REVIEW

When deciding a motion to dismiss "all factual allegations of the complaint are accepted as true." [FN12] In deciding a motion to dismiss the Court must determine "whether the plaintiff may ... recover under any plausible circumstances capable of proof under the complaint." [FN13] A motion to dismiss must "present[ ] a question of law and cannot be granted where the pleading raises any material issues of fact." [FN14]

FN12. *Plant v. Catalytic Constr. Co.,* 287 A.2d 682, 686 (Del.Super.1972), *aff'd* 297 A.2d 37 (Del.1972)

FN13. *Spence v. Funk,* 396 A.2d 967, 968 (Del.1978).

FN14. *Fagnani v. Integrity Fin. Corp.,* 167 A.2d 67, 68 (Del.1960)

DISCUSSION

The issues for the Court to decide are: (1) should Linehan's judicial admission set forth in the complaint that she "qualif[ied] as [an] insured [ ] under the Krauss policies" (thereby asserting that she was a "member of Krauss' household") require dismissal of co-plaintiff Krauss' PIP claim because (assuming that Linehan's averment was true) he then became disqualified under the "owned motor vehicle" exception in his policies, (2) if Krauss' PIP claim is thereby dismissed, should he be granted leave to amend his complaint to reassert his PIP claim by excluding Linehan's averments from the amended complaint as to the PIP claim, and (3) whether Krauss and Linehan have alleged sufficient facts to sustain either the "Unfair Practices in Insurance" claims or the punitive damages claims against his insurer, State Farm.

I. Krauss' Claim for PIP Benefits is Dismissed Because of Linehan's Judicial Admission in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

Joint Complaint That She Was a Member of Krauss' Household, Which Disqualifies Him from Coverage Under the "Owned Motor Vehicle" Exception to His State Farm Policies.

*1. State Farm's Argument to Dismiss Krauss' Claim for PIP Benefits.*

**\*3** State Farm argues that Krauss is disqualified from PIP coverage because of the "owned motor vehicle" exception in his policies. [FN15] State Farm contends that Krauss' policies insure him for PIP benefits only if he was a passenger in a car not owned by Krauss or by any member of his household. State Farm contends that by his jointly claiming with Linehan that Linehan would "qualify as [an] insured[ ] under the Krauss policies and ... hav[ing] met all conditions precedent required," co-plaintiff Linehan has made a judicial admission that she was a member of Krauss' household. State Farm alleges that, as a member of Krauss' household, Linehan's ownership of the car involved in the accident disqualifies Krauss under Section II of his policy. [FN16]

> FN15. The "owned motor vehicle" exclusion is an insurance policy provision excluding from coverage a person or member of his household injured while occupying a car owned by a member of the household but not named in the policy. *Webb v. State Farm Mut. Auto. Ins. Co.,* 1993 Del.Super. LEXIS 88 at *6 (Del.Super.Ct.); *see* ROBERT K. BESTE JR., ESQUIRE & ROBERT K. BESTE, III, ESQUIRE, AUTOMOBILE INJURY AND INSURANCE CLAIMS, DELAWARE LAW AND PRACTICE, § 4.06(d) (2003) (stating that "[t]he 'owned motor vehicle' exclusion excludes coverage for persons injured while occupying a vehicle or injured by a vehicle owned by the insured, but not insured under the policy.").

> FN16. *Insured* means
> 2. *you* or any *member of your household* while *occupying* or injured in an accident as a pedestrian by any other land motor vehicle designed for use on public highways and which IS NOT:

> b. OWNED BY OR FURNISHED FOR THE REGULAR USE OF *YOU* OR ANY *MEMBER OF YOUR HOUSEHOLD.* (emphasis in original)

State Farm argues that Krauss should be bound by Linehan's judicial admission because Plaintiffs, "having consulted with counsel ... and intending to pursue potentially antagonistic theories of liability designed to promote recovery of insurance benefits for each plaintiff, knowingly, voluntarily and deliberately elected to jointly file a single complaint." [FN17]

> FN17. Def's Supplemental Memo. at 1 (hereinafter "Def's Supp. Memo. at_").

