# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| FLEETBOSTON FINANCIAL CORPORATION, KMR MANAGEMENT, INC., ROBERT RIESNER, and WARING S. JUSTIS, JR., <br><br>      Appellants, <br><br>    v. <br><br>NHI, INC., <br><br>      Appellee. | Civil Action No. 05-004 (SLR) |

## VOLUME IV

## APPENDIX TO
## OPENING BRIEF OF APPELLANTS FLEETBOSTON
## FINANCIAL CORPORATION, KMR MANAGEMENT, INC.,
## ROBERT RIESNER AND WARING S. JUSTIS, JR.

Stuart M. Brown, Esq. (No. 4050)
Denise Seastone Kraft, Esq. (No. 2778)
William R. Firth, III, Esq. (No. 4356)
EDWARDS & ANGELL, LLP
919 N. Market Street, 15th Floor
Wilmington, DE 19801
Telephone (302) 777-7770
Facsimile (302) 777-7263

*Attorneys for FleetBoston Financial
Corporation, KMR Management, Inc.,
Robert Riesner and Waring S. Justis, Jr.*

Dated: October 10, 2005

WLM_502925_1/JGREGA

# **TABLE OF CONTENTS**

VOLUME I

Complaint [D.I. 1]..................................................................................................A00001

    Exhibit A – Consulting Agreement dated 10/19/00.................................A00030

    Exhibit B – Preference Analysis .............................................................A00037

Motion to Dismiss by Defendant FleetBoston Financial Corporation [D.I. 12]...................A00039

    Memorandum of Law in Support of the Motion to Dismiss by
    Defendant FleetBoston Financial Corporation ......................................A00040

    Affidavit of Stuart M. Brown.................................................................A00049

    Exhibit A – Pennsylvania Department of State Entity Details
    Regarding KMR Management, Inc...........................................................A00051

    Exhibit B – Delaware Secretary of State Merger Documents
    Regarding FleetBoston Financial Corporation .......................................A00053

Plaintiff's First Amended Complaint [D.I. 17].....................................................A00078

Plaintiff's Answer to Motion to Dismiss of Defendant, FleetBoston
    Financial Corporation [D.I. 17] ..............................................................A00119

    Exhibit A – Memorandum in Support of Plaintiff's Answer
    to Motion to Dismiss of Defendant, FleetBoston Financial
    Corporation .............................................................................................A00122

    Exhibit B – Blackline of Plaintiff's First Amended Complaint...............A00125

    Exhibit C – Plaintiff's First Amended Complaint ..................................A00165

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [D.I. 26]...................A00208

Memorandum of Law in Support of Defendants' Motion to Dismiss
    Plaintiff's First Amended Complaint [D.I. 27] .......................................A00212

    Exhibit A – Agreement dated 2/26/02 between Mercantile-Safe
    Deposit and Trust Company and Nanticoke Homes, Inc., et al. ..............A00232

    Exhibit B – Consent Order Approving Interim Agreement
    for Use of Cash Collateral and Adequate Protection...............................A00251

    Unreported Cases....................................................................................A00271

WLM_502925_1/JGREGA

VOLUME II

Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants'
   Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] .................................. A00293

Defendants' Reply Brief in Response to Answering Brief of
   Plaintiff NHI, Inc. in Opposition to Defendants' Motion
   to Dismiss Plaintiff's Amended Complaint [D.I. 30] ............................................... A00314

     Unreported Decisions........................................................................................ A00326

Letter dated October 8, 2004 from the Honorable Peter J. Walsh
   to Counsel [D.I. 32] ................................................................................................ A00345

Certification of Counsel for Plaintiff NHI, Inc. [D.I. 34] ...................................................... A00348

Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D.I. 35].......................... A00355

Memorandum of Law in Support of Motion to Strike Certification
   of Counsel for Plaintiff NHI, Inc. [D.I. 36] .......................................................... A00377

     Exhibit 1 – Certification of Counsel for Plaintiff NHI, Inc. .................................... A00389

     Exhibit 2 – Notice of Agenda of Matters Scheduled for
     Hearing on October 19, 2004 at 10:30 a.m. ................................................. A00396

     Unreported Decisions........................................................................................ A00403

Plaintiff's Answer to Motion to Strike Certification of Counsel
   for Plaintiff NHI, Inc. [D.I. 39]........................................................................... A00409

Defendants' Reply Brief in Response to Plaintiff's Answer to
   Defendants' Motion to Strike Certification of Counsel
   for Plaintiff NHI, Inc. [D.I. 41]........................................................................... A00415

Memorandum of Law of Plaintiff NHI, Inc. in Opposition to
   Defendants' Motion to Strike Certification of Counsel
   for Plaintiff NHI, Inc. [D.I. 40]........................................................................... A00437

     Exhibit A – Request for Production of Documents
     Addressed to Defendants FleetBoston Financial
     Corporation, KMR Management, Inc., Robert
     Riesner and Waring Justis, Jr. of NHI, Inc. and
     Interrogatories Addressed to Defendants FleetBoston
     Financial Corporation, KMR Management, Inc., Robert
     Riesner and Waring Justis, Jr. of NHI, Inc. ............................................... A00449

Exhibit B – Affidavit of John M. Mervine, Jr. in
Support of Plaintiff's Supplemental Response to
Defendants' Motion to Dismiss ............................................................A00463

Plaintiff's Second Amended Complaint [D.I. 45] ............................................A00470

    Exhibit A – Consulting Agreement dated 10/19/00 between
    Nanticoke Homes, Inc., et al. and KMR Management, Inc., et al. ...........A00510

    Exhibit B – Preference Analysis ..............................................................A00517

Notice of Motion for Leave to Appeal [D.I. 46]...............................................A00519

Motion for Leave to Appeal [D.I. 46].................................................................A00521

Notice of Appeal Pursuant to Federal Bankruptcy Procedures
8001 and 28 U.S.C. Section 158(a)(3) [D.I. 47] .........................................A00532

Designation of the Record and Statement of Issues Pursuant
to (A) Federal Rule of Appellate Procedure 6(a) and
(B) Bankruptcy Rule 8006 [D.I. 49] .............................................................A00535

Answer of Plaintiff NHI, Inc. in Opposition to Defendants'
Motion for Leave to Appeal [D.I. 50].............................................................A00541

    Exhibit A – Transcript of December 3, 2004 Hearing
    before the Honorable Peter J. Walsh........................................................A00551

    Exhibit B – 1998 Del. Ch. LEXIS 115 (*Siegman, et al.*
    *v. Palomar Medical Technologies, Inc., et al.)* .......................................A00562

    Exhibit C – 1994 Del. Ch. LEXIS 20 (*Coates International,*
    *Ltd., et al. v. DeMott, et al.)*..................................................................A00572

