*Inc.,* 186 B.R. 841, 850 (D. N.J. 1995). The heart of the requested relief denied by the Bankruptcy Court would not only completely end the litigation, it would end an abusive use of the judicial system by NHI. The relief requested would relieve the Court of further hearings and promote judicial economy, which is at the heart of the third prong of the Third Circuit test.

**COPY OF ORDER**

A copy of the Order and Memorandum Opinion are attached hereto as Exhibit A and B respectively.

**CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court grant the Motion for Leave to Appeal from the February 11, 2005 Order and Memorandum Opinion of the Bankruptcy Court, and that it may have such other and further relief as is just and proper.

Dated: February 22, 2005                          EDWARDS & ANGELL LLP

Stuart M. Brown, Esquire (No. 4050)
Denise Seastone Kraft (No. 2778)
Mark D. Olivere (No. 4291)
919 N. Market Street
Wilmington, DE 19801
Tel: 302.777.7770
Fax: 302.777.7263

Counsel for Defendants
FleetBoston Financial Corporation,
KMR Management Inc.,
Robert Reisner and
Waring S. Justis

- 9 -

# EXHIBIT A

A00842

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| NHI, INC., a Delaware | ) | Case No. 02-10651(PJW) |
| Corporation, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NHI, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 04-52879(PJW) |
| | ) | |
| FLEETBOSTON FINANCIAL | ) | |
| CORPORATION, KMR MANAGEMENT, | ) | |
| INC., ROBERT RIESNER and | ) | |
| WARING S. JUSTIS, JR., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

For the reasons set forth in the Court's memorandum Opinion of this date, defendants' motion (Doc. # 51) to dismiss plaintiff's second amended complaint (Doc. # 45) is denied.

Peter J. Walsh
United States Bankruptcy Judge

Dated: February 11, 2005

# EXHIBIT B

A00844

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| NHI, INC., a Delaware | ) | Case No. 02-10651(PJW) |
| Corporation, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NHI, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 04-52879(PJW) |
| | ) | |
| FLEETBOSTON FINANCIAL | ) | |
| CORPORATION, KMR MANAGEMENT, | ) | |
| INC., ROBERT RIESNER and | ) | |
| WARING S. JUSTIS, JR., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

James C. Sargent
Guy A. Donatelli
Scot R. Withers
Lamb McErlane PC
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565

Stephen W. Spence
Phillips Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Counsel to NHI, Inc.

Stuart M. Brown
Denise Seastone Kraft
Mark D. Olivere
Edwards & Angell, LLP
919 Market Street, 14th Floor
Wilmington, DE 19801

Counsel for Defendants
FleetBoston Financial
Corporation, KMR Management,
Inc., Robert Reisner and
Waring S. Justis

Dated: February 11, 2005

2

WALSH, J.

This opinion is with respect to defendants' motion (Doc. # 51) to dismiss NHI, Inc.'s second amended complaint (Doc. # 45). For the reasons set forth below, the Court will deny the motion.

## BACKGROUND

NHI, Inc. ("NHI") was the first pre-manufactured home-builder in Delaware and conducted a successful manufacturing business for more than thirty years. Over time, NHI and its affiliated companies and related entities greatly increased their indebtedness to their bank, Mercantile Safe Deposit and Trust Company ("Mercantile"). All outstanding debt owed to Mercantile by NHI and its affiliated companies was cross-collateralized.

As of late 1999, Mercantile considered NHI to be in default under various technical, non-monetary covenants of the loans. In August 2000, NHI learned that Mercantile was considering calling the loans as a result of these defaults. As an alternative to calling the loans, Mercantile insisted on October 6, 2000 that NHI retain a management consultant and strongly suggested defendants KMR Management, Inc. ("KMR"), Robert Riesner ("Riesner") and Waring S. Justis ("Justis") (collectively, "Defendants") be hired in this role. According to NHI, Scott Krieger ("Krieger"), Mercantile's workout manager, assured NHI that KMR, Riesner and Justis were "turn-around" consultants, as opposed to "liquidation guys." (Doc. # 45, ¶ 25.)

3

On October 19, 2000, NHI entered into a consulting agreement with KMR, Riesner and Justis. Under the consulting agreement, KMR, Riesner and Justis agreed to provide NHI with professional management for the purposes of stabilizing NHI's financial condition and perpetuating NHI's business. KMR, Riesner and Justis undertook to act as fiduciaries, assumed positions of responsibility and undertook a duty of loyalty with respect to NHI as NHI's agents. KMR, Riesner, and Justis further assumed the complete control, responsibility and authority for managing the business of NHI. In return, NHI agreed to pay KMR specified hourly rates for services rendered.

NHI did not survive. On March 1, 2002, it filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), and NHI's business was subsequently liquidated. On February 27, 2004, NHI commenced the instant action seeking to recover losses suffered as a result of Defendants' alleged failure to comply with the terms set forth in the consulting agreement and for other alleged wrongdoings.[1]

---

[1] In addition to Defendants, the complaint names FleetBoston Financial Corporation ("Fleet") as a defendant. According to the complaint, KMR was a wholly-owned subsidiary of Progress Financial Corporation who, NHI alleges, participated in the day-to-day running of NHI with Riesner and Justis. Fleet is the successor to Progress Financial Corporation.

A00847

4

The complaint alleges that after assuming control of NHI, KMR, Riesner, and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the consulting agreement and in violation of their fiduciary duties and obligations of loyalty. The allegations by NHI contain numerous statements of actions taken by Defendants in which they sacrificed NHI's interests to the benefit of both Mercantile and KMR. Such actions, which NHI alleges included a failure to pay vendors and suppliers, resulted in numerous lawsuits against NHI filed by vendors, suppliers and customers beginning in September 2001. As a result, NHI asserts that it was unable to secure supplies and materials from vendors, which resulted in NHI having to resort to alternate and more expensive sources of supples and materials.

