## INTRODUCTION

By this Motion, Defendants are seeking a stay of the underlying adversary proceeding in order to prosecute an appeal of the February 11, 2005 Order [D.I. 66] and Memorandum Opinion [D.I. 65] (the "Decision") denying Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion to Dismiss"). Unless a stay of the Adversary Proceeding is granted, Defendants face a substantial risk of incurring additional litigation costs through the parties engaging in discovery, motions practice and other procedural matters while the appeal is pending. Further, the Court risks establishing the precedent of allowing Plaintiffs to escape the judicial admissions in a complaint establishing an agency relationship under the long established law of agency and/or apparent agency. In addition, the Court's Decision establishes elements sufficient to plead a preference that are inconsistent with the sufficient elements in previous decisions in this District and in this Court.

## BACKGROUND

On March 1, 2002, NHI filed its voluntary petition for relief with the United States Bankruptcy Court for the District of Delaware under Chapter 11 of the U.S. Bankruptcy Code. On February 27, 2004, NHI filed an adversary complaint against the Defendants. [D.I. 1]. The complaint contained counts for breach of contract, breach of covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, fraud, waste of corporate assets, tortuous interference with contract and prospective business advantage, fraudulent transfers pursuant to federal and state law (Delaware and Maryland), fraudulent conveyances pursuant to federal and state law (Delaware and Maryland), and avoidance of preferences pursuant to § 547 of the Bankruptcy Code. All acts in the complaint were alleged to have occurred from October 2000, when KMR entered into a consulting agreement with NHI, until NHI filed for bankruptcy.

Defendants filed a Motion to Dismiss the complaint on June 1, 2004 [D.I. 12]. NHI responded to the Motion to Dismiss and attached an amended complaint to the response (the "First Amended Complaint") [D.I. 17]. At the pretrial hearing on July 8, 2004, the parties orally stipulated on the record that the amended complaint attached as an Exhibit to plaintiff's answer to Fleet's motion to dismiss would be deemed filed as of July 8, 2004.

NHI alleged throughout its initial complaint and again through its first amended complaint that Defendants were acting as agents of Mercantile Safe Deposit and Trust Company ("Mercantile"). Defendants discovered that Plaintiff released Mercantile and its agents on February 26, 2002 in a written document filed with the Court in the main bankruptcy case and in the Cash Collateral Agreement and Consent Order [D.I. 34] stating that "no offsets, defenses or counterclaims to the [pre-petition indebtedness to Mercantile] exist . . .".

Accordingly, on August 5, 2004, Defendants filed a motion to dismiss [D.I. 26] the first amended complaint filed by NHI based on its February 26, 2002 release of Defendants. NHI responded by filing an answering brief to the motion to dismiss [D.I. 29] on September 8, 2004, wherein it repeated its allegations of agency on the part of Defendants as agent and Mercantile as principal. Subsequently, Defendants filed a Reply Brief in Response to Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint filed September 15, 2004 [Docket No. 30].

On October 8, 2004, the Court entered a letter on the docket converting Defendants' motion to one for summary judgment and directing that NHI file a supplemental answering brief to its answering brief [D.I. 32]. The Court's letter stated in part:

> I believe it is incumbent upon Plaintiff to present facts which negate an agency relationship or otherwise show why the release provision does not apply to Defendants.

WLM_501417_1.DOC/DKRAFT

A00882

On October 29, 2004, NHI filed a Certification ("Certification") with the Court [D.I. 33] requesting extensive discovery on the issue of agency to prove that, despite the allegations in its complaint, amended complaint and answering brief to the motion to dismiss, it had documents in its possession showing that Defendants were not agents of Mercantile. NHI further informed the Court in its certification that it might amend its amended complaint further on the issue of agency.

On November 12, 2004, Defendants filed a Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D. I. 35] and Memorandum of Law in Support of Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [D.I. 36] on the basis that NHI's Certification was improper. On November 22, 2004, NHI filed an Answer to Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [Docket No. 39] and Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [Docket No. 40]. On November 30, 2004, Defendants filed a Reply Brief in Response to Plaintiff's Answer to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc. [Docket No. 41].

On December 1, 2004, NHI filed an Agenda for the December 3, 2004 Omnibus Hearing ("Agenda") [D.I. 662]. In the Agenda, NHI requested a status conference on the adversary proceeding.

On December 3, 2004 counsel for NHI and the Defendants appeared at the Omnibus Hearing and the Court conducted a "Status Conference". At the conclusion of the "Status Conference", the Court found that despite NHI's contention to the contrary, it had in fact alleged agency in paragraph 33 of its amended complaint. After the Court found that NHI had alleged agency in its pleadings, NHI stated upon further questioning by the Court that it would not be

- 3 -

pursuing the issue of agency. Thereafter, the Court entered a bench ruling directing Plaintiff to amend its amended complaint to remove all allegations of agency between Defendants and Mercantile.

On December 13, 2004, in response to the December 3, 2004 bench decision, the Defendants filed a Notice of Appeal [D.I. 47], a Motion for Stay Pending Appeal [D.I. 58], and a Motion for Leave to Appeal [D.I. 46].

On December 10, 2004, the Plaintiff filed its Second Amended Complaint (the "Second Amended Complaint") [D.I. 45]. The Defendants answered the Second Amended Complaint with the Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion to Dismiss") [D.I. 51].

On February 11, 2005, the Court entered an Order denying the Defendant's Motion to Dismiss [D.I. 66] and issued a Memorandum Opinion [D.I. 65] (the "Decision") explaining the basis for the denial.

By denying the Motion to Dismiss, the Court ignored the judicial admissions of agency made by the Plaintiff in its complaint, amended complaint and prior moving papers. The Court's Decision has again effectively allowed NHI to escape its own judicial admissions of agency and foreclosed Defendants' opportunity to have NHI address the release issue based on NHI's own judicial admissions.

The first issue on appeal is whether the Court erred in finding that the allegations in the Second Amended Complaint did not constitute agency allegations under the well established law of agency and/or apparent agency. Throughout the Second Amended Complaint, Plaintiff alleges that it was under the belief that Mercantile consented to have acts done on its behalf and with its authority to act. Despite numerous, and repeated factual allegations of agency and/or

- 4 -

apparent agency by Plaintiff throughout the Second Amended Complaint, the Court nonetheless did not find that the Second Amended Complaint alleged agency.

The second issue on appeal is whether the Court correctly applied the law as to preference claims. This Court's Decision acknowledges an inconsistency in decisions on the elements sufficient to allege a preference in this District as well as in this Court. Accordingly, it was improper to deny the Defendants' motion to dismiss as to the preference claims.

## RELIEF REQUESTED

**I.    The Court Should Stay The Adversary Proceeding In Its Entirety**

Bankruptcy Rule 8005 empowers the Court to stay any judgment or order pending appeal. "[A] stay may be appropriate in a case where the threat of irreparable injury to the applicant is immediate and substantial, the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear and the interests of the other parties and the public are not harmed substantially." *Evans v. Buchanan*, 435 F.Supp. 832, 844 (D.Del. 1997).

