Colloquy                                              7

1            THE COURT:  Okay.  Well, I'm going to allow them to

2     amend the complaint.

3            MS. KRAFT:  Okay.  Then I would like to go --

4            THE COURT:  And to remove that one statement in

5     paragraph 33, and I don't believe the other statements that I

6     referred to in my letter and which you refer to in your

7     memoranda supports a finding by me that there was an agency

8     relationship.

9            MS. KRAFT:  Then I would like to address the second

10    point as we brought up in the reply to the motion to strike,

11    and that is that we would not be in the position before the

12    Court that we are in today having filed the motion to dismiss

13    based on the -- the pleadings if it were not for the fact that

14    agency had been pled in this case.  It's caused our clients to

15    expend money in order to put together the motion to dismiss and

16    then to come back into court to address these discovery issues

17    and file the motions and again today to come in to address

18    this.

19            To the extent that the plaintiff has admitted that

20    they had documents in their possession indicating that there

21    was no agency, prior -- at this point, that -- those documents

22    should have been available to them prior to filing the

23    complaint, and under Rule 9011:11, they are required to set

24    forth what they believe to be the true facts.  Our -- our

25    position to the Court today is that they did not do a thorough

1   investigation causing our clients to come in and expend these

2   monies to fight on the release and what appeared to be a valid

3   issue, and it's taken several months until today for them to

4   come into the Court and tell the Court that they are not

5   alleging agency at this point when it was more than clear that

6   they were, and in fact, up to the time that they filed the

7   answering brief to the motion to strike, they even attached the

8   affidavit of John Mervine, III indicating that it even appeared

9   to him that they were acting on behalf of Mercantile.

10          So up until the point they appeared today and told

11   the Court they are not pursuing that, it has always appeared

12   that they were and that we were fighting the good fight, and

13   our clients have expended considerable sums of money in doing

14   that, and we would ask the Court to consider a properly placed

15   Rule 9011 motion or for sanctions.  Not for sanctions.  Just to

16   pay attorneys fees up to this point.

17          THE COURT:  Well, if you want to file a separate

18   distinct Rule 11 motion, you can.  I'll consider it.

19          MS. KRAFT:  Thank you, Your Honor.

20          MR. DONATELLI:  Your Honor, would you like me to

21   reserve any argument on that issue until that motion is filed?

22          THE COURT:  You can respond to it in writing also.

23          MR. DONATELLI:  Thank you.

24          THE COURT:  All right.  Is the case going forward in

25   terms of discovery?

1          MR. DONATELLI: If I may, Your Honor, there hasn't --

2   there hasn't been an answer to the complaint filed.  Once we

3   file the amended complaint which will have 171 paragraphs

4   instead of 172, I'll reissue discovery.  If I wouldn't -- I

5   won't need to do that, I will issue some written discovery and

6   take some depositions.  It's not a particularly difficult case

7   as far as discovery is concerned, and I suspect once I see the

8   answer, once I see what the defense is going to be, I should be

9   able to cut through that -- cut through that pretty quickly.

10          MS. KRAFT:  If I may, because of the way the -- the

11   posture of the case and the way we've come into the Court, I

12   don't believe we have a scheduling order in place for this case

13   going forward.  So perhaps we should have another conference to

14   put together a scheduling order and then go forward from there

15   in terms of a discovery schedule.

16          THE COURT:  Okay.  Then counsel should get together

17   and see if you can't agree upon one.  If you can't, then we'll

18   set up a status conference.

19          MS. KRAFT:  Thank you, Your Honor.

20          THE COURT:  Okay.

21          MR. DONATELLI:  Thank you, Judge.

22          THE COURT:  All right.  We stand in recess.

23

* * * * *

C E R T I F I C A T I O N

I, Maureen Emmons, court approved transcriber,

certify that the foregoing is a correct transcript from the

official electronic sound recording of the proceedings in the

above-entitled matter.

_Maureen Emmons_          Date: _12/22/04_

MAUREEN EMMONS

DIANA DOMAN TRANSCRIBING

A00966

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| A DELAWARE CORPORATION | : | Chapter 11 |
| | : | |
| _____ | : | |
| NHI, INC., | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| v. | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | Related Docket No. 45 |
| INC., ROBERT RIESNER and | : | |
| WARING S. JUSTIS, JR., | : | |
| Defendants | : | |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S SECOND AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, FleetBoston Financial Corporation, KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr. (together, "Defendants") hereby move to dismiss the Plaintiff's Second Amended Complaint ("Amended Complaint") filed by, NHI, Inc. ("NHI"). A memorandum in support of this motion is being filed contemporaneously herewith and is incorporated herein by reference.

A00967

FLEETBOSTON FINANCIAL
CORPORATION
By their attorneys,

Dated:  December 27, 2004

/s/ Stuart M. Brown
Stuart M. Brown, Esquire (#4050)
Denise Seastone Kraft (#2778)
Mark D. Olivere (#4291)
EDWARDS & ANGELL, LLP
919 N. Market Street
Wilmington, DE 19801
302.777.7770
302.777.7263 – facsimile

WLM_501119_1/MOLIVERE

A00968

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Case No. 02-10651 (PJW) |
| NHI, INC., | : | |
| A DELAWARE CORPORATION | : | Chapter 11 |
| | : | |

| | | |
|---|---|---|
| NHI, INC., | : | |
| Plaintiff | : | Adversary No. 04-52879 |
| v. | : | |
| FLEETBOSTON FINANCIAL | : | |
| CORPORATION, KMR MANAGEMENT, | : | |
| INC., ROBERT RIESNER and | : | |
| WARING S. JUSTIS, JR., | : | |
| Defendants | : | |

## ORDER

Upon consideration of the Plaintiff's Second Amended Complaint filed by the Debtor,

NHI, Inc. ("Second Amended Complaint") and the Motion to Dismiss the Plaintiff's Second

Amended Complaint filed by the Defendants in response thereto, it is hereby:

**ORDERED, ADJUDGED AND ADJUDGED** that the Motion to Dismiss Plaintiff's

Second Amended Complaint is Granted.

Dated: December 27, 2004                    By the Court

_____
Honorable Peter J. Walsh
United States Bankruptcy Judge

WLM_501144_1/DKRAFT

**A00969**

## CERTIFICATE OF SERVICE

I, Stuart M. Brown, certify that on this 27th day of December, 2004, I caused true and correct copies of the **Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint** to be served on the following parties in the manner indicated:

**VIA HAND-DELIVERY**
Stephen W. Spence
Phillips, Goldman & Spence
1200 N. Broom Street
Wilmington, DE 19806

Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19801

**VIA U.S. FIRST-CLASS MAIL**
Scot R. Withers, Esquire
Lamb McERlane PC
24 E. Market Street
P.O. Box 565
West Chester, PA 19381-0565

/s/ Stuart M. Brown
Stuart M. Brown

_501138_1/

**A00970**



## RELEASE AGREEMENT

THIS RELEASE AGREEMENT ("RELEASE AGREEMENT") is made to be effective as of the 30th day of October, 2003, by and between MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY ("LENDER"); NHI, INC., formerly known as Nanticoke Homes, Inc., a Delaware corporation that is a debtor-in-possession ("NHI"); SHAWNEE HOMES, INC., a Delaware corporation ("SHAWNEE"); SHAWNEE ENTERPRISES MIDWEST, L.L.C., a Delaware limited liability company ("SHAWNEE MIDWEST"); TAMARAC, INC., a Delaware corporation ("TAMARAC"); PAWNEE HOMES, INC., a Delaware corporation ("PAWNEE"); JOHN M. MERVINE, SR. and PEGGY R. MERVINE ("JOHN & PEGGY"); JOHN M. MERVINE, JR. ("MCKY") and JAN L. MERVINE (together with MCKY, "MCKY & JAN"); WILLIAM H. MERVINE, III and CHARLENE MERVINE ("WILLIAM & CHARLENE"); and GREGORY O. MERVINE ("GREGORY "). Hereafter, JOHN & PEGGY, MCKY & JAN, WILLIAM & CHARLENE, and GREGORY are collectively referred to herein as the "INDIVIDUAL GUARANTORS"; NHI, SHAWNEE, SHAWNEE MIDWEST, TAMARAC and PAWNEE are collectively referred to herein as the "COMPANIES"; the INDIVIDUAL GUARANTORS and the COMPANIES are collectively referred to herein as the "OBLIGORS"; and the OBLIGORS and the LENDER are collectively referred to herein as the "PARTIES."