*2. Plaintiffs' Response.*

Plaintiffs assert that Krauss should be potentially eligible for PIP benefits under his two policies and he should not be bound by Linehan's averments in the joint complaint. Plaintiffs assert that their complaint does not make joint averments but should be read as separate averments by each Plaintiff. Plaintiffs argue that paragraph 16 of their complaint "does not definitively plead" that each Plaintiff has contended that "he or she qualify in their own right as an individual insured [or] whether the averment alleges that each contends that in addition to himself or herself, the other plaintiff qualifies as an insured." [FN18]

> FN18. Pls' Supplemental Response to Def's Supplemental Memo at 2 (hereinafter "Pls' Supp. Resp. at_").

Plaintiffs additionally contend that any confusion as to who made which averments is due to "the policy language [being] ambiguous ... [and] the ambiguity each faced when attempting to understand whether they qualified as insureds." [FN19] Plaintiffs contend that "[w]hile Paragraph 1 [of the policies] defines "insured" as "any person ... occupying ... your car" the language of Paragraph 2 is at best confusing and lends itself to any number of interpretations." [FN20] Plaintiffs then contend that "[r]eading the 'emphasized' language of the limitations suggested by Paragraph 2, one is confronted with the following: "you ... member of your household ... occupying ... YOU ... MEMBER

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

OF YOUR HOUSEHOLD." (Emphasis in original). Paragraph 19 of Plaintiffs' complaint asserts that "State Farm knew or should have known that its policy language is ambiguous."

FN19. *Id.* at 3.

FN20. Pls' Resp. at 2.

Plaintiffs argue that Linehan's stipulation to the dismissal of her claim for PIP benefits under Krauss' policies was "based upon her status as the owner of the vehicle in which the parties were injured and the fact that she *did not* qualify as a member of Krauss' household because she was not economically dependent upon [him]." [FN21] (Emphasis added). Plaintiffs argue that State Farm has the burden of proving that Linehan is a member of Krauss' household in relation to Krauss' coverage and they argue that the judicial admission "does not constitute being a 'member of ... Krauss' household as defined by the policy language." [FN22]

FN21. Pls' Supp. Resp. at 2.

FN22. *Id.*

*3. Discussion.*

*\*4* In a cause of action, pleadings are not mere ordinary admissions but are considered "judicial admissions." [FN23] A judicial admission is a formal statement by a party or his or her attorney, in the course of judicial proceedings, which removes an admitted fact from the field of controversy. [FN24] Judicial admissions are recognized in Delaware. [FN25] *Wigmore* states that "a party may at any and all times invoke the language of his opponent's pleading on that particular issue as rendering certain facts indisputable." *Wigmore* explains:

FN23. *Ervin v. Vesnaver and Murray Transportation Co.,* 2000 Del.Super. LEXIS 312 at 4 (Del.Super.Ct.) (citing *Wigmore, Evidence* § 1604 (Chadbourn rev.1972).

FN24. 29A Am Jur 2d, Evidence § 770 (1994).

FN25. *Ervin,* 2000 Del.Super. LEXIS 312 at 4 (citing *Levinson v. Delaware Compensation Rating Bureau,* 616 A.2d 1182, 1186 (Del.1992); *Blinder, Robinson & Co. v. Bruton,* 552 A.2d 466, 474 (Del.1989); *Rudnick v. Shoenberg,* 122 A. 902, 903 (Del.1922) (citing *Wigmore* ); *Godwin v. State,* 74 A. 1101, 1103 (Del.1910).

judicial admissions ... are not a means of evidence, but a waiver of all controversy (so far as the opponent may desire to take advantage of them) and therefore a limitation of the issues. Neither party may dispute beyond these limits. Thus, any reference [to the judicial admission is] an invocation of the right to confine the issues and to insist on treating as established the facts admitted in the pleadings. [FN26]

FN26. *Wigmore, Evidence* § 1604(2) (Chadbourn rev.1972). *See also* 29A Am Jur.2d, Evidence § 770 (1994) (A judicial admission is a formal statement by party or his or her attorney, in course of judicial proceedings, which removes an admitted fact from field of controversy.)

One authority states that "[t]he determination of whether a party's statement is sufficiently unequivocal to be a judicial admission is a question of law." [FN27] This authority also states "[a] judicial admission of fact may carry with it an admission of other facts necessarily implied from it." [FN28]

FN27. 29A Am Jur 2d, Evidence § 770 (1994)

FN28. *Id.*

Krauss' argument does not fully appreciate the impact of Linehan's judicial admission. Regardless of what Linehan may have thought she was averring in her complaint, or the fact that she may have believed that her stipulation withdrawing her claim for PIP benefits effectively withdrew her claim to be a member of Krauss' household, there is no other way to categorize her original judicial admission as anything but a claim to have been a member of Krauss' household. Linehan had to plead as part of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

Page 6

her PIP cause of action the fact that she was a member of Krauss' household in order to have any possible claim under the terms of Krauss' policies.