VOLUME III

Memorandum of Law in Support of Defendants' Motion to
Dismiss Plaintiff's Second Amended Complaint [D.I. 52]......................A00582

    Unreported Cases ....................................................................................A00608

    Exhibit A – Agreement dated 2/26/02 between Mercantile-Safe
    Deposit and Trust Company and Nanticoke Homes, Inc., et al. ...............A00625

    Exhibit B – Consent Order Approving Interim Agreement
    for Use of Cash Collateral and Adequate Protection ................................A00645

WLM_502925_1/JGREGA

Memorandum of Law of Plaintiff NHI, Inc. in Opposition to
    Defendants' Motion to Dismiss Plaintiff's Second
    Amended Complaint [D.I. 54] ............................................................A00675

    Exhibit A – 1999 Del. Super. LEXIS 468 (*Tucker v. Albun, Inc.*) ............A00694

Defendants' Reply Brief in Response to Memorandum of Law of
    Plaintiff NHI, Inc. in Opposition to Defendants' Motion to
    Dismiss Plaintiff's Second Amended Complaint [D.I. 60].......................A00709

    Unreported Cases ........................................................................A00724

Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion
    for Stay Pending Appeal [D.I. 62] ..................................................A00745

Brief in Reply to Brief of Plaintiff's NHI, Inc. in Opposition to
    Defendant's Motion for a Stay Pending Appeal [D.I. 63] .......................A00764

    Exhibit 1 - Transcript of December 3, 2004 Hearing
    before the Honorable Peter J. Walsh.................................................A00783

    Unreported Cases ........................................................................A00794

VOLUME IV

Memorandum Opinion [D.I. 65]...........................................................A00807

Order [D.I. 66] ................................................................................A00830

Notice of Motion for Leave to Appeal [D.I. 68]........................................A00831

Motion for Leave to Appeal [D.I. 68] ....................................................A00833

    Exhibit A – Order..........................................................................A00842

    Exhibit B – Memorandum Opinion ....................................................A00844

Motion of FleetBoston Financial Corporation, KMR Management,
    Inc., Robert Riesner and Waring S. Justis, Jr. for a Stay
    Pending Appeal of the February 11, 2005 Order and
    Memorandum Opinion [D.I. 69]........................................................A00872

Brief in Support of Motion of FleetBoston Financial Corporation,
    KMR Management, Inc., Robert Riesner and Waring S. Justis,
    Jr. for a Stay Pending Appeal of the February 11, 2005 Order
    and Memorandum Opinion Denying Defendants' Motion to
    Dismiss the Second Amended Complaint [D.I. 70].................................A00878

    Unreported Cases ........................................................................A00897

Notice of Appeal Pursuant to Bankruptcy Procedures 8001 and
    28 U.S.C. Section 158(a)(3) [D.I. 156]......................................................A00908

        Exhibit A – Order.................................................................................A00910

        Exhibit B – Memorandum Opinion .......................................................A00912

Interim Agreement for Use of Cash Collateral and Adequate
    Protection [Case D.I. 34] ....................................................................A00940

Transcript of December 3, 2004 Hearing before the Honorable
    Peter J. Walsh....................................................................................A00957

Defendants' Motion to Dismiss Plaintiff's Second Amended
    Complaint [D.I. 51].............................................................................A00967

Release Agreement dated October 30, 2003 ....................................................A00971

Nanticoke Homes, Inc. Voluntary Chapter 11 Petition ......................................A00979

Addendum Compilation of Appellee Agency Pleading Allegations ....................A00989

WLM_502925_1/JGREGA

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | ) Chapter 11 |
| | ) |
| NHI, INC., a Delaware | ) Case No. 02-10651(PJW) |
| Corporation, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| NHI, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No. 04-52879(PJW) |
| | ) |
| FLEETBOSTON FINANCIAL | ) |
| CORPORATION, KMR MANAGEMENT, | ) |
| INC., ROBERT RIESNER and | ) |
| WARING S. JUSTIS, JR., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

James C. Sargent
Guy A. Donatelli
Scot R. Withers
Lamb McErlane PC
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565

Stephen W. Spence
Phillips Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Counsel to NHI, Inc.

Stuart M. Brown
Denise Seastone Kraft
Mark D. Olivere
Edwards & Angell, LLP
919 Market Street, 14th Floor
Wilmington, DE 19801

Counsel for Defendants
FleetBoston Financial
Corporation, KMR Management,
Inc., Robert Reisner and
Waring S. Justis

Dated: February 11, 2005

Docket No. 65
Date 02/11/05

2

WALSH, J.

This opinion is with respect to defendants' motion (Doc. # 51) to dismiss NHI, Inc.'s second amended complaint (Doc. # 45). For the reasons set forth below, the Court will deny the motion.

### BACKGROUND

NHI, Inc. ("NHI") was the first pre-manufactured home-builder in Delaware and conducted a successful manufacturing business for more than thirty years. Over time, NHI and its affiliated companies and related entities greatly increased their indebtedness to their bank, Mercantile Safe Deposit and Trust Company ("Mercantile"). All outstanding debt owed to Mercantile by NHI and its affiliated companies was cross-collateralized.

As of late 1999, Mercantile considered NHI to be in default under various technical, non-monetary covenants of the loans. In August 2000, NHI learned that Mercantile was considering calling the loans as a result of these defaults. As an alternative to calling the loans, Mercantile insisted on October 6, 2000 that NHI retain a management consultant and strongly suggested defendants KMR Management, Inc. ("KMR"), Robert Riesner ("Riesner") and Waring S. Justis ("Justis") (collectively, "Defendants") be hired in this role. According to NHI, Scott Krieger ("Krieger"), Mercantile's workout manager, assured NHI that KMR, Riesner and Justis were "turn-around" consultants, as opposed to "liquidation guys." (Doc. # 45, ¶ 25.)

A00808

On October 19, 2000, NHI entered into a consulting agreement with KMR, Riesner and Justis. Under the consulting agreement, KMR, Riesner and Justis agreed to provide NHI with professional management for the purposes of stabilizing NHI's financial condition and perpetuating NHI's business. KMR, Riesner and Justis undertook to act as fiduciaries, assumed positions of responsibility and undertook a duty of loyalty with respect to NHI as NHI's agents. KMR, Riesner, and Justis further assumed the complete control, responsibility and authority for managing the business of NHI. In return, NHI agreed to pay KMR specified hourly rates for services rendered.