NHI alleges that by February 2002, as a result of the gross mismanagement of it by KMR, Riesner and Justis, it was in such dire financial straits that it was not able to refinance or sell its operations as a going concern. On February 6, 2002, Mercantile demanded payment on all of NHI's loans and lines of credit. NHI terminated its manufacturing operations on February 19, 2002. Thereafter, on February 26, 2002, the members of the founding family of NHI, the Mervines, allegedly found themselves in such financial distress that they entered into an agreement with Mercantile that over the following twenty months would settle NHI's

5

debt with Mercantile, satisfy Mercantile's liens on the assets of NHI and the Mervine family members' personal residences, and release Mercantile from all liability to NHI.

On June 1, 2004, Defendants filed a motion to dismiss the original complaint. NHI responded to the motion and attached an amended complaint to its response which by stipulation of the parties was deemed filed as of July 8, 2004.

Defendants filed a motion to dismiss the first amended complaint on August 5, 2004 arguing, among other things, that the action was barred by releases granted to Mercantile and its agents. According to Defendants, NHI's first amended complaint sufficiently alleged that Defendants were agents of Mercantile and were thereby covered by the releases. At a status conference hearing held on December 3, 2004, the Court heard argument regarding Defendants' position that the allegations in the first amended complaint constituted a statement affirming Defendants' agency status. NHI represented that it was not its intention to allege that Defendants were agents of Mercantile. Accordingly, the Court permitted NHI to file a second amended complaint to delete the paragraph that the Court found alleged an agency relationship. On December 10, 2004, NHI filed the second amended complaint (the "Complaint").

The Complaint contains counts for breach of contract, breach of covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, fraud, waste of corporate

6

assets, tortious interference with contract and prospective business advantage, fraudulent conveyances pursuant to federal and state law, and avoidance of preferences pursuant to Bankruptcy Code § 547.

Defendants filed the instant motion arguing that the Complaint should be dismissed for the following reasons: (1) as pled by NHI, Defendants were acting as agents of Mercantile such that Defendants are included in certain releases granted to Mercantile pre-petition and post-petition; (2) NHI's representations in the chapter case cash collateral agreement preclude the instant action because they constitute judicial admissions so that NHI is judicially estopped from maintaining this action; and (3) the preference action is not properly pled against Fleet, Riesner or Justis. NHI contests all of these assertions.

## DISCUSSION

### Releases

Defendants argue that two releases shield them from liability. The first is contained in the pre-petition agreement the Mervines entered into with Mercantile on February 26, 2002. It includes the following provision:

> In order to induce [Mercantile] to enter into this agreement, each of the Obligors forever releases and discharges [Mercantile] and [Mercantile]'s officers, directors, employees, attorneys, and agents (collectively, the "Released Parties") from any and all claims, causes of action, suits and damages (including claims for attorneys' fees and costs) which

A00850

any of the Obligors, jointly or severally,
ever had or may now have of any kind or nature
against any of the Released Parties arising
out of or related in any way to any of the
Loans, the Loan Documents, the Obligations or
the Collateral or the administration thereof
or this Agreement, whether known or unknown,
including but not limited to any and all
claims based upon or relying on any
allegations or assertions of duress,
illegality, unconscionability, bad faith,
breach of contract, regulatory violations,
improper control of the companies or their
affairs, negligence, misconduct, or any other
tort, contract or regulatory claim of any kind
or nature. This release is intended to be
final, irrevocable and immediate and is not
subject to the satisfaction of any conditions
of any kind.

(Doc. # 52, Exh. A, § 20, pp. 11-12 (emphasis added).) The term

"Obligors" is defined in the agreement to include NHI. (Id. at 1.)

The second release that allegedly shields Mercantile and its agents

is nearly identical to the above provision and is contained in a

post-petition agreement entered into by NHI and Mercantile on

October 30, 2003. (Doc. # 52, Exh. C, § 2, p. 1.) Thus, if

reading NHI's pleadings in the light most favorable to it leads to

the inescapable conclusion that Defendants were Mercantile's

agents, Defendants would be covered by the releases and this action

should be dismissed.

"A motion to dismiss pursuant to [Federal Rule of Civil

Procedure] 12(b)(6) may be granted only if, accepting all well-

pleaded allegations in the complaint as true and viewing them in

the light most favorable to plaintiff, the plaintiff is not

8

entitled to relief." <u>Cowell v. Palmer Township</u>, 263 F.3d 286, 290

(3d Cir. 2001) (citation omitted). The Court should not grant a

Rule 12(b)(6) motion "unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of [its] claim which

would entitle [it] to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-

46, 78 S.Ct. 99, 102 (1957). In <u>Conley</u>, the Supreme Court

specified that "[t]he Federal Rules reject the approach that

pleading is a game of skill in which one misstep by counsel may be

decisive to the outcome and accept the principle that the purpose

of pleading is to facilitate a proper decision on the merits." <u>Id.</u>

at 48.

Defendants assert that "[t]he first issue to be decided

by the Court in this Motion is whether [NHI] plead [sic] that

Defendants were Mercantile's agents. Clearly, [NHI] has pled

agency." (Doc. # 60, p. 9.) According to Defendants, the

Complaint contains numerous allegations that amount to an assertion

by NHI that Defendants were acting as agents for Mercantile.

Defendants' motion states its case as follows:

> As alleged in the [Complaint], KMR, Riesner
> and Justis did not operate independently and
> for the benefit of NHI. Instead, KMR, Riesner
> and Justis acted as Mercantile's agents.
> Specifically, [NHI] in its [Complaint] alleges
> that:[2]

---

[2]

Defendants bullet points appear to be quotations from the Complaint
but they are not. As noted in the footnotes below, in many
respects the bullet points misstate the allegations of the

- KMR, Riesner and Justis made their primary priorities Mercantile's collateral realization and KMR's collection of exorbitant and extorted consulting fees, while at the same time relegating NHI's business operations and viability as a going concern to distant secondary priorities, in direct contravention of the Consulting Agreement. [Second Amended Complaint ¶ 32.][3]

- Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement. [Second Amended Complaint ¶ 33.]