In determining whether to stay an order, the Court must consider: (1) whether Defendants are likely to succeed on the merits; (2) whether Defendants will be irreparably harmed if a stay is not issued; (3) whether the issuance of a stay will substantially injure other parties; and (4) whether the public interest is affected. *Republic of the Phil. V. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991); *see also In re Del. & Hudson Ry. Co.*, 90 B.R. 90, 91 (Bankr. D. Del. 1988). In assessing whether Defendants have satisfied their burden of showing that a stay pending appeal is warranted, no one factor should be isolated rather, the Court must balance and weigh all relevant factors. *Evans v. Buchanan*, 455 F. Supp. 705, 708 (D. Del. 1978); *In re Edwards*, 228 B.R. 573 (Bankr. E.D.Pa. 1999) (balancing all factors in making the determination whether to grant a stay); *Pension Benefit Guar. Corp. v. Sharon Steel*

- 5 -

WLM_501417_1.DOC/DKRAFT

A00885

*Corp. (In re Sharon Steel Corp.)*, 159 B.R. 730, 733 (Bankr. W.D.Pa. 1993) (finding that the bankruptcy court can balance the factors "in light of the overall circumstances of the case"). As discussed below, all four factors are satisfied and entry of a stay pending appeal is warranted.

### A.    Defendants Will Likely Succeed on the Merits of Their Appeal

The first prong of the standard – a likelihood of success on the merits – requires the movant to have a "'substantial case,' or a strong case on appeal." *Morgan v. Polaroid Corp. (In re Polaroid Corp.)*, 2004 WL 253477, *1 (Bankr.D.Del. Feb. 9, 2004) (quoting *In re Public Serv. Co.*, 116 B.R. 347, 349 (Bankr. D.N.H. 1990)). The "likelihood-of-success" standard, however, "does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal." *Goldstein v. Miller*, 488 F.Supp. 156, 172 (D.Md. 1980), *aff'd*, 649 F.2d 863, *aff'd sub. nom. Overbrook Egg Nog Corp. v. Miller*, 649 F.2d 864 (4th Cir. 1981); *see also O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (movant need not always show probability of success; substantial case on merits and serious legal question, coupled with balance of equities, weighs heavily in favor of granting stay). This prong merely reflects a court's "intent to restrict appellate review to those parties with colorable claims while at the same time conserving judicial resources by eliminating frivolous appeals." *See Citizens Nat'l Bank (In re Turner)*, 207 B.R. 373, 376-77 (B.A.P. 2d Cir. 1997) (citation omitted) (citing *Hirschfeld v. Bd. of Elections*, 984 F.2d 35 (2d Cir. 1993)).

### 1)    Denial of Defendants' Motion to Dismiss

Defendants will likely be successful with their first issue on appeal because the Bankruptcy Court erroneously disregarded the numerous and repeated allegations of agency in the Second Amended Complaint that satisfy the elements of agency and/or apparent agency under well established law. Therefore, the Defendants' motion to dismiss should have been

WLM_501417_1.DOC/DKRAFT

A00886

granted based upon these judicial admissions made by Plaintiffs and because of releases subsequently discovered.

The Court has removed any question that the Defendants are covered by the releases discovered by the Defendants. The Court stated: "[t]hus if reading NHI's pleadings in the light most favorable to it leads to the inescapable conclusion that Defendants were Mercantile's agents, Defendants would be covered by the actions and this action should be dismissed. Memorandum Opinion, p. 7. However, in subsequently determining whether the allegations in the Second Amended Complaint satisfied the elements of agency, the Court did not fully analyze what constitutes agency under Delaware law. The application of the facts to the elements of apparent agency under Delaware law would have led to the irrefutable conclusion that the allegations satisfy the elements of apparent agency.

Unquestionably, the allegations in the Second Amended Complaint constitute judicial admissions. A judicial admission is a formal statement by a party in the course of judicial proceedings, which removes an admitted fact from the field of controversy. *Pesta v. Warren*, 2004 WL 1172996 (Del. Super. May 13, 2004). Courts hold that facts asserted in a pleading are considered "judicial admissions" and bind the party asserting the facts. *See Glick v. White Motor Co.*, 458 F.2d 1287 (3d Cir. 1972) (where a party offers deliberate, clear and unequivocal facts in a complaint, those assertions are binding on the party.); *In re Cendant Corp. Securities Litig.*, 109 F. Supp.2d 225, 230 (D.N.J. 2000); 10A Charles Alan Wright and Arthur R. Miller, *et al.*, Federal Practice and Procedure §§ 2722 and 2723 at 382 (3d ed. 1998) ("Wright & Miller"). "[E]ven if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1315 (8th

WLM_501417_1.DOC/DKRAFT

A00887

Cir. 1990); *Electric Mobility Corp. v. Bourns Sensors/Controls, Inc.,* 87 F. Supp. 2d 394, 405 (D.N.J. 2000). A party can plead himself out of court by alleging facts that show that he has no claim, even though he was not required to allege those facts. *See McCormick v. City of* Chicago, 230 F.3d 319, 325 (7th Cir. 2000); 30B Wright & Miller § 7026 (2000).

Defendants will likely be successful on appeal upon the proper application of the legal doctrines of agency and/or apparent agency and judicial admission. As determined by the Court, the Plaintiff released the agents of Mercantile. Thus, the correct application of the standard of agency and/or apparent agency to the judicial admissions in the Second Amended Complaint mandate dismissal of this proceeding.

In looking at the facts in the Second Amended Complaint, the Bankruptcy Court stated that the "plain language of the allegations in the Second Amended Complaint does not support the conclusion that Mercantile in any way controlled Defendants or that any party expressly or impliedly consented to an agency relationship." Memorandum Opinnion, p. 15. In construing the allegations against this actual agency standard, the Bankruptcy Court has overlooked an equally important concept of "apparent agency." In the Bankruptcy Court's eye, the allegations, after the forced removal of paragraph 33 of the First Amended Complaint, may not reach the traditional definition of actual agency where control or consent is necessary. The Court no longer saw agency in the allegations without the language "served at the direction and pleasure of Mercantile" in paragraph 33 of the First Amended Complaint. However, the allegations in the Second Amended Complaint of apparent agency are undeniable and demand a dismissal.

The law of apparent agency is well established in Delaware. The concept of apparent agency or authority focuses not upon the actual relation of a principal and agent, but the apparent relationship. *Billops v. Magness Constr. Co.,* 391 A.2d 196 (Del. 1978). Manifestations by the

- 8 -

A00888

alleged principal which create a reasonable belief in a third party that the alleged agent is authorized to bind the principal create an apparent agency from which spring the same legal consequences as those which result from an actual agency. *Finnegan Constr. Co. v. Robino-Ladd Co.,* 354 A.2d 142 (Del. Super. Ct. 1976). Apparent agency or apparent authority "arises when the principal creates by its words or conduct the reasonable impression in a third party that the agent has authority to act." *Guyer v. Haveg Corp.,* 205 A.2d 176, 180 (Del. Super. Ct. 1964), *aff'd.* 211 A.2d 910 (Del. 1965). If apparent agency or apparent authority is established, and it is shown that a third party relying on the apparent authority did so rely in good faith and was justified in so relying, the principal is bound to the same extent as with actual authority. *Finnegan Constr. Co. v. Robino-Ladd Co.,* 354 A.2d at 144.