## RECITALS

The PARTIES entered into an Agreement dated February 26, 2002 ("AGREEMENT"). By Order dated September 23, 2003, the United States Bankruptcy Court for the District of Delaware authorized NHI to assume and perform the obligations which it owes to the LENDER in accordance with the AGREEMENT, and further ordered various other additional relief.

Hereafter, all terms defined in the AGREEMENT shall have the same definitions in this RELEASE AGREEMENT.

NOW, THEREFORE, in consideration of these premises, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the PARTIES hereby agree as follows:

Section 1. <u>Release Of Obligors From Liability To Pay Obligations</u>. In accordance with the provisions of Section 9 of the AGREEMENT, and subject to the execution and delivery of this AGREEMENT by all of the OBLIGORS, the LENDER hereby releases and forever discharges the OBLIGORS from all further liability to pay any remaining unpaid OBLIGATIONS and all future liability to pay and perform all duties and liabilities arising out of or relating to the LOAN DOCUMENTS.

Section 2. <u>Release Of Lender</u>. In satisfaction of the requirements of Section 9(d) of the AGREEMENT, each of the OBLIGORS hereby forever releases and discharges the LENDER and the LENDER'S officers, directors, employees, attorneys, and agents (collectively, the "RELEASED PARTIES") from any and all claims, causes of action, suits and damages (including claims for attorneys' fees and costs) which any of the OBLIGORS, jointly or severally, ever had or may now have of any kind or nature against any of the RELEASED PARTIES arising out of or related in any way to any of the LOANS, the LOAN DOCUMENTS, the AGREEMENT, the OBLIGATIONS or the COLLATERAL or the administration thereof or this RELEASE AGREEMENT, whether known or unknown, including but not limited to any and all claims based upon or relying on any allegations or assertions of duress, illegality, unconscionability, bad faith, breach of contract, regulatory violations, improper control of the COMPANIES or their affairs, negligence, misconduct, or any other tort, contract or regulatory claim of any kind or nature.

A00971

Section 3.   Termination Of Liens.  The LENDER agrees to deliver releases of the lien and mortgage filings of public record securing the OBLIGATIONS within ten (10) business days after the receipt by the LENDER of a fully executed copy of this RELEASE AGREEMENT.  The OBLIGORS agree to cooperate with the LENDER and assist the LENDER in coordinating the preparation and delivery of such releases and terminations.  The OBLIGORS shall have the sole responsibility of recording such releases and terminations.

Section 16.   Enforceability.  This RELEASE AGREEMENT shall inure to the benefit of and be enforceable against each of the PARTIES and their respective successors and assigns.

Section 17.   Choice Of Law; Consent To Jurisdiction; Agreement As To Venue.  This RELEASE AGREEMENT shall be construed, performed and enforced and its validity and enforceability determined in accordance with the laws of the State of Maryland (excluding, however, conflict of laws principles).  Each of the OBLIGORS consents to the jurisdiction of the courts of the State of Maryland and the jurisdiction of the United States District Court for the District of Maryland, if a basis for federal jurisdiction exists.  Each of the OBLIGORS waives any right to object to the maintenance of a suit in any of the state or federal courts of the State of Maryland on the basis of improper venue or inconvenience of forum.

Section 21.   Waiver Of Jury Trial.  Each of the PARTIES agrees that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by any PARTY, or any successor or assign of any PARTY, on or with respect to this RELEASE AGREEMENT, shall be tried by a court and not by a jury.  EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION, OR PROCEEDING.

IN WITNESS WHEREOF, the PARTIES have executed this RELEASE AGREEMENT with the specific intention of creating a document under seal to be effective as of the above stated effective date of this RELEASE AGREEMENT.  This RELEASE AGREEMENT may be executed and delivered in counterparts.

WITNESS:                           OBLIGORS:

NHI, INC., formerly known as Nanticoke Homes, Inc.,
A Delaware Corporation

By: _____(SEAL)
Name: John Marvin Jr.
Title: Pres
Date:  October J, 2003

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

D:\jms\18886\ReleaseAgt.doc          -2-

A00972

Signature Page to Release Agreement – Continued:

WITNESS:                                OBLIGORS (Continued):

SHAWNEE HOMES, INC.,
A Delaware Corporation

By: _____ (SEAL)
Name: _William H. Merwinetti__
Title: __President__
Date:   October _15_, 2003


SHAWNEE ENTERPRISES MIDWEST, L.L.C.,
A Delaware Limited Liability Company

_____        By: _____(SEAL)
                               Name: _____
                               Title: _____
                               Date:   October ___, 2003


TAMARAC, INC.,
A Delaware Corporation

_____        By: _____(SEAL)
                               Name: _____
                               Title: _____
                               Date:   October ___, 2003


[SIGNATURES CONTINUED ON THE FOLLOWING PAGE}

A00973

Signature Page to Release Agreement – Continued:

WITNESS:                                  OBLIGORS (Continued):


SHAWNEE HOMES, INC.,
A Delaware Corporation


                                          By: _____(SEAL)
_____                        Name: _____
                                                Title: _____
                                                Date:   October ___, 2003



SHAWNEE ENTERPRISES MIDWEST, L.L.C.,
A Delaware Limited Liability Company


                                          By: _____(SEAL)
                                                Name: _Greg Minne_
                                                Title: _President_
                                                Date:   October _8_, 2003



TAMARAC, INC.,
A Delaware Corporation


                                          By: _____(SEAL)
_____                        Name: _____
                                                Title: _____
                                                Date:   October ___, 2003


[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

A00974

Signature Page to Release Agreement -- Continued:

WITNESS:                                    OBLIGORS (Continued):

                                            SHAWNEE HOMES, INC.,
                                            A Delaware Corporation


_____        By:    _____(SEAL)
                                        Name:   _____
                                        Title:    _____
                                        Date:   October ___, 2003



                                            SHAWNEE ENTERPRISES MIDWEST, L.L.C.,
                                            A Delaware Limited Liability Company


_____        By:    _____(SEAL)
                                        Name:   _____
                                        Title:    _____
                                        Date:   October ___, 2003



                                            TAMARAC, INC.,
                                            A Delaware Corporation


_____        By:    _____(SEAL)
                                        Name:   _____
                                        Title:    _____
                                        Date:   October ___, 2003


              [SIGNATURES CONTINUED ON THE FOLLOWING PAGE}

A00975

Signature Page to ReleaseAgreement -- Continued:

WITNESS:                                OBLIGORS (Continued):

PAWNEE HOMES, INC.,
A Delaware Corporation

By: _____ (SEAL)
Name: John Mervine Jr
Title: Pres
Date: October 3, 2003

_____ (SEAL)
JOHN M. MERVINE, SR.
Date: October ___, 2003

_____ (SEAL)
PEGGY R. MERVINE
Date: October ___, 2003

_____ (SEAL)
JOHN M. MERVINE, JR.
Date: October 3, 2003

_____ (SEAL)
JAN L. MERVINE
Date: October 3, 2003

_____    _____ (SEAL)
                                   WILLIAM H. MERVINE, III
                                   Date: October ___, 2003

_____    _____ (SEAL)
                                   CHARLENE MERVINE
                                   Date: October ___, 2003

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE}

D:\jms\18886\ReleaseAgt.doc                -4-

A00976

Signature Page to ReleaseAgreement – Continued:

WITNESS:                                OBLIGORS (Continued):


                                        PAWNEE HOMES, INC.,
                                        A Delaware Corporation