Plaintiffs, in their complaint, attempted to finesse the definition of "insured" so that both Plaintiffs could be potentially eligible for PIP benefits. Plaintiffs parsed the definition of "insured" in the PIP benefits section of the policy so that under the first part of the paragraph that defined "insured" Linehan would be considered a member of Krauss' household so that she could make a claim under his policy because only Krauss or a member of his household was potentially eligible for PIP benefits under his policies. [FN29] Also in the complaint, however, Plaintiffs sought effectively to disclaim Linehan as being a member of Krauss' household because 2(b) of the definition of "insured" states that he is not insured if he is injured while occupying or injured by "any ... motor vehicle ... which IS ... OWNED BY ... *YOU* OR ANY *MEMBER OF YOUR HOUSEHOLD."* (Emphasis in original). Thus under the "owned motor vehicle" exception to his policies, Krauss would not be insured because Linehan claimed to have been a member of Krauss' household and owned the car involved.

> FN29. An "insured" is defined under Section II(2) as "you (Krauss) or any *member of your household* (Linehan) while *occupying* or injured in an accident as a pedestrian by any other land motor vehicle designed for use on public highways."

*5 This Court finds that Krauss is not eligible for PIP benefits under his State Farm policies pursuant to the "owned vehicle" exception in his policies because he is bound by Linehan's judicial admission that she was a member of his household, disqualifying him from coverage. Krauss and Linehan made a conscious decision, in consultation with counsel, to file the complaint jointly. [FN30] It follows that each is bound by the averments of the other because both Plaintiffs shared a joint interest (seeking insurance benefits under Krauss' State farm policies), they were both represented by the same counsel and they asserted the same rights. [FN31]

> FN30. Counsel for Plaintiffs made this

representation to the Court at oral argument.

> FN31. *See General Financial Services, Inc. v. Practice Place, Inc.,* 897 S.W.2d 516, 521 (Tex.App.1995) (holding that judicial admissions "are equally binding on co-parties where there is privity or a joint interest between them, they are represented by the same counsel and assert the same rights and defenses.").

Not only did Plaintiffs file the complaint jointly, but the PIP benefits count of the complaint specifically states that "[b]oth Plaintiffs qualify as insureds." There is no indication in this count that Krauss was making specific allegations and claims and that Linehan was making separate allegations and claims based on a different theory of liability. Krauss did not plead in the alternative, and Krauss and Linehan did not bring separate Counts for PIP claims in the instant case, nor did they file separate complaints for PIP claims. Plaintiffs chose none of these options thereby binding each other.

Linehan's judicial admission relieves State Farm from otherwise having to prove that Linehan was a member of Krauss' household by showing she was economically dependent upon him. [FN32] Her judicial admission that she is a member of Krauss' household, evidenced in her complaint when she averred that she qualified "as [an] insured[ ] under the Krauss policies," binds Krauss and requires the dismissal of his PIP claim (Count I) because he then becomes disqualified under the "owned motor vehicle" exception in his policy. This Court dismisses Krauss' claim in Count I for PIP benefits.

> FN32. *Friedmann et. al. v. United States,* 107 F.Supp.2d 502, 510- 511 (N.J.Dist.Ct.2000) (holding that "unequivocal averments of fact ... [are] statements [that] constitute judicial admissions that are conclusively binding on the plaintiffs."); *Giannone v. United States Steel Corp.,* 238 F.2d 544, 547 (3d Cir.1956) (holding that "[j]udicial admissions ... are admissions in pleadings, stipulations etc. which do not have to be proven in the same litigation."); *Barnes v. Owens-Corning Fiberglas Corp.,* 201 F.3d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A00800

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

Page 7

815, 829 (6th Cir.2000) (holding that "[j]udicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.").