NHI did not survive. On March 1, 2002, it filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), and NHI's business was subsequently liquidated. On February 27, 2004, NHI commenced the instant action seeking to recover losses suffered as a result of Defendants' alleged failure to comply with the terms set forth in the consulting agreement and for other alleged wrongdoings.[1]

---

[1]
In addition to Defendants, the complaint names FleetBoston Financial Corporation ("Fleet") as a defendant. According to the complaint, KMR was a wholly-owned subsidiary of Progress Financial Corporation who, NHI alleges, participated in the day-to-day running of NHI with Riesner and Justis. Fleet is the successor to Progress Financial Corporation.

4

The complaint alleges that after assuming control of NHI, KMR, Riesner, and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the consulting agreement and in violation of their fiduciary duties and obligations of loyalty. The allegations by NHI contain numerous statements of actions taken by Defendants in which they sacrificed NHI's interests to the benefit of both Mercantile and KMR. Such actions, which NHI alleges included a failure to pay vendors and suppliers, resulted in numerous lawsuits against NHI filed by vendors, suppliers and customers beginning in September 2001. As a result, NHI asserts that it was unable to secure supplies and materials from vendors, which resulted in NHI having to resort to alternate and more expensive sources of supples and materials.

NHI alleges that by February 2002, as a result of the gross mismanagement of it by KMR, Riesner and Justis, it was in such dire financial straits that it was not able to refinance or sell its operations as a going concern. On February 6, 2002, Mercantile demanded payment on all of NHI's loans and lines of credit. NHI terminated its manufacturing operations on February 19, 2002. Thereafter, on February 26, 2002, the members of the founding family of NHI, the Mervines, allegedly found themselves in such financial distress that they entered into an agreement with Mercantile that over the following twenty months would settle NHI's

5

debt with Mercantile, satisfy Mercantile's liens on the assets of NHI and the Mervine family members' personal residences, and release Mercantile from all liability to NHI.

On June 1, 2004, Defendants filed a motion to dismiss the original complaint. NHI responded to the motion and attached an amended complaint to its response which by stipulation of the parties was deemed filed as of July 8, 2004.

Defendants filed a motion to dismiss the first amended complaint on August 5, 2004 arguing, among other things, that the action was barred by releases granted to Mercantile and its agents. According to Defendants, NHI's first amended complaint sufficiently alleged that Defendants were agents of Mercantile and were thereby covered by the releases. At a status conference hearing held on December 3, 2004, the Court heard argument regarding Defendants' position that the allegations in the first amended complaint constituted a statement affirming Defendants' agency status. NHI represented that it was not its intention to allege that Defendants were agents of Mercantile. Accordingly, the Court permitted NHI to file a second amended complaint to delete the paragraph that the Court found alleged an agency relationship. On December 10, 2004, NHI filed the second amended complaint (the "Complaint").

The Complaint contains counts for breach of contract, breach of covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, fraud, waste of corporate

A00811

6

assets, tortious interference with contract and prospective business advantage, fraudulent conveyances pursuant to federal and state law, and avoidance of preferences pursuant to Bankruptcy Code § 547.

Defendants filed the instant motion arguing that the Complaint should be dismissed for the following reasons: (1) as pled by NHI, Defendants were acting as agents of Mercantile such that Defendants are included in certain releases granted to Mercantile pre-petition and post-petition; (2) NHI's representations in the chapter case cash collateral agreement preclude the instant action because they constitute judicial admissions so that NHI is judicially estopped from maintaining this action; and (3) the preference action is not properly pled against Fleet, Riesner or Justis. NHI contests all of these assertions.

DISCUSSION

Releases

Defendants argue that two releases shield them from liability. The first is contained in the pre-petition agreement the Mervines entered into with Mercantile on February 26, 2002. It includes the following provision:

> In order to induce [Mercantile] to enter into this agreement, each of the <u>Obligors forever releases and discharges [Mercantile] and [Mercantile]'s officers, directors, employees, attorneys, and agents</u> (collectively, the "Released Parties") from any and all claims, causes of action, suits and damages (including claims for attorneys' fees and costs) which

> any of the Obligors, jointly or severally,
> ever had or may now have of any kind or nature
> against any of the Released Parties arising
> out of or related in any way to any of the
> Loans, the Loan Documents, the Obligations or
> the Collateral or the administration thereof
> or this Agreement, whether known or unknown,
> including but not limited to any and all
> claims based upon or relying on any
> allegations or assertions of duress,
> illegality, unconscionability, bad faith,
> breach of contract, regulatory violations,
> improper control of the companies or their
> affairs, negligence, misconduct, or any other
> tort, contract or regulatory claim of any kind
> or nature. This release is intended to be
> final, irrevocable and immediate and is not
> subject to the satisfaction of any conditions
> of any kind.

(Doc. # 52, Exh. A, § 20, pp. 11-12 (emphasis added).) The term

"Obligors" is defined in the agreement to include NHI. (Id. at 1.)

The second release that allegedly shields Mercantile and its agents

is nearly identical to the above provision and is contained in a

post-petition agreement entered into by NHI and Mercantile on

October 30, 2003. (Doc. # 52, Exh. C, § 2, p. 1.) Thus, if

reading NHI's pleadings in the light most favorable to it leads to

the inescapable conclusion that Defendants were Mercantile's

agents, Defendants would be covered by the releases and this action

should be dismissed.

"A motion to dismiss pursuant to [Federal Rule of Civil

Procedure] 12(b)(6) may be granted only if, accepting all well-

pleaded allegations in the complaint as true and viewing them in

the light most favorable to plaintiff, the plaintiff is not

8

entitled to relief." <u>Cowell v. Palmer Township</u>, 263 F.3d 286, 290 (3d Cir. 2001) (citation omitted). The Court should not grant a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45- 46, 78 S.Ct. 99, 102 (1957). In <u>Conley</u>, the Supreme Court specified that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>Id.</u> at 48.

Defendants assert that "[t]he first issue to be decided by the Court in this Motion is whether [NHI] plead [sic] that Defendants were Mercantile's agents. Clearly, [NHI] has pled agency." (Doc. # 60, p. 9.) According to Defendants, the Complaint contains numerous allegations that amount to an assertion by NHI that Defendants were acting as agents for Mercantile. Defendants' motion states its case as follows:

> As alleged in the [Complaint], KMR, Riesner and Justis did not operate independently and for the benefit of NHI. Instead, KMR, Riesner and Justis acted as Mercantile's agents. Specifically, [NHI] in its [Complaint] alleges that:[2]

---

[2]

Defendants bullet points appear to be quotations from the Complaint but they are not. As noted in the footnotes below, in many respects the bullet points misstate the allegations of the

- KMR, Riesner and Justis made their primary priorities Mercantile's collateral realization and KMR's collection of exorbitant and extorted consulting fees, while at the same time relegating NHI's business operations and viability as a going concern to distant secondary priorities, in direct contravention of the Consulting Agreement. [Second Amended Complaint ¶ 32.][3]

- Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement. [Second Amended Complaint ¶ 33.]