- KMR, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. In collaboration with Krieger (Mercantile's workout manager),

---

Complaint.

[3]

The relevant portion of the Complaint actually reads:
     KMR, Riesner and Justis made their primary
     priorities the paying down of NHI's debt to
     Mercantile and the collection of exorbitant
     and extorted consulting fees for KMR, while at
     the same time relegating NHI's business
     operations and viability as a going concern to
     distant secondary priorities, in direct
     contravention of the Consulting Agreement.
(Doc. # 45, ¶ 32.)

KMR, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. [Second Amended Complaint ¶ 46.]

At the same time, although NHI was still only in technical default with Mercantile, KMR, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. According to NHI, it was apparent that KMR, Riesner and Justis were not concerned with NHI's ability to continue as a going concern - rather, the sole concern of KMR, Riesner and Justis was that Mercantile and KMR be paid. [Second Amended Complaint ¶ 47.][4]

---

[4]

The relevant portion of the Complaint actually reads:
    At the same time, although NHI was still only
in technical default with Mercantile, KMR,
Riesner and Justis systematically made
payments to Mercantile the day after late fees
and penalties were incurred. It was apparent
that KMR, Riesner and Justis were not
concerned with NHI's ability to continue as a
going concern - rather, the sole concern of
KMR, Riesner and Justis was that Mercantile

11

> The [Complaint] alleges that
> from October 2000 through
> January 2002, KMR, Riesner and
> Justis grossly mismanaged NHI's
> business; made decisions which
> maximized cash flows to
> Mercantile and KMR, while
> destroying NHI's relationships
> with its customers, suppliers,
> contractors, employees, etc.,
> with the obvious result of
> destroying NHI as a viable
> going concern; violated the
> Consulting Agreement; breached
> their fiduciary duty and duty
> of loyalty by - rather than
> providing "turn around"
> management - devising a stealth
> plan to strip NHI of all cash
> and assets before running NHI
> into liquidation, all for the
> sole benefit and at the
> direction of Mercantile, and to
> the extreme detriment and
> prejudice of NHI and its
> shareholders and creditors.
> [Second Amended Complaint ¶
> 59.][5]

and KMR be paid.
(Doc. #45, ¶ 47.)

[5] Significantly, there is no mention in the Complaint that any of the activity was at the direction of Mercantile. Similarly, the Complaint actually alleges that the activity was for the sole benefit of Mercantile, KMR, Riesner and Justis. The relevant portion of the Complaint actually reads:

> From October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; made decisions which maximized cash flows to Mercantile and KMR while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting

12

- KMR, Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around. [Second Amended Complaint ¶ 103.][6]

- Mercantile insisted on NHI hiring KMR, and then KMR placed NHI into an insolvent condition in a fashion designed to protect only Mercantile. [Second Amended Complaint ¶¶ 104, 111.][7]

---

Agreement; breached their fiduciary duty and duty of loyalty by - rather than providing "turn around" management - devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis, and to the extreme detriment and prejudice of NHI and its shareholders and creditors.

(Doc. #45, ¶ 59.)

[6]

The relevant portion of the Complaint actually reads:
On information and belief, KMR through Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around, as represented.

(Doc. #45, ¶ 103.)

[7]

The relevant portion of the Complaint actually reads:
KMR, Riesner, and Justis took steps to implement their fraudulent purpose including:

> • KMR, Riesner and Justis engaged
> in a scheme to waste the assets
> of NHI in order to liquidate it
> for the benefit of Mercantile.
> [Second Amended Complaint ¶
> 110.][8]

(Doc. # 52, pp. 6-7 (emphasis in original).)

From these paraphrased allegations of the Complaint,

Defendants argue that the Complaint alleges that Defendants were

---

> (1) Mercantile insisting on NHI's hiring KMR;
> (2) Riesner and Justis knowingly failing to
> take any action which would permit NHI to
> continue as a going concern; (3) placing
> Justis in a position to perform the duties
> which a Chief Executive Officer and Chief
> Operating Officer would perform without any
> intention of having him act in the best
> interests of NHI; (4) the making of a series
> of management decisions by KMR, Riesner and
> Justis, which had the effect of running down
> NHI's business; (5) insisting on the surrender
> of voting rights of NHI's shareholders; (6)
> refusing to supply the NHI Board of Directors
> with financial information about the company
> or to involve it in any way in its present
> operations; (7) placing NHI into an insolvent
> condition in a fashion designed to protect
> only Mercantile; and (8) siphoning off
> approximately $1.9 million to KMR in fees
> rather that [sic] utilizing those assets to
> assist NHI's business operations.

(Doc. # 45, ¶¶ 104, 111.)

[8]

The relevant portion of the Complaint actually provides:
> On information and belief, KMR through Riesner
> and Justis engaged in a scheme to waste the
> assets of NHI to the point where NHI could
> only be liquidated for the benefit of
> Mercantile.

(Doc. # 45, ¶ 110.)

14

Mercantile's agents and are thereby protected by the releases provided to Mercantile and its agents. Defendants present their position as follows:

> Here, the scope of the release and the released parties is unambiguous. The Debtor released Mercantile and its agents. The Debtor in the [Complaint] repeatedly alleges in paragraph after paragraph that Defendants acted as Mercantile's agents in collaboration with Krieger (Mercantile's workout manager), by consulting with Mercantile on a daily basis, acting for Mercantile's benefit, focusing on short-term returns to Mercantile, making their primary priorities Mercantile's collateral realization, made decisions which maximized cash flows to Mercantile, all in a manner designed to protect Mercantile. [Second Amended Complaint ¶¶ 32, 33, 47, 59, 104, 110, 111]. . . . For the purpose of the Motion to Dismiss, the Court must take such allegations of agency as true.