The manifestations may be made directly to the third party, or may be made to the community in general, for example, by way of advertising. *Gizzi v. Texaco, Inc.,* 437 F.2d 308 (3d Cir.), *cert. denied,* 404 U.S. 829 (1971); Restatement 2d Agency §§ 8, 8B, 27 (1957). In order to establish a chain of liability to the principal based upon apparent agency, a litigant must show reliance on the indicia of authority originated by the principal, *Bowman v. Home Life Ins. Co. of America,* 260 F.2d 521 (3d Cir. 1958)]; Restatement 2d Agency § 267; and such reliance must have been reasonable. *Finnegan Constr. Co. v. Robino-Ladd Co.,* 354 A.2d at 145.

A principal may create apparent authority "by appointing a person to a position . . . which carries with it generally recognized duties" or by permitting a person "to do an act in such a way as to establish in a community a reputation for having authority to act, either by directing the agent so to represent, or by directing him to act and doing nothing to prevent the spread of such information by the agent or others." Restatement (Second) of Agency § 27 comment a (1958).

- 9 -

WLM_501417_1.DOC/DKRAFT

Under Delaware law, two elements are necessary to establish apparent agency. *Billops v. Magness Constr. Co.,* 391 A.2d 196 (Del. 1978). First, by its acts and conduct the principal must hold out the alleged agent as being authorized to act in the principal's behalf. *See id.* Second, the third party must reasonably rely upon this representation. *See id.* Unquestionably, the mere inclusion of an allegation in the Complaint that satisfies the first element of apparent agency satisfies the second element. That is, NHI must reasonable believe any allegations that Mercantile held out the Defendants as acting on its behalf because it included it in the Complaint. Therefore, the inclusion of the following allegations demonstrate the existence of agency through apparent agency that release the Defendants from any liability. The Bankruptcy Court erred in not determining that NHI pled itself out of court.

- Krieger (Scott Krieger, Mercantile's workout manager) insisted – on the threat of calling all of Mercantile's loans – that NHI retain a management consultant and strongly suggested/urged that Defendants KMR, Riesner and Justis be hired as management consultants. *See* Second Amended Complaint, ¶ 25.

- Krieger indicated to NHI that Mercantile would provide an additional $1.5 million of financing for NHI if KMR, Riesner and Justis considered NHI to be a viable going concern. *See* Second Amended Complaint, ¶ 26.

- Under the threat of calling all of Mercantile's loans, NHI, Pawnee, Shawnee, Midwest and the Mervine family, entered into a Consulting Agreement with Defendants KMR, Riesner and Justis. *See* Second Amended Complaint, ¶ 27.

- Upon information and belief, Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement. *See* Second Amended Complaint, ¶ 33.

- In collaboration with Krieger, KMR, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. *See* Second Amended Complaint, ¶ 46.

- 10 -

A00890

- NHI engaged KMR, Riesner and Justis solely at the direction of Mercantile to serve as NHI's management consultants. *See* Second Amended Complaint, ¶ 70.

The Plaintiff clearly believed, as evidenced by the foregoing allegations, that Mercantile held out the Defendants to act for and in collaboration with Mercantile. The Second Amended complaint demonstrates that the Plaintiff believed that Mercantile consented to have acts done on its behalf by the Defendants. *See* Restatement (Second) of Agency, supra at § 27. (Apparent authority, is "created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."); *see also Theos & Sons, Inc. v. Mack Trucks, Inc.,* 431 Mass. 736 (Mass., 2000). Yet, by requiring the Plaintiff to remove the most obvious and incriminating allegation of agency in paragraph 33 of the First Amended Complaint, the Court could determine that Mercantile did not control or that either party consented to an agency relationship. However, the Court only went half way in its analysis of agency. Had the Court looked at the foregoing allegations in light of the elements of apparent agency, the Court would have reached the inescapable conclusion that the Plaintiff's Second Amended Complaint contained judicial admissions of agency that forced the Plaintiff's right out of the Court.

At a minimum, for the reasons set forth above, Defendants have established a strong likelihood of success on the merits with respect to the Bankruptcy Court's misapplication or oversight in applying the law of agency and/or apparent agency to the allegations in the Second Amended Complaint, the Court's erroneous Decision denying Defendants' Motion to Dismiss. As such, there is sufficient basis for the Court to conclude that Defendants will likely succeed on appeal.

WLM_501417_1.DOC/DKRAFT

A00891

### 2.    Denial of Defendants' Motion to Dismiss as to Avoidance Actions

The Court erred in determining the elements sufficient to sustain a preference action must be determined upon appeal. Plaintiff's avoidance claim in Count XII identifies fifty-two alleged transfers totaling approximately $1,060,144.00 as set forth in Exhibit B to the Second Amended Complaint. The Second Amended Complaint, however, generally pleads that KMR, Riesner and Justis received one or more of the alleged transfers and that the transfers were to or for their benefit. However, Exhibit B to the Second Amended Complaint identifies "KMR Management" as the recipient of each alleged transfer.[1]  Consequently, because the Second Amended Complaint fails to show that any of the alleged preferential transfers were "to or for the benefit of" Riesner and/or Justis, individually, and because the Second Amended Complaint fails to identify or adequately plead that Riesner and/or Justis received the alleged transfers identified in Exhibit B, Count XII must be dismiss as to individual defendants Riesner and Justis.

This Court has provided guidance in preference actions by requiring that specific factors be included in a preferential transfer claim, namely: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii0 name of debtor/transferor, (iii) *name of transferee* and (iv) the amount of the transfer." *See In re APF Co.*, 308 B.R. 183, 188 (Bankr.D.Del. 2004) (emphasis added) (quoting *In re Valley Media*, 288 B.R. 189, 192 (Bankr.D.Del. 2003). The Court provides the same guidance in the Decision: *See* Decision, p. 22 *citing TWA Inc. Post Confirmation Estate v. Marsh USA, Inc. (In re TWA Inc. Post Confirmation Estate), 305 B.R. 228, 232* (Bankr. D. Del. 2004) (citation omitted). However, rather than requiring that the Second Amended Complaint specify who the transferee is, the Court allowed the name of the transferee to be "easily

---

[1] The single exception is transfer identified as Check No. 8728, which identifies "KMR ???" as the vendor. *See* Exhibit B to the Second Amended Complaint.

- 12 -

A00892

inferred." The Court has thus established that inferring the identity of a transferee, rather than specifically identifying a transferee, as previously required by this Court and in this District, is the proper application of the law. The Court has erred in finding that the Plaintiff sufficiently alleged the elements required to defeat dismissal of a preference claim. As such, there is sufficient basis for the Court to conclude that Defendants will likely succeed on appeal.