_____                 By: _____(SEAL)
                                             Name: _____
                                             Title: _____
                                             Date:  October ___, 2003


_____                 _____(SEAL)
                                         JOHN M. MERVINE, SR.
                                         Date:  October ___, 2003


_____                 _____(SEAL)
                                         PEGGY R. MERVINE
                                         Date:  October ___, 2003


_____                 _____(SEAL)
                                         JOHN M. MERVINE, JR.
                                         Date:  October ___, 2003


_____                 _____(SEAL)
                                         JAN L. MERVINE
                                         Date:  October ___, 2003


_____                 _____(SEAL)
                                         WILLIAM H. MERVINE, III
                                         Date:  October ___, 2003


_____                 _____(SEAL)
                                         CHARLENE MERVINE
                                         Date:  October _15_, 2003

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE}

A00977

Signature Page to ReleaseAgreement – Continued:

_____ (SEAL)
GREGORY O. MERVINE
Date:   October _8_ , 2003

LENDER:

MERCANTILE-SAFE DEPOSIT AND
  TRUST COMPANY

By: _____ (SEAL)
Scott H. Krieger,
Senior Vice President

Date:   October _30_ , 2003

A00978

(Official Form 1) (9/01)

| FORM B1 | United States Bankruptcy Court<br>District of Delaware | Voluntary Petition |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Nanticoke Homes, Inc.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**51-0113116** | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**11582 Sussex Highway<br>Greenwood, DE 19950** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the<br>Principal Place of Business:    **Sussex** | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |

Location of Principal Assets of Business Debtor
(if different from street address above):

### Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)
- ☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

**Type of Debtor** (Check all boxes that apply)
- ☐ Individual(s)
- ☑ Corporation
- ☐ Partnership
- ☐ Other_____
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker

**Chapter or Section of Bankruptcy Code Under Which the Petition is Filed** (Check one box)
- ☐ Chapter 7
- ☐ Chapter 9
- ☑ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Sec. 304 - Case ancillary to foreign proceeding

**Nature of Debts** (Check one box)
- ☐ Consumer/Non-Business
- ☑ Business

**Chapter 11 Small Business** (Check all boxes that apply)
- ☐ Debtor is a small business as defined in 11 U.S.C. § 101
- ☐ Debtor is to be considered a small business under 11 U.S.C. § 1121(e) (Optional)

**Filing Fee** (Check one box)
- ☑ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (Applicable to individuals only.) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3.

**Statistical/Administrative Information** (Estimates only)
- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ |

| Estimated Assets | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |

| Estimated Debts | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |

Docket#_____1_____
Date: _03/01/02_

**A00979**

(Official Form 1) (9/01)

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Nanticoke Homes, Inc.** | FORM B1, Page 2 |
|---|---|---|

| **Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

**Signature of Attorney**

X **/s/ Stephen W. Spence 2033**
Signature of Attorney for Debtor(s)
**Stephen W. Spence 2033**
Printed Name of Attorney for Debtor(s)
**Phillips, Goldman & Spence, P.A.**
Firm Name
**1200 N. Broom Street**
**Wilmington, DE 19806**
Address
**302-655-4200**
Telephone Number
**March  1, 2002**
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.
The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ William M. Mervine, III**
Signature of Authorized Individual
**William M. Mervine, III**
Printed Name of Authorized Individual
**Vice-president**
Title of Authorized Individual
**March  1, 2002**
Date

**Exhibit A**
(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)
☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**
(To be completed if debtor is an individual whose debts are primarily consumer debts)
I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X _____
Signature of Attorney for Debtor(s)        Date

**Exhibit C**
Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?
☐ Yes, and Exhibit C is attached and made a part of this petition.
■ No

**Signature of Non-Attorney Petition Preparer**
I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _____
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.

Form 4. LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

# United States Bankruptcy Court
### District of Delaware

In re    Nanticoke Homes, Inc.

                    Debtor

Case No. _____

Chapter _____ 11 _____

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Bayhealth Medical Center 640 South State Street Dover, DE 19901 | Bayhealth Medical Center 640 South State Street Dover, DE 19901 | medical claims for employees | | 91,579.91 |
| CERTAIN-TEED CORPORATION DRAWER 100529 ATLANTA, GA 30384-0529 | CERTAIN-TEED CORPORATION DRAWER 100529 ATLANTA, GA 30384-0529 | trade debt | | 194,183.67 |
| Conectiv Power P.O. Box 17000 Wilmington, DE 19986-1700 | Conectiv Power P.O. Box 17000 Wilmington, DE 19986-1700 | utility service | | 88,577.14 |
| Coventry Healthcare Dept. 79116 Baltimore, MD 21279 | Coventry Healthcare Dept. 79116 Baltimore, MD 21279 | health insurance | | 111,192.87 |
| Delaware Division of Revenue Randy Weller 831 French Street Wilmington, DE 19801 | Delaware Division of Revenue Randy Weller 831 French Street Wilmington, DE 19801 | | | 58,576.77 |

A00981

In re    Nanticoke Homes, Inc.                 Case No. _____

                                Debtor

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Delmarva Sash & Door<br>P.O. Box 15081<br>Wilmington, DE 19850-5081 | Delmarva Sash & Door<br>P.O. Box 15081<br>Wilmington, DE 19850-5081 | trade debt | | 205,590.21 |
| Dover Electric Supply<br>1631 South DuPont Highway<br>Dover, DE 19901 | Dover Electric Supply<br>1631 South DuPont Highway<br>Dover, DE 19901 | trade debt | | 158,476.80 |
| Eastern Shore Energy<br>P.O. Box 158<br>Camden Wyoming, DE 19934 | Eastern Shore Energy<br>P.O. Box 158<br>Camden Wyoming, DE 19934 | utility service | | 106,331.00 |
| General Electric<br>Dept. L266P<br>Pittsburgh, PA 15264-0266 | General Electric<br>Dept. L266P<br>Pittsburgh, PA 15264-0266 | trade debt | | 95,765.75 |
| Georgia Pacific<br>Distributing Divsion<br>P.O. Box 751692<br>Charlotte, NC 28275-1692 | Georgia Pacific<br>Distributing Divsion<br>P.O. Box 751692<br>Charlotte, NC 28275-1692 | trade debt | | 76,398.32 |
| KMR Management<br>2300 Computer Ave., Suite G<br>Willow Grove, PA 19090 | KMR Management<br>2300 Computer Ave., Suite G<br>Willow Grove, PA 19090 | services | Disputed | 113,394.30 |

**A00982**

In re    Nanticoke Homes, Inc.    Case No. _____

Debtor

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Penco Corporation<br>1503 West Stein Highway<br>Seaford, DE 19973 | Penco Corporation<br>1503 West Stein Highway<br>Seaford, DE 19973 | trade debt | | 254,907.56 |
| Service Energy<br>P.O. Box 354<br>Milford, DE 19963 | Service Energy<br>P.O. Box 354<br>Milford, DE 19963 | trade debt | | 63,535.58 |
| Sherwin Williams<br>694 A North DuPont Highway<br>Milford, DE 19963 | Sherwin Williams<br>694 A North DuPont Highway<br>Milford, DE 19963 | trade debt | | 98,207.88 |
| State of Maryland<br>301 West Preston Street<br>Baltimore, MD 21201-2383 | State of Maryland<br>301 West Preston Street<br>Baltimore, MD 21201-2383 | sales and use taxes | | 191,085.50 |
| Supereal Manufacturing<br>125 Helen Street<br>South Plainfield, NJ 07080 | Supereal Manufacturing<br>125 Helen Street<br>South Plainfield, NJ 07080 | trade debt | | 110,624.48 |
| The PMA Group<br>P.O. Box 8500-3855<br>Philadelphia, PA 19178-3855 | The PMA Group<br>P.O. Box 8500-3855<br>Philadelphia, PA 19178-3855 | trade debt | | 265,672.11 |

A00983

In re _____Nanticoke Homes, Inc._____     Case No. _____

Debtor

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Universal Forest<br>33373 Treasury Center<br>Chicago, IL 60694 | Universal Forest<br>33373 Treasury Center<br>Chicago, IL 60694 | trade debt | | 278,185.64 |
| Wolf Distributing<br>P.O. Box 2205<br>York, PA 17405-2205 | Wolf Distributing<br>P.O. Box 2205<br>York, PA 17405-2205 | trade debt | | 76,398.32 |
| World Com, Inc.<br>6415 Business Center Drive<br>Highlands Ranch, CO<br>80130-3606 | World Com, Inc.<br>6415 Business Center Drive<br>Highlands Ranch, CO<br>80130-3606 | long distance telephone services | | 63,000.00 |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Vice-president of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Creditors Holding 20 Largest Unsecured Claims and that it is true and correct to the best of my information and belief.