**II. Krauss' Alternative Request to Amend the Complaint is Denied Because Granting the Request Would Allow Krauss to Plead a Contrary, and Not Additional or New, Set of Facts than Pled in the Original Complaint.**

*1. State Farm's Contention.*

State Farm argues that, if this Court holds that Krauss is bound by Linehan's judicial admission, as this Court now does, that Krauss should not be allowed to amend the complaint to introduce "contradictory rather than supplementary facts." [FN33] State Farm acknowledges that Superior Court Civil Rule 15(a) envisions a liberal amendment policy unless there is "bad faith" on the part of the party seeking to amend. State Farm alleges "bad faith" on the part of Plaintiffs because they pled one set of facts in order to "facilitate their joint and mutual interest in obtaining the largest insurance recovery possible" but that Krauss now wants to plead a "contradictory" set of facts when it became apparent that the facts originally alleged in the original pleading would deny Krauss PIP benefits. [FN34]

> FN33. Def's Supp. Memo. at 6. Krauss, in his December 12, 2003 supplemental response, asked for leave to amend his complaint should the PIP claim be dismissed.

> FN34. Def's Supp. Memo. at 7.

*2. Krauss' Response.*

Krauss argues that he should be allowed to amend Count I of his complaint by excluding Linehan's averments from the amended complaint as to the PIP claim because of the liberal nature of Rule 15(a). Krauss contends that in the complaint "the averment was made by mistake, inadvertence and improvidently based upon the belief that the language was ambiguous." [FN35] Krauss argues

that a claimant should be able to amend his pleading, and the original pleading then becomes an evidentiary admission that may be refuted or explained by a party against whom it is used. [FN36]

> FN35. Pls' Supp. Resp. at 3.

> FN36. Pls' Supp. Resp. at 3.

*3. Discussion.*

*6 Krauss will not be allowed to amend his complaint because, under the particular circumstances of this case, to do so would permit him to abuse the pleading process and to plead a set of contradictory facts. A party is bound by what it states in its pleadings. [FN37] Admissions in a pleading are generally binding on the parties and factual statements in the pleadings are considered conclusive unless they have been amended or withdrawn. [FN38] In addition, when a pleading is "admitted as an admission against interest [a party] is entitled, if he or she can, to overcome by evidence the apparent inconsistency." [FN39] The claimant may endeavor to "show that the statements were inadvertently made, were not authorized by him or her, or were made under a mistake of fact; [i]n addition, a party may have the right to introduce other paragraphs which tend to destroy the admission in the paragraph offered by the adversary." [FN40]

> FN37. *Soo Line RR Co. v. St. Louis Southwestern Railway Co.*, 125 F.3d 481, 483 (7th Cir.1997) (holding that "judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible"); *see also Keller v. United States*, 58 F.3d 1194, 1198 (7th Cir.1995) (holding that "[j]udicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them"); *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir.1995) (holding that a "plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

Page 8

FN38. 29A Am Jur 2d, Evidence § 775 (1994).

FN39. *Id.* at § 775.

FN40. 29A Am Jur 2d, Evidence § 775 (1994).

Plaintiffs rely on *Patrick v. Williams* for the proposition that if the Court finds Linehan made a judicial admission in the joint complaint that the Court should "conclude that the averment was made by mistake, inadvertence and improvidently" and allow Krauss to amend the complaint by omitting Linehan's PIP claim. [FN41] However, in *Patrick,* the appeals court denied the defendant's appeal of the trial court's denial of leave by defendant's to amend their motion to amend. [FN42] The appeals court held that "defendants were bound by their solemn admissions" and "a party cannot create a genuine issue of material fact by offering evidence 'which contradicts prior judicial admissions.'" [FN43] This case seems more supportive of State Farm's position than that of Plaintiffs'.

FN41. Pls' Resp. Mem. at 3.

FN42. *Patrick v. Williams,* 402 S.E.2d 452 (N.C Ct. Apps.1991)

FN43. *Patrick,* 402 S.E.2d at 456.

Even though Rule 15(a) contemplates a liberal granting of a motion to amend, that permission is not automatic and the Court should factor in whether "justice so requires" the granting of leave to amend. In *Hess v. Carmine* this Court held that "leave to amend under Rule 15(a) should be freely given unless there is evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, prejudice, futility, or the like." [FN44] When there is evidence that the plaintiff was aware of "facts and fail[ed] to included them in the complaint [this circumstance] might give rise to the inference that the plaintiff was engaging in tactical maneuvers to force the court to consider various theories seriatim." [FN45]

FN44. *Hess v. Carmine,* 396 A.2d 173, 177 (Del.Super.Ct.1978) (citing *Foman v.*

*Davis,* 371 U.S. 178, 83 S.Ct. 227 (1962).