- KMR, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. In collaboration with Krieger (Mercantile's workout manager),

---

Complaint.

[3]

The relevant portion of the Complaint actually reads:
    KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for KMR, while at the same time relegating NHI's business operations and viability as a going concern to distant secondary priorities, in direct contravention of the Consulting Agreement.
(Doc. # 45, ¶ 32.)

A00815

KMR, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. [Second Amended Complaint ¶ 46.]

• At the same time, although NHI was still only in technical default with Mercantile, KMR, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. According to NHI, it was apparent that KMR, Riesner and Justis were not concerned with NHI's ability to continue as a going concern – rather, the sole concern of KMR, Riesner and Justis was that Mercantile and KMR be paid. [Second Amended Complaint ¶ 47.][4]

---

[4] The relevant portion of the Complaint actually reads:
At the same time, although NHI was still only in technical default with Mercantile, KMR, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. It was apparent that KMR, Riesner and Justis were not concerned with NHI's ability to continue as a going concern – rather, the sole concern of KMR, Riesner and Justis was that Mercantile

- The [Complaint] alleges that from October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; made decisions which maximized cash flows to Mercantile and KMR, while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting Agreement; breached their fiduciary duty and duty of loyalty by - rather than providing "turn around" management - devising a stealth plan to strip NHI of all cash and assets before running NHI into liquidation, all for the sole benefit and at the direction of Mercantile, and to the extreme detriment and prejudice of NHI and its shareholders and creditors. [Second Amended Complaint ¶ 59.][5]

---

and KMR be paid.
(Doc. #45, ¶ 47.)

[5]

Significantly, there is no mention in the Complaint that any of the activity was at the direction of Mercantile.  Similarly, the Complaint actually alleges that the activity was for the sole benefit of Mercantile, KMR, Riesner and Justis.  The relevant portion of the Complaint actually reads:

From October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; made decisions which maximized cash flows to Mercantile and KMR while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting

A00817

- KMR, Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of **stripping assets in** satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated **for the benefit of Mercantile** rather than turning the company around.   [Second Amended Complaint ¶ 103.][6]

- Mercantile insisted on NHI hiring KMR, and then KMR placed NHI into an insolvent condition in a fashion designed to **protect only Mercantile.** [Second Amended Complaint ¶¶ 104, 111.][7]

---

Agreement; breached their fiduciary duty and duty of loyalty by - rather than providing "turn around" management - devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis, and to the extreme detriment and prejudice of NHI and its shareholders and creditors.
(Doc. #45, ¶ 59.)

[6]

The relevant portion of the Complaint actually reads:
On information and belief, KMR through Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around, as represented.
(Doc. #45, ¶ 103.)

[7]

The relevant portion of the Complaint actually reads:
KMR, Riesner, and Justis took steps to implement their fraudulent purpose including:

13

> • KMR, Riesner and Justis engaged
> in a scheme to waste the assets
> of NHI in order to liquidate it
> **for the benefit of Mercantile.**
> [Second Amended Complaint ¶
> 110.][8]

(Doc. # 52, pp. 6-7 (emphasis in original).)

From these paraphrased allegations of the Complaint,

Defendants argue that the Complaint alleges that Defendants were

> (1) Mercantile insisting on NHI's hiring KMR;
> (2) Riesner and Justis knowingly failing to
> take any action which would permit NHI to
> continue as a going concern; (3) placing
> Justis in a position to perform the duties
> which a Chief Executive Officer and Chief
> Operating Officer would perform without any
> intention of having him act in the best
> interests of NHI; (4) the making of a series
> of management decisions by KMR, Riesner and
> Justis, which had the effect of running down
> NHI's business; (5) insisting on the surrender
> of voting rights of NHI's shareholders; (6)
> refusing to supply the NHI Board of Directors
> with financial information about the company
> or to involve it in any way in its present
> operations; (7) placing NHI into an insolvent
> condition in a fashion designed to protect
> only Mercantile; and (8) siphoning off
> approximately $1.9 million to KMR in fees
> rather that [sic] utilizing those assets to
> assist NHI's business operations.

(Doc. # 45, ¶¶ 104, 111.)

[8]

The relevant portion of the Complaint actually provides:
> On information and belief, KMR through Riesner
> and Justis engaged in a scheme to waste the
> assets of NHI to the point where NHI could
> only be liquidated for the benefit of
> Mercantile.

(Doc. # 45, ¶ 110.)

A00819

Mercantile's agents and are thereby protected by the releases provided to Mercantile and its agents. Defendants present their position as follows:

> Here, the scope of the release and the released parties is unambiguous. The Debtor released Mercantile **and its agents**. The Debtor in the [Complaint] repeatedly alleges in paragraph after paragraph that Defendants acted as Mercantile's agents in collaboration with Krieger (Mercantile's workout manager), by consulting with Mercantile on a daily basis, acting for Mercantile's benefit, focusing on short-term returns to Mercantile, making their primary priorities Mercantile's collateral realization, made decisions which maximized cash flows to Mercantile, all in a manner designed to protect Mercantile. [Second Amended Complaint ¶¶ 32, 33, 47, 59, 104, 110, 111]. . . . For the purpose of the Motion to Dismiss, the Court must take such allegations of agency as true.

(Doc. # 52, pp. 20-21 (emphasis in original).) Defendants amplify this position with legal authority in their reply as follows:

> The allegations in NHI's [Complaint] clearly establish, if such allegations are taken as true, that the Defendants had "the power to act on behalf of the principal (Mercantile)." J.E. Rhoads & Sons, Inc., 1988 WL 32012 at *4. NHI's claims against the Defendants are premised on the very notion that they acted "at the behest and for the benefit and for the benefit of the principal (Mercantile)." J.E. Rhoads & Sons, Inc., 1988 WL 32012 at *4.

(Doc. # 60, p. 6.)

In my view, Defendants' conclusion that the Complaint alleges an agency relationship is a misapplication of the law and the facts. I start with a brief statement of the law.

A00820

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." _Fisher v. Townsends, Inc._, 695 A.2d 53, 57-58 (Del. 1997) (citations omitted). "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." _Sutter Opportunity Fund 2 LLC v. Cede & Co._, 838 A.2d 1123, 1128 (Del. Ch. 2003) (quoting Restatement (First) of Agency § 1(1) (1933)). "The principal must manifest, by words or conduct, that the agent shall work for him. . . . The right to control the conduct of an agent is the test of agency." _J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc._, 1988 WL 32012, at *4 (Del. Super. Ct. March 30, 1988) (citations omitted).