(Doc. # 52, pp. 20-21 (emphasis in original).) Defendants amplify this position with legal authority in their reply as follows:

> The allegations in NHI's [Complaint] clearly establish, if such allegations are taken as true, that the Defendants had "the power to act on behalf of the principal (Mercantile)." _J.E. Rhoads & Sons, Inc._, 1988 WL 32012 at *4. NHI's claims against the Defendants are premised on the very notion that they acted "at the behest and for the benefit and for the benefit of the principal (Mercantile)." _J.E. Rhoads & Sons, Inc._, 1988 WL 32012 at *4.

(Doc. # 60, p. 6.)

In my view, Defendants' conclusion that the Complaint alleges an agency relationship is a misapplication of the law and the facts. I start with a brief statement of the law.

A00858

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." Fisher v. Townsends, Inc., 695 A.2d 53, 57-58 (Del. 1997) (citations omitted). "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Sutter Opportunity Fund 2 LLC v. Cede & Co., 838 A.2d 1123, 1128 (Del. Ch. 2003) (quoting Restatement (First) of Agency § 1(1) (1933)). "The principal must manifest, by words or conduct, that the agent shall work for him. . . . The right to control the conduct of an agent is the test of agency." J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc., 1988 WL 32012, at *4 (Del. Super. Ct. March 30, 1988) (citations omitted).

As mentioned above, at this stage of the proceedings the Court must not only, as Defendants assert, accept the allegations as true, it must also "view[] them in the light most favorable to [NHI] . . . ." Cowell, 263 F.3d at 290. Applying these standards to the allegations in the Complaint precludes Defendants' request for dismissal. The plain language of the allegations in the Complaint does not support the conclusion that Mercantile in any way controlled Defendants or that any party expressly or impliedly consented to an agency relationship. For example, Defendants argue that "NHI's description of the relationship between the Defendants

16

and Mercantile, in which 'Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement,' (Second Amended Complaint at ¶ 34) is consistent with an agency relationship." (Doc. # 60, pp. 6-7 (citations omitted).) While it is true that one can imagine daily contact being an aspect of an agency relationship, that by itself is not sufficient to establish that Mercantile exercised control over Defendants.

I find that reading the allegations[9] in the light most favorable to NHI, the following conclusions can be drawn regarding Defendants' conduct: (1) Defendants may have believed that Mercantile would proceed with a foreclosure action absent paying down the bank debt and otherwise courting favor with Mercantile's interests; (2) Defendants took action that benefitted Mercantile with the belief that it would give comfort to Mercantile in continuing to support NHI's attempt to reorganize; (3) Defendants favored Mercantile in order to court favor with Mercantile to obtain future referrals; or (4) Defendants were incompetent in what they were doing. Indeed, as to the latter possibility, I note that the Complaint contains a negligence count. It alleges that Defendants "proved to be incompetent in running the day-to-day operations of NHI's manufacturing business." (Doc. # 45, ¶ 50.) It further alleges that Defendants were "grossly negligent" by,

---

[9] As stated in the Complaint, not as paraphrased by Defendants in their motion.

17

inter alia, "knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy." (Id. at ¶ 91.)

As noted above, in its original form the complaint did contain one paragraph that I believe asserted an agency relationship. By an October 8, 2004 letter to counsel, I noted that there were a number of allegations in the complaint that suggested an agency relationship without actually asserting it. However, I noted that Paragraph 33 of the original complaint was rather specific in alleging that Defendants "served at the direction and pleasure of Mercantile." (Doc. # 17, Exh. B, ¶ 33.) At the December 3, 2004 hearing, the following exchange took place:

> The Court: Let me put it succinctly. And I tried to be polite in my letter where I said - quoted from paragraph 33 of the complaint, and I said this sure sounds like an agency relationship to me. Let me put it bluntly. I conclude that that's an assertion of an agency relationship.
>
> Now, in [NHI's] memorandum, docket number 40, you say on page 1, "The first amended complaint did not allege that the defendants were agents of Mercantile." On page 3, there's a statement, "Defendants were, in fact, not the agents of Mercantile."
>
> And my simple question is which is it?
>
> [NHI's counsel]: They were not, Your Honor.
>
> The Court: Okay.
>
> [NHI's counsel]: And nor do defendants in this case allege - at least they haven't to date - that they were defendants [sic]. And if Your

18

Honor is concerned with paragraph 33 or 34 to the extent that you believe it alleges an agency relationship, I will amend the pleading to withdraw that allegation –

The Court: Very good.  That's fine.  Okay.

***

The Court: Okay.  Are you going to argue or attempt to prove that the defendants were agents of Mercantile in order to bring them within the release?

[Defendants' counsel]: It is not our intention to argue that the defendants were agents of Mercantile.  We – our case at this point –

The Court: Okay.  Then this whole agency is a nonissue at this point.

(Case Doc. # 667, p. 6.)

Under the facts here it would be quite inappropriate to grant a motion to dismiss.  As noted above, in discussing the standard courts should use in ruling on motions to dismiss, the Supreme Court cautioned that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  Conley, 355 U.S. at 48.  Also as noted above, when read in the light most favorable to NHI, the remaining allegations support a number of different conclusions as to what motivated or explains Defendants' alleged conduct.  For Rule 12(b)(6) purposes, it cannot be said that Defendants' conduct as alleged in the Complaint was premised on Mercantile's consent to have Defendants

act on its behalf with Mercantile controlling or directing the conduct of Defendants. Thus, I conclude that the Complaint's allegations do not establish as a fact that Defendants were agents of Mercantile and beneficiaries of the releases granted to Mercantile's agents.