**B.      Defendants Will Suffer Irreparable Harm if a Stay is Not Granted**

If a stay is not granted, Defendants will suffer irreparable harm as they will be forced to defend and incur additional, and substantial, costs. An appeal of the December 3, 2005 bench ruling is still pending in the District Court for the District of Delaware. Absent the entry of a stay, the parties will engage in discovery and motion practice as well as other procedural matters while the appeal is pending. These costs may be adverted by the timely entry of a stay by the Court.

**C.      Granting a Stay Will Not Substantially Injure Other Parties**

A stay of the Adversary Proceeding pending Defendants' appeal will not cause any substantial harm to any of the parties in the bankruptcy proceeding. The Debtor will not suffer any substantial harm by waiting until the appeal is decided. The adversary proceeding is essentially still in the initial stages of the litigation – as previously noted, an appeal of the December 3, 2005 bench ruling is still pending in the District Court for the District of Delaware. Further, at the time of the filing of this Motion, no scheduling order has been established, no trial date has been scheduled, and no discovery requests have been served to date. Finally, the stay is beneficial to the estate to the extent that the Defendants are successful on appeal, the estate will not incur the additional costs associated with prosecuting the adversary proceeding.

WLM_501417_1.DOC/DKRAFT

A00893

### D.    A Stay Pending Appeal Would Serve the Public Interest

The imposition of a stay pending appeal would undoubtedly benefit the public interest because there is an obvious concern in maintaining the integrity of the Court, and the rules of procedure, and ensuring that the rights of defendants are not disregarded by not allowing NHI to slip out of the agency noose it created in its own factual pleadings after releases were discovered showing that NHI entered into a release with Mercantile that also released Mercantile's agents, including Defendants, in accordance with the agency allegations plead by NHI. The failure to apply the law of apparent agency is reversible error and is a serious issue in this litigation. Reversal is appropriate where substantial rights are affected by an error. See, *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 261 (3d Cir. 1995) (citing *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 923-28 (3d Cir. 1985)). The ability to plead the elements of apparent agency to avoid the Court's interpretation of agaency and dismissal due to previously granted releases is absolutely inappropriate and prejudicial. Further, the stay is beneficial as the appeal will not only completely end the litigation, it would end an abusive use of the judicial system by NHI. The relief requested would relieve the Court of further hearings and promote judicial economy

### NO BOND SHOULD BE REQUIRED

Bankruptcy Rule 8005 allows the Court, in its discretion, to condition a stay pending appeal on the filing of a bond. Fed. R. Bankr. P. 8005. *See In re United Merchants & Manufacturers, Inc.*, 138 B.R. 426, 430 (D.Del. 1992); *see e.g., In re Farrell Lines, Inc.*, 761 F.2d 796 (D.C. Cir. 1985) (involuntary debtor's appeal to district court was not dismissed for failure to post a bond); *In re Byrd*, 172 B.R. 970, 974 (Bankr. W.D. Wash. 1994) (holding that posting of a bond is discretionary, and thus, not a prerequisite to granting a stay pending appeal);

WLM_501417_1.DOC/DKRAFT

A00894

*In re Sphere Holding Corp.*, 162 B.R. 639, 644-45 (E.D.N.Y. 1994) (debtor would not be required to file bond as condition to obtaining injunctive relief against creditors' pursuit of collection); *In re Westwood Plaza Apartments, Ltd.*, B.R. 163 (Bankr. E.D. Tex. 1993) (HUD would be granted stay pending appeal without posting supersedeas bond, subject to conditions requested by debtor).

Because the requirement of posting a bond is discretionary, courts have relieved appellants of the obligation to post security for a stay where little or no injury or prejudice to appellees will occur. *In re United Merchs. & Mfrs., Inc.*, 138 B.R. 426, 427 (D.Del. 1992) (stay of further distributions pursuant to confirmed chapter 11 plan would not be conditioned upon filing of a bond because the debtor would not suffer any loss as a result of the stay pending appeal.); *see also, In re Sphere Holding Corp.*, 162 B.R. at 144 (recognizing that the posting of a bond is discretionary); *see also, In re Theatre Holding Corp.*, 22 B.R. 884, 885-86 (Bankr. S.D.N.Y. 1982) (the only compensable damages to a party opposing the appeal are those which are the "natural and proximate" result of the stay). The relief sought by Defendants will not jeopardize the Debtors' estate. By staying the underlying action, Debtor will not incur the additional litigation costs associated with prosecuting the adversary proceeding.

## CONCLUSION

WHEREFORE, Defendants respectfully requests that the Court enter an order staying the Adversary Proceeding, and grant such other and further relief as the Court may deem proper.

WLM_501417_1.DOC/DKRAFT

A00895

Dated:  February 22, 2005                    EDWARDS & ANGELL LLP

Stuart M. Brown, Esquire (No. 4050)
Denise Seastone Kraft (No. 2778)
Mark D. Olivere (No. 4291)
919 N. Market Street
Wilmington, DE 19801
Tel:  302.777.7770
Fax:  302.777.7263

Counsel for Defendants
FleetBoston Financial Corporation,
KMR Management Inc.,
Robert Reisner and
Waring S. Justis

WLM_501417_1.DOC/DKRAFT

A00896

# UNREPORTED CASES

A00897

**Westlaw.**

Not Reported in F.Supp.2d
2004 WL 253477 (D.Del.)
(Cite as: 2004 WL 253477 (D.Del.))

Page 1

**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: POLAROID CORPORATION, et al., Debtors.
Stephen J. MORGAN, Appellant,
v.
POLAROID CORPORATION, et al., Appellees.
No. Civ.A. 02-1353 JJF, 01-10864 PJW.

Feb. 9, 2004.
Stephen J. Morgan, Appellant, pro se.

Gregg M. Galardi, Mark L. Desgrosseilliers, of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, Eric W. Kaup, of Skadden, Arps, Slate, Meagher & Flom LLP, Chicago, Illinois, for Debtors and Debtors-in-Possession, Appellees, of counsel.

Joseph Malfitano, of Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, Nava Hazan, of Akin Gump Strauss Hauer & Feld, LLP, New York, New York, Co-Counsel to the Plan Administrator, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan. (D.I.31.) For the reasons discussed below, the Court will deny Appellant's request for a stay pending appeal.

BACKGROUND

The instant action is a bankruptcy appeal arising from the voluntary bankruptcy filing by Polaroid Corporation and certain of its subsidiaries and affiliates (collectively the "Debtors") in October of 2001. By his Motion, the Appellant requests the Court to stay the implementation of the Debtors' plan for reorganization. The Bankruptcy Court denied an identical request for a stay by Appellant on December 16, 2003.

I. Parties' Contentions

The Appellant contends that the Court should stay the implementation of the reorganization plan because it is not in the best interest of Polaroid shareholders. The Appellant alleges that the auction of Polaroid's assets was fraudulent and that the value of Polaroid's assets far exceeded their sale price. Further, the Appellant contends that his appeal is likely to be successful because there remain unanswered questions about value and damaged shareholder and bondholder interests. The Appellant contends that if the Court denies his request for stay, he and other shareholders will be deprived of their right to appeal and their financial stakes in Polaroid. The Appellant also contends that a stay is in the public interest, because in light of recent corporate scandals, a resolution of the instant appeal is required.