Date___**March 1, 2002**_____          Signature _/s/ William M. Mervine, III_____
                                                          William M. Mervine, III
                                                          Vice-president

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

## United States Bankruptcy Court
### District of Delaware

In re ___Nanticoke Homes, Inc._____     Case No._____

_____ Debtor

Chapter_____11_____

# LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| John M. Mervine Trust<br>8085 Peter Court<br>Brooksville, FL 34601 | Class A and B | 15,200/52,253 | |
| Peggy R. Mervine Trust<br>8085 Peter Court<br>Brooksville, FL 34601 | Class A and B | 10,400/33,053 | |
| William H. Mervine, III<br>24852 Waterview Drive<br>Easton, MD 21601 | Class A and B | 4,800/20,754 | |
| Gregory O. Mervine<br>10129 Summerlin Way<br>Fishers, IN 46038 | Class A and B | 4,800/20,754 | |
| John M. Mervine, Jr.<br>P.O. Box 400<br>Greenwood, DE 19950 | Class A and B | 4,800/20,754 | |
| Donald Warnick<br>2354 Sue Ann Drive<br>Lancaster, PA 17602 | Class A and B | 20/80 | |
| Gregory O. Mervine, Trustee for<br>Gregory O. Mervine, II<br>10129 Summerlin Way<br>Fishers, IN 46038 | Class B | 1,554 | |
| Gregory O. Mervine, Trustee for<br>Amanda Nicole Mervine<br>10129 Summerlin Way<br>Fishers, IN 46038 | Class B | 1,554 | |
| Gregory O. Mervine, Trustee for<br>Trenten Nash Mervine<br>10129 Summerlin Way<br>Fishers, IN 46038 | Class B | 1,554 | |
| John M. Mervine, Jr. Trustee for<br>Jana Lyn Mervine<br>P.O. Box 400<br>Greenwood, DE 19950 | Class B | 1,554 | |

___1___ continuation sheets attached to List of Equity Security Holders

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

A00985

In re    Nanticoke Homes, Inc.                                              Case No. _____

                                        Debtor

# LIST OF EQUITY SECURITY HOLDERS
## (Continuation Sheet)

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| John M. Mervine, Jr. Trustee for Camie McVey Mervine P.O. Box 400 Greenwood, DE 19950 | Class B | 1,554 | |
| John M. Mervine, Jr. Trustee for John McVey Mervine, III P.O. Box 400 Greenwood, DE 19950 | Class B | 1,554 | |
| William H. Mervine, III Trustee for Joni Jo Mervine 24852 Waterview Drive Easton, MD 21601 | Class B | 1,554 | |
| William H. Mervine, III. Trustee for William H. Mervine, IV 24852 Waterview Drive Easton, MD 21601 | Class B | 1,554 | |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Vice-president of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date___**March  1, 2002**_____          Signature _/s/ William M. Mervine, III_____
                                                                                       **William M. Mervine, III**
                                                                                       **Vice-president**

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C §§  152 and 3571.

Sheet **1**____ of __**1**__ continuation sheets attached to the List of Equity Security Holders

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

A00986

**United States Bankruptcy Court**
District of Delaware

In re    Nanticoke Homes, Inc.

Case No. _____

Debtor

Chapter _____ 11 _____


# VERIFICATION OF CREDITOR MATRIX


I, the Vice-president of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.


Date___ March  1, 2002 _____          Signature _/s/ William M. Mervine, III _____
                                                                                    William M. Mervine, III
                                                                                    Vice-president

## UNANIMOUS CONSENT OF THE BOARD
## OF DIRECTORS OF NANTICOKE HOMES, INC.

The undersigned, being the Secretary of Nanticoke Homes, Inc., a Delaware corporation (the "Company"), declare that at a meeting on February ___, 2002, the directors did consent to the adoption of the following resolutions for and as the resolutions of the Board of Directors of the Company:

WHEREAS, the Company has experienced severe financial difficulty as a result of various factors;

WHEREAS, the Board of Directors believes, after consulting with its counsel, that it is in the best interests of the Company that the Company file a petition for relief under Chapter 11 of Title 11, United States Code (the Bankruptcy Code) in an effort to protect its financial viability and maximize the distribution of its assets to its creditors and stockholders;

WHEREAS, the Board of Directors believes that Phillips, Goldman & Spence, P.A. possess the necessary expertise to represent the Company in its Chapter 11 case and the Company, therefore, desires to retain Phillips, Goldman & Spence, P.A. to conduct such representation;

IT IS HEREBY RESOLVED, that the Company, through any officer, is authorized to file a petition for relief under Chapter 11 of Title 11, United States Code;

FURTHER RESOLVED, that the President and any other officer of the Company are hereby authorized and empowered by the Board of Directors to take all such actions and to execute such documents as such officer(s), in the exercise of their sole discretion, deems necessary or appropriate for the Company during the pendency of the Chapter 11 case, consistent with the provisions of Title 11 of the United States Code; and

FURTHER RESOLVED, that any officer is hereby authorized to retain Phillips, Goldman & Spence, P.A. to act as counsel for the Company in its Chapter 11 proceedings.

DATED this __15__ day of February, 2002.

_____/s/_____
Director John M. Mervine

_____/s/_____
Director Peggy R. Mervine

_____/s/_____
Director William H. Mervine, III

_____/s/_____
Director Gregory O. Mervine

_____/s/_____
Director John M. Mervine

_____/s/_____
Secretary Peggy R. Mervine

A00988

**ADDENDUM**

1.    Krieger insisted – on the threat of calling all of Mercantile's loans – that NHI retain a management consultant and strongly suggested/urged that Defendant KMR, Riesner and Justis be hired as management consultants.  *See* Complaint [D.I. 1] at Paragraph 25.

2.    On or about October 18, 2000, Krieger indicated to NHI that Mercantile would provide an additional $1.5 million of financing for NHI if KMR, Riesner and Justis considered NHI to be a viable going concern.  *See* Complaint [D.I. 1] at Paragraph 26.

3.    After assuming control of NHI, unbeknownst to any of the Mervine family, KMR, Riesner and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their fiduciary duties and obligations of loyalty. KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile . . . . *See* Complaint [D.I. 1] at Paragraph 32.

4.    KMR, Riesner and Justis did not operate independently and for the benefit of NHI.  Upon information and belief, KMR, Riesner and Justis served at the direction and pleasure of Mercantile. *See* Complaint [D.I. 1] at Paragraph 33.

5.    Upon information and belief, Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement. *See* Complaint [D.I. 1] at Paragraph 34.

6.    By the end of December 2000, Riesner and Justis had written approximately $500,000 in checks, which Mercantile refused to cover because a third forbearance agreement had been negotiated or signed. *See* Complaint [D.I. 1] at Paragraph 35.

7.    Mercantile subsequently covered the approximately $500,000 in checks issued by Riesner and Justis that had not been paid by Mercantile. *See* Complaint [D.I. 1] Paragraph 36.

8.    In 2001, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. *See* Complaint [D.I. 1] at Paragraph 37.

9.    In collaboration with Krieger, Riesner and Justis . . . focused on short-term returns to Mercantile and KMR, without any concerns for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. *See* Complaint [D.I. 1] at Paragraph 37.