FN45. *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 599 (5th Cir.1981).

In *Ervin v. Vesnaver and Murray Transportation Co.,* upon which Plaintiffs also rely, leave was granted to amend a pleading where a defendant had filed an answer generally admitting negligence . [FN46] In *Ervin* a defendant was allowed to change an admission of generally being negligent to a denial when the Court found that he had not admitted to the specific allegations of negligence. *Ervin,* however, is distinguishable from the instant case. The *Ervin* Court gave great weight to the fact that three separate attorneys had represented the defendant. [FN47] Unlike the Plaintiffs in the instant case, the defendant in *Ervin* was not trying to plead completely contradictory facts, nor was he acting upon a specific litigation strategy formulated with his attorney.

FN46. Pls' Supp. Resp. at 3. (citing *Ervin v. Vesnaver and Murray Transportation Co.,* 2000 LEXIS 312 (Del.Super.Ct.)

FN47. *Ervin,* 2000 Del.Super. LEXIS 312 at 1.

*7 There are apparently no cases in Delaware exactly on point with the instant case wherein the plaintiff seeks to amend the complaint to plead contradictory facts; however, there are cases in which defendants have tried to amend their answers to plead contradictory facts. In *Gould v. American-Hawaiian Steamship Co.,* the United States District Court for the District of Delaware held that

"while Rule 15(a) stress liberality to guarantee that litigants are afforded the opportunity to respond to new or unexpected developments, the rule cannot be utilized to sanction a defendant's taking diverse and, in fact, conflicting postures on the facts to facilitate multiple and contradictory defenses." [FN48]

FN48. *Gould et. al. v. American-Hawaiian Steamship Co. et. al.,* 55 F.R.D. 475 (D.Del.1972) (in which defendants' motion to amend its answer was denied because the Court held that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

"after being represented by experienced and qualified counsel for over two years ... these defendants have obtained new counsel [and][h]aving seen one legal theory rejected by this Court ... are attempting to alter their factual stance to support an alternative legal theory).

The Court concluded that "the summary judgment motion would be a non-productive tool" if defendants were permitted to amend answers in such a manner. [FN49] Additionally, the Court of Chancery has allowed a defendant leave to amend its answer, holding that to oppose successfully the motion to amend the non-movant "must show undue or demonstrative prejudice or a bad faith motive by the [party seeking to amend]." [FN50] The Court of Chancery found that a showing by the plaintiff that the defendant "knew or should have known the answer was erroneous at the time it answered the complaint" would have been sufficient to defeat the motion to amend . [FN51] The Court held that when a party's request to amend its pleading is made " 'disingenuously,' which amounts to saying it does so in bad faith," the result would "manipulate the course of litigation by adding defenses or amending to the extent that the movant contradicted its legal position on the same facts." [FN52]

FN49. *Gould*, 55 F.R.D. at 477.

FN50. *Gotham Partners v. Hallwood Realty*, 1999 Del. Ch. LEXIS 204 at *12 (Del. Ch.) (holding that a defendant would be allowed to amend its answer in an action seeking access to its books and records when that action had been settled but the plaintiff found that specific, earlier admission helpful to its case in another related action).

FN51. *Gotham Partners*, 1999 Del. Ch. LEXIS at *1.

FN52. *Gotham Partners*, 1999 Del. Ch. LEXIS at *7, *10.

This Court does not find that "justice so requires" allowing Krauss to amend his complaint because the purported mistake in averments was in fact a calculated and tactical decision by Plaintiffs, in the words of State Farm, to "facilitate their joint and mutual interest in obtaining the largest insurance recovery possible." [FN53] Plaintiffs' counsel represented to this Court at oral argument that counsel had conferred at some length with Krauss and Linehan about the relative potential conflicts before filing the complaint. Furthermore, Plaintiffs cannot show that the original allegations were inadvertently made, were not authorized by him or her, or were made under a mistake of fact, nor have they sufficiently shown that there are paragraphs which tend to destroy the admission in the paragraph offered by the adversary.

FN53. Def's Supp. Memo. at 7.