As mentioned above, at this stage of the proceedings the Court must not only, as Defendants assert, accept the allegations as true, it must also "view[] them in the light most favorable to [NHI] . . . ." _Cowell_, 263 F.3d at 290. Applying these standards to the allegations in the Complaint precludes Defendants' request for dismissal. The plain language of the allegations in the Complaint does not support the conclusion that Mercantile in any way controlled Defendants or that any party expressly or impliedly consented to an agency relationship. For example, Defendants argue that "NHI's description of the relationship between the Defendants

and Mercantile, in which 'Riesner and/or Justis were in contact
with Mercantile at least daily during the term of the Consulting
Agreement,' (Second Amended Complaint at ¶ 34) is consistent with
an agency relationship." (Doc. # 60, pp. 6-7 (citations omitted).)
While it is true that one can imagine daily contact being an aspect
of an agency relationship, that by itself is not sufficient to
establish that Mercantile exercised control over Defendants.

I find that reading the allegations[9] in the light most
favorable to NHI, the following conclusions can be drawn regarding
Defendants' conduct: (1) Defendants may have believed that
Mercantile would proceed with a foreclosure action absent paying
down the bank debt and otherwise courting favor with Mercantile's
interests; (2) Defendants took action that benefitted Mercantile
with the belief that it would give comfort to Mercantile in
continuing to support NHI's attempt to reorganize; (3) Defendants
favored Mercantile in order to court favor with Mercantile to
obtain future referrals; or (4) Defendants were incompetent in what
they were doing. Indeed, as to the latter possibility, I note that
the Complaint contains a negligence count. It alleges that
Defendants "proved to be incompetent in running the day-to-day
operations of NHI's manufacturing business." (Doc. # 45, ¶ 50.)
It further alleges that Defendants were "grossly negligent" by,

_____

[9] As stated in the Complaint, not as paraphrased by Defendants in
their motion.

inter alia, "knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy." (Id. at ¶ 91.)

As noted above, in its original form the complaint did contain one paragraph that I believe asserted an agency relationship. By an October 8, 2004 letter to counsel, I noted that there were a number of allegations in the complaint that suggested an agency relationship without actually asserting it. However, I noted that Paragraph 33 of the original complaint was rather specific in alleging that Defendants "served at the direction and pleasure of Mercantile." (Doc. # 17, Exh. B, ¶ 33.) At the December 3, 2004 hearing, the following exchange took place:

> The Court: Let me put it succinctly. And I tried to be polite in my letter where I said - quoted from paragraph 33 of the complaint, and I said this sure sounds like an agency relationship to me. Let me put it bluntly. I conclude that that's an assertion of an agency relationship.
>
> Now, in [NHI's] memorandum, docket number 40, you say on page 1, "The first amended complaint did not allege that the defendants were agents of Mercantile." On page 3, there's a statement, "Defendants were, in fact, not the agents of Mercantile."
>
> And my simple question is which is it?
>
> [NHI's counsel]: They were not, Your Honor.
>
> The Court: Okay.
>
> [NHI's counsel]: And nor do defendants in this case allege - at least they haven't to date - that they were defendants [sic]. And if Your

> Honor is concerned with paragraph 33 or 34 to
> the extent that you believe it alleges an
> agency relationship, I will amend the pleading
> to withdraw that allegation –
>
> The Court: Very good.  That's fine.  Okay.
>
>              \*\*\*
>
> The Court: Okay.  Are you going to argue or
> attempt to prove that the defendants were
> agents of Mercantile in order to bring them
> within the release?
>
> [Defendants' counsel]: It is not our intention
> to argue that the defendants were agents of
> Mercantile.  We – our case at this point –
>
> The Court: Okay.  Then this whole agency is a
> nonissue at this point.

(Case Doc. # 667, p. 6.)

Under the facts here it would be quite inappropriate to grant a motion to dismiss.  As noted above, in discussing the standard courts should use in ruling on motions to dismiss, the Supreme Court cautioned that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  Conley, 355 U.S. at 48.  Also as noted above, when read in the light most favorable to NHI, the remaining allegations support a number of different conclusions as to what motivated or explains Defendants' alleged conduct.  For Rule 12(b)(6) purposes, it cannot be said that Defendants' conduct as alleged in the Complaint was premised on Mercantile's consent to have Defendants

act on its behalf with Mercantile controlling or directing the conduct of Defendants.    Thus, I conclude that the Complaint's allegations do not establish as a fact that Defendants were agents of Mercantile and beneficiaries of the releases granted to Mercantile's agents.

Judicial Estoppel

Defendants argue that NHI should be precluded by reason of judicial admissions and judicial estoppel from claiming wrongdoing on the part of Defendants due to representations made in the cash collateral agreement.    Defendants articulate their position as follows:

> The Cash Collateral Agreement entered into by NHI and Mercantile affirms that NHI's pre-petition debt to Mercantile is enforceable, legal, binding, and NHI has no claims against Mercantile.    NHI states that its pre-petition indebtedness to Mercantile "is secured by validly perfected first priority security interests, liens and mortgage liens."    NHI also states that its pre-petition indebtedness is "fully secured and constitutes the legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of all applicable documents."    Finally, NHI admits that "no offsets, defenses or counterclaims to the [pre-petition indebtedness to Mercantile] exist, and no portion of the [pre-petition indebtedness to Mercantile] is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.
>
> ***
>
> Because the Debtor makes such binding and conclusive judicial admissions, the Court necessarily must conclude, and without even

> the presentation of proof, that Mercantile and
> the Defendants are free from wrongdoing and
> that the Plaintiff is judicially estopped from
> pursuing Defendants for causes of action based
> on the alleged improper collection by
> Defendants of Plaintiff's pre-petition debt to
> Mercantile.

(Doc. # 52, pp. 14-15 (citations omitted).)

"[A] party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding." Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc., 87 F. Supp. 2d 394, 405 (D. N.J. 2000) (citations omitted). "[T]o be binding, judicial admissions must be unequivocal." Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972)(citations omitted). "An unequivocal statement is one that is clear, unambiguous and expresses only one meaning." Phila. Reinsurance Corp. v. Employers Ins. of Wausau, No. 02-1943, 61 Fed. Appx. 816, 819, 2003 WL 1698892, at *3 (3d Cir. March 31, 2003) (citing Webster's Third New International Dictionary 2494 (4th ed. 1976)).

The above quoted provisions from the cash collateral agreement are rather standard, simply having the debtor acknowledge the binding nature of the amount, perfection and priority of the pre-petition secured debt that is not subject to offsets, defenses or counterclaims. But the Complaint does not contravene those acknowledgments. The Complaint does not allege any wrongdoing by Mercantile and alleges no cause of action against Mercantile.