Judicial Estoppel

Defendants argue that NHI should be precluded by reason of judicial admissions and judicial estoppel from claiming wrongdoing on the part of Defendants due to representations made in the cash collateral agreement. Defendants articulate their position as follows:

> The Cash Collateral Agreement entered into by NHI and Mercantile affirms that NHI's pre-petition debt to Mercantile is enforceable, legal, binding, and NHI has no claims against Mercantile. NHI states that its pre-petition indebtedness to Mercantile "is secured by validly perfected first priority security interests, liens and mortgage liens." NHI also states that its pre-petition indebtedness is "fully secured and constitutes the legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of all applicable documents." Finally, NHI admits that "no offsets, defenses or counterclaims to the [pre-petition indebtedness to Mercantile] exist, and no portion of the [pre-petition indebtedness to Mercantile] is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.
>
> ***
>
> Because the Debtor makes such binding and conclusive judicial admissions, the Court necessarily must conclude, and without even

A00863

the presentation of proof, that Mercantile and
the Defendants are free from wrongdoing and
that the Plaintiff is judicially estopped from
pursuing Defendants for causes of action based
on the alleged improper collection by
Defendants of Plaintiff's pre-petition debt to
Mercantile.

(Doc. # 52, pp. 14-15 (citations omitted).)

"[A] party's assertion of fact in a pleading is a
judicial admission by which it is normally bound throughout the
course of the proceeding." Elec. Mobility Corp. v. Bourns
Sensors/Controls, Inc., 87 F. Supp. 2d 394, 405 (D. N.J. 2000)
(citations omitted). "[T]o be binding, judicial admissions must be
unequivocal." Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d
Cir. 1972)(citations omitted). "An unequivocal statement is one
that is clear, unambiguous and expresses only one meaning." Phila.
Reinsurance Corp. v. Employers Ins. of Wausau, No. 02-1943, 61 Fed.
Appx. 816, 819, 2003 WL 1698892, at *3 (3d Cir. March 31, 2003)
(citing Webster's Third New International Dictionary 2494 (4th ed.
1976)).

The above quoted provisions from the cash collateral
agreement are rather standard, simply having the debtor acknowledge
the binding nature of the amount, perfection and priority of the
pre-petition secured debt that is not subject to offsets, defenses
or counterclaims. But the Complaint does not contravene those
acknowledgments. The Complaint does not allege any wrongdoing by
Mercantile and alleges no cause of action against Mercantile.

21

Pursuant to various orders entered in the bankruptcy case, NHI's assets were liquidated with most of the net proceeds paid over to Mercantile to pay down the pre-petition debt. So far as I know, the loan obligation has been substantially, if not fully, paid down and the Complaint does not seek any disgorgement of those payments. I am at a loss to understand the relevance of NHI's acknowledgments of its debt obligations to Mercantile to the Complaint's multiple allegations of wrongdoing by Defendants, entities and persons other than Mercantile.

This action challenges Defendants performance as turn-around consultant in a failed undertaking. While many of Defendants' actions involved Mercantile and the Complaint alleges that Mercantile benefitted from some of those actions, none of that contests the acknowledgments made by NHI in the cash collateral agreement. Therefore, I find that NHI is not precluded by the cash collateral agreement from making any of the allegations of wrongdoing by Defendants as set forth in the Complaint.

Preference

The final argument made by Defendants is that the Bankruptcy Code § 547 preference action should be dismissed as to Fleet, Riesner and Justis for failure to sufficiently plead the elements of a preference. This Court has recently described the pleading requirements as follows:

> Rule 8(a) states "[a] pleading which sets
> forth a claim for relief . . . shall contain .

> . . a short and plain statement of the claim
> showing that the pleader is entitled to
> relief." Fed. R. Civ. P. 8(a). The Third
> Circuit Court of Appeals instructs that
> "[t]echnicalities are no longer of their
> former importance, and a short statement which
> fairly gives notice of the nature of the claim
> is a sufficient compliance with the
> requirements of the rules." Cont'l
> Collieries, Inc. v. Shober, 130 F.2d 631, 635
> (3d Cir. 1942). Therefore, a complaint will
> be sufficient if it "give[s] the defendant
> fair notice of what the plaintiff's claim is
> and the grounds upon which it rests," Conley
> v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2
> L.Ed.2d 80 (1957), and courts favor decisions
> on the merits rather than technicalities.

TWA Inc. Post Confirmation Estate v. Golf Channel, 305 B.R. 745,

746-47 (Bankr. D. Del. 2004). With regard to preference actions,

I have found that complaints must contain the following

information: "(a) an identification of the nature and amount of

each antecedent debt and (b) an identification of each alleged

preference transfer by (i) date, (ii) name of debtor/transferor,

(iii) name of transferee and (iv) the amount of the transfer." TWA

Inc. Post Confirmation Estate v. Marsh USA, Inc. (In re TWA Inc.

Post Confirmation Estate), 305 B.R. 228, 232 (Bankr. D. Del. 2004)

(citation omitted).

> In pleading this preference count, the Complaint states:

> During the one year period prior to the
> Petition Date (hereinafter the "Insider
> Preference Period"), KMR, Riesner and Justis
> received from NHI one or more transfers by
> check, wire transfer or their equivalent (the
> "Transfers"), in the amounts and on or before
> the clear dates identified in Exhibit "B",
> attached hereto.

23

> Each Transfer identified in Exhibit "B" hereto
> was directly to or for the benefit of KMR,
> Riesner and Justis.
>
> * * *
>
> Fleet is liable for the above referenced
> transfers as successor in interest to Progress.

(Doc. # 45, ¶¶ 162-63, 170.)  With respect to payments made from

November 27, 2001 to the petition date, Exhibit B provides with

respect to each transfer the name of the debtor company that made

the payments, the party that received the payment, the check

number, the check date, the invoice amount and the clear date.