In response, the Appellee contends that the Court should deny Appellant's request for an emergency stay because he has not satisfied the standards for entitlement to a stay pending appeal. Further, the Appellee contends that the Appellant's request is equitably moot. The Appellee also contends that Appellant failed to properly serve it and its counsel as required by the Federal Rules of Civil Procedure.

DISCUSSION

Federal Bankruptcy Rule 8005 enables a reviewing court to issue a stay pending appeal from a judgment, order, or decree of a bankruptcy judge. Courts interpreting Federal Bankruptcy Rule 8005 have established a four prong test for an appellant to obtain a stay: 1) a strong likelihood of success on the merits of the appeal; 2) the movant will suffer irreparable harm if the stay is denied; 3) substantial harm will not be suffered to non-moving parties if the stay is granted; and 4) issuance of the stay will not harm the public interest. *In re 421 Willow Corp.*, 2003 WL 22318022 at *3 (E.D.Pa. Oct. 9, 2003). If a party fails to establish one of the four prongs, a court may deny the requested stay. *In re ANC Rental Corp.*, 2002 WL 1058196 at *2 (D.Del. May 22, 2002) (citing *In re Blackwell*, 162 B.R. 117, 120 (E.D.Pa.1993)). Because the Court concludes that Appellant has not established a likelihood of success on the merits, the Court will deny the request for stay pending appeal.

Likelihood of success on the merits means that a movant has a " 'substantial case,' or a strong case on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 253477 (D.Del.)
(Cite as: 2004 WL 253477 (D.Del.))

Page 2

appeal." *In re The Columbia Gas Sys., Inc.,* 1992 U.S. Dist. LEXIS 3253 at *4 (D.Del. March 10, 1992) (quoting *In re Public Serv. Co. of N.H., 116 BR 347, 349 (Bankr.D.N.H.1990)*. Appellant contends that "unanswered questions about value ... once answered will favor the appeal." (D.I. 31 at 3.) However, in the instant motion the Appellant does not identify for the Court any order, decree, or judgment by the Bankruptcy Court that was erroneous, and thus, potentially reversible on appeal. Moreover, Appellant has not identified any potentially incorrect factual finding or legal conclusion reached by the Bankruptcy Court.

*2 Absent specific challenges to actions taken by the Bankruptcy Court, the Court must conclude that Appellant has not demonstrated a strong likelihood of success on the merits. The Court will not speculate as to what errors, if any, were committed by the Bankruptcy Court. Therefore, because the Court concludes that Appellant has failed to establish the first prong of the test for entitlement to a stay, the Court will deny Appellant's Motion. [FN1]

> FN1. Based on this conclusion, the Court will not address Appellee's remaining bases for denial.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 9th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan (D.I.31) is *DENIED.*

2004 WL 253477 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

· 1:02CV01353 _____ (Docket) (Aug. 02, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw Attached Printing Summary Report for CONNOLLY,THEODOR 4652580**

| | |
|---|---|
| Date/Time of Request: | Tuesday, February 22, 2005 16:37:00 Central |
| Client Identifier: | 51444/0002 |
| Database: | DE-CS |
| Citation Text: | Not Reported in A.2d |
| Lines: | 88 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

A00900

Not Reported in A.2d
2004 WL 1172996 (Del.Super.)
**(Cite as: 2004 WL 1172996 (Del.Super.))**

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware.
Victoria PESTA
v.
Gail WARREN, individually, and Gary Warren,
individually, and Gail and Gary
Warren, jointly as owners of 604 West Avenue, New
Castle, DE, an apartment
building.
No. Civ.A.03C04294SCD.

Submitted May 10, 2004.
Decided May 13, 2004.

Dear Counsel:

DEL PESCO, J.

**\*1** The plaintiff has filed a motion for partial
summary judgment seeking a ruling that her claim is
not governed by 25 Del. C. § 1501. It states:

> No person who enters onto private residential or
> farm premises owned or occupied by another
> person, *either as a guest without payment or as a*
> *trespasser,* shall have a cause of action against the
> owner or occupier of such premises for any injuries
> or damages sustained by such person while on the
> premises unless such accident was intentional on
> the part of the owner or occupier or was caused by
> wilful or wanton disregard of the rights of others.
> [FN1]

> FN1. Del.Code Ann. tit. 25, § 1501 (2002).
> (emphasis added)

Plaintiff contends that at the time of the accident, she
was visiting a tenant of the defendant-landlord, and
thus was neither a *guest without payment* nor a
*trespasser.* Were she either, she would be required to
prove that her injuries were the result of either
intentional or willful and wanton conduct on the part
of the owner.

On June 26, 2001, Victoria Pesta ("Plaintiff") visited
Regina Sheetz at 604 West Ave, Apartment C in New
Castle ("604 West"). As plaintiff descended the

external stairway, which was the sole means of
ingress and egress, she claims that a loose step
caused her to fall and sustain injuries. On the date in
question, the apartment building was owned by Gail
and Gary Warren ("Landlord"). Sheetz was interested
in renting the apartment and was given a key by
Landlord so that she could clean the apartment prior
to signing a lease. Landlord required that Sheetz pay
a security deposit before signing a lease which
deposit was never paid, so no lease commenced.
Landlord claims that it was not until after the incident
in question that Sheetz' presence in the apartment was
known. [FN2]

> FN2. *Bell v. Halfen,* 493 A.2d 304
> (Del.1985).

On July 20, 2001, Landlord filed an action for Debt
and Summary Possession in the Justice of the Peace
Court. A default judgment for two months rent, June
and July, and a Writ of Possession were entered on
August 24, 2001. On September 11, 2001, after the
expiration of the appeal period, the Constable posted
an Eviction Notice at 604 West. Landlord now claims
that Sheetz was not a tenant. Plaintiff argues that the
landlord made a judicial admission in the Justice of
the Peace Court action that Sheetz was a tenant, and
is now barred from taking a contrary position.

Summary judgment may be granted if there are no
material issues of fact, viewing the record in light
most favorable to the non-moving party. [FN3] A
judicial admission is a formal statement by a party in
the course of judicial proceedings, which removes an
admitted fact from the field of controversy. [FN4]
Judicial admissions are recognized in Delaware.
[FN5] The legal significance of the dispute is that if
Sheetz was a tenant, there is case law for the
proposition that while a tenant may be entitled to the
protection of 25 Del. C. § 1501, a landlord is not.
[FN6] On the other hand, if Sheetz has no legal
status, i.e. was a trespasser, plaintiff is arguably a
trespasser, too.

> FN3. *Moore v. Sizemore,* 405 A.2d 679
> (Del.1979).

> FN4. 29A Am Jur 2d, Evidence § 770
> (1994).

> FN5. *Krauss v. State Farm Mutual*
> *Automobile Ins. Co.,* Del. Super ., C.A. No.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2004 WL 1172996 (Del.Super.)
**(Cite as: 2004 WL 1172996 (Del.Super.))**

03C-08-252, Cooch, J. (Apr. 23, 2004) (Mem.Op.) at 11.