10.    At the same time, although NHI was still only in technical default with Mercantile, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred.  It was apparent that Riesner and Justis were not

concerned with NHI's ability to continue as a going concern – rather, the sole concern of Riesner and Justis was that Mercantile and KMR be paid. *See* Complaint [D.I. 1] at Paragraph 38.

11.      Instead of operating NHI with the intent that it continue as a viable going concern, the sole objective of KMR, Riesner and Justis was to pay down bank debt and liquidate assets to the benefit of Mercantile and KMR, and to the detriment of NHI's shareholders. *See* Complaint [D.I. 1] at Paragraph 41.

12.      KMR, Riesner and Justis . . . made decisions which maximized cash flows to Mercantile . . . devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis . . . . *See* Complaint [D.I. 1] at Paragraph 49.

13.      NHI never received the additional $1.5 million of funding from Mercantile, even though KMR, Riesner and Justis assured Mercantile that NHI was a viable going concern. *See* Complaint [D.I. 1] at Paragraph 54.

14.      NHI engaged KMR, Riesner and Justis solely at the direction of Mercantile to serve as NHI's management consultants. *See* Complaint [D.I. 1] at Paragraph 60.

15.      KMR, Riesner and Justis knew that in the event NHI failed to execute the Consulting Agreement with KMR, Mercantile would call all of the loans and declare NHI in default thereof. *See* Complaint [D.I. 1] at Paragraph 61.

16.      To the contrary, and as set forth above, KMR, Riesner and Justis engaged in a course of conduct designed to:  a) destroy NHI as a going concern; b) apply NHI's assets only for the benefit of KMR and Mercantile; c) drive NHI into bankruptcy for the benefit of its secured creditors; and d) ignore the desires and wishes of NHI's Board of Directors. *See* Complaint [D.I. 1] at Paragraph 66.

17.      KMR, Riesner and Justis breached that duty to NHI ... by ... knowingly delaying the payments to Mercantile until after additional penalties for late payments were assessed; . . . knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy; selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI. . . . *See* Complaint [D.I. 1] at Paragraph 79.

18.      KMR, Riesner and Justis intentionally, unlawfully and willfully acted in a fashion that served only the interests of Mercantile and their own self-interests, . . . knowingly delaying the payments to Mercantile until after additional penalties for late payments were assessed; . . . knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy; selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI. . . . *See* Complaint [D.I. 1] at Paragraph 85.

_502879_1/

A00990

19.    On information and belief, KMR through Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of·stripping assets in satisfaction of bank debt and running down NHI to the point where NHI·could only be liquidated for the benefit of Mercantile rather than turning the company around, as represented. *See* Complaint [D.I. 1] at Paragraph 89.

20.    KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply the NHI Board of Directors with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into an insolvent condition in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather than utilizing those assets to assist NHI's business operations. *See* Complaint [D.I. 1] at Paragraph 90.

21.    On information and belief, KMR through Riesner and Justis engaged in a scheme to waste the assets of NHI to the point where NHI could only be liquidated for the benefit of Mercantile. *See* Complaint [D.I. 1] at Paragraph 95.

22.    KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which had had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply NHI with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into bankruptcy in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather than utilizing those assets to assist NHI's business operations. *See* Complaint [D.I. 1] at Paragraph 96.

23.    At all times relevant to the instant case, NHI had contractual rights under all loans with Mercantile, and was ready, willing and able to institute, an actionable and meritorious lender liability claim against Mercantile. *See* Complaint [D.I. 1] at Paragraph 100.

24.    The conduct of KMR, Riesner and Justis, as set forth above, prejudiced NHI's ability to do business and made it impossible for NHI to maintain any semblance of equal bargaining power with Mercantile. *See* Complaint [D.I. 1] at Paragraph 101.

_502879_1/

A00991

25.    As a direct cause of the conduct of KMR, Riesner and Justis, NHI's shareholders were compelled to provide to Mercantile personal guarantees of all of NHI's loans, secured by virtually all of their personal tangible assets. *See* Complaint [D.I. 1] at Paragraph 102.

26.    Accordingly, and as a direct result of the conduct of KMR, Riesner and Justis, NHI was placed in such a situation of economic duress and in such a disparate bargaining position that it was unable to protect its interests vis-à-vis Mercantile. *See* Complaint [D.I. 1] at Paragraph 103.

27.    Mercantile then was able, through threats against NHI's principals, to compel NHI to provide multiple general releases to Mercantile, foreclosing NHI's ability to enforce its rights under all of its loans or to institute an action against Mercantile for Mercantile's wrongful acts. *See* Complaint [D.I. 1] at Paragraph 104.

28.    The conduct of KMR, Riesner and Justis constitutes intentional interference with all loan agreements between NHI and Mercantile and interfered with NHI's prospective business advantage afforded through an action against Mercantile. *See* Complaint [D.I. 1] at Paragraph 105.

29.    The transfers made to KMR, Riesner and Justis were made on or within four years before the date of filing of the Petition. *See* Complaint [D.I. 1] at Paragraph 109.

30.    The transfers made to KMR, Riesner and Justis were made when NHI was insolvent or became insolvent as a result of such transfers. *See* Complaint [D.I. 1] at Paragraph 111.

31.    Krieger insisted – on the threat of calling all of Mercantile's loans – that NHI retain a management consultant and strongly suggested/urged that Defendants KMR, Riesner and Justis be hired as management consultants. *See* Plaintiff's First Amended Complaint, Paragraph 25.

32.    On or about October 18, 2000, Krieger indicated to NHI that Mercantile would provide an additional $1.5 million of financing for NHI if KMR, Riesner and Justis considered NHI to be a viable going concern. *See* Plaintiff's First Amended Complaint, Paragraph 26.

33.    After assuming control of NHI, unbeknownst to any of the Mervine family, KMR, Riesner and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their fiduciary duties and obligations of loyalty. KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile . . . . *See* Plaintiff's First Amended Complaint, Paragraph 32.

_502879_1/

**A00992**

34.    KMR, Riesner and Justis did not operate independently and for the benefit of NHI. Upon information and belief, KMR, Riesner and Justis served at the direction and pleasure of Mercantile. *See* Plaintiff's First Amended Complaint, Paragraph 33.

35.    Upon information and belief, Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement. *See* Plaintiff's First Amended Complaint, Paragraph 34.

36.    By the end of December 2000, KMR, Riesner and Justis had written approximately $500,000 in checks, which Mercantile refused to cover because a third forbearance agreement had not been negotiated or signed. *See* Plaintiff's First Amended Complaint, Paragraph 45.

37.    Mercantile subsequently covered the approximately $500,000 in checks issued by KMR, Riesner and Justis that had not been paid by Mercantile. *See* Plaintiff's First Amended Complaint, Paragraph 46.

38.    In 2001, KMR, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. *See* Plaintiff's First Amended Complaint, Paragraph 47.

39.    In collaboration with Krieger, KMR, Riesner and Justis . . . focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. *See* Plaintiff's First Amended Complaint, Paragraph 47.

40.    At the same time, although NHI was still only in technical default with Mercantile, KMR, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. It was apparent that KMR, Riesner and Justis were not concerned with NHI's ability to continue as a going concern – rather, the sole concern of KMR, Riesner and Justis was that Mercantile and KMR be paid. *See* Plaintiff's First Amended Complaint, Paragraph 48.

41.    Instead of operating NHI with the intent that it continue as a viable going concern, the sole objective of KMR, Riesner and Justis was to pay down bank debt and liquidate assets to the benefit of Mercantile and KMR, and to the detriment of NHI's shareholders. *See* Plaintiff's First Amended Complaint, Paragraph 51.

42.    KMR, Riesner and Justis . . . made decisions which maximized cash flows to Mercantile . . . devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis . . .. *See* Plaintiff's First Amended Complaint, Paragraph 60.