Allowing Plaintiffs to amend their complaint to aver contradictory facts, as opposed to averring a newly discovered fact or an alternative theory of the case, would be an attempt to "manipulate the course of litigation." [FN54] Superior Court Civil Rule 8(e)(2) permits a party to set forth alternative theories of liability or defenses; however, pleading contradictory facts when the legal theory supported by the original facts is discounted on a motion to dismiss or motion for summary judgment would, to paraphrase the Court in *Gould,* undercut the finality of those motions. [FN55] This Court will not grant leave for Krauss to amend his complaint in light of the withdrawal of Linehan's PIP claim because Krauss and Linehan tactically chose to file a joint complaint and therefore each is bound by the other's averments.

FN54. *Gotham Partners*, 1999 Del. Ch. LEXIS at *10.

FN55. *Cf. Dussouy*, 660 F.2d at 599 (holding that "where a movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate").

III. Plaintiffs' Claims for "Unfair Practices in Insurance" and Punitive Damages are Dismissed Because There are No Plausible Circumstances capable of Proof Alleged That State Farm Withheld Insurance Benefits in a Manner That Was "Clearly Without Any Reasonable Justification."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

Page 10

*1. State Farm's Contentions.*

**\*8** State Farm argues that both Plaintiffs' "Unfair Practices in Insurance" claims and punitive damages claims are "wholly contingent upon a finding that State Farm wrongly withheld PIP or UIM benefits." [FN56] State Farm contends that the bad faith claims in this lawsuit exist "in a vacuum" because Plaintiffs have alleged bad faith or unfair practices in the (now settled) underlying case rather than in the instant case. [FN57] State Farm argues that even if the claims of bad faith are properly alleged in the instant case, Plaintiffs must show that State Farm's denial of benefits was "clearly without any reasonable justification." [FN58] State Farm contends that there is an absence of facts in the complaint to support the claims of "Unfair Practices in Insurance" and punitive damages.

FN56. Def's Mot. at n. 1.

FN57. Def's Reply in Support of Its Rule 12(b) Motion to Dismiss at 2-4 (hereinafter "Def's Reply"). State Farm asserts that if it is shown that it has wrongly denied benefits to Plaintiffs in the underlying case, then Plaintiffs should have brought the claim in that case. This Court need not reach this issue.

FN58. *Id.*

*2. Plaintiffs' Response.*

Plaintiffs contend that State Farm has engaged in "Unfair Practices in Insurance" and bad faith in the underlying case and the instant case by not tendering the policy limits of Whedbee's policy. [FN59] Plaintiffs claim that State Farm "has wrongly denied the Plaintiffs request for payment." [FN60] This claim is based on Plaintiffs' contention that State Farm's policy language was ambiguous and that State Farm "failed to properly interpret its own policy referencing only a portion of its policy, while ignoring other controlling and/or conflicting portions of the same policy." [FN61]

FN59. Pls' Compl. at ¶¶ 20,26,28-29; Pls' Resp. at n. 1.

FN60. Pls' Compl. at ¶ 15; Pls' Letter of January 30, 2004.

FN61. Pls' Compl. at ¶ 18. Plaintiffs have not explained how State Farm's policy language is ambiguous. In their complaint, Plaintiffs quoted only the emphasized words from the policies in question as an example of how the language was ambiguous. In footnote 2 of Plaintiffs' response, Plaintiffs ask, "Does the language of paragraph 2 mean: a) that the vehicle IS NOT to be owned by YOU; b) IS NOT to be owned by any MEMBER OF YOUR HOUSEHOLD; c) IS NOT to be FURNISHED FOR THE REGULAR USE OF YOU; and/or d) IS NOT to be FURNISHED FOR THE REGULAR USE OF ANY MEMBER OF YOUR HOUSEHOLD?" (Emphasis in original). This Court finds that this reading of the paragraph, which Plaintiffs claim was unclear to them, is not ambiguous.

*3. Discussion.*

The bad faith and "Unfair Practice in Insurance" claims are dismissed because even accepting all factual allegations of the complaint as true there is no evidence alleged that State Farm withheld insurance benefits in a manner that was "clearly without any reasonable justification." The Delaware Supreme Court explained in *Tackett v. State Farm* that a claim for bad faith must "show that the insurer's denial of benefits was 'clearly without any reasonable justification'." [FN62] The *Tackett* court held that "[t]he processing of a claim by an insurer encompasses the making of a judgment on at least two levels: (a) determining whether a claim is within the policy coverage; and (b) where damages are not liquidated, determining the amount of compensation." [FN63] A mere delay is not evidence of bad faith without a showing of "willful or malicious" conduct by the insurer. [FN64] A delay in payment due to a "tough stance" policy alone is not sufficient to support claims for punitive damages. [FN65]

FN62. *Tackett v. State Farm Mutual Fire and Casualty Insurance Company,* 653 A.2d 264 (Del.1994) (holding that "[a]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2830889 (Del.Super.)
(Cite as: 2004 WL 2830889 (Del.Super.))