Pursuant to various orders entered in the bankruptcy case, NHI's assets were liquidated with most of the net proceeds paid over to Mercantile to pay down the pre-petition debt.  So far as I know, the loan obligation has been substantially, if not fully, paid down and the Complaint does not seek any disgorgement of those payments. I am at a loss to understand the relevance of NHI's acknowledgments of its debt obligations to Mercantile to the Complaint's multiple allegations of wrongdoing by Defendants, entities and persons other than Mercantile.

This action challenges Defendants performance as turnaround consultant in a failed undertaking.  While many of Defendants' actions involved Mercantile and the Complaint alleges that Mercantile benefitted from some of those actions, none of that contests the acknowledgments made by NHI in the cash collateral agreement.  Therefore, I find that NHI is not precluded by the cash collateral agreement from making any of the allegations of wrongdoing by Defendants as set forth in the Complaint.

Preference

The final argument made by Defendants is that the Bankruptcy Code § 547 preference action should be dismissed as to Fleet, Riesner and Justis for failure to sufficiently plead the elements of a preference.  This Court has recently described the pleading requirements as follows:

> Rule 8(a) states "[a] pleading which sets forth a claim for relief . . . shall contain .

22

. . a short and plain statement of the claim
showing that the pleader is entitled to
relief." Fed. R. Civ. P. 8(a). The Third
Circuit Court of Appeals instructs that
"[t]echnicalities are no longer of their
former importance, and a short statement which
fairly gives notice of the nature of the claim
is a sufficient compliance with the
requirements of the rules." Cont'l
Collieries, Inc. v. Shober, 130 F.2d 631, 635
(3d Cir. 1942). Therefore, a complaint will
be sufficient if it "give[s] the defendant
fair notice of what the plaintiff's claim is
and the grounds upon which it rests," Conley
v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2
L.Ed.2d 80 (1957), and courts favor decisions
on the merits rather than technicalities.

TWA Inc. Post Confirmation Estate v. Golf Channel, 305 B.R. 745,

746-47 (Bankr. D. Del. 2004). With regard to preference actions,

I have found that complaints must contain the following

information: "(a) an identification of the nature and amount of

each antecedent debt and (b) an identification of each alleged

preference transfer by (i) date, (ii) name of debtor/transferor,

(iii) name of transferee and (iv) the amount of the transfer." TWA

Inc. Post Confirmation Estate v. Marsh USA, Inc. (In re TWA Inc.

Post Confirmation Estate), 305 B.R. 228, 232 (Bankr. D. Del. 2004)

(citation omitted).

In pleading this preference count, the Complaint states:

During the one year period prior to the
Petition Date (hereinafter the "Insider
Preference Period"), KMR, Riesner and Justis
received from NHI one or more transfers by
check, wire transfer or their equivalent (the
"Transfers"), in the amounts and on or before
the clear dates identified in Exhibit "B",
attached hereto.

23

> Each Transfer identified in Exhibit "B" hereto
> was directly to or for the benefit of KMR,
> Riesner and Justis.
>
>                  \* \* \*
>
> Fleet is liable for the above referenced
> transfers as successor in interest to Progress.

(Doc. # 45, ¶¶ 162-63, 170.)  With respect to payments made from

November 27, 2001 to the petition date, Exhibit B provides with

respect to each transfer the name of the debtor company that made

the payments, the party that received the payment, the check

number, the check date, the invoice amount and the clear date.

With respect to each payment made prior to November 27, 2001,

Exhibit B identifies the transferee, the check date and the check

amount.  The name of the transferor is easily inferred.  NHI is

only required at this stage to provide Defendants with notice

regarding its claim and the basis of the claim.  If the facts are

later developed to show that Fleet, Riesner and Justis did not

receive any benefit from the payments then obviously NHI's

requested relief will be denied as to them.  But at this point NHI

has alleged that they did benefit from the payments and NHI should

be allowed to conduct discovery to determine how such payments

benefitted those defendants, if at all.

--------

     For the foregoing reasons, Defendants' motion to dismiss

the Complaint is denied.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re:                              ) Chapter 11
                                    )
NHI, INC., a Delaware               ) Case No. 02-10651(PJW)
Corporation,                        )
                                    )
            Debtor.                 )
_____        )
                                    )
NHI, INC.,                          )
                                    )
            Plaintiff,              )
                                    )
      v.                            ) Adv. Proc. No. 04-52879(PJW)
                                    )
FLEETBOSTON FINANCIAL               )
CORPORATION, KMR MANAGEMENT,        )
INC., ROBERT RIESNER and            )
WARING S. JUSTIS, JR.,              )
                                    )
            Defendants.             )

ORDER

      For the reasons set forth in the Court's memorandum
Opinion of this date, defendants' motion (Doc. # 51) to dismiss
plaintiff's second amended complaint (Doc. # 45) is denied.


                              _____
                              Peter J. Walsh
                              United States Bankruptcy Judge


Dated: February 11, 2005

                                        Docket No. 66
                                        Date 2/11/05

A00830

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | : Case No. 02-10651 (PJW) |
| NHI, INC., | : |
| | : |
| _____Debtor._____ | : Chapter 11 |
| NHI, INC., | : |
| | : |
| Plaintiff | : Adversary No. 04-52879 |
| | : |
| v. | : |
| | : |
| FLEETBOSTON FINANCIAL | : |
| CORPORATION, KMR MANAGEMENT, | : **Hearing Date:  TBD** |
| INC., ROBERT RIESNER and | : **Objection Deadline:  TBD** |
| WARING S. JUSTIS, JR., | : |
| | : |
| Defendants. | : |

## NOTICE OF MOTION FOR LEAVE TO APPEAL

TO:    The Office of the United States Trustee and counsel to the Debtor.