With respect to each payment made prior to November 27, 2001,

Exhibit B identifies the transferee, the check date and the check

amount.  The name of the transferor is easily inferred.  NHI is

only required at this stage to provide Defendants with notice

regarding its claim and the basis of the claim.  If the facts are

later developed to show that Fleet, Riesner and Justis did not

receive any benefit from the payments then obviously NHI's

requested relief will be denied as to them.  But at this point NHI

has alleged that they did benefit from the payments and NHI should

be allowed to conduct discovery to determine how such payments

benefitted those defendants, if at all.

———————

For the foregoing reasons, Defendants' motion to dismiss

the Complaint is denied.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| _____Debtor._____ | : | Chapter 11 |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| | : | |
| v. | : | |
| | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | Related Docket No. 1 and 17 |
| INC., ROBERT RIESNER and | : | |
| WARING S. JUSTIS, JR., | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING MOTION FOR LEAVE TO APPEAL

Upon the Motion For Leave to Appeal (the "Motion") of Defendants FleetBoston Financial Corporation ("Fleet"), KMR Management Inc. ("KMR"), Robert Reisner ("Reisner"), and Waring S. Justis ("Justis") (collectively, the "Defendants") seeking entry of an Order granting Defendants leave to appeal the Court's February 11, 2005 Order [D.I. 66] and Memorandum Opinion [D.I. 65] denying Defendants' motion to dismiss second amended complaint [D.I. 51], it is hereby

ORDERED that the Motion for leave to appeal is GRANTED.

Dated:_____, 2005

_____
United States Bankruptcy Court Judge

WLM_501410_1/DKRAFT

**A00868**

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, certify that on this 22nd day of December, 2005, I caused true and correct copies of the **Notice of Motion for Leave to Appeal and Motion for Leave to Appeal** to be served on the following parties in the manner indicated:

**VIA HAND-DELIVERY**

Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

**VIA U.S. FIRST-CLASS MAIL**

Guy A. Donatelli
Scott R. Withers
Lamb McErlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

Denise S. Kraft (#2778)

WLM_501410_1/DKRAFT

**A00869**

## File a Motion:
04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

**U.S. Bankruptcy Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Kraft, Denise Seastone entered on 2/22/2005 at 5:45 PM EST and filed on 2/22/2005
**Case Name:**       NHI, Inc. v. Fleetboston Financial Corporation et al
**Case Number:**     04-52879-PJW
**Document Number:** 68

**Docket Text:**
Motion for Leave *Motion for Leave to Appeal* Filed by Fleetboston Financial Corporation, Waring Justis, Jr., KMR Management, Inc., Robert Riesner. (Attachments: # (1) Notice of Motion# (2) Exhibit A# (3) Exhibit B# (4) Proposed Form of Order # (5) Certificate of Service) (Kraft, Denise)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**U:\Wilmington Bankruptcy\NHI\Motion for Leave to Appeal 2-22-05.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3467694-0]
[a2b1a048dfd93cb78582f8c81992026eabdd4add3057e9978a802aefaa3d3562d433.
9fb48fe39dbe719655c03a8959265d4fd7c84eac3610639947d64ccfa224]]
**Document description:**Notice of Motion
**Original filename:**U:\Wilmington Bankruptcy\NHI\Notice of Motion for Leave to Appeal 2-22-05.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3467694-1]
[a2f4a1a498ff916ff6e94d1285aafa2e78f374d779e2752340cdcc9f0e5bccc75fe4
9df23e8a1166cfcf85a680f79599b3ff55c68084439c908e6695a2be243d]]
**Document description:**Exhibit A
**Original filename:**U:\Wilmington Bankruptcy\NHI\Exhibit A 2-22-05 Motion for Leave to Appeal.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3467694-2]
[8a4940e9a99eb19f796804ef4773b10eb7d800b62b69d4d69d0c7c9f46f5889b177c
3f4378345c03e65f3106ed3aad5e3c20f9be97b0ca9ed35b41243f71fcd0]]
**Document description:**Exhibit B
**Original filename:**U:\Wilmington Bankruptcy\NHI\Exhibit B to 2-22-05 Motion for Leave to Appeal.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3467694-3]
[1b344a5cd0e210b562a576a3d2ed865096449cce2789968662113de59678ec82c327
e90b9663b45f1b631b28146ca089f3ec9d188ec59992f922cfdf40c67bfb]]
**Document description:**Proposed Form of Order
**Original filename:**U:\Wilmington Bankruptcy\NHI\Proposed Order 2-22-06 Motion for Leave to Appeal.pdf
**Electronic document Stamp:**

[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3467694-4]
[1b7a5477d860c359b6b1278448dddb03e36e9f820d284dae57e512189b688559d93b
c6ac96dfefc2e4a230f5434af777cb111877e6493b709bc564bb4d4c4328]]
**Document description:**Certificate of Service
**Original filename:**U:\Wilmington Bankruptcy\NHI\COS 2-22-05 Motion for Leave to File Appeal.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3467694-5]
[94950b0bba3e59f1805dec5d15747881de5c1f4779d73e9871a481c7034243d0e602
609ecab1507d0ac1a62a56790887125489dbfe06188fd37cf578c75f7bea]]

**04-52879-PJW Notice will be electronically mailed to:**

Stuart M. Brown     sbrown@edwardsangell.com, DEbankruptcy@edwardsangell.com

Denise Seastone Kraft     dkraft@edwardsangell.com

Mark Daniel Olivere     molivere@edwardsangell.com

Stephen W. Spence     tap@pgslaw.com;th@pgslaw.com

**04-52879-PJW Notice will not be electronically mailed to:**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| | : | |
| _____ Debtor. | : | Chapter 11 |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| | : | |
| v. | : | |
| | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | **Hearing Date: TBD** |
| INC., ROBERT RIESNER and | : | **Objection Deadline: TBD** |
| WARING S. JUSTIS, JR., | : | |
| | : | |
| Defendants. | : | |