> FN6. *Ford v. Ja-Sin,* 420 A.2d 184 (Del.1980); *Mosher v. Evans,* Del.Super., C.A. No. 96C-01-020, Terry, J. (Mar. 31, 1998)(Op.) 1998 Del.Super. LEXIS 183.

**\*2** I conclude that the doctrine of judicial estoppel is applicable to this dispute. The landlord sought the benefit of the remedies available under the landlord-tenant statute to secure a judgment against Sheetz and to have her evicted. The predicate of that complaint is the notion that Sheetz was a tenant. That assertion cannot now be repudiated.

The standard of care which is applicable to the claim against the landlord is negligence. [FN7] Thus, plaintiff's motion for partial summary judgment is GRANTED.

> FN7. *New Haverford Partnership v. Stroot,* 772 A.2d 792 (Del.2001); *see also Naidu v. Laird,* 539 A.2d 1064 (Del.1988).

IT IS SO ORDERED.

2004 WL 1172996 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
2004 WL 1172996 (Del.Super.)
(Cite as: 2004 WL 1172996 (Del.Super.))

Page 1

**H**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware.
Victoria PESTA
v.
Gail WARREN, individually, and Gary Warren,
individually, and Gail and Gary
Warren, jointly as owners of 604 West Avenue, New
Castle, DE, an apartment
building.
No. Civ.A.03C04294SCD.

Submitted May 10, 2004.
Decided May 13, 2004.

Dear Counsel:

DEL PESCO, J.

*1 The plaintiff has filed a motion for partial
summary judgment seeking a ruling that her claim is
not governed by 25 Del. C. § 1501. It states:

No person who enters onto private residential or
farm premises owned or occupied by another
person, *either as a guest without payment or as a
trespasser,* shall have a cause of action against the
owner or occupier of such premises for any injuries
or damages sustained by such person while on the
premises unless such accident was intentional on
the part of the owner or occupier or was caused by
wilful or wanton disregard of the rights of others.
[FN1]

FN1. Del.Code Ann. tit. 25, § 1501 (2002).
(emphasis added)

Plaintiff contends that at the time of the accident, she
was visiting a tenant of the defendant-landlord, and
thus was neither a *guest without payment* nor a
*trespasser.* Were she either, she would be required to
prove that her injuries were the result of either
intentional or willful and wanton conduct on the part
of the owner.

On June 26, 2001, Victoria Pesta ("Plaintiff") visited
Regina Sheetz at 604 West Ave, Apartment C in New
Castle ("604 West"). As plaintiff descended the

external stairway, which was the sole means of
ingress and egress, she claims that a loose step
caused her to fall and sustain injuries. On the date in
question, the apartment building was owned by Gail
and Gary Warren ("Landlord"). Sheetz was interested
in renting the apartment and was given a key by
Landlord so that she could clean the apartment prior
to signing a lease. Landlord required that Sheetz pay
a security deposit before signing a lease which
deposit was never paid, so no lease commenced.
Landlord claims that it was not until after the incident
in question that Sheetz' presence in the apartment was
known. [FN2]

FN2. *Bell v. Halfen,* 493 A.2d 304
(Del.1985).

On July 20, 2001, Landlord filed an action for Debt
and Summary Possession in the Justice of the Peace
Court. A default judgment for two months rent, June
and July, and a Writ of Possession were entered on
August 24, 2001. On September 11, 2001, after the
expiration of the appeal period, the Constable posted
an Eviction Notice at 604 West. Landlord now claims
that Sheetz was not a tenant. Plaintiff argues that the
landlord made a judicial admission in the Justice of
the Peace Court action that Sheetz was a tenant, and
is now barred from taking a contrary position.

Summary judgment may be granted if there are no
material issues of fact, viewing the record in light
most favorable to the non-moving party. [FN3] A
judicial admission is a formal statement by a party in
the course of judicial proceedings, which removes an
admitted fact from the field of controversy. [FN4]
Judicial admissions are recognized in Delaware.
[FN5] The legal significance of the dispute is that if
Sheetz was a tenant, there is case law for the
proposition that while a tenant may be entitled to the
protection of 25 Del. C. § 1501, a landlord is not.
[FN6] On the other hand, if Sheetz has no legal
status, i.e. was a trespasser, plaintiff is arguably a
trespasser, too.

FN3. *Moore v. Sizemore,* 405 A.2d 679
(Del.1979).

FN4. 29A Am Jur 2d, Evidence § 770
(1994).

FN5. *Krauss v. State Farm Mutual
Automobile Ins. Co.,* Del. Super ., C.A. No.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

03C-08-252, Cooch, J. (Apr. 23, 2004) (Mem.Op.) at 11.

> FN6. *Ford v. Ja-Sin*, 420 A.2d 184 (Del.1980); *Mosher v. Evans,* Del.Super., C.A. No. 96C-01-020, Terry, J. (Mar. 31, 1998)(Op.) 1998 Del.Super. LEXIS 183.

**\*2** I conclude that the doctrine of judicial estoppel is applicable to this dispute. The landlord sought the benefit of the remedies available under the landlord-tenant statute to secure a judgment against Sheetz and to have her evicted. The predicate of that complaint is the notion that Sheetz was a tenant. That assertion cannot now be repudiated.

The standard of care which is applicable to the claim against the landlord is negligence. [FN7] Thus, plaintiff's motion for partial summary judgment is GRANTED.

> FN7. *New Haverford Partnership v. Stroot,* 772 A.2d 792 (Del.2001); *see also Naidu v. Laird,* 539 A.2d 1064 (Del.1988).

IT IS SO ORDERED.

2004 WL 1172996 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, certify that on this 22nd day of February, 2005, I caused true and correct copies of the **Brief in Support of Motion of Fleetboston Financial Corporation, KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr., for a Stay Pending Appeal of the February 11, 2005 Order and Memorandum Opinion Denying Defendants' Motion to Dismiss the Second Amended Complaint** to be served on the following parties in the manner indicated:

**VIA HAND-DELIVERY**

Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

**VIA U.S. FIRST-CLASS MAIL**

Guy A. Donatelli
Scott R. Withers
Lamb McErlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

Denise S. Kraft (#2778)

## File a Court document:

04-52879-PJW NHI, Inc. v. Fleetboston Financial Corporation et al

**U.S. Bankruptcy Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Kraft, Denise Seastone entered on 2/22/2005 at 8:41 PM EST and filed on 2/22/2005