*_502879_1/*

**A00993**

43.    NHI never received the additional $1.5 million of funding from Mercantile, even though KMR, Riesner and Justis assured Mercantile that NHI was a viable going concern. *See* Plaintiff's First Amended Complaint, Paragraph 65.

44.    NHI engaged KMR, Riesner and Justis solely at the direction of Mercantile to serve as NHI's management consultants. *See* Plaintiff's First Amended Complaint, Paragraph 71.

45.    KMR, Riesner and Justis knew that in the event NHI failed to execute the Consulting Agreement with KMR, Mercantile would call all of the loans and declare NHI in default thereof. *See* Plaintiff's First Amended Complaint, Paragraph 72.

46.    To the contrary, and as set forth above, KMR, Riesner and Justis engaged in a course of conduct designed to: a) destroy NHI as a going concern; b) apply NHI's assets only for the benefit of KMR and Mercantile; c) drive NHI into bankruptcy for the benefit of its secured creditors; and d) ignore the desires and wishes of NHI's Board of Directors. *See* Plaintiff's First Amended Complaint, Paragraph 77.

47.    KMR, Riesner and Justis breached that duty to NHI . . . by . . . knowingly delaying the payments to Mercantile until after additional penalties for late payments were assessed; . . . knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy; selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI . . . . *See* Plaintiff's First Amended Complaint, Paragraph 92.

48.    KMR, Riesner and Justis intentionally, unlawfully and willfully acted in a fashion that served only the interests of Mercantile and their own self-interests . . . knowingly delaying the payments to Mercantile until after additional penalties for late payments were assessed; . . . knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy; selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI. . . . *See* Plaintiff's First Amended Complaint, Paragraph 99.

49.    On information and belief, KMR through Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around as represented. *See* Plaintiff's First Amended Complaint, Paragraph 104.

50.    KMR, Riesner and Justis took steps to implement their fraudulent purpose including:  (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which had the effect of running down NHI's business; (5)

- 6 -

A00994

insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply the NHI Board of Directors with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into an insolvent condition in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather than utilizing those assets to assist NHI's business operations. *See* Plaintiff's First Amended Complaint, Paragraph 105.

51.     On information and belief, KMR through Riesner and Justis engaged in a scheme to waste the assets of NHI to the point where NHI could only be liquidated for the benefit of Mercantile. *See* Plaintiff's First Amended Complaint, Paragraph 111.

52.     KMR, Riesner and Justis took steps to implement their fraudulent purpose including:  (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which have had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply NHI with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into bankruptcy in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather than utilizing those assets to assist NHI's business operations. *See* Plaintiff's First Amended Complaint, Paragraph 112.

53.     At all times relevant to the instant case, NHI had contractual rights under all loans with Mercantile, and was ready, willing and able to institute, an actionable and meritorious lender liability claim against Mercantile. *See* Plaintiff's First Amended Complaint, Paragraph 117.

54.     The conduct of KMR, Riesner and Justis, as set forth above, prejudiced NHI's ability to do business and made it impossible for NHI to maintain any semblance of equal bargaining power with Mercantile. *See* Plaintiff's First Amended Complaint, Paragraph 118.

55.     As a direct cause of the conduct of KMR, Riesner and Justis, NHI's shareholders were compelled to provide to Mercantile personal guarantees of all of NHI's loans, secured by virtually all of their personal tangible assets. *See* Plaintiff's First Amended Complaint, Paragraph 119.

56.     Accordingly, and as a direct result of the conduct of KMR, Riesner and Justis, NHI was placed in such a situation of economic duress and in such a disparate bargaining position that it was unable to protect its interests vis-à-vis Mercantile. *See* Plaintiff's First Amended Complaint, Paragraph 120.

_502879_1/

A00995

57.    Mercantile then was able, through threats against NHI's principals, to compel NHI to provide multiple general releases to Mercantile, foreclosing NHI's ability to enforce its rights under all of its loans or to institute an action against Mercantile for Mercantile's wrongful acts. *See* Plaintiff's First Amended Complaint, Paragraph 121.

58.    The conduct of KMR, Riesner and Justis constitutes intentional interference with all loan agreements between NHI and Mercantile and interfered with NHI's prospective business advantage afforded through an action against Mercantile. *See* Plaintiff's First Amended Complaint, Paragraph 122.

59.    NHI has pleaded that under the threat of calling all of Mercantile Safe Deposit and Trust Company's ("Mercantile") loans to NHI, NHI was required by Mercantile to hire KMR Management, Inc. ("KMR"), not because Mercantile or KMR expected KMR to act as a true management consultant to reverse the financial course of NHI, but rather (unbeknownst to NHI at the time it hired KMR) to scuttle and liquidate NHI in direct breach of the Consulting Agreement entered into between KMR and NHI. *See* Memorandum in Support of Plaintiff's Answer to Motion to Dismiss of Defendant, FleetBoston Financial Corporation [D.I.17, Exh. A] at page 2.

60.    The First Amended Complaint makes it clear that KMR was hired on the basis of a covert plan between Mercantile and KMR to pay down NHI's debt to Mercantile while leaving intact sufficient assts to satisfy the remaining debts of NHI upon liquidation. *See* Memorandum in Support of Plaintiff's Answer to Motion to Dismiss of Defendant, FleetBoston Financial Corporation [D.I. 17, Exh. A] at page 2.

61.    However, instead of taking actions to improve NHI's position, Defendants undertook a course of conduct designed to assure NHI's insolvency and ultimate dismantlement for the benefit of NHI's creditor, Mercantile Safe Deposit and Trust Company. *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 1.

62.    On or about October 19, 2000, under the threat of calling all of Mercantile's loans, NHI entered into a Consulting Agreement with Defendants KMR, Riesner and Justis. (Amended Complaint ¶ 27.) *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 4.

63.    After assuming control of NHI, KMR, Riesner and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their fiduciary duties and obligations of loyalty. (Amended Complaint ¶¶ 32, 35-37.) *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 4.

64.    KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for KMR, while at the same time relegating NHI's business operations and viability as a going

_502879_1/

A00996

concern to distant secondary priorities, in direct contravention of the Consulting Agreement. (Amended Complaint ¶ 32.) *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 4.

65.    KMR, Riesner and Justis did not operate independently and for the benefit of NHI, upon information and belief, KMR, Riesner and Justis served and the direction and pleasure of Mercantile. *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at pages 4-5.

66.    Upon information and belief, Riesner and/or Justis was in contact with Mercantile at least daily during the term of the Consulting Agreement. (Amended Complaint ¶ 34.) *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 5.

67.    In 2001, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 5.

68.    In collaboration with Krieger, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and focused on short-term returns to Mercantile and KMR, without any concerns for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. (Amended Complaint ¶ 41.) *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 5.

69.    At the same time, although NHI was still only in technical default with Mercantile, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. It was apparent that Riesner and Justis were not concerned with NHI's ability to continue as a going concern – rather, the sole concern of Riesner and Justis was that Mercantile and KMR be paid. (Amended Complaint ¶ 48.) *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 5.

70.    Instead of operating NHI with the intent that it continue as a viable going concern, the sole objective of KMR, Riesner and Justis was to pay down bank debt and liquidate assets to the benefit of Mercantile and KMR, and to the detriment of NHI's shareholders. See Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 6.

71.    From October 2000 through January 2002, KMR, Riesner and Justis . . . made decisions which maximized cash flows to Mercantile and KMR . . . with the obvious result of destroying NHI as a viable going concern; violated the Consulting Agreement;

_502879_1/

A00997

breached their fiduciary duty and duty of loyalty by – rather than providing "turn around" management – devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis, and to the extreme detriment and prejudice of NHI and its shareholders and creditors. (Amended Complaint ¶ 60.) *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 6.

72.    Thereafter, on or about February 26, 2002, the members of the Mervine family found themselves in such financial duress that they entered into an agreement with Mercantile, which over the next twenty months settled NHI's debt with Mercantile, satisfied Mercantile's liens on the assets of NHI and the Mervine family members' personal residences, and released Mercantile from all liability to NHI. (Amended Complaint ¶ 64.) *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 7.