Page 11

lack of good faith, or the presence of bad faith, is actionable where the insured can show that the insurer's denial of benefits was 'clearly without any reasonable justification'").

FN63. *Tackett* 653 A.2d at 265-266.

FN64. *Id.* at 266.

FN65. *Id.* at 266. (quoting *Hayseeds, Inc. v. State Farm Fire and Cas.*, 352 S.E.2d 73, 80-81 (1986)).

In the instant case, the PIP benefits were denied by State Farm on the basis that Krauss and Linehan were not eligible for PIP benefits because of the "owned motor vehicle" exception in Krauss' policies. [FN66] As the court in *Tackett* held, an insurer, in processing a claim, must make a determination of whether a claim is within the policy coverage and this judgment is not dispositive of bad faith unless it is shown that it was made "clearly without any reasonable justification." The UIM coverage was denied because at the time when Plaintiffs sought the coverage, the UIM claims were not ripe. The UIM claims only matured when the underlying case settled for policy limits in February 2004.

FN66. Def's Mot. to Dismiss at 3.

*9 Plaintiffs' claims for "Unfair Practices in Insurance" and punitive damages claims are based on conclusory statements without any specific averments to support their claims. Plaintiffs generally aver that the language in State Farms insurance policy was ambiguous and that State Farm "failed to properly interpret its own policy." [FN67] In the complaint, Plaintiffs aver that State Farm's conduct is in violation of 18 *Del. C.* § 2301, Unfair Practices in the Insurance Business, by incorporating the statute into the complaint. [FN68] While Delaware is a notice pleading jurisdiction, the Supreme Court in *Tackett* held that a plaintiff must show that the insurance company withheld benefits "clearly without any reasonable justification." This showing is lacking in the instant complaint.

FN67. Pls' Compl. at ¶ 18.

FN68. Pls' Compl. at ¶ 22.

In paragraph 26 of the complaint, Plaintiffs attempt to shift the burden of proof onto State Farm to show that it had "any reasonable basis for its failure to tender the policy limits of the tortfeasors's [Donna Whedbee] policy" in the underlying claim; however, it is Plaintiffs who must show that State Farm did not have a reasonable basis for withholding benefits. Plaintiffs did attempt to submit to the Court the deposition of Robert Whedbee to support their argument; [FN69] however, this submission was made after the close of the briefing schedule on the motion to dismiss. Further, Plaintiffs apparently expected the Court to read through the deposition and itself determine the facts supposedly supportive of Plaintiffs' claims in Counts II and IV of the complaint; the sixty-eight page deposition was submitted *in toto* to the Court without reference by Plaintiffs to any specific passages. For these two reasons, this Court declines to include the deposition as part of the record for the purpose of this motion to dismiss.

FN69. Pls' Letter of January 30, 2004 to the Court with attachment.

There are "no plausible circumstances capable of proof under the complaint" in which it is shown that State Farm withheld benefits "clearly without any reasonable justification;" therefore, this Court grants State Farms motion to dismiss Counts II and IV, the "Unfair Practices in Insurance" claims and the punitive damages claims.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Counts I, II and IV is GRANTED.

IT IS SO ORDERED.

2004 WL 2830889 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, certify that on this 1st day of February, 2005, I caused true and correct copies of the **Brief in Support of Motion of Fleetboston Financial Corporation, KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr., for a Stay Pending Appeal of the December 3, 2004 Bench Ruling Denying Defendants' Motion to Dismiss and Conversion of Defendants' Motion to Dismiss to One for Summary Judgment** to be served on the following parties in the manner indicated:

## VIA HAND-DELIVERY

Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

## VIA U.S. FIRST-CLASS MAIL

Guy Donatelli
Scott R. Withers
Lamb McErlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

_____
Denise S. Kraft (#2778)

WLM_501271_1/DKRAFT

**A00806**