Defendants FleetBoston Financial Corporation ("Fleet"), KMR Management Inc. ("KMR"), Robert Reisner ("Reisner"), and Waring S. Justis ("Justis") (collectively, the "Defendants") has filed a **Motion For Leave To Appeal.**

You are required to file a response (and the supporting documentation required by Local Rule 4001-1(d) to the attached motion at least five business days before the above hearing date. At the same time, you must also serve a copy of the response upon counsel for the Defendants:

> Stuart M. Brown (No. 4050)
> Denise Seastone Kraft (No. 2778)
> Mark D. Olivere (No. 4291)
> Edwards & Angell LLP
> 919 N. Market Street, 14th Floor
> Wilmington, DE  19801

Docket# _68_
Date: _2-22-05_

WLM_501410_1/DKRAFT

**A00831**

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: February 22, 2005

EDWARDS & ANGELL LLP

Stuart M. Brown, Esquire (No. 4050)
Denise Seastone Kraft (No. 2778)
Mark D. Olivere (No. 4291)
919 N. Market Street
Wilmington, DE 19801
Tel:  302.777.7770
Fax:  302.777.7263

Counsel for Defendants
FleetBoston Financial Corporation,
KMR Management Inc.,
Robert Reisner and
Waring S. Justis

WLM_501410_1/DKRAFT

A00832

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| NHI, INC., | : | Case No. 02-10651 (PJW) |
| | : | |
| _____ Debtor. | : | Chapter 11 |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| | : | |
| v. | : | |
| | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | **Hearing Date:  TBD** |
| INC., ROBERT RIESNER and | : | **Objection Deadline:  TBD** |
| WARING S. JUSTIS, JR., | : | |
| | : | |
| Defendants. | : | |

### MOTION FOR LEAVE TO APPEAL

Defendants FleetBoston Financial Corporation ("Fleet"), KMR Management Inc. ("KMR"), Robert Reisner ("Reisner") and Waring S. Justis ("Justis") (together, the "Defendants"), by and through their undersigned counsel, hereby move this Court, pursuant to 28 U.S.C. § 158(a) of the Bankruptcy Code and Fed. R. Bankr. P. 8003, for leave to appeal under 28 U.S.C. § 158(a) to the United States District Court for the District of Delaware from the United States Bankruptcy Court for the District of Delaware's February 11, 2005 Order and Memorandum Opinion denying Defendants' Second motion to dismiss.  Defendants further appeal the Court's denial of the dismissal of the Preference Claims.  In support of this Motion, Defendants respectfully represent as follows:

WLM_NHI-AAA-Motion to File Appeal.doc/DKRAFT

## **BACKGROUND**

1.    On March 1, 2002, NHI filed its voluntary petition for relief with the United States Bankruptcy Court for the District of Delaware under Chapter 11 of the U.S. Bankruptcy Code.

2.    On February 27, 2004, NHI filed an adversary complaint against the Defendants. [D.I. 1]. The complaint contained counts for breach of contract, breach of covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, fraud, waste of corporate assets, tortuous interference with contract and prospective business advantage, fraudulent transfers pursuant to federal and state law (Delaware and Maryland), fraudulent conveyances pursuant to federal and state law (Delaware and Maryland), and avoidance of preferences pursuant to § 547 of the Bankruptcy Code. All acts in the complaint were alleged to have occurred from October 2000, when KMR entered into a consulting agreement with NHI, until NHI filed for bankruptcy.

3.    Defendants filed a Motion to Dismiss the complaint on June 1, 2004 [D.I. 12].

4.    NHI responded to the Motion to Dismiss and attached an amended complaint to the response [D.I. 17]. At the pretrial hearing on July 8, 2004, the parties orally stipulated on the record that the amended complaint attached as an Exhibit to plaintiff's answer to Fleet's motion to dismiss would be deemed filed as of July 8, 2004.

5.    NHI alleged throughout its initial complaint and again through its first amended complaint that Defendants were acting as agents of Mercantile Safe Deposit and Trust Company ("Mercantile"). Defendants discovered that Plaintiff released Mercantile and its agents on February 26, 2002 in a written document filed with the Court in the main bankruptcy case and in the Cash Collateral Agreement and Consent Order [D.I. 34] stating that "no offsets, defenses or counterclaims to the [pre-petition indebtedness to Mercantile] exist . . .".

- 2 -

WLM_501410_1/DKRAFT

6.    Accordingly, on August 5, 2004, Defendants filed a motion to dismiss [D.I. 26] the first amended complaint filed by NHI based on its February 26, 2002 release of Defendants.

7.    NHI filed an answering brief to the motion to dismiss [D.I. 29] on September 8, 2004, wherein it repeated its allegations of agency on the part of Defendants as agent and Mercantile as principal.

8.    Defendants filed a Reply Brief in Response to Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint filed September 15, 2004 [Docket No. 30],

9.    On October 8, 2004, the Court entered a letter on the docket converting Defendants' motion to one for summary judgment and directing that NHI file a supplemental answering brief to its answering brief [D.I. 32]. The Court's letter stated in part:

> I believe it is incumbent upon Plaintiff to present facts which negate an agency relationship or otherwise show why the release provision does not apply to Defendants.

10.    On October 29, 2004, NHI filed a Certification ("Certification") with the Court [D.I. 33] requesting extensive discovery on the issue of agency to prove that, despite the allegations in its complaint, amended complaint and answering brief to the motion to dismiss, it had documents in its possession showing that Defendants were not agents of Mercantile. NHI further informed the Court in its certification that it might amend its amended complaint further on the issue of agency.

11.    On November 12, 2004, Defendants filed a Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D. I. 35] and Memorandum of Law in Support of Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D.I. 36] on the basis that NHI's Certification was improper and was in the nature of an ex parte communication to the Court.

- 3 -

A00835

12.    On November 22, 2004, NHI filed an Answer to Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [Docket No. 39] and Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [Docket No. 40].

13.    On November 30, 2004, Defendants filed a Reply Brief in Response to Plaintiff's Answer to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [Docket No. 41].

14.    On December 1, 2004, NHI filed an Agenda for the December 3, 2004 Omnibus Hearing ("Agenda") [D.I. 662].   In the Agenda, NHI requested a status conference on the adversary proceeding.

15.    On December 3, 2004 counsel for NHI and the Defendants appeared at the Omnibus Hearing and the Court conducted a "Status Conference".   At the conclusion of the "Status Conference", the Court found that despite NHI's contention to the contrary, it had in fact alleged agency in paragraph 33 of its amended complaint.  After the Court found that NHI had alleged agency in its pleadings, NHI stated upon further questioning by the Court that it would not be pursuing the issue of agency.   Thereafter, the Court entered a bench ruling effectively denying Defendants' Motion to Dismiss and directing Plaintiff to amend its amended complaint to remove all allegations of agency between Defendants and Mercantile.

16.    NHI filed a Second Amended Complaint in which it removed paragraph 33 of its First Amended Complaint.   The Defendants filed a Motion to Dismiss the Second Amended Complaint because all the allegations of agency remained except for the most blatant and explicit allegation, paragraph 33, as pointed out by the Court.

WLM_501410_1/DKRAFT

A00836

17.    On February 11, 2005, the Court denied Defendants' Motion to Dismiss the Second Amended Complaint [D.I. 66 Order and D.I. 65 Memorandum Opinion]. By denying the Motion to Dismiss the Second Amended Complaint, the Court continues to ignore the judicial admissions of agency made by the Plaintiff in its complaint, amended complaint, second amended complaint and prior moving papers. The Court's ruling has effectively allowed NHI to escape its own judicial admissions of agency and foreclosed Defendants' opportunity to have NHI address the release issue based on NHI's own judicial admissions.