## MOTION OF FLEETBOSTON FINANCIAL CORPORATION, KMR MANAGEMENT, INC., ROBERT RIESNER AND WARING S. JUSTIS, JR., FOR A STAY PENDING APPEAL OF THE FEBRUARY 11, 2005 ORDER AND MEMORANDUM OPINION

Defendants FleetBoston Financial Corporation ("Fleet"), KMR Management Inc. ("KMR"), Robert Reisner ("Reisner") and Waring S. Justis ("Justis") (together, the "Defendants"), by and through their undersigned counsel, hereby move this Court, pursuant to 28 U.S.C. § 158(a) of the Bankruptcy Code and Fed. R. Bankr. P. 8003, for a stay pending appeal under 28 U.S.C. § 158(a) to the United States District Court for those reasons more fully set forth in its Brief in Support of Motion of Fleetboston Financial Corporation, KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr., for a Stay Pending Appeal of the February 11, 2005 Order [D.I. 66] and Memorandum Opinion [D.I. 65]. A Notice of Appeal is being filed contemporaneously herewith and expressly incorporated herein by reference.

Docket# 69
Date: 2-22-05

WLM_501412_1/DKRAFT

A00872

Dated: February 22, 2005

EDWARDS & ANGELL LLP

Stuart M. Brown, Esquire (No. 4050)
Denise Seastone Kraft (No. 2778)
Mark D. Olivere (No. 4291)
919 N. Market Street
Wilmington, DE 19801
Tel:  302.777.7770
Fax:  302.777.7263

Counsel for Defendants
FleetBoston Financial Corporation,
KMR Management Inc.,
Robert Reisner and
Waring S. Justis

WLM_501412_1/DKRAFT

A00873

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:            :       Case No. 02-10651 (PJW)

NHI, INC.,        :

          Debtor.    :       Chapter 11

NHI, INC.,        :

         Plaintiff    :       Adversary No. 04-52879

               :

v.                  :

FLEETBOSTON FINANCIAL    :
CORPORATION, KMR MANAGEMENT, :     Related Docket No. 1 and 17
INC., ROBERT RIESNER and    :
WARING S. JUSTIS, JR.,        :

         Defendants.    :

### ORDER GRANTING STAY PENDING APPEAL

Upon the Motion For Stay Pending Appeal of the February 11, 2005 Order and Memorandum Opinion (the "Motion"), Defendants FleetBoston Financial Corporation ("Fleet"), KMR Management Inc. ("KMR"), Robert Reisner ("Reisner"), and Waring S. Justis ("Justis") (collectively, the "Defendants") seeking entry of an Order granting Defendants stay pending appeal of the Court's February 11, 2005 Order [D.I. 66] and Memorandum Opinion [D.I. 65] denying Defendants' motion to dismiss second amended complaint, it is hereby

ORDERED that the Motion for Stay Pending Appeal is GRANTED.

Dated:_____, 2005

_____
United States Bankruptcy Court Judge

WLM_501412_1/DKRAFT

**A00874**

## CERTIFICATE OF SERVICE

  I, Denise Seastone Kraft, certify that on this 22nd day of December, 2005, I caused true and correct copies of the **Motion for Stay Pending Appeal** to be served on the following parties in the manner indicated:

**VIA HAND-DELIVERY**

Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

**VIA U.S. FIRST-CLASS MAIL**

Scott R. Withers
Lamb McErlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

Denise S. Kraft (#2778)

WLM_501412_1/DKRAFT

A00875

**File a Motion:**

04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

## U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Kraft, Denise Seastone entered on 2/22/2005 at 8:34 PM EST and filed on 2/22/2005

**Case Name:**          NHI, Inc. v. Fleetboston Financial Corporation et al
**Case Number:**      04-52879-PJW
**Document Number:** 69

**Docket Text:**
Motion To Stay Pending Appeal *MOTION OF FLEETBOSTON FINANCIAL CORPORATION, KMR MANAGEMENT, INC., ROBERT RIESNER AND WARING S JUSTIS, FOR A STAY PENDING APPEAL OF THE FEBRUARY 11, 2005 ORDER AND MEMORANDUM OPINION* Filed by Fleetboston Financial Corporation, Waring Justis, Jr., KMR Management, Inc., Robert Riesner. (Attachments: # (1) Order# (2) Certificate of Service) (Kraft, Denise)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**01_Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3468591-0]
[0d0f7c6b5b90bb7a6583a74f0905bd9db5b83a4d5a7e9895e7f1f45fee528c6d7b83
b4dada024246345ce33565fc689bdc7149eeb24c85b5b2130b8c5803e089]]
**Document description:** Order
**Original filename:**01_Order.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3468591-1]
[5c859d8548aa24caa5c3568800dcda66a5baa39e82dfeacff1a7a77d73ba296b67e2
13b354ddbacfe4d7464bb715ae30d721b3e1cef9aef971971fa16443c34d]]
**Document description:**Certificate of Service
**Original filename:**01_COS.pdf

**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3468591-2]
[67fa0b31f60c5f7e22a4afc658a5c1829f54887940510743c473e635c4817b424213
d2b669d2f186a124d8ec82d9318b14ddad8430d0150fb2f74faabf4e198e]]

**04-52879-PJW Notice will be electronically mailed to:**

Stuart M. Brown       sbrown@edwardsangell.com, DEbankruptcy@edwardsangell.com

Denise Seastone Kraft      dkraft@edwardsangell.com

Mark Daniel Olivere      molivere@edwardsangell.com

Stephen W. Spence      tap@pgslaw.com;th@pgslaw.com

**04-52879-PJW Notice will not be electronically mailed to:**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| | : | |
| _____ Debtor. | : | Chapter 11 |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| | : | |
| v. | : | |
| | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | **Hearing Date: TBD** |
| INC., ROBERT RIESNER and | : | **Objection Deadline: TBD** |
| WARING S. JUSTIS, JR., | : | |
| | : | |
| Defendants. | : | |