**Case Name:**       NHI, Inc. v. Fleetboston Financial Corporation et al

**Case Number:**    04-52879-PJW

**Document Number:** 70

**Docket Text:**
Brief *IN SUPPORT OF MOTION OF FLEETBOSTON FINANCIAL CORPORATION, KMR MANAGEMENT, INC., ROBERT RIESNER AND WARING S. JUSTIS, JR., FOR A STAY PENDING APPEAL OF THE FEBRUARY 11, 2005 ORDER AND MEMORANDUM OPINION DENYING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT* (related document(s)[69] ) Filed by Fleetboston Financial Corporation, Waring Justis, Jr., KMR Management, Inc., Robert Riesner (Attachments: # (1) Certificate of Service) (Kraft, Denise)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** 02_Brief.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3468603-0]
[380c9f64240595d6f2f145ff67f9dd90b0aabfee7a16be44a9b35debec9ec7d79773
8834be831278238d0e975d9b2fb6c8677ef24c4c3b308de9fe7f462cdd57]]
**Document description:** Certificate of Service
**Original filename:** 02_COS.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=2/22/2005] [FileNumber=3468603-1]
[1ff89394ef26c1ea82b683d6b71746e8e07acaeb89541e771cbe5bea9db39a185ef5
8bc998d9ef5565c6c032769b2bfdcdbb37b45b9c14be56b1306f087be556]]

**04-52879-PJW Notice will be electronically mailed to:**

Stuart M. Brown      sbrown@edwardsangell.com, DEbankruptcy@edwardsangell.com

Denise Seastone Kraft      dkraft@edwardsangell.com

Mark Daniel Olivere      molivere@edwardsangell.com

Stephen W. Spence      tap@pgslaw.com;th@pgslaw.com

**04-52879-PJW Notice will not be electronically mailed to:**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | | Case No. 02-10651 (PJW) |
| NHI, INC., f/n/a NANTICOKE HOMES, INC. | : | |
| A DELAWARE CORPORATION | : | Chapter 11 |
| | : | |
| _____ | : | |
| | : | |
| NHI, INC., | : | |
| | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| | : | |
| v. | : | |
| | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | |
| INC., ROBERT RIESNER and | : | |
| WARING S. JUSTIS, JR., | : | |
| | : | |
| Defendants. | : | |

NOTICE OF APPEAL PURSUANT TO FEDERAL
BANKRUPTCY PROCEDURES 8001 AND 28 U.S.C. SECTION 158(a)(3)

Defendants Fleet Boston Financial Corporation, KMR Management, Inc., Robert Riesner

and Waring S. Justis, Jr. (collectively, "Defendants"), pursuant to 28 U.S.C. 158(a)(3) and Rule

8001 of the Federal Rules of Bankruptcy Procedure, hereby appeal to the United States District

Court for the District of Delaware from the Order and Memorandum Opinion denying

Defendants' motion to dismiss the second amended complaint issued by the United States

Bankruptcy Court for the District of Delaware on February 10, 2005. A copy of the Order [D.I.

66] and Memorandum Opinion [D.I. 65] is attached hereto as Exhibit A and B, respectively.

The parties and their counsel of record are:

Docket #: _156_

Date: _2-22-05_

WLM_501408_1/DKRAFT

| Party | Counsel |
|---|---|
| | |

**Party**

**Counsel**

NHI, Inc.

Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806
(302) 655-4200 (telephone)
(302) 655-4210 (fax)

Scott R. Withers
Guy A. Donatelli
Lamb McErlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

Fleet Boston Financial Corporation
KMR Management, Inc.
Robert Riesner
Waring S. Justis, Jr.

Stuart M. Brown
Denise S. Kraft
Edwards & Angell LLP
919 N. Market Street, 14th Floor
Wilmington, DE 9801
(302) 777-7770 (telephone)
(302) 777-7263 (fax)

U.S. Trustee

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

Dated: February 22, 2005

EDWARDS & ANGELL, LLP

Stuart M. Brown (#4050)
Denise S. Kraft (#2778)
Mark D. Olivere (#4291)
919 N. Market Street, 14th Floor
Wilmington, DE 19801
(302) 777-7770 - telephone
(302) 777-7263 - facsimile

Counsel for the Defendants
FleetBoston Financial Corporation,
KMR Management Inc.,
Robert Reisner and
Waring S. Justis

- 2 -

WLM_501408_1/DKRAFT

**A00909**

# EXHIBIT A

A00910

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| NHI, INC., a Delaware | ) | Case No. 02-10651(PJW) |
| Corporation, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NHI, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 04-52879(PJW) |
| | ) | |
| FLEETBOSTON FINANCIAL | ) | |
| CORPORATION, KMR MANAGEMENT, | ) | |
| INC., ROBERT RIESNER and | ) | |
| WARING S. JUSTIS, JR., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons set forth in the Court's memorandum Opinion of this date, defendants' motion (Doc. # 51) to dismiss plaintiff's second amended complaint (Doc. # 45) is denied.

_____
Peter J. Walsh
United States Bankruptcy Judge

Dated: February 11, 2005

A00911

# EXHIBIT B

A00912

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>NHI, INC., a Delaware<br>Corporation,<br><br>     Debtor.<br>―――――――――――――――<br>NHI, INC.,<br><br>     Plaintiff,<br><br>   v.<br><br>FLEETBOSTON FINANCIAL<br>CORPORATION, KMR MANAGEMENT,<br>INC., ROBERT RIESNER and<br>WARING S. JUSTIS, JR.,<br><br>     Defendants. | ) Chapter 11<br>)<br>) Case No. 02-10651(PJW)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Adv. Proc. No. 04-52879(PJW)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION

James C. Sargent
Guy A. Donatelli
Scot R. Withers
Lamb McErlane PC
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565

Stephen W. Spence
Phillips Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Counsel to NHI, Inc.

Stuart M. Brown
Denise Seastone Kraft
Mark D. Olivere
Edwards & Angell, LLP
919 Market Street, 14th Floor
Wilmington, DE 19801

Counsel for Defendants
FleetBoston Financial
Corporation, KMR Management,
Inc., Robert Reisner and
Waring S. Justis

Dated: February 11, 2005

A00913

2

WALSH, J.

This opinion is with respect to defendants' motion (Doc. # 51) to dismiss NHI, Inc.'s second amended complaint (Doc. # 45). For the reasons set forth below, the Court will deny the motion.

### BACKGROUND

NHI, Inc. ("NHI") was the first pre-manufactured home-builder in Delaware and conducted a successful manufacturing business for more than thirty years. Over time, NHI and its affiliated companies and related entities greatly increased their indebtedness to their bank, Mercantile Safe Deposit and Trust Company ("Mercantile"). All outstanding debt owed to Mercantile by NHI and its affiliated companies was cross-collateralized.

As of late 1999, Mercantile considered NHI to be in default under various technical, non-monetary covenants of the loans. In August 2000, NHI learned that Mercantile was considering calling the loans as a result of these defaults. As an alternative to calling the loans, Mercantile insisted on October 6, 2000 that NHI retain a management consultant and strongly suggested defendants KMR Management, Inc. ("KMR"), Robert Riesner ("Riesner") and Waring S. Justis ("Justis") (collectively, "Defendants") be hired in this role. According to NHI, Scott Krieger ("Krieger"), Mercantile's workout manager, assured NHI that KMR, Riesner and Justis were "turn-around" consultants, as opposed to "liquidation guys." (Doc. # 45, ¶ 25.)