73.    NHI's amended complaint asserts that Defendants made their primary priorities in managing the business of NHI the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for Defendants without regard to the continuation of NHI's business. *See* Answering Brief of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [D.I. 29] at page 13.

74.    This is with respect to Defendants' motion (Doc. # 26) to dismiss Plaintiff's first amended complaint (Doc. # 17). *See* October 8, 2004 Letter from Court [D.I. 32] at page 1.

75.    The principal issue here is whether Defendants were acting as agents of Mercantile Safe Deposit and Trust Company ("Mercantile") during the period covered by the alleged improper conduct of Defendants. Defendants cite the release provision of Section 20 of the February 26, 2002 Agreement. *See* October 8, 2004 Letter from Court [D.I. 32] at page 2.

76.    There is no doubt that the release provision set forth in the February 26, 2002 Agreement releases not only Mercantile but its "officers, directors, employees, attorneys and agents." While the October 19, 2000 Consulting Agreement does not suggest an agency relationship between Defendants and Mercantile, there are numerous allegations in the complaint that suggest such an agency relationship. While most of those allegations do not necessarily prove an agency relationship, the complaint is more pointed in paragraph 33 which alleges that Defendants "served at the direction and pleasure of Mercantile." (Doc. # 17, ¶ 33). This allegation must be accepted as true. See Schrob v. Catterson, 948 F.2d 1402, 1405 (3rd Cir. 1991). In its answering brief Plaintiff likewise states that Defendants "served and [sic] the direction and pleasure of Mercantile." (Doc. # 29, p. 5). This sure sounds like an agency relationship to me. *See* October 8, 2004 Letter from Court [D.I. 32] at page 3. (Emphasis added.)

A00998

77.     Therefore, I believe it is incumbent upon Plaintiff to present facts which negate an agency relationship or otherwise show why the release provision does not apply to Defendants. *See* October 8, 2004 Letter from Court [D.I. 32] at page 3.

78.     Certification of Counsel for Plaintiff NHI, Inc., [D.I. 34] attached hereto as Exhibit A.

79.     The Court noted that several allegations of the Complaint sounded like an allegation of an agency relationship . . . . *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc., [D.I. 40] at page 1.

80.     By Certification of Counsel for NHI dated October 29, 2004, NHI proposed very narrow discovery designed to address the agency and the release issues, and on November 15, 2004, NHI served a very limited set of Interrogatories and Requests for Production of Documents upon Defendants consistent with the Court's letter and limited to agency and release. *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc., [D.I. 40] at page 2.

81.     The Mervine Affidavit provides the Court with the facts that NHI is able to assemble on the relationship between Defendants and Mercantile. *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc., [D.I. 40] at page 3.

83.     [I] appeared to Mr. Mervine that Defendants, particularly KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr., were simply doing what Mercantile wanted them to do irrespective of the harm their conduct was causing NHI. *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc., [D.I. 40] at page 4.

84.     Mr. Mervine questioned Mr. Riesner, President of KMR on who KMR was serving, because it appeared that KMR was more interested in making the Bank happy than it was in looking out for NHI's interests. (Mervine Affidavit, ¶8).   *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Strike Certification of Counsel for Plaintiff NHI, Inc., [D.I. 40] at pages 4-5.

85.     As set forth in the complaint, I developed a growing suspicion that defendants, KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr. in particular, were more intent on maximizing recovery for Mercantile than they were concerned about solving NHI's financial problems and returning NHI to profitability. *See* Affidavit of John M. Mervine, Jr. in Support of Plaintiff's Supplemental Response to Defendants' Motion to Dismiss [D.I. 40, Exh. B] at paragraph 6.

86.     It almost appeared to me that defendants, particularly KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr., were simply doing what Mercantile wanted

_502879_1/

A00999

them to do irrespective of the harm their conduct was having on NHI. *See* Affidavit of John M. Mervine, Jr. in Support of Plaintiff's Supplemental Response to Defendants' Motion to Dismiss [D.I. 40, Exh. B] at paragraph 7.

87.     After a meeting on January 22, 2002, between Robert Riesner, a representative of Mercantile Bank and me, I raised with Robert Riesner, President of KMR Management, Inc., that it appeared that KMR Management, Inc. was more interested in making the Bank happy than it was in looking out for NHI's interests and questioned who KMR Management, Inc. was serving. *See* Affidavit of John M. Mervine, Jr. in Support of Plaintiff's Supplemental Response to Defendants' Motion to Dismiss [D.I. 40, Exh. B] at paragraph 8.

88.     None of the defendants ever took the position that they were the agents of Mercantile; to the contrary, they denied it and continued to confirm that NHI was their client and that they answered to NHI for NHI's benefit. *See* Affidavit of John M. Mervine, Jr. in Support of Plaintiff's Supplemental Response to Defendants' Motion to Dismiss [D.I. 40, Exh. B] at paragraph 11.

89.     Accordingly, there was no intention on my part, or on the part of any other signatory, in the Agreement dated February 26, 2002, to release Fleet Boston Financial, KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr. as agents of Mercantile nor was it the intention of NHI to release Fleet Boston Financial, KMR Management, Inc., Robert Riesner and Waring S. Justis, Jr. from any claims or causes of action based upon their failure to discharge their independent contractual duties to NHI or any other failures under the law. Indeed, they were specifically excluded from the release for the purposes of suing them. *See* Affidavit of John M. Mervine, Jr. in Support of Plaintiff's Supplemental Response to Defendants' Motion to Dismiss [D.I. 40, Exh. B] at paragraph 12.

90.     MR. DONATELLI:  We run into problems, Your Honor, because there were some allegations in that – in that complaint which the defendants painted as allegations of agency, and the reason that became important is because before the petition in this case was filed, there was a settlement agreement between certain representatives of NHI and their principles and Mercantile as it related to Mercantile's loans to NHI and the guarantees that went along with it.

     The defendants have come in and have said we read plaintiff's complaint as alleging that KMR were the agents of Mercantile.

     THE COURT:  And I read it that way too.

*See* Transcript of Hearing, December 3, 2004, at p. 4, lines 2-13 (argument of NHI).

     THE COURT:  Let me put is succinctly.  And I tried to be polite in my letter where I said – quoted from paragraph 33 of the complaint, and I said this sure sounds like an agency relationship to me.  Let me put it bluntly.  I conclude that that's an assertion of

- 12 -

_502879_1/

an agency relationship. *See* Transcript of Hearing, December 3, 2004, at p. 4, lines 21-25 (Court's statement).

91.     Krieger insisted -- on the threat of calling all of Mercantile's loans – that NHI retain a management consultant and strongly suggested/urged that Defendants KMR, Riesner and Justis be hired as management consultants. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 25.

92.     On or about October 18, 2000, Krieger indicated to NHI that Mercantile would provide an additional $1.5 million of financing for NHI if KMR, Riesner and Justis considered NHI to be a viable going concern. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 26.

93.     After assuming control of NHI, unbeknownst to any of the Mervine family, KMR, Riesner and Justis embarked on a short-sighted and result-oriented management scheme to scuttle and liquidate NHI in direct breach of the Consulting Agreement and in violation of their fiduciary duties and obligations of loyalty. KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile . . . . *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 32.

94.     Upon information and belief, Riesner and/or Justis were in contact with Mercantile at least daily during the term of the Consulting Agreement. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 33.

95.     By the end of December 2000, KMR, Riesner and Justis had written approximately $500,000 in checks, which Mercantile refused to cover because a third forbearance agreement had not been negotiated or signed. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 44.

96.     Mercantile subsequently covered the approximately $500,000 in checks issued by KMR, Riesner and Justis that had not been paid by Mercantile. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 45.

97.     In 2001, KMR, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of NHI's business, while stripping NHI of assets. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 46.

98.     In collaboration with Krieger, KMR, Riesner and Justis . . . focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 46.