## QUESTIONS PRESENTED

18.    The issue on appeal is whether the Court erred in finding that the allegations in the Second Amended Complaint did not constitute agency allegations under the well established law of agency and/or apparent agency. Throughout the Second Amended Complaint, Plaintiff alleges that it was under the belief that Mercantile consented to have acts done on its behalf and with its authority to act. Despite Plaintiff's numerous, and repeated factual allegations of agency and/or apparent agency throughout the Second Amended Complaint, the Court nonetheless did not find that the Second Amended Complaint alleged agency.

19.    A separate issue on appeal is whether the Court correctly applied the law as to the preference claims. This Court's Decision acknowledges an inconsistency in decisions on the elements sufficient to allege a preference in this District as well as in this Court. Accordingly, it was improper to dismiss the Defendants' motion to dismiss as to the preference claims.

## STATEMENT OF REASONS WHY AN APPEAL SHOULD BE GRANTED

20.    If an Order or Ruling is interlocutory, an appeal should be granted for at least three reasons. First, the Order involves an important and controlling question of law. If allowed to stand, NHI and other parties to litigation will be able to escape their judicial admissions of elements of agency and/or apparent agency because of incomplete application of the law of

- 5 -

A00837

agency to the facts in a complaint. Second, there are now substantial differences in how this issue is handled by different judges, which will create confusion and inconsistent rulings below. Moreover, there are inconsistencies in how the courts in this District, and this Court in particular, handle preference actions. Third, an immediate appeal will advance the termination of the litigation and foster judicial efficiency.

### RELIEF REQUESTED

20.    This Court has held that an interlocutory order may be appealed where a district court finds that: "1) the order from which the appeal is taken involves a controlling question of law; 2) there is substantial ground for difference of opinion as to the controlling question of law; and 3) an immediate appeal may materially advance the ultimate termination of the litigation." *In re Marvel Entertainment Group, Inc.*, 209 B.R. 832, 837 (D. Del. 1997).

21.    **The Bankruptcy Court's Ruling involves a controlling question of law.** This Court, in accordance with the Third Circuit, has held that "[a] controlling question of law at the very least encompasses a ruling which, if erroneous, would be reversible error on final appeal." *Id.* (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). In addition, matters that are "serious to the conduct of the litigation, either practically or legally," are controlling questions of law. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755(3d Cir. 1974). Neglecting the well established Delaware doctrine of agency and/or apparent agency that is alleged throughout the Second Amended Complaint is reversible error and is a serious issue in this litigation that severely impacts the Defendants' rights. *See Billops v. Magness Constr. Co.*, 391 A.2d 196 (Del. 1978). Reversal is appropriate where substantial rights are affected by an error. See, *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 261 (3d Cir. 1995) (citing *McQueeney v.*

- 6 -

A00838

*Wilmington Trust Co.*, 779 F.2d 916, 923-28 (3d Cir. 1985)). The issue of proper notice pleading for a preference claim is also a controlling question of law.

22. **There are substantial grounds for differences of opinion as to the controlling question of law.** The Delaware Bankruptcy Court continues to preside over a substantial number of adversary proceedings in this country. Defendants are entitled to rely on Plaintiff's *repeated* judicial admissions of agency and/or apparent agency. The issue of what is the proper application for determining whether a party is an agent under the well established doctrine of agency and/or apparent agency is now subject to differing decisions given the recent February 11, 2005 Decision denying the Defendants' Motion to Dismiss. Other courts have found an agency relationship because of apparent agency by determining the existence of two elements. *See Billops v. Magness Constr. Co.*, 391 A.2d 196 (Del. 1978). (First, by its acts and conduct the principal must hold out the alleged agent as being authorized to act in the principal's behalf; Second, the third party must reasonably rely upon this representation). *See also Finnegan Constr. Co. v. Robino-Ladd Co.*, 354 A.2d 142 (Del. Super. Ct. 1976). The oversight or decision by the Court not to apply the law of apparent agency would have bound the Plaintiff to the allegations in the Second Amended Complaint as they are judicial admissions. *See Glick v. White Motor Co.*, 458 F.2d 1287 (3d Cir. 1972) (where a party offers deliberate, clear and unequivocal facts in a complaint, those assertions are binding on the party.); *In re Cendant Corp. Securities Litig.*, 109 F. Supp.2d 225, 230 (D.N.J. 2000); 10A Charles Alan Wright and Arthur R. Miller, *et al.*, Federal Practice and Procedure §§ 2722 and 2723 at 382 (3d ed. 1998) ("Wright & Miller"). "[E]ven if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." *Missouri Housing Dev. Comm'n v. Brice*,

-7-

A00839

919 F.2d 1306, 1315 (8th Cir. 1990); *Electric Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F. Supp. 2d 394, 405 (D.N.J. 2000). A party can plead himself out of court by alleging facts that show that he has no claim, even though he was not required to allege those facts. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000); 30B Wright & Miller § 7026 (2000). The application of the elements of apparent agency would have compelled this Court to dismiss the entire adversary proceeding as the Defendants would have therefore been covered by previously granted releases.[1] If this Court does not address this issue, then there will be confusion as to whether a party may simply allege apparent agency in its complaint, constituting judicial admissions, in order to avoid previously granted releases that released the agent, all to the detriment of the consistent and orderly application of the law. It is vital that this Court grant appellate review of this very important issue.

23.    In addition, the Court must address what elements must necessarily be pled in preference actions in order to avoid inconsistent opinions in this District as well as this Court. The Court erred in allowing the name of the transferee to be "easily inferred" rather than specifically identified as previously required by this Court and courts in this District. *See In re APF Co.*, 308 B.R. 183, 188 (Bankr.D.Del. 2004) (emphasis added) (quoting (*In re Valley Media*), 288 B.R. 189, 192 (Bankr.D.Del.2003).

24.    **An immediate appeal will advance the ultimate termination of the litigation.** This Court has found that where an immediate appeal would terminate the litigation and result in little for the bankruptcy court to do on remand, leave to appeal is appropriate. *See In re Marvel Entertainment Group, Inc.*, 209 B.R. 832, 838 (D. Del. 1997); *see In re B.S. Livingston & Co.*,

---

[1] The Court has removed any question that the Defendants are covered by the releases discovered by the Defendants. The Court stated: "[t]hus if reading NHI's pleadings in the light most favorable to it leads to the inescapable conclusion that Defendants were Mercantile's agents, Defendants would be covered by the actions and this action should be dismissed. Decision, p. 7.

- 8 -

A00840