## BRIEF IN SUPPORT OF MOTION OF FLEETBOSTON FINANCIAL CORPORATION, KMR MANAGEMENT, INC., ROBERT RIESNER AND WARING S. JUSTIS, JR., FOR A STAY PENDING APPEAL OF THE FEBRUARY 11, 2005 ORDER AND MEMORANDUM OPINION DENYING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Dated: February 22, 2005

EDWARDS & ANGELL LLP
Stuart M. Brown, Esquire (No. 4050)
Denise Seastone Kraft (No. 2778)
Mark D. Olivere (No. 4291)
919 N. Market Street
Wilmington, DE 19801
Tel: 302.777.7770
Fax: 302.777.7263

Counsel for Defendants
FleetBoston Financial Corporation,
KMR Management Inc.,
Robert Reisner and
Waring S. Justis

Docket# 70
Date: 2-22-05

WLM_501417_1.DOC/DKRAFT

A00878

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 1

RELIEF REQUESTED..................................................................................................... 5

      I.      The Court Should Stay the Adversary Proceeding in its Entirety ............................ 5

              A.     Defendants Will Likely Succeed on the Merits of Their Appeal................. 6

                     1.     Denial of Defendants' Motion to Dismiss ........................................ 6

                     3.     Denial of Defendants' Motion to Dismiss as to Avoidance Actions ................................................................................. 12

              B.     Defendants Will Suffer Irreparable Harm if a Stay is Not Granted................................................................................................... 13

              C.     Granting a Stay Will Not Substantially Injure Other Parties .................... 13

              D.     A Stay Pending Appeal Would Serve the Public Interest........................... 14

NO BOND SHOULD BE REQUIRED .......................................................................... 14

CONCLUSION................................................................................................................ 15

WLM_501417_1.DOC/DKRAFT

A00879

## TABLE OF AUTHORITIES

### CASES

Billops v. Magness Constr. Co., 391 A.2d 196 (Del. 1978). ........................................... 11

Citizens Nat'l Bank (In re Turner), 207 B.R. 373, 376-77 (B.A.P. 2d Cir. 1997) ...................... 7

Electric Mobility Corp. v. Bourns Sensors/Controls, Inc., 87 F. Supp. 2d 394, 405 (D.N.J. 2000)8

Evans v. Buchanan, 435 F.Supp. 832, 844 (D.Del. 1997) ............................................... 5

Evans v. Buchanan, 455 F. Supp. 705, 708 (D. Del. 1978) ............................................. 6

Finnegan Constr. Co. v. Robino-Ladd Co., 354 A.2d 142 (Del. Super. Ct. 1976). ...................... 9

Finnegan Constr. Co. v. Robino-Ladd Co., 354 A.2d at 145............................................ 10

Gizzi v. Texaco, Inc., 437 F.2d 308 (3d Cir.) ...................................................... 10

Goldstein v. Miller, 488 F.Supp. 156, 172 (D.Md. 1980), aff'd, 649 F.2d 863 ........................ 6

Guyer v. Haveg Corp., 205 A.2d 176, 180 (Del. Super. Ct. 1964)..................................... 10

Hirschfeld v. Bd. of Elections, 984 F.2d 35 (2d Cir. 1993).......................................... 7

In re APF Co., 308 B.R. 183, 188 (Bankr.D.Del. 2004)............................................... 14

In re Byrd, 172 B.R. 970, 974 (Bankr. W.D. Wash. 1994)............................................. 18

In re Cendant Corp. Securities Litig., 109 F. Supp.2d 225, 230 (D.N.J. 2000)....................... 8

In re Del. & Hudson Ry. Co., 90 B.R. 90, 91 (Bankr. D. Del. 1988) .................................. 5

In re Edwards, 228 B.R. 573 (Bankr. E.D.Pa. 1999) ................................................. 6

In re Farrell Lines, Inc., 761 F.2d 796 (D.C. Cir. 1985).......................................... 17

In re Sphere Holding Corp., 162 B.R. 639, 644-45 (E.D.N.Y. 1994) .................................. 18

In re Theatre Holding Corp., 22 B.R. 884, 885-86 (Bankr. S.D.N.Y. 1982)............................ 18

In re United Merchants & Manufacturers, Inc., 138 B.R. 426, 430 (D.Del. 1992) ................. 17, 18

In re Valley Media, 288 B.R. 189, 192 (Bankr.D.Del. 2003).......................................... 14

McCormick v. City of Chicago, 230 F.3d 319, 325 (7th Cir. 2000).................................... 8

Missouri Housing Dev. Comm'n v. Brice, 919 F.2d 1306, 1315 (8th Cir. 1990)......................... 8

Morgan v. Polaroid Corp. (In re Polaroid Corp.), 2004 WL 253477, *1 (Bankr.D.Del. Feb. 9,
    2004) ......................................................................................... 6

O'Bryan v. Estelle, 691 F.2d 706, 708 (5th Cir. 1982) ............................................. 6

Overbrook Egg Nog Corp. v. Miller, 649 F.2d 864 (4th Cir. 1981).................................... 6

Pension Benefit Guar. Corp. v. Sharon Steel Corp. (In re Sharon Steel Corp.), 159 B.R. 730, 733
    (Bankr. W.D.Pa. 1993) ......................................................................... 6

Pesta v. Warren, 2004 WL 1172996 (Del. Super. May 13, 2004)........................................ 8

Republic of the Phil. V. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991)................ 5

TWA Inc. Post Confirmation Estate v. Marsh USA, Inc. (In re TWA Inc. Post Confirmation
    Estate), 305 B.R. 228, 232 (Bankr. D. Del. 2004) ............................................. 15

Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 261 (3d Cir. 1995) .................. 17

WLM_501417_1.DOC/MOLIVERE

A00880