A00914

3

On October 19, 2000, NHI entered into a consulting agreement with KMR, Riesner and Justis. Under the consulting agreement, KMR, Riesner and Justis agreed to provide NHI with professional management for the purposes of stabilizing NHI's financial condition and perpetuating NHI's business. KMR, Riesner and Justis undertook to act as fiduciaries, assumed positions of responsibility and undertook a duty of loyalty with respect to NHI as NHI's agents. KMR, Riesner, and Justis further assumed the complete control, responsibility and authority for managing the business of NHI. In return, NHI agreed to pay KMR specified hourly rates for services rendered.

NHI did not survive. On March 1, 2002, it filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), and NHI's business was subsequently liquidated. On February 27, 2004, NHI commenced the instant action seeking to recover losses suffered as a result of Defendants' alleged failure to comply with the terms set forth in the consulting agreement and for other alleged wrongdoings.[1]

---

[1]

In addition to Defendants, the complaint names FleetBoston Financial Corporation ("Fleet") as a defendant. According to the complaint, KMR was a wholly-owned subsidiary of Progress Financial Corporation who, NHI alleges, participated in the day-to-day running of NHI with Riesner and Justis. Fleet is the successor to Progress Financial Corporation.

4

The complaint alleges that after assuming control of NHI, KMR, Riesner, and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the consulting agreement and in violation of their fiduciary duties and obligations of loyalty. The allegations by NHI contain numerous statements of actions taken by Defendants in which they sacrificed NHI's interests to the benefit of both Mercantile and KMR. Such actions, which NHI alleges included a failure to pay vendors and suppliers, resulted in numerous lawsuits against NHI filed by vendors, suppliers and customers beginning in September 2001. As a result, NHI asserts that it was unable to secure supplies and materials from vendors, which resulted in NHI having to resort to alternate and more expensive sources of supples and materials.

NHI alleges that by February 2002, as a result of the gross mismanagement of it by KMR, Riesner and Justis, it was in such dire financial straits that it was not able to refinance or sell its operations as a going concern. On February 6, 2002, Mercantile demanded payment on all of NHI's loans and lines of credit. NHI terminated its manufacturing operations on February 19, 2002. Thereafter, on February 26, 2002, the members of the founding family of NHI, the Mervines, allegedly found themselves in such financial distress that they entered into an agreement with Mercantile that over the following twenty months would settle NHI's

A00916

5

debt with Mercantile, satisfy Mercantile's liens on the assets of NHI and the Mervine family members' personal residences, and release Mercantile from all liability to NHI.

On June 1, 2004, Defendants filed a motion to dismiss the original complaint. NHI responded to the motion and attached an amended complaint to its response which by stipulation of the parties was deemed filed as of July 8, 2004.

Defendants filed a motion to dismiss the first amended complaint on August 5, 2004 arguing, among other things, that the action was barred by releases granted to Mercantile and its agents. According to Defendants, NHI's first amended complaint sufficiently alleged that Defendants were agents of Mercantile and were thereby covered by the releases. At a status conference hearing held on December 3, 2004, the Court heard argument regarding Defendants' position that the allegations in the first amended complaint constituted a statement affirming Defendants' agency status. NHI represented that it was not its intention to allege that Defendants were agents of Mercantile. Accordingly, the Court permitted NHI to file a second amended complaint to delete the paragraph that the Court found alleged an agency relationship. On December 10, 2004, NHI filed the second amended complaint (the "Complaint").

The Complaint contains counts for breach of contract, breach of covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, fraud, waste of corporate

6

assets, tortious interference with contract and prospective business advantage, fraudulent conveyances pursuant to federal and state law, and avoidance of preferences pursuant to Bankruptcy Code § 547.

Defendants filed the instant motion arguing that the Complaint should be dismissed for the following reasons: (1) as pled by NHI, Defendants were acting as agents of Mercantile such that Defendants are included in certain releases granted to Mercantile pre-petition and post-petition; (2) NHI's representations in the chapter case cash collateral agreement preclude the instant action because they constitute judicial admissions so that NHI is judicially estopped from maintaining this action; and (3) the preference action is not properly pled against Fleet, Riesner or Justis. NHI contests all of these assertions.

## DISCUSSION

Releases

Defendants argue that two releases shield them from liability. The first is contained in the pre-petition agreement the Mervines entered into with Mercantile on February 26, 2002. It includes the following provision:

> In order to induce [Mercantile] to enter into this agreement, each of the Obligors forever releases and discharges [Mercantile] and [Mercantile]'s officers, directors, employees, attorneys, and agents (collectively, the "Released Parties") from any and all claims, causes of action, suits and damages (including claims for attorneys' fees and costs) which

A00918

7

> any of the Obligors, jointly or severally,
> ever had or may now have of any kind or nature
> against any of the Released Parties arising
> out of or related in any way to any of the
> Loans, the Loan Documents, the Obligations or
> the Collateral or the administration thereof
> or this Agreement, whether known or unknown,
> including but not limited to any and all
> claims based upon or relying on any
> allegations or assertions of duress,
> illegality, unconscionability, bad faith,
> breach of contract, regulatory violations,
> improper control of the companies or their
> affairs, negligence, misconduct, or any other
> tort, contract or regulatory claim of any kind
> or nature. This release is intended to be
> final, irrevocable and immediate and is not
> subject to the satisfaction of any conditions
> of any kind.

(Doc. # 52, Exh. A, § 20, pp. 11-12 (emphasis added).) The term

"Obligors" is defined in the agreement to include NHI. (Id. at 1.)

The second release that allegedly shields Mercantile and its agents

is nearly identical to the above provision and is contained in a

post-petition agreement entered into by NHI and Mercantile on

October 30, 2003. (Doc. # 52, Exh. C, § 2, p. 1.) Thus, if

reading NHI's pleadings in the light most favorable to it leads to

the inescapable conclusion that Defendants were Mercantile's

agents, Defendants would be covered by the releases and this action

should be dismissed.

"A motion to dismiss pursuant to [Federal Rule of Civil

Procedure] 12(b)(6) may be granted only if, accepting all well-

pleaded allegations in the complaint as true and viewing them in

the light most favorable to plaintiff, the plaintiff is not

8

entitled to relief." <u>Cowell v. Palmer Township</u>, 263 F.3d 286, 290 (3d Cir. 2001) (citation omitted). The Court should not grant a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). In <u>Conley</u>, the Supreme Court specified that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>Id.</u> at 48.

Defendants assert that "[t]he first issue to be decided by the Court in this Motion is whether [NHI] plead [sic] that Defendants were Mercantile's agents. Clearly, [NHI] has pled agency." (Doc. # 60, p. 9.) According to Defendants, the Complaint contains numerous allegations that amount to an assertion by NHI that Defendants were acting as agents for Mercantile. Defendants' motion states its case as follows:

> As alleged in the [Complaint], KMR, Riesner and Justis did not operate independently and for the benefit of NHI. Instead, KMR, Riesner and Justis acted as Mercantile's agents. Specifically, [NHI] in its [Complaint] alleges that:[2]

---

2

Defendants bullet points appear to be quotations from the Complaint but they are not. As noted in the footnotes below, in many respects the bullet points misstate the allegations of the