99.     At the same time, although NHI was still only in technical default with Mercantile, KMR, Riesner and Justis systematically made payments to Mercantile the day after late fees and penalties were incurred. It was apparent that KMR, Riesner and

A01001

Justis were not concerned with NHI's ability to continue as a going concern – rather, the sole concern of KMR, Riesner and Justis was that Mercantile and KMR be paid. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 47.

100.    Instead of operating NHI with intent that it continue as a viable going concern, the sole objective of KMR, Riesner and Justis was to pay down bank debt and liquidate assets to the benefit of Mercantile and KMR, and to the detriment of NHI's shareholders. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 50.

101.    Riesner and Justis . . . made decisions which maximized cash flows to Mercantile . . . devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 59.

102.    NHI never received the additional $1.5 million of funding from Mercantile, even though KMR, Riesner and Justis assured Mercantile that NHI was a viable going concern. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 64.

103.    NHI engaged KMR, Riesner and Justis solely at the direction of Mercantile to serve as NHI's management consultants. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 70.

104.    KMR, Riesner and Justis knew that in the event NHI failed to execute the Consulting Agreement with KMR, Mercantile would call all of the loans and declare NHI in default thereof. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 71.

105.    To the contrary, and as set forth above, KMR, Riesner and Justis engaged in a course of conduct designed to: a) destroy NHI as a going concern; b) apply NHI's assets only for the benefit of KMR and Mercantile; c) drive NHI into bankruptcy for the benefit of its secured creditors; and d) ignore the desires and wishes of NHI's Board of Directors. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 76.

106.    KMR, Riesner and Justis breached that duty to NHI . . . by . . . knowingly delaying the payments to Mercantile until after additional penalties for late payment were assessed; . . . knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy; selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI . . . . *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 91.

107.    KMR, Riesner and Justis intentionally, unlawfully and willfully acted in a fashion that served only the interests of Mercantile and their own self-interests . . . knowingly delaying the payments to Mercantile until after additional penalties for late payment were assessed; . . . knowingly reducing NHI's obligations to Mercantile to the point where Mercantile would compel the filing of a bankruptcy; selling assets of NHI which KMR, Riesner and Justis knew would have been better utilized in the recovery of NHI . . . . *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 98.

_502879_1/

**A01002**

108.    On information and belief, KMR through Riesner and Justis engaged in a scheme to defraud and to raid NHI for the purposes of stripping assets in satisfaction of bank debt and running down NHI to the point where NHI could only be liquidated for the benefit of Mercantile rather than turning the company around, as represented.  *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 103.

109.    KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which have had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply the NHI Board of Directors with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into an insolvent condition in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather than utilizing those assets to assist NHI's business operations. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 104.

110.    On information and belief, KMR through Riesner and Justis engaged in a scheme to waste the assets of NHI to the point where NHI could only be liquidated for the benefit of Mercantile. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 110.

111.    KMR, Riesner and Justis took steps to implement their fraudulent purpose including: (1) Mercantile insisting on NHI's hiring KMR; (2) Riesner and Justis knowingly failing to take any action which would permit NHI to continue as a going concern; (3) placing Justis in a position to perform the duties which a Chief Executive Officer and Chief Operating Officer would perform without any intention of having him act in the best interests of NHI; (4) the making of a series of management decisions by KMR, Riesner and Justis, which have had the effect of running down NHI's business; (5) insisting on the surrender of voting rights of NHI's shareholders; (6) refusing to supply NHI with financial information about the company or to involve it in any way in its present operations; (7) placing NHI into bankruptcy in a fashion designed to protect only Mercantile; and (8) siphoning off approximately $1.9 million to KMR in fees rather than utilizing those assets to assist NHI's business operations.  *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 111.

112.    At all times relevant to the instant case, NHI had contractual rights under all loans with Mercantile, and was ready, willing and able to institute, an actionable and meritorious lender liability claim against Mercantile. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 116.

113.    The conduct of KMR, Riesner and Justis, as set forth above, prejudiced NHI's ability to do business and made it impossible for NHI to maintain any semblance of equal

_502879_1/

**A01003**

bargaining power with Mercantile. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 117.

114.    As a direct cause of the conduct of KMR, Riesner and Justis, NHI's shareholders were compelled to provide to Mercantile personal guarantees of all of NHI's loans, secured by virtually all of their personal tangible assets. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 118.

115.    Accordingly, and as a direct result of the conduct of KMR, Riesner and Justis, NHI was placed in such a situation of economic duress and in such a disparate bargaining position that it was unable to protect its interests vis-à-vis Mercantile. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 119.

116.    Mercantile then was bale, through threats against NHI's principals, to compel NHI to provide multiple general releases to Mercantile, foreclosing NHI's ability to enforce its rights under all of its loans or to institute an action against Mercantile for Mercantile's wrongful acts. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 120.

117.    The conduct of KMR, Riesner and Justis constitutes intentional interference with all loan agreements between NHI and Mercantile and interfered with NHI's prospective business advantage afforded through an action against Mercantile. *See* Plaintiff's Second Amended Complaint [D.I. 45] at paragraph 121.

118.    This Court, for all practical purposes, removed this "defense" from this case during the conference held before the Court on December 3, 2004. At the December 3, 2004 conference, the Court noted that paragraph 33 of the first amended complaint was an assertion of an agency relationship. *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [D.I. 54] at page 1.

119.    On or about October 18, 2000, Mercantile indicated it would provide an additional $1.5 million of financing for NHI if KMR, Riesner and Justis considered NHI to be a viable going concern. *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [D.I. 54] at page 5.

120.    KMR, Riesner and Justis made their primary priorities the paying down of NHI's debt to Mercantile and the collection of exorbitant and extorted consulting fees for KMR, while at the same time relegating NHI's business operations and viability as a going concern to distant secondary priorities, in direct contravention of the Consulting Agreement. (Second Amended Complaint ¶ 32.) *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [D.I. 54] at pages 5-6.

121.    In 2001, Riesner and Justis continued on a concentrated course of action to pay Mercantile and KMR at the fastest possible rate without regard to the continuation of

_502879_1/

A01004

NHI's business, while stripping NHI of assets. *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [D.I. 54] at page 6.

122.    In collaboration with Krieger, Riesner and Justis discontinued paying NHI's vendors, suppliers, health care claims and taxing authorities, removed critical employees from plant operations, shipped homes out of the plant prior to completion and with substantial defects, failed to complete homes in the field and focused on short-term returns to Mercantile and KMR, without any concern for the long-term impact on NHI, which were in fact ruinous to NHI's viability as a going concern. (Second Amended Complaint ¶ 40.) *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [D.I. 54] at page 6.

123.    It was apparent that Riesner and Justis were not concerned with NHI's ability to continue as a going concern – rather, the sole concern of Riesner and Justis was that Mercantile and KMR be paid. (Second Amended Complaint ¶ 47.) *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [D.I. 54] at page 6.

124.    From October 2000 through January 2002, KMR, Riesner and Justis grossly mismanaged NHI's business; made decisions which maximized cash flows to Mercantile and KMR while destroying NHI's relationships with its customers, suppliers, contractors, employees, etc., with the obvious result of destroying NHI as a viable going concern; violated the Consulting Agreement; breached their fiduciary duty and duty of loyalty by – rather than providing "turn around" management – devising a stealth plan to strip NHI of all cash and assets possible before running NHI into liquidation, all for the sole benefit of Mercantile, KMR, Riesner and Justis, and to the extreme detriment and prejudice of NHI and its shareholders and creditors. (Second Amended Complaint ¶ 59.) *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [D.I. 54] at page 7.

125.    And, to the extent that the Court determined that paragraph 33 was the sole allegation in the first amended complaint that suggested that Defendants were agents of Mercantile, the Court permitted NHI to file an amended pleading, removing paragraph 33, which mooted this issue. *See* Memorandum of Law of Plaintiff NHI, Inc. in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [D.I. 54] at page 9.

_502879_1/

A01005